IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PAUL E. DOLAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | No. 07-166C |
| | ) | (C.O.C.Miller) |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant, | ) | |

# AMENDED COMPLAINT

This is a claim to set aside the agency decisions by the Army Board for Correction of Military Records (BCMR) of March 3, 2004 (docket no. AR2003-08496), and on reconsideration 1 March 2006, that denied plaintiff-Dolan's request to void his March 14, 2001, involuntary discharge from active duty under Honorable Conditions (General) to attain 20-years towards retirement and award with back pay.[1]

## JURISDICTION

Jurisdiction is conferred under 28 U.S.C. § 1491(a). Money is mandated under the Military Pay Act, 37 U.S.C. § 204(a).

## PARTIES

Plaintiff, Paul Dolan, is a former officer in the United States Army's Active Guard and Reserve program (AGR), at rank of Major.

Defendant, the United States.

[1] Complaint is amended upon additionally discovered facts after the delayed receipt of plaintiff's military service records from archives of the National Personnel Center.

FACTS

1. Dolan enlisted in the Army in 1975, serving until commissioned a second lieutenant in May 1981. In 1988 he entered the AGR program.

2. In 1994 Major Dolan had surgery for perirectal abscess. However, his underlying condition was not treated properly and so he "had the onset of acute severe low back pain in approximately 1994." Army Medical Evaluation Board Addendum, 26 March 2001, LTC Schaefer, MD, Orthopedics. The Army determined the 1994 perirectal abscess had been a secondary condition symptomatic of degenerative disc disease at the lower lumbar spine region L4-5. A physical therapy training program was "without significant success." His condition was aggravated by wearing of a rucksack and lifting greater than 25 pounds. However, it was not until March 13, 2001, that he issued the appropriate P-3 ("permanent") physical profile restricting these activities and allowing an alternative physical fitness test. DA Form 3349 (approved P-3, March 13, 2001)). Army Regulation AR 635-40 (1990) requires that a permanent P-3 profile warrants referral to a Medical Evaluation Board for a military fitness determination.

3. Also beginning in the mid-1990s, Major Dolan was diagnosed with gastroesophageal reflux disease.

4. In August 1998, Dolan was ordered to report to a new assignment with the 9th Regional Support Command in Honolulu, Hawaii. Major Dolan requested 30 days leave, which is normally granted as a privilege accompanying a permanent change of duty station (PCS). He was informed the leave was granted. He then departed to care for his terminally ill father.

5. Unknown to Major Dolan, his leave request for 30 days was later "whited out" by the unit clerk to show he had only requested 5 days. A dispute arose whether Dolan was notified that his leave was cut short and to report early to his new duty at the 9th RSC.

6. February 1999, Major's Dolan's commander at the 9th RSC, Brigadier General Gandy, made a preliminary inquiry into whether various offenses had been committed of absence without leave and disobeying an order. Under military regulation this inquiry is a called a R.C.M. 303 **Preliminary Inquiry Into Reported Offenses** [Rules for Courts-Martial]. This specific inquiry was not a criminal investigation but administrative under Army Regulation 15-6. After the informal investigation BG Gandy recommended imposing non-judicial punishment under Article 15, 10 U.S.C. ¶ 815.

7. Thereafter in March 1999, the superior commanding general, Major General Hill— the General Officer Court-Martial Convening Authority— agreed with administrative disposition of the offenses, and did not initiate (prefer) court-martial charges. MG Hill ended the matter by disposing of the alleged offenses under non-judicial proceedings, Article 15. Disposition of alleged offenses is encouraged at the lowest level by "administrative measures", as prescribed under R.C.M. 306, **Initial Disposition (**subsection (c)(3)(non-judicial punishment).

8. On March 17, 1999, Major Dolan received non-judicial punishment for absence without leave and disobeying an order to report to the 9th RSC. These offenses arose from the dispute over his 30-day PCS leave request. After pleading not guilty the commander and hearing the evidence, MG Hill determined Dolan had committed the offenses. Dolan was issued a Letter of Reprimand, and pay forfeitures for two months. However, the pay forfeitures were suspended for six months. Dolan's appeal was denied.

9. In the Fall of 1999, Major Dolan was treated for chronic and severe gastroesophageal reflux disease. To avoid the potential for stomach cancer by stabilizing symptoms, stomach surgery was recommended.

10. On 22 September 1999, Major Dolan's same commanding general, MG Hill, initiated an elimination proceeding before a Board of Inquiry (BOI). Elimination means to involuntarily separate an officer from the military. The action was based upon the Article 15 punishment and a third alleged offense. The elimination notice stated that the least favorable discharge he might receive by the BOI was Under Other Than Honorable Conditions discharge [UOTHC].[2]

10. The BOI was delayed pending Major Dolan's multiple medical treatments: (1) surgery to repair a labral tear in his left shoulder, (2) treatment for bilateral patellofemoral compression syndrome (stress injury to both knees making walking difficult), (3) acromio-clavicular arthritis causing mild pain in right shoulder, (4) stomach surgery for the reflux disease. Established military practice shows that the first 2 conditions render a member "unfit" for military service. Later in March 2001, Dolan was diagnosed with the aforementioned degenerative disc disease, lower lumbar spine L4-5. Shortly after Dolan's eventual March 14, 2001, Army discharge, the Veterans Administration awarded him 70% disability rating for these injuries. In May, 2004 this VA rating was increased to permanent and total disability at 100%.

11. Special rules apply to officers undergoing elimination action that could result in an UOTHC discharge, <u>and</u> who may have a medical impairment not meeting retention standards of fitness. Under Army Regulation 635-40 (1990) ¶ 4-4, officers who are believed to be medically unfit "will be process simultaneously" for elimination <u>and</u> physical disability evaluation. "Commanders will ensure that the actions are processed together, identified, and cross-referenced." Once complete, both the elimination and disability actions will be forwarded directly to the

[2] The highest service characterization upon discharge is Honorable, followed by General (Under Honorable Conditions), followed the lowest Under Other than Honorable Conditions.

Secretary of the Army "who will decide the proper disposition of the case." This is repeated in AR 40-501 (2004)¶ 3-3b.

12. The BOI in August 2000 concluded that Major Dolan had committed the Article 15 offenses, although found him not guilty of the third BOI-alleged offense. The prosecutor-recorder also had presented several adverse "referred Officer Evaluation Reports" filed by the command shortly before the BOI. These OERs were improperly relied upon by the BOI as official duty reports because they were never referred to Major Dolan for his comment and rebuttal. The BOI recommended a General Discharge. Once a BOI has recommended a General Discharge, the Army Secretary by regulation may not approve any less favorable characterization, such as UOTHC.

13. Major Dolan's defense counsel submitted a request for the Army to retain Dolan until reaching 20 years to retire. The counsel alleged Major Dolan had over 17 years of active duty. Regulation permits an officer at any time prior to final elimination action to request retirement in lieu of elimination. If approved, a post-retirement board decides whether to reduce the retired grade based upon the BOI-approved findings of misconduct. Unknown to defense counsel and Dolan at the time was that the statutory "Temporary Early Retirement Authority" allowed officers with over 15 years service but less than 20 to retire early. The TERA also allowed soldiers found unfit with less than a 30% rating (minimum qualifying for retirement) could retire instead of forced to take simply severance pay. Public Law 102-484 (National Defense Authorization Act for FY 1993) § 4403, extended to e September 30, 2001).[3]

[3] Army budgetary documents show that the TERA program was curtailed for AGR personnel and others in early 2002.

14. Also unknown to defense counsel and Dolan at the time was that a special procedure allows medically unfit soldiers with at least 15 or 18 years but less than 20 years, to apply for "continuation on active duty" programs [COAD] until reaching 20-year retirement. AR 635-40 (1990) ¶ 4-13 (over 15 years less than 20 with special skills); ¶ 4-15j (over 18 but less than 20).

15. On 18 January 2001, a Board of Review [BOR] acting as appellate authority, affirmed the BOI findings, and also recommended General Discharge. There was no mention in the approval of the request for retirement in lieu of elimination, nor the disability evaluation process, nor the TERA and COAD programs.

16. In February 2001, the BOI and BOR recommendations were approved by the Acting Secretary of the Army, with a scheduled release date of 14 March 2001. There was no mention in the approval of the request for retirement in lieu of elimination, nor the disability evaluation process, nor the TERA and COAD programs. Moreover, Major Dolan's actual active duty time was closer to 19 years.

17. Because the Army was ignoring Dolan's disability proceedings, on March 8, 2001, the Chief of Patient Administration, Tripler Army Medical Center, Hawaii (Lieutenant Colonel Michael Montgomery), convened a MEB as directed by the treating orthopedic surgeon. The MEB members concluded "the service member fails to meet retention standards in accordance with AR 40-501. . . Major Dolan is unfit for retention." DA Form 3947 (MEB Proceedings). The listed medical impairments were: "(1) left shoulder stiff, post op repair of labral tear; (2) bilateral patellofemoral compression syndrome; (3) mild right acromio-clavicular arthritis." The MEB was signed by Army doctors LTC Schaefer, Major Kim. In the interim, a permanent P-3 profile was issued and approved.

18. While the MEB was pending, LTC Montgomery (still Chief of Patient Administration, Tripler Army Medical Center), submitted a request to extend Major Dolan's 14 March 2001 proposed discharge date. The request was submitted through the Department of Army Surgeon General's Office, to the Commanding General of the Personnel Command. The request was mandatory because Major Dolan was not under criminal investigation for court-martial offenses, but referred only for administrative elimination action:

> When an officer is being processed for one of the actions listed [elimination] the officer will be processed. . .through the [disability] system * * * with disability evaluation results. . . forwarded to the Secretary of the Army <u>for determination of appropriate disposition</u>.

AR 600-8-24 (1995) ¶ 1-23 [emphasis added], <u>see</u> ¶ 4-3d (if medical condition develops after recommendation for elimination, the officer's commander will notify the commander of Army Personnel Command). In fact, even officers under a "suspended" court-martial sentence of dismissal may be referred for disability processing. AR 635-40 (1990) ¶ 4-2. <u>Compare</u> AR 135-175 (Separation of Reserve Officers)(1987) ¶ 2-13c (commanders will complete elimination actions with BOI action when circumstances do not require Army criminal investigative processes; however when circumstances do indicate the need for criminal investigative processes, forward case requesting investigation proceed).

19. The request for medical treatment extension was never forwarded for final action. There was only an official in the Surgeon's General's Office recommending denial. That official mistakenly equated Major Dolan's situation— to an officer under criminal investigation for court-martial offenses that could result in a sentence of dismissal, rather than an officer referred for alternative administrative separation for misconduct.

20. Without Secretarial "determination of appropriate disposition" on the pending disability proceeding, Dolan's prior discharge orders effective 14 March 2001 were void as a matter of law. Major Dolan's was never legally separated from active duty.

21. The Army BCMR denied Mr. Dolan's request to set aside his discharge, to reinstate him, and award retirement. The BCMR took the same unreasonable position to maintain the status quo: Dolan's administrative elimination action equated to a criminal investigation for court-martial felonies where he could be sentenced to a punitive dismissal.

22. Plaintiff Dolan now seeks judicial review of the Army decision to involuntarily separate him from active duty.

CAUSE OF ACTION

The decision of the Army to involuntarily release plaintiff from active duty was arbitrary and capricious, an abuse of discretion, and contrary to law and Army regulation.

PRAYER FOR RELIEF

That this Honorable Court declare the that decision of the Army to involuntarily separate plaintiff from active duty was arbitrary and capricious, an abuse of discretion, and contrary to law and Army regulation.

That Defendant be ordered to set aside plaintiff's involuntary separation from active duty, and retroactively restore him to active duty in the United States Army with back pay and allowances until qualifying for 20-year retirement, and award back retired pay.

That Defendant be ordered to expunge from plaintiff's official military personnel files all adverse documents relating to the involuntary separation and related documents thereto.

Any and all additional relief as deemed appropriate by this Honorable Court, including attorney fees.

Respectfully submitted,

a/s John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825