# EXHIBIT A

recorded by an addendum to the original MEBD or by a new MEBD and furnished to the PEB.

## Section II
## Initiation of Medical Evaluation

### 4–6. Referral by HQDA
The Commander, PERSCOM, upon recommendation of TSG, may refer a soldier to the responsible MTF for medical evaluation when a question arises as to the soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability.

### 4–7. Referral by commanders of MTFs
Commanders of MTFs who are treating soldiers in an assigned, attached, or outpatient status may initiate action to evaluate the soldier's physical ability to perform the duties of his or her office, grade, rank, or rating.

### 4–8. Referral by commanders
When a commander believes that a soldier of his or her command is unable to perform the duties of his or her office, grade, rank, or rating because of physical disability, the commander will refer the soldier to the responsible MTF for evaluation. The request for evaluation will be in writing and will state the commander's reasons for believing that the soldier is unable to perform his or her duties. DD Form 689 (Individual Sick Slip) may be used for such referral (AR 600–6). Commanders of Reserve units not on active duty will be guided by AR 40–501 and chapter 8 of this regulation.

## Section III
## Medical Processing Related to Disability Evaluation

### 4–9. Medical examination
The MTF commander having primary medical care responsibility will conduct an examination of a soldier referred for evaluation. The commander will advise the soldier's commanding officer of the results of the evaluation and the proposed disposition. If it appears the soldier is not medically qualified to perform duty, the MTF commander will refer the soldier to a MEBD.

### 4–10. The MEBD
MEBD's are convened to document a soldier's medical status and duty limitations insofar as duty is affected by the soldier's status. A decision is made as to the soldier's medical qualification for retention based on the criteria in AR 40–501, chapter 3. If the MEBD determines the soldier does not meet retention standards, the board will recommend referral of the soldier to a PEB. For MEBD's rules for documentation, recommendations, and disposition of the evaluated soldier, see AR 40–3, chapters 7 and 8.

### 4–11. Narrative summary (NARSUM)
The NARSUM to the MEBD is the heart of the disability evaluation system.Incomplete, inaccurate, misleading, or delayed NARSUMs may result in injustice to the soldier or to the Army.

*a.* Physicians who prepare cases for the MEBD and PEB should use the VA Physician's Guide for Disability Evaluation Examinations (published by the VA)to describe physical defects. This helps to ensure consistency in reporting similar conditions and assists the boards of the disability system in their review and evaluation process. (See AR 40–3, chapter 8.)

*b.* In describing a soldier's conditions, a medical diagnosis alone is not sufficient to establish that the individual is unfit for further military service. The history of the soldier's illness, objective findings on examination, results of X-ray and laboratory tests, reports of consultations, response to therapy, and subjective conclusions with rationale must be addressed.

*c.* A correlation must be established between the soldier's medical defects and physical capabilities. (This is important when a chronic condition is the basis for referral to a PEB and no change in severity of the condition has occurred or when referral of the case to a PEB appears controversial.)

*d.* The date of onset of a medical impairment may be questionable because of relatively short military service and the nature of the impairment, for example, a mental disease. If so, the NARSUM should address the results of inquiry into the pre-service background (family, relatives, medical, and community) of the soldier in sufficient detail to overcome substantive question concerning the date of onset.

*e.* When a soldier is diagnosed with a mental disorder, the NARSUM must include a statement indicating whether the soldier is mentally competent for pay purposes and capable of understanding the nature of, and cooperating in, PEB proceedings.

*f.* NARSUMs will not reflect a conclusion of unfitness. Therefore, diagnoses must not be qualified by such terms as "unfitting", "disqualifying", "ratable", "not ratable".

*g.* When disclosure of medical information would adversely affect the soldier's physical or mental health, the NARSUM should include a statement to that fact.

*h.* The NARSUM should include the date of the physical examination conducted for purposes of physical disability evaluation.

*i.* MEBD proceedings from other than Army MTF's must be forwarded through the designated Army facility (AR 40–3, chap 7).

### 4–12. Counseling soldiers who have been evaluated by a MEBD
*a.* The PEBLO will advise the soldier of the results of the MEBD. The soldier will be given the opportunity to read and sign the MEBD proceedings. If the soldier does not agree with any item in the medical board report or NARSUM, he or she will be advised of appeal procedures.

*b.* The decisions below are exclusively within the province of adjudicative bodies. Neither the PEBLO nor the attending medical personnel will tell the soldier that—

(1) The soldier is medically or physically unfit for further military service.

(2) The soldier will be discharged or retired from the Army because of physical disability.

(3) A given percentage rating appears proper.

(4) A LD decision is final (unless final approval has been obtained according to AR 600–8–1).

### 4–13. Referral to a PEB
*a.* The MEBD will recommend referral to a PEB those soldiers who do not meet medical retention standards. Those who apply for COAD under the provisions of chapter 6 will be included. Do not refer soldiers to a PEB who request discharge under the provisions of chapter 5. A soldier being processed for nondisability separation will not be referred to a PEB unless the soldier has medical impairments that raise substantial doubt as to his or her ability to continue to perform the duties of his or her office, grade, rank, or rating.Soldiers previously found unfit and retained in limited assignment duty status under chapter 6, or a previous authority, will be referred to a PEB.

*b.* A soldier may provide additional information to the MTF commander to forward to the PEB. The information may be from the unit commander, supervisor, or other persons who have knowledge regarding the effect the condition has on the soldier's ability to perform the duties of the office, grade, rank, or rating.

*c.* Personnel processing actions for soldiers referred to a PEB will be according to appendix E.

### 4–14. Psychiatric and spinal cord injury patients requiring continuing hospitalization
*a.* AR 40–3 provides for transfer of psychiatric and spinal cord injury patients to a VA medical facility.

(1) Psychiatric patients requiring continuing hospitalization may be transferred after completion of MEBD action. To ensure timely processing, the MEBD proceedings must be referred to the PEB immediately after transfer of the patient.

requirement to initially request a copy of the DA Form 2 and DA Form 2–1.

*o.* If available, a statement explaining the reason for reduction to the lower grade when the soldier is serving in a grade below the highest grade held. When the information is available, include a statement explaining the circumstance precluding advancement to private or private first class under the provisions of AR 600–200 (NGR 600–200 or AR 140–158 for soldiers in the Reserve Components) if—

(1) The current grade is private (pay grade E–1), and the soldier has completed more than 6 month's service.

(2) The current grade is private (pay grade E–2), and the soldier has completed more than 12 months service.

*p.* Copy of request for VA hospital bed designation, if applicable.

*q.* Copy of orders moving patient to a VA hospital for continued hospitalization, if applicable.

*r.* Copy of letter(s) to proper state authorities, as applicable.

*s.* Copy of the request for Statement of Service when soldier is a member of the Reserve Components (fig 4–1).

*t.* Copy of latest DA Form 3686–1 (Army Leave and Earnings Statement).

### 4–16. Rehospitalization of disabled soldier

A soldier who is rehospitalized while undergoing disability evaluation or awaiting final disposition must be evaluated to decide if his or her condition may change the findings or recommendations of the PEB. If the soldier's condition may change the findings and recommendations, the MTF commander will notify the PEB president. Further adjudicative and review action may be suspended pending resolution. When the soldier has received optimum hospital improvement for disposition purposes, the hospital commander will prepare an addendum to the original medical board. The addendum will be forwarded to the PEB with any other pertinent records unless some other disposition is indicated. The PEB must be notified if other disposition terminates disability processing.

## Section IV
## Physical Disability Evaluation

### 4–17. PEBs

*a. Purpose.* PEBs are established to evaluate all cases of physical disability equitably for the soldier and the Army. The PEB is not a statutory board. Its findings and recommendations may be revised. It is a fact-finding board for the following:

(1) Investigating the nature, cause, degree of severity, and probable permanency of the disability of soldiers whose cases are referred to the board.

(2) Evaluating the physical condition of the soldier against the physical requirements of the soldier's particular office, grade, rank, or rating.

(3) Providing a full and fair hearing for the soldier as required by section 1214, title 10 United States Code (10 USC 1214).

(4) Making findings and recommendations required by law to establish the eligibility of a soldier to be separated or retired because of physical disability (10 USC 61).

*b. Composition.* PEBs will consist of at least three members(president, personnel management officer, and a medical member). PEB members will be experienced officers who are thoroughly familiar with board procedures.The CG, USAPDA will appoint PEB members from assigned personnel for full-time duty. Part-time members may be appointed by the CG, USAPDA with the consent of the commander having jurisdiction over the individual to be appointed-.Part-time members supplement or temporarily replace full-time members, as needed, for the prompt processing of disability cases. The president and personnel management officer will be field grade officers (other than Medical Corps) on active duty in the U.S. Army (other than active duty for training).The medical member will be either an officer of the U.S. Army Medical Corps or a Department of the Army civilian (DAC) physician with previous U.S. Army Medical Corps experience. The medical member must not have served in any capacity with the MEBD that referred the soldier to the PEB. If possible, the voting members should be senior to the person being evaluated. To ensure fair and independent decision making, the PEB president will not rate the other members of the board for purposes of evaluating job proficiency.

*c. President of PEB.* The appointing authority will name a senior commissioned officer as president of each PEB. The senior non-medical member will act as president when the president is absent. The president has full responsibility for the board. He will ensure that law, regulations, and DA adjudicative principles are followed.

*d. Reserve Component member.* When a soldier of the Reserve Components (RC) is being evaluated, one of the PEB members must be a Reserve officer who is otherwise qualified for duty as a member of the PEB.

*e. Disqualification.* PEB voting members must disqualify themselves if they have had a personal or professional relationship with the soldier being evaluated.

*f. Disability evaluation of PEB members.* When members of the PEB are referred into the physical disability system, they will be evaluated by other than the PEB to which assigned. After PEB evaluation such cases will be forwarded to USAPDA for review.

*g. Female or minority representation.*

(1) When requested, the PEB will substitute a female or minority soldier of the same minority group for one of the regular members of the board, if the requested representation is reasonably available. Request for female or minority representation should be made in writing at the time of request for a formal hearing. The substitute must meet the qualifications for regular voting members. The PEB president will determine if the requested representation is reasonably available. The proceedings will include a statement of the request and whether the representation was or was not provided, that is, "Minority (or female) representation was requested and provided" or "Minority representation (or female) was requested and not reasonably available and, therefore, was not provided."

(2) When an enlisted soldier is being evaluated, the PEB will upon written request of the soldier, include enlisted representation if reasonably available. Request for enlisted representation should be in writing at the time of request for a formal hearing. The enlisted representation must be in the ranks of sergeants first class to sergeants major and senior to the soldier being evaluated. The PEB president will determine if enlisted representation is reasonably available. The proceedings will include a statement of the request and whether the representation was or was not provided as described in paragraph*g*(1) above. When enlisted representation is provided, the PEB will increase to five members, all of whom will have a vote. The fifth member may be enlisted or officer.

*h. Counsel.* An Army attorney will be appointed as counsel to represent soldiers at formal PEB hearings. The attorney will not be a voting member of the PEB or an advisor to the PEB, but will represent the soldier as required when the soldier requests a formal hearing. The attorney will counsel the soldier until formal disability proceedings are completed. The appointed counsel may also advise PEBLOs of MTFs that refer cases to the PEB.

*i. Recorder.* The appointing authority will assign a permanent recorder for the PEB. The recorder will be a commissioned officer, warrant officer, or civilian employee of equivalent grade of any branch or career field except those listed below.

(1) Medical Corps.

(2) Dental Corps.

(3) Army Nurse Corps.

(4) Army Medical Specialist Corps.

(5) The Judge Advocate General's Corps.

*j. Reporter.* The appointing authority will assign permanent qualified reporters to the PEB.

*k. Support.* A PEB is a tenant of the installation where located. The CG, USAPDA enters into agreements providing for administrative and logistical support with installation and MTF commanders.

### 4–18. Initial processing

*a.* Upon receipt of a case by the PEB, the case file will be reviewed to ensure it is complete. If documents are missing, action

will be taken to complete the file. When the case file is complete, it may be referred to the board for evaluation.

*b.* The PEB may return a case to the MTF commander for additional information. However, efforts should be made to resolve all issues without returning the case. When circumstances permit resolution of the problem by discussion, a memorandum of the discussion must be included in the case file as an exhibit. When return of the case to the MTF is necessary, the reason for its return will be clearly stated in the letter of transmittal. Examples of reasons for which a case may be returned are as follows:

(1) Further physical examination, clarification, or preparation of additional records is required.

(2) Additional description and information by the medical board of the soldier's defects and their effect on the soldier's functional ability to perform duty are necessary for proper PEB evaluation of the case.

(3) Further observation, evaluation, and reconsideration by a medical board is required.

(4) Additional information from the command concerning the soldier's ability to perform the duties of his or her office, grade, rank, or rating must be provided for proper PEB evaluation of the case.

(5) The soldier has been AWOL for 10 days or more.

### 4–19. PEB decisions—common criteria

*a. Determinations.* The voting members of a PEB make findings and recommendations in each case on the basis of the instructions set forth in paragraphs *b* thru *q* below. The board decides all questions by majority vote. All findings must be based on a preponderance of the evidence. Recommendations must be supported by the findings. In summary, the board determines the following:

(1) Whether the soldier is physically fit or unfit to perform the duties of the soldier's office, grade, rank, or rating.

(2) Whether the disability is of a permanent nature.

(3) Whether the disability meets the criteria established by law for compensation. This determination considers the following questions:

*(a)* Was the disability incurred or aggravated while the soldier was entitled to basic pay (when the soldier is on active duty for more than 30 days)?

*(b)* Was the disability the result of misconduct or willful neglect or incurred during a period of unauthorized absence?

*(c)* Was the disability incurred in LD during a time of war or national emergency or incurred in LD after 14 September 1978?

*(d)* In the case of a soldier ordered to active duty for 30 days or less or ordered to duty under section 270(b), title 10, United States Code (10 USC 270(b)), was the disability the proximate result of performing active duty or inactive duty training? If the disability results from a disease, was it incurred prior to or after 15 November 1986 (chap 8).

(3) Whether the disability meets the criteria for exemption of disability retired or severance pay from gross federal income.

(4) Whether the disability meets the criteria for Civil Service preference eligible status and exemption from the Dual Compensation Act.

*b. Limitations of PEB approval authority.* The PEB may approve for the SA all but the following cases:

(1) General and medical corps officers found unfit.

(2) Informal proceedings when the soldier nonconcurs, waives a formal hearing, and submits within the required time frame a statement explaining his or her reasons for disagreement. The PEB will forward the proceedings to USAPDA for review when its consideration of the rebuttal does not result in a change of the PEB findings and recommendations.

(3) Formal proceedings when the soldier nonconcurs with any finding or recommendation, submits within the required time frame a statement explaining his reasons for disagreement, and the PEB does not modify its decision as requested by the soldier.

(4) All cases in which a minority report is submitted.

(5) Cases of members assigned to a PEB.

(6) Any case previously forwarded to USAPDA for review and approval, which was returned to the PEB for reconsideration or rehearing.

*c. Additional documents.* Any member of the PEB, the soldier, or counsel acting in the soldier's behalf may request additional documents. The PEB president will determine if the requested information is required for proper adjudication of the case. If it is determined that the additional information is required, the PEB president will suspend consideration of the case until an effort has been made to obtain the requested information. If requested documents cannot be obtained, a memorandum for record will be included in the case file reflecting all efforts made to obtain the information.The case will then be adjudicated on the basis of the available evidence.

*d. Decision on fitness.*

(1) The first and most important determination made by the PEB is whether the soldier is physically fit or unfit to perform the duties of the soldier's office, grade, rank, or rating. All other actions are directly or indirectly tied to this one finding.

(2) The determination of physical fitness will be made by relating the nature and degree of physical disability of the soldier to the requirements and duties that the soldier may reasonably be expected to perform in his or her primary MOS.

(3) Changes in medications or other therapy for chronic conditions do not alone establish deterioration of a chronic condition. Unless recent, significant deterioration has occurred or unexpected adverse results are evident from the new treatment, such changes are not a basis for finding a soldier unfit.

*e. Conditions which existed prior to entry in service.*

(1) *Unchanged physical defects.* A soldier will not be found unfit because of physical defects that—

*(a)* Were known to exist at the time of acceptance for military service,

*(b)* Have remained essentially unchanged since acceptance,

*(c)* Have not interfered with performance of effective military service.

(2) *Application of accepted medical principles.* After a soldier is accepted for active duty, discovery of an impairment causing physical disability is not conclusive evidence that the condition was incurred after acceptance. Consideration must also be given to accepted medical principles in deciding whether a medical impairment was the result of, or aggravated by, military service while the soldier was entitled to basic pay; or in the case of a Reservist on active duty for 30 days or less, whether the disability was the proximate result of performing active duty or inactive duty training. Accepted medical principles may not be excluded in making these decisions even when there is no other evidence indicating the impairment was present before the soldier's entry on active duty. The soldier's length of service must be considered when determining service aggravation. When a decision or recommendation of a PEB is based primarily on accepted medical principles, the principle must be cited as part of the rationale.

(3) *Service aggravation.*

*(a)* The PEB may decide that a soldier's physical defect existed prior to service, or inactive duty for training, or resulted from a nonservice connected condition (not in LD). If so, the board must further consider whether military service aggravated the unfitting defect.

*(b)* If the soldier's military service makes the condition worse or hastens the natural progression of the condition beyond the normal or anticipated rate had he or she not been exposed to such service, a finding of aggravation must be considered. AR 600–8–1, chapter 41, contains guidance on service aggravation. When the PEB decides that a condition has been aggravated by service, the PEB will consider the degree of disability that is in excess of the degree existing at the time of entrance into service. (app B).

(4) *Conditions not aggravated by service.* Soldiers who are unfit by reason of physical disability neither incurred nor aggravated during any period of service while entitled to basic pay, or as the proximate result of performing active duty or inactive duty training,

but which effects duty performance, will be separated for physical disability without entitlement to benefits.

*(a)* Enlisted soldiers who are eligible for discharge under chapter 5, may be processed under the provisions of that chapter upon their application.

*(b)* Soldiers who meet the criteria and apply for COAD as set forth in chapter 6 will be processed under the provisions of that chapter.

*(c)* RC soldiers may request transfer to the Retired Reserve if eligible.

*f. Entitlements to benefits.* The following rules apply when deciding whether a soldier is entitled to Army disability retired or severance pay.

(1) Sections 1201 through 1203, title 10, United States Code (10 USC 1201 thru 1203) establish the criteria for compensation for soldiers of the Regular Army or soldiers of the RC ordered to active duty for more than 30 days(other than for training under 10 USC 270(b)). These criteria include the following:

*(a)* Disability was incurred while the soldier was entitled to basic pay.

*(b)* The disability is not the result of the soldier's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and either the soldier has at least eight years of active federal service for retirement; the disability is the proximate result of performing active duty; the disability was incurred in the line of duty in time of war or national emergency; or the disability was incurred in line of duty after September 14, 1978.

(2) Sections 1204 through 1206, title 10, United States Code (10 USC 1204 thru 1206) establish the criteria for entitlements for soldiers of the RC ordered to active duty for 30 days or less or under 10 USC 270(b) (chap 8).

(3) Decision of the Comptroller General of the United States, B–205953, dated 18 June 1982, has ruled that a member in excess leave status is not entitled to basic pay and, therefore, is not entitled to any disability benefits under the provisions of 10 USC 61.

(4) When a finding of unfitness depends on the combined effect of two or more disabilities, each disability must meet the above eligibility requirements to qualify the soldier for disability retirement or severance pay.If one of the combined disabilities that, in combination, renders the soldier unfit does not meet the requirements for entitlement to benefits, the soldier is not eligible for disability benefits from the Army. For example, a soldier may be found unfit because of a disability determined to be EPTS. That soldier may also have a disability that alone is not unfitting but when considered with the EPTS disability would be unfitting. Such a soldier may not be found unfit because of the first disability (EPTS) and thereafter rated for the second disability (which is only unfitting in combination with the first disability).

(5) If the soldier is entitled to disability benefits, the PEB decides the rating for each compensable disability from the VASRD, as modified by appendix B.

(6) When a soldier is eligible for disability benefits, any other disability is compensable if—

*(a)* The criteria in (1) and (2) above are met.

*(b)* The disability, in itself, is unfitting or contributes to the unfitting condition.

*g. Application of LD policy.*

(1) Normally PEBs accept the validity of informal and formal LD investigations and reports. However, the PEB may question the validity of a favorable LD determination. If so, the PEB will conditionally adjudicate the case as if a favorable line of duty decision is correct. Unless the case is subject to review by USAPDA, the PEB will forward the case to PERSCOM(TAPC–PED–S), requesting a review of the LD determination. The following comment will be made in the remarks section of the DA Form 199. "This PEB questions the validity of the line of duty decision rendered in your case. Your case has been processed assuming the decision is valid. Should an unfavorable line of duty determination result, you will not be eligible for entitlement to benefits under the Army disability system." The soldier will be informed of the conditional processing and advised that final disposition by HQDA will be held in abeyance until the LD decision is resolved.

(2) It is not intended that PEBs act as hearing authorities for soldiers' appeal of LD determinations. AR 600–8–1 sets out LD appeal procedures. However, if during a formal hearing, the soldier or his or her counsel presents evidence of error in the LD finding, the PEB shall consider such evidence. If the PEB believes the evidence warrants reconsideration of the LD finding, a referral of the case to PERSCOM (TAPC–PED–S) for review of the LD determination by TAG is authorized. When forwarding a case for such review, the PEB will explain in the forwarding memorandum its rationale for determining that the new evidence raises a question as to the correctness of the LD determination. The soldier and his or her counsel will be advised of the referral and that the case has been conditionally adjudicated as if a favorable LD decision has been made. If the PEB determines that the evidence does not provide reason to question the LD determination, the PEB will inform the soldier and the counsel of this fact and that the case was adjudicated based upon the approved LD determination.

(3) The deputy commander, PEB president, or alternate PEB president have the authority to make a finding of "in line of duty—not due to own misconduct" in the following categories below when an LD determination has not been made at the time a case is referred to a PEB. This authority may only be used when the PEB is convinced no further investigation is required and the weight of the evidence in the case indicates that the injury was not due to misconduct or willful negligence, was not incurred during a period of unauthorized absence, and that the use of alcohol or drugs was not involved.

*(a)* Training accidents to include maneuvers and physical training.

*(b)* Unit organized sports and recreational activities.

*(c)* Individual jogging and sports activities.

*(d)* Household accidents.

*(e)* Slip-and-fall injuries.

*(f)* Injuries incurred in Vietnam, Cambodia, and in other geographical areas where U.S. Army soldiers are not longer present.

(4) If the case is lacking an LD determination and it does not fall into one of the above categories, the PEB will conditionally adjudicate the case as if a favorable decision has been made. The applicable advisory statement described in para 4–19*l*(2) will be included on the Form 199. The soldier will be informed of the conditional processing and advised that final disposition by HQDA will be held in abeyance until the LD decision is resolved.

*h. Deciding permanency of disability.*

(1) Based on accepted medical principles, a disability is"permanent", and a soldier who is otherwise qualified will be permanently retired, if—

*(a)* The defect has become stable so that, with reasonable expectation, the compensable percentage rating will remain unchanged during the following 5-year period.

*(b)* The compensable percentage rating is 80 percent or more and the disability will probably not improve so as to be ratable at less than 80 percent during the following 5 years.

(2) A soldier is placed on the TDRL if fully qualified for permanent retirement except that the disability "may be permanent." The soldier may not be placed on the TDRL for any other reason. Based on accepted medical principles, a disability will be considered as "may be permanent" if it has not stabilized, and one of the following occurs:

*(a)* The soldier may recover so as to be fit for duty.

*(b)* The defect is expected to change in severity within the next 5 years so as to change the compensable percentage rating.

*i. Percent of disability.* After establishing the fact that a soldier is unfit because of physical disability, and that the soldier is entitled to benefits, the PEB must decide the percentage rating for each unfitting compensable disability. Percentage ratings reflect the severity of the soldier's medical condition at time of rating. The VASRD, as modified by appendix B of this regulation, is used in deriving percentage ratings. The first 31 paragraphs of the VASRD, which provide general policies, do not apply and have been replaced by

or the soldier's counsel, if the board determines a continuance is needed for a full and fair hearing. Examples of proper reasons for continuance are the need for further medical evaluation and the need to obtain additional records, reports, or statements as evidenced in the case. When a continuance is granted, only one DA Form 199 will be used. Data such as the date, fact, and time of recess and reconvening, and changes in membership will be recorded. If a change of membership is involved, the record will show the reason for the change and that the new member became familiar with the case before proceeding with the hearing.

*o. Recording, assembly, and transmittal of reports of proceedings.*

(1) The findings and recommendations of the PEB are recorded on DA Form 199. This form is distributed on a limited issue basis from the US Army Publications Distribution Center to the PEB's. Instructions for completion of the form are at appendix D. The recorder will initial erasures and corrections involving any substantive matters in the proceedings.

(2) Records of PEB proceedings will be assembled as indicated in table 4–1.

*p. Reconvened and improperly constituted boards.*

(1) *Reconvened board.* Before final action on a case, the proceedings of a properly constituted PEB may be returned to the same board for further consideration of findings, correction of errors, or other reasons. When proceedings are returned, the reconvened board will include as many members of the original PEB as possible. However, proceedings may be conducted properly even though no members of the original board are available. The board must be otherwise properly constituted. The new members must have acquainted themselves with the records of the case before reconvening the board. When reconvening the board with the same members would be prejudicial to the soldier, a new board with all new members will be convened. The case may be transferred to another PEB for this purpose. Proceedings will be the same (formal or informal) as were used at the original hearing and any transcript of the prior hearing will be included with the original and USAPDA copy of the case. If a formal hearing is held, the soldier (his or her next-of-kin or legal guardian if he or she represents the soldier's interests) will be notified of the new hearing date.Should the PEB reconsider the case and change its findings or recommendations, a new DA Form 199 will be prepared and referred to the soldier for his or her election. Despite the procedures employed, the soldier (next-of-kin or legal guardian) will be notified of the results if a change is made in the disposition or benefits from those originally recommended. The soldier will be afforded the opportunity to consult with counsel and to rebut any change. When new findings are made by the PEB, they become the only findings on which later action will be taken. If the reconsideration results in no change, a new DA Form 199 will not be prepared but the fact that the case was reconsidered will be reflected in block 16.

(2) *Improperly constituted boards.* Proceedings of an improperly constituted PEB are null and void. Whenever a hearing is discovered to have been conducted by an improperly constituted PEB, the record of proceedings less the DA Form 199 will be forwarded for the new hearing by a properly constituted board.

*q. Action when soldier is AWOL or dies during disability processing.*

(1) If a PEB receives information that a soldier whose case is in the disability system is AWOL, case processing will be suspended. If the soldier returns to military control within 10 days, processing may be resumed.Processing will include consideration of any new or increased disability incurred during the period of AWOL. Should the soldier not return to military control within 10 days, the case file will be returned to the MTF. If information that a soldier is AWOL is received after the case file has been forwarded for disposition, the PEB will promptly notify the USAPDA.

(2) If information is received that a soldier being processed for physical disability has died, disability processing will be discontinued and the case file will be returned to the MTF.

*r. Disposition.* PEB's will recommend disposition of the case according to the rules stated in table 4–2.

### 4–20. Informal board

*a. Procedure.* Each case is first considered by an informal PEB. Informal procedures reduce the overall time required to process a case through the disability evaluation system. An informal board must ensure that each case considered is complete and correct. The rapid processing intended by the use of informal boards must not override the fundamental requirement for detailed and uniform evaluation of each case. All evidence in the case file must be closely examined and additional evidence obtained if required. The PEB will consider each case using the policies of chapter 3 and the criteria provided in paragraph 4–19.

*b. DA Form 199.* The findings and recommendations of the informal PEB are recorded on DA Form 199 according to the procedures described in appendix D. If the soldier is on active duty, the original form, signed by the president of the PEB, the soldier's copy, and the MTF's copy will be promptly forwarded to the MTF commander concerned using the fastest means of transmission available. If the DA Form 199 is not received by the PEBLO, the PEB will prepare new copies and forward them promptly.

*c. Soldier's election.*

(1) DA Form 199, block 13, lists the election options available to the soldier for informal determinations. These include the following:

*(a)* Concurrence with the findings and recommendations and waiver of a formal hearing.

*(b)* Nonconcurrence with the findings and recommendations; submission of a rebuttal explaining the soldier's reasons for nonconcurrence; and waiver of a formal hearing.

*(c)* Demand for a formal hearing with or without personal appearance.

*(d)* Choice of counsel if a hearing is demanded.

(2) Soldiers indicate their elections by checkmark in block 13 and sign and date the original and MTF copies of DA Form 199.

(3) The election must be received at the PEB within 10 days from the soldier's receipt of the informal findings. See paragraph 4–20*f* below for procedures when elections and rebuttals are received after the required time.

*d. PEBLO.* In all informal cases, the PEBLO of the MTF having control of the soldier will be the counselor for the soldier. As such, the PEBLO is primarily concerned with the soldier's interests. The PEBLO should consult with, and obtain advice as needed from the local legal office, the legal counsel at the nearest PEB, or the Agency Judge Advocate. Upon receipt of the informal proceedings, the PEBLO will accomplish the following actions:

(1) Counsel the soldier according to appendix C. The soldier will be made fully aware of the election options available to him or her, the processing procedures, and the benefits to which he will be entitled if separated or retired for physical disability. As needed, the PEBLO should consult with the local finance officer and the installation Retirement Services Officer (RSO) when counselling on benefits. DA Form 5892–R (PEBLO Estimated Disability Compensation Worksheet) will be provided to the soldier as an estimate only of disability compensation. DA Form 5892–R will be locally reproduced on 8½ and 11 inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

(2) After the soldier completes block 13, the PEBLO will complete block 14 of the original and MTF copies of DA Form 199. If the soldier fails or declines to make an election, the PEBLO will prepare a brief statement describing the circumstances, indicating the date the soldier was first informed of, and counselled on, the informal board's action. The PEBLO will then forward the DA Form 199 and the statement to the PEB.

(3) In deleterious-type cases or others involving mental incompetence, the PEBLO will contact the next-of-kin or legal guardian (if one has been appointed) and request that person to act in behalf of the soldier. If one cannot be located, the PEBLO will prepare a statement reflecting all actions taken to identify and contact a responsible person to act on behalf of the soldier and forward the

statement for inclusion with the case. (See para 4–15*a* for guidance on establishing the next of kin.)

(4) If soldier elects formal hearing, forward soldier's medical records to the PEB if they were not submitted with MEBD proceedings for the informal PEB.

(5) Complete DA Form 5893–R (PEBLO Counseling Checklist/ Statement).This form will be used to document counseling. At the time of the soldier's final election to PEB determinations, the PEBLO and soldier will sign the form.A copy will be forwarded to the PEB for inclusion in the record of proceedings.DA Form 5893–R will be locally reproduced on 8½ and 11 inch paper. A copy of the form for reproduction purpose is located at the back of this regulation.

*e. Disposition by PEB.* Upon receipt of the soldier's completed DA Form 199 from the PEBLO, the PEB will take the following actions as applicable.

(1) If the soldier accepts the findings and recommendations of the informal PEB, the recorder will assemble the records as required by table 4-1.The proceedings will be approved for the SA and forwarded to PERSCOM for final disposition.

(2) If the soldier nonconcurs with the findings without submitting a rebuttal, the PEB will approve the proceedings for the SA and forward the case to PERSCOM for final disposition.

(3) If the soldier fails or declines to make an election within the prescribed time and the PEB has not received from the PEBLO the statement described in 4–20*d*(2) above, the PEB will contact the PEBLO to confirm the status of the soldier's election. When the PEBLO confirms the soldier has been informed of the findings and recommendations but has not made an election, the PEB will proceed as if the soldier has accepted the findings and recommendations. The proceedings will be forwarded to PERSCOM for final disposition. The forwarding memorandum will document the circumstances resulting in the waiver of election (fig 4–2). The PEB will forward a copy of the memorandum to the soldier through the PEBLO.

(4) In deleterious-type cases or those involving mental incompetence in which the next-of-kin or guardian fails to make an election on behalf of the soldier, the PEB will appoint legal counsel to act on behalf of the soldier.The counsel will prepare a memorandum documenting the results of his or her action (fig 4–3).

(5) If the soldier nonconcurs and submits a statement or rebuttal to the recommended findings without asking for a formal hearing, the PEB president will respond in writing to the soldier, normally within 3 days. When the soldier's rebuttal does not result in a change to the PEB's findings, the response will acknowledge receipt of the rebuttal and explain the PEB's decision to adhere to the earlier findings. The soldier will be advised that the rebuttal will be included in the case file and considered in the review action by USAPDA. A copy of the PEB president's letter will be included in the case file.

(6) If the soldier nonconcurs with the findings and recommendations with a statement of rebuttal and demands a formal hearing, the PEB may reconsider their findings and recommendations in the light of the soldier's statement of rebuttal. Should the PEB agree with the soldier and modify their findings and recommendations, the PEB will initiate a new DA Form 199 informing the soldier through the MTF commander of the results. If the soldier accepts them, the case will be processed as in paragraph 4–20*e*(1), above.Otherwise, the case will be scheduled for a formal hearing. The PEB will inform the appointed legal counsel of the pending action. If the soldier (in demanding a formal hearing) has elected to be represented by individual counsel, the appointed PEB counsel in coordination with the PEB president will make arrangements for the hearing with the individual counsel. If the soldier is at some location other than that of the PEB, the commanding officer will promptly issue necessary TDY orders for travel of the soldier using locally available funds.

(7) Whenever more than one hearing (including a reconsideration) is held on a case, a copy of the DA Form 199 for each hearing will be attached to the final DA Form 199 to reflect and explain the multiple considerations. For example, a copy of an informal board's DA Form 199 attached to the copy of the formal board's DA Form 199 will record the soldier's demand for a formal hearing without further comment or explanation.

*f. Rebuttals.* Rebuttals received after the allotted time or after initial election of concurrence.

(1) In those instances when a rebuttal from a soldier is received after the allotted time for submission of a rebuttal, or after a soldier has initially agreed with the findings and recommendations of the PEB and the case has been approved for the SA and forwarded to PERSCOM for final disposition, the PEB will respond to the soldier as set forth below.

*(a)* If the rebuttal does not result in a change to the findings and recommendations, the PEB will advise the soldier in writing that no change is warranted and the rebuttal, together with the reply, has been forwarded to PERSCOM for inclusion in the case proceedings. The soldier retains the right to one formal hearing prior to final disposition by PERSCOM if the soldier is otherwise entitled and requests the hearing.

*(b)* When the rebuttal results in a change to the PEB's findings or recommendations, the PEB will recall the case and effect the necessary changes by preparing a new DA Form 199. The new findings will be furnished to the soldier. Normal processing procedures apply.

(2) Notwithstanding the above, when additional medical evidence or an addendum to the MEBD is received after the PEB has forwarded the case and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued. Normal procedures apply following the preparation of a new DA Form 199.

### 4–21. Formal board

*a. Formal hearing.* A soldier is entitled to a formal hearing if requested after informal consideration by a PEB. The soldier may waive this right by concurring in the findings and recommendations of the informal board.If the soldier is incompetent, the right to waive a formal hearing may be exercised by next-of-kin or legal counsel. After demanding a formal hearing, a soldier may later withdraw the demand and accept the informal board's decision, in which case, the counsel will inform the PEB. The case will be forwarded to PERSCOM. The soldier must be counseled on the right to demand a formal board.If the soldier demands a formal hearing, he or she is entitled to counsel as provided in paragraph 3–10*d* and *h* below. A formal board will be convened when—

(1) A soldier (next-of-kin or legal guardian) demands it after electing not to accept the findings and recommendations of an informal board.

(2) The case file has been forwarded to PERSCOM for issuance of retirement or separation instructions and the soldier demands a formal hearing before PERSCOM action is final.

(3) After an informal board, the president of the PEB decides that a formal hearing is in the best interest of the soldier or the Army.

*b. Formal board membership.* A formal hearing will normally be conducted before a board composed of the same members who considered the soldier's case informally. The purpose of a formal hearing is to afford the soldier the opportunity to present views, testimony, and new evidence. The board members must consider these matters with open minds despite their earlier decisions. For this reason the challenge of a voting member, solely because the member took part in the informal board, ordinarily should be denied. If the soldier is able to establish that a member of the formal board is not impartial, that board member will be replaced. If a replacement for the successfully challenged member is not available, the CG, USAPDA will appoint another member to the PEB panel for the formal hearing. If an original voting member of the informal board is not available for the formal hearing, that member may be replaced with another who is qualified to sit. The new member must become thoroughly acquainted with all pertinent records before the formal hearing is convened.

*c. Hearing room.* Locally available space will dictate the arrangement of the hearing room. The minimum requirement gives room for three board members, the recorder, the soldier whose case is to

(3) A soldier who fails to make an election or to submit a statement of rebuttal to formal proceedings within the allotted time if he or she is in disagreement with the findings and recommendations, will forfeit the opportunity for USAPDA review of his or her case (para 4–21*t* below).

*t. Rebuttals.* Letters of rebuttal to the findings and recommendation of formal proceedings (to include the recommended disability percentage) must be prepared and processed according to the following guidance.

(1) A rebuttal may only be based upon one or more of the issues listed below and must provide rationale in support of the issue.

*(a)* The decision of the PEB was based upon fraud, collusion, or mistake of law.

*(b)* The soldier did not receive a full and fair hearing.

*(c)* Substantial new evidence exists and is submitted which, by due diligence, could not have been presented before disposition of the case by the PEB.

(2) If a letter of rebuttal is received within the required time frame, the PEB will respond to the soldier, or his representative, normally within 3 days confirming that the rebuttal has been received and considered. If consideration of the rebuttal does not affect the outcome of any portion of the PEB decision, the response will include the reasons why the rebuttal does not support a change to the findings and recommendations. The soldier will be informed that the rebuttal will be forwarded with the case file to USAPDA for review (based on the soldier's election of nonconcurrence with submission of a rebuttal). The response by the PEB president will be included in the case file and a copy will be furnished to the soldier's legal counsel or other representative.

(3) If a soldier submits a letter of rebuttal after having initially made an election of concurrence and the rebuttal is submitted within the required time frame, the procedures of paragraph 4–21*t*(2) above apply. If the case has been forwarded to PERSCOM for final disposition based upon the soldier's initial concurrence, the PEB will recall the case. If the letter of rebuttal is received after the required time frame, the procedures of paragraph 4–2*t*(4) below apply.

(4) If a letter of rebuttal is received by the PEB after the soldier's case has been forwarded to PERSCOM for final disposition (based upon the soldier's failure to make an election within the required time frame or nonconcurrence without submission of a rebuttal) the PEB will consider the rebuttal as set forth below.

*(a)* If consideration of the rebuttal does not result in a change to the findings and recommendations, the PEB will advise the soldier, in writing, that no change is warranted and the rebuttal, together with the reply, has been forwarded to PERSCOM for inclusion in the case proceedings. A copy of the reply will be forwarded to the soldier's legal counsel or other representative.Review of proceedings by USAPDA is not required.

*(b)* When the consideration of the rebuttal results in a change to the PEB's findings and recommendations, the PEB will recall the case and effect the necessary changes by preparing a new DA Form 199. The new DA Form 199 will be furnished to the soldier according to normal processing procedures.

(5) Notwithstanding the above, when additional medical evidence or an addendum to the MEBD is received after the PEB has forwarded the case to USAPDA or PERSCOM and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued. Normal procedures apply following the preparation of a new DA Form 199.

*u. Mental incompetency.* Formal proceedings of cases involving mental incompetency or nonappearance because of the MTF commander's decision that it would be detrimental for the soldier's well being to appear, will be processed as follows:

(1) The DA Form 199 and DA Form 199–1 with all exhibits will be forwarded by certified mail, return receipt requested, to the soldier's guardian or next-of-kin (fig 4–8). A copy of the forwarding letter will be provided to the soldier's legal counsel or representative.

(2) The transmittal letter will advise the individual of the following:

*(a)* The individual has the right to make an election (DA Form 199–1)and to submit a letter of rebuttal to any finding or recommendation.

*(b)* The election (DA Form 199–1) and rebuttal must be received at the PEB within 10 days of receipt of the DA Form 199 unless, within the 10-day period, the president of the PEB has approved a request for extension.

*(c)* A rebuttal submitted within the allotted time must be considered and the individual notified of the PEB's determination.

*(d)* Upon failure of the individual to submit an election within 10 days, the appointed military counsel will take proper action in behalf of the soldier.

(3) The PEB will not forward the case for disposition until the DA Form 199–1 has been received or counsel has acted in behalf of the soldier.Counsel's action will be documented by memorandum, a copy of which will be included in the case proceedings (fig 4–3).

## Section V
## Review and Confirmation of PEB Action

### 4–22. Review by USAPDA

*a. Required review.* USAPDA will review the following cases.

(1) General and Medical Corps officers found unfit.

(2) Informal proceedings when the soldier nonconcurs with the PEB findings and recommendations, waives a formal hearing, submits a statement of rebuttal within the required time frame, and consideration of the rebuttal by the PEB does not result in a change to its findings and recommendations.

(3) Formal proceedings when the soldier nonconcurs with the PEB findings and recommendations, submits a statement of rebuttal within the required time frame, and consideration of the rebuttal by the PEB does not result in a change to its findings and recommendation.

(4) Cases in which a voting member of the PEB submits a minority report.

(5) Any case previously forwarded to USAPDA for review and approval and which has been returned to the PEB for reconsideration or rehearing.

(6) Cases designated by the CG, USAPDA for review.

(7) Cases of soldiers assigned to USAPDA.

*b. Purpose of review.* The review will be confined to the case records and proceedings and related evidence. The review will ensure that the following criteria have been satisfied.

(1) The soldier received a full and fair hearing.

(2) The proceedings of the medical evaluation board and the PEB were conducted according to governing regulations.

(3) The findings and recommendations of the MEBD and PEB were just, equitable, consistent with the facts, and in keeping with the provisions of law and regulations.

(4) Due consideration was given the facts and requests contained in any rebuttal to the PEB findings and recommendations submitted by, or for, the soldier being evaluated.

(5) Records of the case are accurate and complete.

*c. Determinations.* Based upon review of the PEB proceedings, USAPDA may take the following actions:

(1) Concur with the findings and recommendations of the PEB or make minor changes or corrections that do not affect the recommended disposition of the soldier or lower the combined percentage rating.

(2) Return the case to the PEB for reconsideration, clarification, further investigation, a formal hearing, or other action when the case records show such action is in the best interests of the soldier or the Army. A detailed explanation for the reasons for return of the case will be provided to the PEB.

(3) Issue revised findings providing for a change in disposition of the soldier or change in the soldier's disability rating.

(4) Refer the case to the APDAB.

*d. Revised findings.* USAPDA, will take the following actions when modifying PEB findings and recommendations.

*c. AWOL.* PERSCOM will take the following actions when notified that a soldier in the disability system is AWOL.

(1) Suspend disposition action.

(2) If the soldier has been AWOL for 10 days or more, or upon expiration of 10 days in AWOL status, verify with the unit commander the fact of AWOL.

(3) If AWOL status is confirmed, void the proposed disposition.

(4) Notify the soldier's commander, the PEBLO, and USAPDA of the revoked disposition.

(5) Return the case file to USAPDA.

*d. Medical records.* Upon completion of disposition processing, PERSCOM will remove medical records from the proceedings and return them to the MTF that referred the soldier to a PEB.

**4–25. The APDAB**

The Army Physical Disability Appeal Board is a component of the Army Council of Review Boards. It reviews cases forwarded by the CG,USAPDA as provided in paragraph 4–22*f*(2) above.

*a. Determinations.* The APDAB will determine if—

(1) The soldier received a full and fair hearing.

(2) The evaluation proceedings conformed to current laws and governing regulations.

(3) Findings and recommendations of the PEB, as changed or modified by the CG, USAPDA are supported by the evidence.

*b. Actions.* The APDAB will take one of the following actions and forward the case to PERSCOM (or to USAPDA if the case is that of a general officer or medical doctor).

(1) Concur with the decision of the CG, USAPDA.

(2) Concur with the recommendations of the PEB.

(3) Adopt the recommendations of the minority member of the PEB when PEB recommendations were not unanimous.

(4) Concur with the requests contained in the rebuttal submitted by the soldier being evaluated.

(5) Specify new findings and recommendations or other proper actions.

*c. Limitations.* APDAB does not have appellate review authority over modifications resulting from ASD(HA) decisions or adverse line of duty determinations by HQDA.

**4–26. ADRRB**

The Army Disability Rating Review Board (ADRRB) is a component of the Army Council of Review Boards (ACRB). The ADRRB reviews disability percentage ratings on request of a soldier who was retired because of physical disability.

*a. Determinations.* The ADRRB may notify or amend a fully executed retirement order of a soldier based upon the following criteria:

(1) The original order was based on fraud or mistake of law.

(2) The soldier was not granted a full and fair hearing when the soldier had made timely demand for such a hearing.

(3) Substantial new evidence exists which, by due diligence, could not have been presented before disposition was accomplished, and the evidence would have warranted a higher percentage of disability if presented before disposition.

*b. Petition procedures.*

(1) The person concerned, legal representative, or any informed DA authority may request relief on the grounds set forth above.

(2) The request for relief must be filed within 5 years from the effective date of the disposition complaint.

(3) Request for relief is addressed to the ADRRB. No special form is required. However, the petition must state the reason for requesting relief and the relief desired.

(4) If the petition is based on evidence that is not on DA records, forward the evidence as an enclosure to the petition.

(5) The filing of a petition for relief will not affect the directed disposition unless the SA or authority acting for the SA so directs. If operation of the directed disposition is suspended by proper authority, the suspension does not extend the time limit within which an application for review must be submitted to a statutory board.

*c. Review procedures.*

(1) The ADRRB will consider all petitions submitted according to the criteria of paragraph 4–26*b* above.

(2) If the person concerned (or his or her legal representative) did not submit the petition, the ADRRB will give the retiree (or his or her legal representative) reasonable notice of the matter presented by the petition and the opportunity to submit a statement or other evidence in rebuttal.

(3) The Director, ACRB may act for the SA on petitions submitted if the recommendation of the ADRRB is unanimous. Other cases are referred to the SA for action. (The authority herein conferred is permissive only. It will not prevent referral of a case to the SA for action.) In acting on a petition, the Director, ACRB, may—

*(a)* Deny relief, set aside the final disposition or placement on the TDRL directed in a case and direct further retirement proceedings.

*(b)* Direct such action as is needed to effect the relief requested or any other action thought proper.

*(Letterhead)*

*(Office symbol)* *(Date)*

MEMORANDUM FOR Commander, PERSCOM, ATTN: TAPC–PDB, Hoffman II, 2461 Eisenhower Avenue, Alexandria, VA 22331–00477

SUBJECT: Request for Continuance on Active Duty

1. If I am determined unfit because of physical disability, I hereby apply for continuance on active duty. I apply for assignment to duties that I am able to perform within the limitations imposed by my physical disabilities. I request continuance instead of retirement or separation disposition.

2. I meet the following criteria for application for COAD:
________I have 15 years of total service but less than 20.
________I am qualified in shortage MOS.
________My disability is the result of combat.

3. I also understand that—
a. I must be able to maintain myself in a normal military environment without the environment adversely affecting my health or requiring extensive medical care.
b. My disabilities will be periodically reevaluated to decide whether further continuance on active duty or retirement or separation is in the best interests of myself and the Army.
c. Should I later incur a service obligation, I remain liable to complete such obligation in spite of my condition. Only when my disabilities progress to a point that I am no longer able to perform duty with proper limitations am I no longer liable to complete such obligation.
d. At the time of my final retirement or separation from active duty, I will be evaluated under the regulations in effect at that time, and I may be found physically fit.
e. I will not be separated without proper examination and physical disability evaluation.
f. If my term of service expires during the period for which continuance on active duty has been approved, I may request reenlistment with a waiver, and such request may be disapproved.

4. I request consideration for assignment to one of the following installations. (I have listed three in order of my preference.)
a. Fort Detrick
b. Fort Lee
c. Fort Wainwright

John E. Doe
987–65–4321
SSG, 76P30
HQ, USA Quartermaster Center
244th Quartermaster Battalion
Fort Lee, VA 23801–5260

**Figure 6-1. Sample format to request COAD**

# Chapter 7
# Temporary Disability Retired List

## Section I
## Introduction

### 7–1. Overview
This chapter outlines procedures for administration and processing of soldiers whose names are on the TDRL.

### 7–2. Reasons for placement on the TDRL
*a.* A soldier's name may be placed on the TDRL when it is determined that the soldier is qualified for disability retirement under 10 USC 1201 but for the fact that his or her disability is determined not to be of a permanent nature and stable.

*b.* A soldier with a hereditary or congenital condition that is unfitting and known to be progressive will not be placed on the TDRL unless there is unstabilized service aggravation and the soldier is qualified as described above. If upon removal from the TDRL, there is no evidence of residual aggravation, the soldier may be found to be ineligible for disability benefits.

*c.* TDRL will not be used for convalescence. When a soldier's correct rating is less than 30 percent, a rating will not be increased to 30 percent solely for the purpose of making a soldier eligible for TDRL.

### 7–3. Information reflected on the TDRL
The TDRL will list names of all soldiers temporarily retired. The list, as a minimum, will reflect—

*a.* The identity of the soldier.

*b.* The date the soldier was placed on the TDRL.

*c.* The month and year in which the next medical examination is required.

*d.* Current address and phone number.

### 7–4. Requirement for periodic medical examination and PEB evaluation

A soldier on the TDRL must undergo a periodic medical examination and PEB evaluation at least once every 18 months to decide whether a change has occurred in the disability for which the soldier was temporarily retired.

*a.* Soldiers who have waived retired pay to receive compensation from the VA, continue to be retired Army soldiers. These soldiers must undergo examinations when ordered by Commander, PERSCOM, acting on behalf of the SA.

*b.* Soldiers recalled to active duty while still on the TDRL must also undergo a periodic examination when ordered by the Commander, PERSCOM.

*c.* Soldiers who fail to complete a physical examination when ordered will have their disability retired pay suspended.

*d.* Soldiers on the TDRL will notify Commander, PERSCOM, ATTN: TAPC–PDB,2461 Eisenhower Drive, Alexandria, VA 22331–0477, of any change in their current mailing address.

### 7–5. Counseling

The PEBLO is responsible for counseling the soldier until the informal PEB is completed. The soldier may demand a formal hearing. If so, the regularly appointed PEB counsel is responsible for the counseling unless the soldier elects a different counsel. Counseling will be according to appendix C.Soldiers on the TDRL are more difficult to counsel because they are not as readily available to the counselor as are soldiers on active duty.Nevertheless, they must be counseled to the same extent required for active duty soldiers.

### 7–6. Prompt processing

To prevent the soldier suffering severe financial and other hardships, processing delays will be avoided. All portions of the medical examination will be conducted on a priority basis. All involved agencies and personnel will ensure that cases of soldiers nearing expiration of 5-year TDRL tenure are identified and given priority processing.

### 7–7. Prompt removal from TDRL

Medical examiners and adjudicative bodies will carefully evaluate each case.They will recommend removal of the soldier's name from the TDRL as soon as the soldier's condition permits. Placement on the TDRL confers no inherent right to remain for the entire 5-year period allowed by 10 USC 1210.

## Section II
## Administration

### 7–8. Individual TDRL file

CG, PERSCOM will maintain an active file for each soldier on the TDRL. The file will contain the following:

*a.* Complete identification, grade, and a statement of total active service when placed on the TDRL; orders placing the soldier on the TDRL; the soldier's current mailing address.

*b.* Original copy of PEB proceedings with exhibits, less medical and health records; original reports of periodic medical examinations and evaluations.

*c.* Record of current location of clinical, medical, and health records to make the next periodic medical examination easier.

*d.* Significant correspondence with the former soldier and medical treatment facility in order to support suspension of pay for failure to report for scheduled reexaminations or to show that reasonable efforts were made to notify the soldier.

### 7–9. PERSCOM's letter of instruction to the MTF commander on periodic medical examination

*a. Procedural instructions.* PERSCOM will issue a letter of instructions to the MTF commander responsible for the medical examination 4 months before the month during which the examination is to be carried out.PERSCOM will coordinate with the U.S. Army Health Services Command (HSC) in issuing the letter. The letter will include—

(1) Name and address of the soldier requiring examination.

(2) A statement that the periodic medical examination is required during the month prescribed.

(3) Location of medical records, if known (the MTF commander will obtain all medical records).

(4) Instructions on completing the enclosed travel order as to the exact place and date of the examination.

(5) Authority for the MTF commander to arrange for the examination to be conducted. Another U.S. Government MTF, a civilian medical facility, or civilian physician(s), including medical consultants, may conduct the examination. The examination will be conducted as close to the soldier's home as circumstances and requirements of the case permit.

(6) Specific guidance governing conduct of the examination needed.

*b. Preparation of orders.* PERSCOM will prepare travel orders to accompany the letter of instructions. The travel orders permit payment for TDY only for the period needed to complete the TDRL examination. These orders do not provide for periods of medical treatment after the examination.

*c. Supporting documents.* The following documents will accompany the letter of instructions:

(1) Proceedings of the PEB and supporting documents that placed the soldier on the TDRL.

(2) A copy of the letter notifying the soldier of the examination.

*d. Final TDRL examination.* PERSCOM will initiate processing action no later than 6 months before the fifth anniversary date of the soldier being placed on the TDRL. The MTF commander and the soldier will be advised that the final examination must be expedited to ensure removal from the TDRL before the soldier's completion of 5 years on the list.

### 7–10. PERSCOM's letter of instruction to the soldier

PERSCOM will notify the soldier of the forthcoming medical examination. The letter will include the information below:

*a.* Name, address, and telephone number of the appointed MTF closest to the soldier's home.

*b.* Name and telephone number of the PEBLO who will assist the soldier during and after the medical examination.

*c.* The soldier may telephone the MTF collect to resolve any problems.

*d.* The MTF will arrange for and schedule the medical examination. Every effort will be made to schedule the examination for the soldier's convenience;however, the medical examination must be carried out within the month prescribed.

*e.* At the discretion of PERSCOM an escort may accompany a soldier who is unable to travel alone to the place of examination. One person may travel with the soldier upon request when the record clearly shows that the soldier is not physically or mentally able to travel without help. The attendant is entitled to file a claim for expenses according to JFTR, volume I, chapter 7, part I. If a private conveyance is used for travel, only the retired soldier may be reimbursed for transportation cost. Request for attendant must be approved by PERSCOM, (TAPC–PDB) in advance of travel.

*f.* The MTF will forward the following:

(1) Travel orders issued by PERSCOM if needed.

(2) Facts for obtaining transportation request and collection of approved travel expense.

(3) Per diem allowance if applicable.

*g.* Failure to make or follow through with arrangements with the hospital for carrying out the medical examination during the required month may result in the suspension of disability retirement pay.

*h.* The soldier must inform the MTF of visits to civilian or military physicians or other Federal medical facilities for treatment while on the TDRL and give permission to obtain records of such visits if available.

### 7–11. Disposition of the TDRL soldier

*a. Action following periodic PEB evaluation or on fifth anniversary.* PERSCOM will remove a soldier from the TDRL as described below on the fifth anniversary of the date the soldier's name was placed on the list, or sooner on the approved recommendation of a PEB.

(1) *Permanent retirement.* If the soldier meets the criteria below, the soldier will be removed from the TDRL, permanently retired for physical disability, and entitled to receive disability retired pay:

*(a)* The soldier is unfit.

*(b)* The disability causing the soldier's name to be placed on the TDRL has become permanent.

*(c)* The disability is rated at 30 percent or more under the VASRD, or the soldier has at least 20 years of active Federal service.

(2) *Separation.* A soldier will be removed from the TDRL and separated with severance pay if the soldier—

*(a)* Has less than 20 years of service.

*(b)* Is unfit because of the disability for which the soldier was placed on the TDRL; and either the disability has stabilized at less than 30 percent; or the disability, although not stabilized, has improved so as to be ratable at less than 30 percent. A former RA enlisted soldier who would be separated under this authority may request a waiver to reenlist. (See AR 601–210, chap 4.)

(3) *Fit for duty.* If a soldier is determined physically fit to perform the duties of his or her office, grade, rank or rating (and is otherwise administratively qualified), the following procedures apply:

*(a)* Former RA officers and warrant officers, subject to their consent, will be recalled to active duty. Action will be started to effect reappointment to the active list in the regular grade held when placed on the TDRL, or the next higher grade. If the officer does not consent to be called to active duty, TDRL status and disability pay will be ended as soon as possible.

*(b)* Former RA enlisted soldiers, subject to their consent, will be reenlisted in their regular component in the grade held on the day before the date place on the TDRL, or in the next higher grade. If the soldier does not consent to reenlistment, TDRL status and disability pay will be ended as soon as possible.

*(c)* Former soldiers of the U.S. Army Reserve (USAR), subject to their consent, will be reappointed or reenlisted in the USAR in the grade held on the day before the date placed on the TDRL, or in the next higher grade or transferred to the Retired Reserve, if eligible. They may request active duty, under USAR regulations.

*(d)* Former soldiers of the Army National Guard of the United States(ARNGUS), subject to their consent, may be reappointed or reenlisted in the ARNGUS in the grade held on the day before the date placed on the TDRL, or in the next higher grade if the proper State authorities reappoint or reenlist them in the Army National Guard (ARNG) of the State concerned. They may request active duty. If the soldier cannot be reappointed or reenlisted in the ARNG, and subject to the soldier's consent, he or she will be reappointed or reenlisted in the USAR or transferred to the Retired Reserve, if eligible.

*(e)* If the soldier in (a) thru (d) above has completed 20 years of active service when placed on TDRL, and does not consent to return to active duty upon being found fit for duty, the soldier may request voluntary retirement by reason of length of service upon removal from the TDRL.

*(f)* If the soldier in (c) and (d) above has completed at least 20 qualifying years of service computed under section 1332, title 10, United States Code (10 USC 1332) when placed on the TDRL, the soldier may request if otherwise eligible, retirement under section 3911, title 10, United States Code(10 USC 3911) from the TDRL.

(4) *Unfit—not in LD disability.*

*(a)* A soldier may recover from the disability resulting in placement on the TDRL. If while on the TDRL, the soldier incurs another unfitting disability, the soldier may be separated without benefits.

*(b)* If the soldier mentioned in (a) above was RA and had completed 20 years or more of active service when placed on the TDRL, the soldier may request voluntary retirement.

*(c)* If the soldier mentioned in (a) above was USAR and had completed at least 20 qualifying years of service computed under 10 USC 1332 when placed on the TDRL, the soldier may request transfer to the Retired Reserve or retirement if qualified under 10 USC 3911.

*b. Periodic examination not performed.* PERSCOM will take the actions described below when a periodic examination cannot be carried out.

(1) *Soldier's failure to report or reply.* If a soldier fails to respond to correspondence concerning the medical examination or fails or refuses to complete a medical examination, PERSCOM will make an effort to discover the reason. If such action cannot be justified and the fifth anniversary of placement on the TDRL has not been reached, PERSCOM will notify the soldier and the Chief, Retired Pay Operations, U.S. Army Finance and Accounting Center (USAFAC), to suspend retired pay. PERSCOM will keep the soldier's name on the TDRL until the fifth anniversary unless it is removed sooner by other action.

(2) *Unable to locate soldier.* When reasonable efforts to locate the soldier are unsuccessful, PERSCOM will take the action prescribed in(1) above.

(3) *Soldier imprisoned by civil authorities.* A report by the responsible MTF commander may indicate that examination of a soldier is not possible because the soldier is imprisoned and civil authorities will not permit the examination. If so, PERSCOM will take the action prescribed in (1) above.

(4) *Removal on fifth anniversary.* Soldiers on the TDRL shall not be entitled to permanent retirement or separation with severance pay without a current acceptable medical examination, unless just cause is shown for failure to complete the examination. Six months before the fifth anniversary of placement on the TDRL, PERSCOM will make a final attempt to contact the soldier ((1) and (2) above) or proper civil authorities ((3) above)and arrange a final examination. If this fails and the soldier does not undergo a physical examination, PERSCOM will administratively remove him or her from the TDRL on the fifth anniversary of placement on the list without entitlement to any of the benefits provided by 10 USC 61.

### 7–12. Restoring eligibility

PERSCOM may restore the soldier's eligibility to receive disability retirement pay if, after failure to report for and complete the required periodic examination, the soldier later satisfactorily meets the examination requirements. PERSCOM will notify the Chief, Retired Pay Division, USAFAC, to restore disability retired pay retroactive to the date the soldier undergoes the examination provided the soldier is still qualified for retention on the TDRL. The soldier's eligibility to receive retired pay may be made retroactive, not to exceed 1 year, if the soldier can show just cause for failure to respond to official notice or orders. A soldier's name may have been removed from the list as provided in paragraph 7–11*b*(4). If so, the soldier may take application to the Army Board for Correction of Military Records (ABCMR).

## Section III
## Periodic Medical Examination

### 7–13. Responsible MTF

The commander of the MTF, notified as provided in paragraph 7–9, is responsible for reexamining the soldier. If the MTF was obviously or apparently incorrectly selected, the commander will promptly notify PERSCOM to transfer the case file to another MTF.

### 7–14. Selection of examining facilities

*a. Other locations.* Upon review of the medical records, the MTF commander or his or her designee will arrange to have the portions of the examination that cannot be accomplished at the Army MTF conducted at one of the locations below. These locations are listed in the order of preference.

(1) Another uniformed service MTF.

(2) Other Federal medical facility at, or near, the soldier's home.

(3) Civilian-operated clinic or hospital at, or near, the soldier's home.

*b. Hospitalization.* Examination of a soldier on an out-patient basis is preferred. When hospitalization is foreseen, however, or when extensive tests or observations require hospitalization, the soldier will be ordered to report to the MTF designated, or if more appropriate, to a Federal MTF near the soldier's home. If the soldier is hospitalized at the time the examination is scheduled, a NARSUM from the hospital facility providing his or her care may suffice to meet the needs of a report of periodic examination.

*c. Costs.* The cost of medical examinations carried out at Government MTFs, including consultations from civilian sources, are payable from funds available to operate MTFs. Costs of medical examinations carried out at civilian MTFs or by civilian physicians at, or near, the soldier's home will be handled according to AR 40–3, chapter 15.

### 7–15. Medical records

The commander of the MTF responsible for the medical examination will promptly initiate a request for the soldier's medical records from information provided by PERSCOM or by the soldier. The commander will ensure that the medical records are available to the examining physician before the periodic medical examination. The examining physician must return all records furnished with the report of medical examination to the MTF commander for forwarding to the proper PEB.

### 7–16. The MTF commander's duties in notifying the soldier

The MTF commander will provide to the soldier the information specified in paragraph 7–10. Confirmation of the date of examination should be made by certified mail, return receipt, restricted delivery. If the notification is returned as undelivered or soldier fails to report as directed, the MTF commander will notify PERSCOM (TAPC–PDB).

### 7–17. Examination of the soldier

*a. Purpose of medical examination.* The purpose of the TDRL periodic medical examination is to—

(1) Determine the soldier's condition at the time of the examination.

(2) Decide if a change has occurred in the disability for which the soldier was placed on the TDRL.

(3) Decide if the disability has become stable enough to permit removal from the TDRL.

(4) Identify any new disabilities while the soldier has been on the TDRL.

*b. Extent of the examination.* The medical examination must be objective and complete. One or more physicians will conduct the examination.Proceedings of previous PEB actions and all medical records will be made available to the examiner. Diagnostic, laboratory, and radiological procedures, including photographs, should be used to the extent needed to establish and describe the soldier's current physical condition accurately. Detailed requirements for medical examinations for disability evaluations are contained in the VA Physician's Guide for Disability Evaluation Examinations and the VASRD.(See AR 40–3, chapter 8.)

*c. Consultants.* Advice of professional consultants may be obtained whenever needed during periodic medical examinations.

*d. Soldiers physically unable to travel or mentally incompetent.* When the responsible hospital commander determines that a soldier is physically unable to travel (for example, bedridden) or is mentally incompetent, the commander will make all reasonable efforts to have the soldier examined. Bringing the soldier to the hospital by ambulance or arranging for a visit by a physician to the soldier's residence is included when the effort is in the best interests of the Government. If the soldier is under medical treatment, current medical records from the MTF, or the physician treating the soldier, may provide adequate clinical data for the report of periodic examination.

*e. Soldiers imprisoned by civil authorities.* When a soldier is found to be imprisoned by civil authorities, the appointed MTF commander will request the confinement facility, or other proper authority, to have the soldier medically examined and to provide a report of the soldier's current medical state. The report will be processed in the normal manner upon receipt and forwarded to the PEB for adjudication. If an examination is impossible or no report is received, the MTF commander will return the medical records to PERSCOM with a summary of efforts to obtain adequate information. PERSCOM will take action prescribed in paragraph 7–11*b*.

### 7–18. Report of the medical examination

*a.* The report of periodic medical examination may be prepared using a letter or SF 502. The guidance in paragraph 4–11 applies. In addition, the following information will be provided:

(1) An estimate of change since the previous examination.

(2) A medical appraisal of all defects incurred, or discovered, after the soldier was placed on the TDRL. The report must clearly show the etiology of defects found during the examination so a decision can be made as to whether they relate to a condition that existed or was incurred while the soldier was on active duty, or was incurred while the soldier was on the TDRL.

(3) An opinion on whether the conditions have become stable. If not stable, provide an opinion as to the progress of the disability and a suggested time frame (not to exceed 18 months) for the next examination.

*b.* The report requires only the signature of the medical officer or physician appointed to conduct the medical examination. Forward the report to the commander of the MTF for review and approval.

### 7–19. Review and forwarding the report of the examination

*a.* The MTF commander, or designee, will ensure the completed report clearly describes the soldier's present condition and functional impairments.MEBDs are not required for TDRL periodic physical examinations; however, the MTF commander may refer a TDRL examination to a MEBD, especially one presenting a problem or dispute.

*b.* The MTF commander will give the soldier the opportunity to review and comment on the report of examination before forwarding it to the PEB. The soldier will sign the report of examination acknowledging receipt. If the soldier does not agree with the report of examination, the MTF commander will review and act on any objections. The MTF commander has the right of final approval; however, any written appeal or objection prepared by or for the soldier will be attached to the medical examination report.

*c.* The MTF commander or his designee will approve and forward the report to the servicing PEB.

*d.* The soldier's correct mailing address, area code, and telephone number will be confirmed to the PEB. A copy of the transmittal document will be provided to PERSCOM (TAPC–PDB).

## Section IV
## Physical Disability Decision

### 7–20. PEB processing

*a. Deficiencies in report of examination.* PEB will resolve deficiencies in a report of periodic examination to the extent possible with MTF commander. A case file will not be returned to PERSCOM because of deficiencies or need for further information except through USAPDA.

*b. Changes in a soldier's condition while on the TDRL.* The combined percentage rating approved at the time the soldier was placed on the TDRL cannot be changed by the PEB throughout the period the soldier is on the TDRL. Adjustment will be made at the time of removal from the TDRL to reflect the degree of severity of those conditions rated at the time of placement on the TDRL and any ratable conditions identified since placement on the TDRL. An

EPTS factor may be added, modified, or eliminated at this time if additional evidence is obtained that was not previously available or apparent during the initial evaluation; or placement on the TDRL was due to fraud, mistake of law, or mathematical miscalculation.

*c. Retention on the TDRL.* A soldier may be retained on the TDRL if disabilities causing placement on the TDRL have not become stable, and either of the following occurs:

(1) The combined rating at the time of re-evaluation is at least 30 percent.

(2) The soldier has at least 20 years of service if the combined rating is less than 30 percent.

*d. Entries on DA Form 199.* Entries on DA Form 199 will reflect the soldier's condition at the time of the most recent periodic examination. When the soldier is recommended for retention, the DA Form 199 will record any new conditions but will not list a disability rating. When a soldier is recommended for permanent retirement, entries must be made for all conditions present whether or not previously recorded. The DA Form 199 will include the reason for variation between the original action (findings, recommendations, or ratings) causing the soldier's placement on the TDRL and current action removing him or her from the list. Explanations need not be lengthy, but must be understandable. Procedures for administrative relief pertaining to a correction or adjustment of the percentage of physical disability while a soldier is on the TDRL are contained in paragraphs 4–25 and 4–26.

*e. Notice to soldier.*

(1) If the PEB recommends removal from the TDRL, the PEB will forward to the soldier DA Form 199 and letter of explanation by certified mail, restricted delivery, return receipt requested. The letter will inform the soldier of his or her rights and responsibilities. It will provide the name, location, and telephone number of the PEBLO (fig 7–1). The soldier will sign the original copy of the DA Form 199 and return it after giving his or her choice of options in block 13. The copy of the DA Form 199 is the soldier's copy.

*(a)* If the certified mail receipt is not returned, or if the correspondence is returned undelivered, the PEB will try to verify the soldier's address by contacting PERSCOM, the MTF, the U.S. Army Finance and Accounting Center (USAFAC), or the VA regional office. If a new address is obtained, the PEB will try to deliver the notice. If not, a memorandum waiving the soldiers right of election will be prepared (fig 7–2).

*(b)* If the receipt is returned but no election is received, the PEB president will prepare a memorandum waiving the soldier's right of election for failure to respond (fig 7–3). The certified mail receipt will be included in the case file as proof that the soldier was notified.

*(c)* The PEB president will forward the case file to PERSCOM (TAPC–PDB)for final disposition.

(2) If the PEB recommends retention on the TDRL, the PEB will forward the DA Form 199 and a letter advising that there will be no change in the soldier's status or retired pay as long as the soldier remains on the TDRL.Notification will be by ordinary mail (fig 7–4). The DA Form 199 will include a statement that failing to notify PERSCOM of the current mailing address will result in the suspension of disability retired pay if the Army is prevented from properly notifying the retiree of a scheduled examination.

(3) The PEBLO of the MTF responsible for the periodic medical examination is responsible for counseling the soldier. Therefore, the PEB will provide the PEBLO a copy of the letter and DA Form 199 (with enclosures).

### 7–21. Travel orders for formal hearing

*a.* When the soldier elects to appear in person at the hearing, the recorder of the PEB will endorse the original travel orders according to AR 310–10. If a new fiscal year starts between the time the soldier completes the TDRL medical examination and the scheduled formal hearing, the PEB will endorse the orders using the new fiscal year fund cite. The new fiscal year fund cite can be obtained from PERSCOM, (TAPC–PDB). The PEB will inform the soldier in writing of the date, time, and place of the hearing, to include building and room number. If soldier lives in an area from which travel to the PEB is "local", as defined by the JFTR chapter 3, part F, orders are not required.

*b.* The PEB will provide one copy of the endorsed travel order to PERSCOM (TAPC–PDB). PERSCOM will commit the funds. The endorsement of orders and the commitment of funds must occur in advance of the soldier's travel for reimbursment of travel expense to be approved.

*c.* An attendant may accompany a soldier who is unable to travel alone to the formal hearing. The attendant is entitled to file a claim for expenses according to JFTR, volume I, chapter 3, part I. If a private conveyance is used for travel, only the retired soldier may be reimbursed for transportation cost.The soldier must contact the PEB in advance of travel to request travel orders for the attendant. If orders were issued for an attendant in connection with travel to the periodic exam, the PEB will endorse the orders and forward one copy to PERSCOM (TAPC–PDB). If no previous orders were issued or a different individual is serving as attendant, the PEB will contact PERSCOM for approval and fund cite. The PEB will forward one copy of the orders to PERSCOM(TAPC–PDB).

### 7–22. Review of TDRL cases

When a PEB completes its action, the case file will be disposed of as prescribed in chapter 4.