IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-166C (Judge C.O.C. Miller)

PAUL E. DOLAN

Plaintiff,

v.

THE UNITED STATES

Defendant,

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS OR IN THE ALTERNATIVE TO REMAND

August 13, 2007

John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825
Counsel for plaintiff

TABLE OF CONTENTS

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PLAINTIFF'S BRIEF

I. Statement of the Issues ....................1

II. Statement of the Case ....................3

III. Statement of Facts ....................4

SUMMARY OF ARGUMENT ....................4

ARGUMENT

I. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT....................7

A. At the time of referral to an MEB, Major Dolan was not under investigation but pending administrative elimination, and therefore eligible to continue his healthcare and disability processing. ¶ 1-23a, A.Reg. 600-8-24....................7

B. Major Dolan was "required" to be retained past March 14, 2001, because his referral to the MEB was a determination that he had "a medical impairment not meeting retention standards." ¶ ¶ 1-22b, 1-23 , A.Reg. 600-8-24....................9

C. Dolan's claim is justiciable because the Army's discharge and disability procedure provide standards and tests which courts can administer within their competence........11

Standard of Review

D. Because the Army's refusal to continue Dolan on active duty for a medical evaluation was unlawful, he was never legally separated in March 2001....................15

E . Dolan was prejudiced when the Army failed to medically retain him in pay status after March 14, 2001, cutting short his MEB, ending further disability proceedings.....17

(1) The Army's procedural error in denying medical retention placed Dolan in the disadvantaged position to overcome a presumption of fitness that was permanently established upon discharge, therefore prejudicing his right to a fair and impartial hearing on unfitness and final action on elimination..............17

(2) Prejudice from missing medical and personnel records, with inability to reconstruct six years later Dolan's medical condition at time of discharge..............21

(3) With nearly 19 years active duty at discharge, the failure to retain prejudiced Dolan's right to additional service likely to qualify for retirement-in-lieu of elimination..........22

F. Because Dolan was never legally separated in March 14, 2001, he effectively remains on active duty; the appropriate remedy is for the parties to confer on the appropriate remedy..........23

(1) Because disability processing is time-barred after 1 year, the contingent elimination action cannot reach an appropriate final disposition..........23

CONCLUSION..........25

# EXHIBITS TABLE OF CONTENTS

DOCUMENT PAGE

EXHIBIT A

Cover letter, March 28, 2007, from National Personnel Records Center (re: Dolan request for separation and personnel records)........1

Memorandum, February 4, 1999, Headquarters 9th RSC, "Officer Offense Report– Maj Paul E. Dolan"........2-3

Department of Army Form 268, June 24, 1999 "Report to Suspend Favorable Personnel Actions" (FLAG)(re Paul Dolan)........4

Memorandum, February 28, 2000, from Dr. Paul Ciranmgle, M.D., Staff Surgeon General, Tripler Army Medical Center........5

Memorandum, September 20, 1999, Initiation of Elimination (re Maj Paul Dolan)........6-7

Memorandum, October 22, 1999, Rebuttal to Initiation of Elimination (CPT Gary, defense counsel)........8

Memorandum, October 27, 1999, Rebuttal to Initiation of Elimination (Maj Dolan........8-A

Army Health Record, June 27, 2000, Tripler Army Medical Center, (re: Paul Dolan)........9

Memorandum, September 18, 2000, Appellate Brief for Consideration by Board of Review........10

Department of Army Form 1506, October 25, 2000, Statement of Service Computation........11

EXHIBIT B

Memorandums, February 7, 2001, and February 12, 2001, Secretarial Action and Notice on Officer Elimination (re Maj Dolan)........12-13

Army Message (February 13, 2001), and Separation Orders (February 22, 2001)........14, 15-16

EXHIBIT C

Department of Army Form 3947,Medical Evaluation Board proceedings (re Maj Dolan), March 8, 14, 26, 2001........17-21

Department of Army Form 3349, Physical profile, (re Maj Dolan), March 13-14, 2001........22

Letter, March 12, 2001, from Dr. Denis Mee-Lee to Tripler Army Medical Center, Department of Psychiatry (re Maj Dolan)........22-A

EXHIBITS TABLE OF CONTENTS (continued)

DOCUMENT PAGE

Memorandum, March 13, 2001, Request for Extension and Affidavit, by LTC Montgomery, Chief of Patient Administration Division, Tripler Army Medical Center (re Maj Dolan)....................23-25

Standard Form 600, 14 March 2001, Report of Medical History questionnaire by Maj Dolan, "Retirement Physical (MEB)....................25A, B, C

Memorandum, March 15, 2001, Recommended Disapproval of Medical Retention, point of contact for the action is Major Alverez....................26

EXHIBIT D

Department of Defense Form 214, Certificate of Release/Discharge from Active Duty (March 14, 2001, re Major Dolan)....................27

Army Inspector General Action Request [complaint], March 29, 2001, by Major Dolan...........28-29

Department of Army Form 1506, October 24, 2000, Statement of Service Computation,........29A-31

EXHIBIT E

Department of Defense Form 149, May 7, 2002, Major Dolan's Application for Correction of Military Records to Army BCMR....................34

Record of Proceedings, February 24, 2004, and notification, Army BCMR, Docket Number AR2004-4988....................35-47

Letter, April 25, 2005, denying request for reconsideration by BCMR....................47A

Service-connected disability compensation decision, Department of Veterans Affairs, April 7, 2003 (retroactive to March 15, 2001; 80% for seven disabilities)....................48-51

Service-connected disability compensation decision, Department of Veterans Affairs, September 15, 2004 (upgrade of depression from 30% to 50%, 100% rating for total unemployability....................52-53

EXHIBIT F

Declaration of Paul E. Dolan, August 1, 2007....................54-55

APPENDIX TABLE OF CONTENTS

VOLUME 1 PAGE

Order No. 02-08 (2002),
*Army National Guard AGR Temporary Early Retirement Authority for FY 2002 (TERA)* California National Guard........................................................................1

Department of the Army FY 2000/20001 Biennial Budget Estimate (Feb 1999),
Army Reserve Personnel (TERA)....................................................................2-4

Manual for Courts-Martial, (2000 Edition), R.C.M. §§ 303, 306.................................................5-8

Army Regulation,
AR 600-8-2, *Suspension of Favorable Personnel Actions (Flags)* (1987), (2004).......9-13

VOLUME 2

Army Regulation,
AR 600-8-24, *Officer Transfers and Discharges* (1995)..........................................21-35

VOLUME 3

Army Regulation AR 635-100, *Personnel Separations: Officer Personnel* (1989), with
Interim Change IO5(1993)..........................................................................36-42

Army Regulation
AR 135-175, *Army National Guard and Army Reserve: Separation of Officers* (1987)..........................................................................43-45

Army Regulation
AR 635-40, *Personnel Separations: Physical Evaluation for Retention, Retirement or Separation* (1990)......................................................................46-76

Army Regulation
AR 40-501, *Medical Services: Standards of Medical Fitness* (2004)
[prior issue unavailable, revisions not relevant].........................................................77-91

Department of Defense Instruction
DODI 1332.18, *Separation or Retirement for Physical Disability* (1996)..................92-98

Department of Defense Instruction
DODD 1332.38, *Physical Disability Evaluation* (1996)..........................................99-102

Army Regulation
AR 40-400, *Medical Services: Patient Administration* (2006)
[prior issue unavailable, revisions not relevant].....................................................103-106

APPENDIX TABLE OF CONTENTS (continued)

Federal Statutes, Title 10 PAGE

§ 1074. Medical and dental Care for members....107-109

§ 1201. Regulars and members on active duty for more than 30 days; [disability] retirement....110-111

§ 1202. Regulars and members on active duty for more than 30 days; temporary disability retired list....112

§ 1203. Regulars and members on active duty for more than 30 days; separation....113-114

§ 1214. Right to full and fair hearing....114

§ 10209. Regular and reserve components: discrimination prohibited....115

VOLUME 4

"Superior Labral Tear Rehabilitation Protocol," Dr. Brian J. Cole, MD, MBA, Journal of Shoulder and Elbow Surgery, 12:4 (2003)....116, 126 (#56)

Curriculum Vitae, Dr. Brian J. Cole, MD., MBA., Professor of Orthopedics, Anatomy & Cell Biology, Cartilage Restoration Center, Rush University Medical Center, Chicago, Illinois....117-139

VOLUME 5

Army Regulation, AR 140-185, *Training and Retirement Point Credits* (1987)....140-43

Army Regulation, AR 37-104-4, *Military Pay and Allowances Policy* (2005)....143A-G

Department of Army Pamphlet DA Pam 27-50-136, Major David Wagner "Officer Eliminations: Emphasis on Quality," *The Army Lawyer* 9 (April 1984)* ....144-48

GAO Report GAO-06-362, "The Military Disability System: Improved Oversight Needs To Ensure Consistent and Timely Outcomes" (March 2006)....149-51

* The *Army Lawyer* is listed as an "official publication of the Judge Advocate Generals School U.S. Army (TJAGSA); Major David Wagner is identified as "Instructor, Administrative and Civil Law Division, TJAGSA"

## TABLE OF AUTHORITIES

CASES PAGES

Adkins v. United States,
68 F.3d 1317 (Fed.Cir.1995)....12

Aubre v. United States,
40 Fed.Cl. 371 (1998)....19

Arizona v. Fulminante,
499 U.S. 279 (1991)....24

* Bond v. United States,
47 Fed.Cl. 641 (2000)....12-15

Clary v. United States,
33 F.3d 1345 (Fed.Cir. 2003)....24

* Dodson v. Department of Army,
988 F.2d 1199 (Fed.Cir.1993)....12-16

Ferrell v. United States
23 Cl.Ct. 562 (1991)....18, 20

Hamlin v. United States
391 F.2d 941 (1968)....16-17

Haskins v,. United States,
51 Fed.Cl. 818 (2002)....19

Jordan v. United States,
205 Ct.Cl. 65 (1974)....16

Orloff v. Willoughby,
345 U.S. 83 (1953)....11, 13

Metz. v. United States,
65 Fed.Cl. 631 (2005)....24
Murphy v. United States,
993 F.2d 871 (Fed.Cir.1993)....11

Pomory v. United States,
39 Fed.Cl. 213 (1997)....19

Robbins v. United States,
29 Fed. Cl. 717 (1993)....16

Sargisson v. United States,
913 F.2d 918 (Fed.Cir.1990)....12

* cases principally relied on

TABLE OF AUTHORITIES (continued)

CASE PAGE

Sawyer v. United States,
930 F.2d 1557 (Fed.Cir.1991)....................16

Service v. Dulles,
354 U.S. 363 (1957)....................15

Voge v. United States,
844 F.2d 776 (Fed.Cir.1988)....................12

Wagner v. United States,
365 F.3d 1358 (2004)....................23-25

Wilson v. United States,
24 Cl.Ct. 842 (1992)....................12

Wisotsky v. United States,
69 Fed.Cl. 299 (2006)....................24-25

REGULATIONS

A.Reg. 40-400, *Patient Administration* (2006)....................10

A.Reg. 40-501, *Medical Services: Standards of Medical Fitness* (2004)....................9

A.Reg. 600-8-24, *Officer Transfers and Discharges* (1995).................... *passim*

DODD 1332.18, *Separation or Retirement for Physical Disability* (1996)....................15, 24

32 C.F.R. § 581.3, *Army Board for Correction of Military Records* (2004)....................24-25

STATUTES

Title 10

§ 1074. Medical and dental Care for members....................24

§ 1214. Right to full and fair hearing....................18

§ 10209. Regular and reserve components: discrimination prohibited....................20

SECONDARY SOURCES

GAO Report, *The Military Disability System: Improved Oversight Needs To Ensure Consistent and Timely Outcomes* (March 2006)............................................................22-23

GLOSSARY and TERMS

| | |
|---|---|
| A.Reg. | Army Regulation |
| AGR | Active Guard/Reserve; reserve soldiers on full-time active duty to manage, support, and administer reserve units |
| BCMR | Board for Correction of Military Records |
| BOI | Adversarial administrative hearing before a board of officers to determine whether the officer is involuntarily separated upon allegations of substandard duty performance and/or misconduct; also referred to as a Elimination "show cause" proceeding |
| BOR | Board of Review (appellate review of officers recommended By BOI for elimination) |
| COAD | Continuance On Active Duty; soldier found unfit by reason of physical disability but eligible to remain on active duty if: (1) has 15 years but less than 20 years total service, or (2) qualified in a critical skill, or (3) disabled as result of combat |
| DAADB | Department of Army Active Duty Board (option to release but not discharge reserve officers on active duty back into inactive reserve status for substandard duty or misconduct |
| FLAG | Suspension of Favorable Personnel Action; imposed during investigation, discipline, elimination, and other adverse actions |
| LOD | Line of Duty decision required for physical disability processing that it was an injury or disease incurred or aggravated while the soldier was entitled to pay |
| MEB | Medical Evaluation Board (documents soldier's medical condition and diagnosis; refers to PEB if there exists a physical disability that fails to meet retention standards |
| medical impairment | Synonymous with physical disability; due to disease or injury that reduces or prevents soldier's ability to engage in duties |
| NJP | Non-judicial punishment imposed under 10 U.S.C. § 815 (U.C.M.J.) for minor disciplinary infractions |

GLOSSARY and TERMS (continued)

| | |
|---|---|
| PEB | Physical Evaluation Board (decides if soldier is physically unfit; assigns rating percentage and discharges/retires, or waives and retains under COAD) |
| physical disability | Synonymous with medical impairment; due to disease or injury that reduces or prevents soldier's ability to engage in duties |
| physically unfit | Unfitness due to physical disability [medical impairment] of such degree that a soldier is unable to perform duties of the office, grade or rank, and rating or speciality |
| RCM | Rule for Courts-Martial proceedings and investigations |
| REFRAD | Released from active duty (without a BOI, voluntary or involuntary through the DAADB) |
| TDRL | Temporary Disability List; soldiers unfit but the disability is not permanent and stable |
| TERA | Temporary Early Retirement Authority, granted by Congress from 1994 to 2001 permitting soldiers with 15 but less than 20 years of service to retire with full benefits |
| VA | Veterans Administration |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PAUL E. DOLAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 07-166C |
| | ) | (Judge C.O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND
OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS
OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Plaintiff-Dolan, under RCFC 56, the Rules for the U.S. Court of Federal Claims, moves for summary judgment because there is no genuine issue as to any material fact, and Dolan is entitled to judgment as a matter of law. Fairly contained within the brief is his opposition to defendant's motion to dismiss, or in the alternative to stay proceedings for an Army BCMR reconsideration.

In support of Dolan's motion and opposition, he relies on the following: amended complaint, Proposed Findings of Uncontroverted Fact [PFOF], Plaintiff's Exhibits A to F [Pl.Ex.], and Plaintiff's Appendix Volumes 1 to 5 [e.g. Pl.Appx V]. The Appendix contains extracts from Army and DoD regulations, statutes, a medical journal, and GAO report. The Exhibits contain documents from Dolan's official military and VA files, and declaration of Paul Dolan. He obtained the documents thru counsel in April and May 2007 from the National Personnel Records Center. The exhibits are some of the limited military and health records available from NPRC archives. Pl. Ex A 1 (NPRC cover letter); Pl.Ex. F 54 (Delc. ¶ 1 (some personnel records missing; unable to find Army health records). The defendant did not file an administrative record.

## PLAINTIFF'S BRIEF

### I. Statement of the Issues

**Defendant's motions to dismiss or to stay proceedings and remand.**

Defendant's has framed two issues in support of it motion to dismiss under RCFC 12(b)(1) and under 12(b)(6). Defendant did not frame an issue for it alternative motion under RCFC 52.2 to

stay with remand to the Board for Correction of Military Records (BCMR). Dolan disagrees with defendant's issues 1-2, and re-frames them (1 and 3). To address the motion to stay/remand, Dolan adds the following issue numbered as 2:

1. Whether Mr. Dolan's claim, to the extent of setting aside his involuntary release from active duty on March 14, 2001, presents a justiciable controversy capable of judicial review within the Court's jurisdiction.

2. Whether defendant's RCFC 52.2 motion for remand to the BCMR to reconsider Mr. Dolan for disability evaluation, is an "appropriate matter" because Dolan was materially prejudiced when the Army's 2001 discharge established a "presumption of fitness" as mandated by statute and implementing regulation, and because disability re-evaluation is otherwise time-barred.

3. Whether defendant's RCFC 12(b)(6) motion to dismiss is moot when the only possible outcome in this case is no longer reconsideration for disability or elimination, but to set aside Mr. Dolan's 2001 discharge, and for the parties to confer on appropriate relief.

**Dolan's motion for summary judgment, the issues are 4, 5, 6.**

4. Whether the decision of the BCMR denying Mr. Dolan's claim, to the extent of setting aside his involuntary release from active duty on March 14, 2001, was arbitrary and capricious, unsupported by substantial evidence, and contrary to law and regulation.

5. Whether the BCMR erred in determining that Major Dolan at the time of referral to an Medical Evaluation Board (MEB) was ineligible to remain on active duty to complete disability processing by contending he "under investigation for an offense chargeable under the UCMJ that could result in punitive dismissal" by sentence of court-martial. ¶ 1-23a A.Reg. 600-8-24.

6. Whether it was unlawful for the Army to refuse the medical retention of Major Dolan beyond his scheduled elimination date to complete disability evaluation processing, once an MEB had directed based upon a medical exam, and once an MEB had directed based upon a permanent physical profile, and once an MEB had convened. ¶ 1-22, A.Reg. 600-8-24.

## II. Statement of the Case

Defendant believes "it is unclear" whether Dolan is challenging the BCMR's denial of relief for reinstatement to active duty or the "underlying discharge." Def. Motion 2. Because of the timing of Dolan's BCMR application and present complaint, Dolan sees no confusion. However, he will clarify herein the relief sought, which is further explained in his brief. Dolan's re-framing of the "statement of the issues" does provide some clarity.

At the time Dolan submitted his BCMR application early 2002, his Army discharge certificate (DD Form 214) still listed only 18 years of service. He needed reinstatement to complete two more years. Although he contested total service was "erroneous," in the event the Board disagreed he asked for reinstatement to qualify for retirement. Pl.Ex.E 34 (application items 8, 10).

Upon filing this complaint, Dolan no longer requires additional time in service to reach 20 years to apply for retirement. Moreover, AGR officers in the past have generally been limited to 20 years. However, a recent policy change created "extension boards" to consider and retain AGR officers beyond 20 years. So simple reinstatement to complete 20 years is no longer the only option.

Finally, clarifying relief sought depends on Dolan's response to defendant's motion. Defendant argued that in this case, there are "only two possible outcomes that remain: award of physical disability benefits or elimination." Def. Mtn. 13. However, as set forth below if the Court finds that Dolan was wrongfully discharged in 2001 then the Army is precluded– legally and practically– from completing the disability evaluation. Consequently, final action on the elimination proceeding is foreclosed. This narrows Dolan's claim to challenging the wrongful discharge, that he was unlawfully released on March 14, 2001, and has never been legally separated. If Dolan prevails before the Court, the parties should consult to determine the specific relief remaining under a joint stipulation of damages.

III. Statement of Facts

Dolan has fully set forth the facts in his Proposed Findings of Uncontroverted Fact. They need not be repeated here. Dolan respectfully refers the Court to reivew first the proposed findings.

**SUMMARY OF ARGUMENT**

This is a wrongful discharge case where the Army in 2001 violated its own procedures by failing to keep Major Dolan on active duty on medical hold after his elimination proceeding. The Army had to wait and complete an ongoing disability evaluation process to see if Major Dolan was physically unfit for retention. And only with the completed results of the both elimination and disability proceedings did the Secretary have the authority to *then* make an "appropriate disposition" and decide on retention options. This is referred to as the "simultaneous process" rule. Ineligible officers are under court-martial charges or criminal investigation with a view toward court-martial and sentence of punitive dismissal.

Appropriate disposition options after simultaneous processing have many outcomes back in 2001: (1) to eliminate Dolan, thus forfeiting any treatment or disability benefits. In Dolan's case, this would have untoward health consequences— after unsuccessful shoulder surgeries he was undergoing physical therapy and rehabilitation, and secondly, the surgeries postponed remedial knee surgery. (2) alternatively, medically retire Dolan with full disability benefits or severance pay, (3) or if Dolan's unfitting medical conditions were unstable, place him on the "Temporary Disability Retired List." (4) Or if physically unfit, the Secretary could retain him under a special disability program called "Continuation on Active Duty" to reach an early or 20 year retirement. COAD is for medically unfit soldiers with over 15 but less than 20. (5) Or, because the extension on active duty to complete disability processing would cause Dolan to reach 19 years service, the Secretary may have granted him an early regular retirement. (6) Or with over 19 years, the Secretary may have extended him to complete a 20 years as a "retirement in lieu of discharge."

But Army officials arbitrarily refused a medical hold from a confused reading of the "simultaneous process" rule. They mixed apples with oranges with a curious statement that because Dolan was eliminated he was "processed for dismissal." This presumes ineligibility that Dolan in 2001 was under criminal investigation with a view toward trial and dismissal. The interpretation cannot withstand a plain reading of the regulations. The presumed facts do not exist.

When Dolan appealed his discharge to the Army BCMR, the decision strongly suggests the board invented facts then distorted regulations to fit the 2001 denial of medical hold. The BCMR said Dolan was discharged under a special type of resignation used for soldiers under criminal investigation— "Resignation For the Good of the Service in lieu of court martial." No resignation was submitted. Major Dolan demanded and appeared before an administrative hearing called a "Board of Inquiry." The BOI initiating documents by regulation expressly defined the proceeding *not* as an "investigation" but an "elimination action." The worst sanction legally allowed by every BOI is an administrative discharge, not a dismissal.

At the same time elimination processing began, Major Dolan underwent a mandatory "separation" medical exam. The exam uncovered many medical problems, including the need for two remedial surgeries on his injured shoulders. The surgeries occurred in late 2000. But full recovery relied on physical therapy for 6 months through May 2001. This postponed remedial surgery on another diagnosed chronic condition— knee replacement. Regulation states that many soldiers pending separation undergo treatment and surgery with the hope of improving health, although noting that failed recovery may be disabling.

By early March 2001, the surgeon found the surgeries were unsuccessful, leaving Dolan with disabilities and duty restrictions. Because he failed to meet Army retention standards the surgeon directed entry into the disability evaluation system, convening a Medical Evaluation Board (MEB). The MEB documented the shoulder and knee disabilities, with a preliminary, unapproved conclusion that Dolan failed to meet retention standards. Only the next level board (PEB) may find a soldier physically unfit. While the MEB was half-complete, the Army hospital requested a

medical hold. But as stated above, this was denied. Dolan was eliminated on March 14, 2001 for "unacceptable conduct" with a General Discharge.

The cut short MEB was never finalized–it lacked any evaluation of Dolan's multiple other medical disabilities, lacked required input from patient-Dolan, lacked a recommendation for a PEB, and was not approved. Upon discharge, Dolan's disability evaluation never reached a determination whether he was fit or unfit for any medical problem.

The Veterans Administration subsequently rated Dolan 100% totally disabled *retroactive* to his Army discharge date. This was for all the service-connected medical problems left unresolved and pending by the MEB when the Army pulled its plug.

The Army in March 2001 was required to retain Major Dolan: (1) he had entered the disability evaluation process, and (2) he was not under investigation. The Army could not bypass its own "dual processing" rules to unilaterally discontinue a disability evaluation it had already decided was required. Because final disability results were never forwarded to the Secretary, neither could the elimination process become final, making *ultra vires* the discharge orders of March 14, 2001. Major Dolan was never legally separated.

The procedural defect cannot be cured *ex post facto* on a remand to the BCMR. The act of discharge in 2001 prejudiced Dolan by establishing the regulatory "presumption of fitness." Implementing a statute, this is an evidentiary rule shifting the burden of proof on future disability appeals against any medical conditions unresolved at the time of separation. The presumption is defined as an "inference of truth that needs no proof of factual support." It is designed to protect the military and to disadvantage ex-servicemembers. All the services' have medical hold procedures to protect the retention rights of their service-members against this institutional favoritism.

Because Dolan was required to be retained in a pay status to complete a fair disability processing, any reconsideration now as a civilian is discriminatory. That violates the military's equal protection statute. This bias also compromises Dolan's pre-discharge right to a "fair and

impartial" hearing on unfitness. With his disability reevaluation handicapped, no final action on elimination is sustainable. And even if Dolan returns to active duty, disability procedures time-bar renewed evaluation and processing after 1year.

The only outcomes in this case are; the Army unlawfully discharged Dolan in 2001, and the Army may not reconsider the disability or elimination questions.

## ARGUMENT

## I. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

### A. At the time of referral to an MEB, Major Dolan was not under investigation but pending administrative elimination, and therefore eligible to continue his healthcare and disability processing. ¶ 1-23a, A.Reg. 600-8-24

There was not any investigation within the meaning of ¶ 1-23 that "may" be used to revoke Dolan's entitlement contract that required extension on active duty for exigent medical reasons. Id ¶ 1-22b (officer "may" be retained past separation date for medical reasons when continued hospitalization/disability processing required). After the "offense report" of February 1999, the commander ended the investigation by administratively imposing non-judicial punishment under Article 15. Appellate review was completed on March 12, 1999. Pl.Ex.E ¶ 16. The conduct "was" no longer subject to ongoing Article 15 proceedings or charges. PFOF ¶ 19C. (A.Reg. 600-8-24, ¶ 4-18d,(3),(4)(elimination action may be initiated for conduct that was subject of charges or Article 15 proceedings).

The next action was May 12, 1999. A "Flag" was placed on Dolan's records for the administrative reason of a "field-initiated" elimination action. The Flag and regulatory definitions show this reason was not designated an investigation. PFOF ¶¶ 17-18. Moreover, later Dolan's formal notice of elimination specifically ruled out any resulting penalty worse than the administrative sanction— discharge characterization UOTHC. PFOF ¶ 14. Therefore, an elimination action cannot fall within the ¶ 1-23 definition of an investigation for an offense chargeable under the UCMJ that could result in court-martial sentence of punitive dismissal.
It appears the Army BCMR was not arguing eliminations are investigations within ¶ 1-23. Rather,

the BCMR relies on its mistaken narrative that Dolan had submitted a resignation before the elimination BOI convened— the procedurally distinct "Resignation for the Good of the Service" in lieu of general court-martial (RFGOS). Arguendo, there was an investigation floating about for offenses chargeable by trial with maximum punishments making him ineligible for disability processing.

This argument by the BCMR appears contrived in classic *post hoc* fashion. It earlier mentioned in its decision that Dolan was notified that the elimination action was initiated, and that a Board of Review (BOR) affirmed the elimination denying his appeal. PFOF 34E. To steer around these inconveniences the BCMR seems to invent facts. It then does violence to Army regulations and the adjudicatory process.

The BCMR first falsely states that no BOI convened because a resignation was submitted, and forwarded. It then implies that a "Board of Review" does not review BOI elimination hearings. But instead the BOR is the regulatory successor to the Army's Active Duty Board (never mind the DAADB is not an elimination procedure). The BCMR then borrows from obsolete regulations and unrelated provisions to convert the distinct "resignation in-lieu-of elimination" into a RFGOS. This implies Dolan was resigning in-lieu-of going to prison. The BCMR creates an unintelligible narrative: beginning as an elimination action; no BOI convened because a resignation was forwarded to a DAADB; then ending with the resignation transforming itself into a RFGOS to avoiding imminent court-martial charges. These mistakes are fully set forth in PFOF ¶¶ 34, 34A through 34E.

Since March 14, 2001, Dolan has endured the societal stigma of a General Discharge for unacceptable conduct. He endured the personal disgrace of forfeiting his active duty military career. The BCMR's handling of his case was either in bad faith, or wholesale abandonment of its adjudicatory function.

**<u>Defendant's Position</u>**

The defendant appears ambivalent whether to discredit this analysis by the BCMR. The defendant initially states perfunctorily without any support, "it is not conceded" Dolan was improperly denied retention. Def.Motion 12. But defendant then later makes an ambiguous proffer— "Assuming <u>arguendo</u> [Dolan] was not under investigation" then there are two possible outcomes if he had been extended for disability processing. <u>Id</u> 13. Both defendant's motions to dismiss or remand, rely on what it ultimately argues are these two outcomes: under ¶ 1-23 Dolan was found unfit and medically retired, or if found fit the Secretary approved the elimination. <u>Id</u> In any event, defendant still leaves hanging an implicit refusal to concede that Dolan was *not* under investigation upon referral to the MEB. And therefore leaves open the question whether Army denial of his medical extension in 2001 was unlawful. Only by addressing these two issues <u>seriatum</u> can the appropriate remedy be determined.

**B. Major Dolan was "required" to be retained past March 14, 2001, because his referral to the MEB was a determination that he had "a medical impairment not meeting retention standards." ¶ ¶ 1-22b, 1-23 , A.Reg. 600-8-24**

Upon finding Major Dolan at his separation physical exam had multiple medical conditions failing retention standards, LTC Schaefer exercised his authority to open an MEB. PFOF ¶ 47 (A.Reg. 40-501 ¶¶ 3-3b, d (soldiers not meeting medical retention standards "will be evaluated by an MEB," including when physician-directed). The MEB and an Addendum written after discharge, include at least four diagnosed medical impairments involving both shoulders, knees, and back.

The MEB was also initiated when two profiling officers— LTC Schaefer and Maj(P) Kim— referred Dolan to an MEB because they had issued permanent physical profiles with "3-U" for Upper extremities, and "2-L" for Lower extremities (on scale of 1 to 4, the latter most restrictive). The profile was assessed as based upon medical conditions not meeting retention standards. PFOF 48. (<u>Id</u> ¶ 7-4b(1)(permanent profile requires profiling officer's assessment if MEB required when soldier fails retention standards). And because these permanent profiles were issued part and parcel with the physician-directed MEB, this substantiates LTC Schaefer's referral as

profiles are "in relation to military duties." Pl.Appx. Vol.III 83 (¶ 7-3a, profile system based on function of body systems and their relation to military duties). These two physicians established in relation to Dolan's military duties a "3-U" meaning in the upper extremities a "defect or impairment that requires a significant restriction of use," and "2-L" meaning in the lower extremities "slightly limited mobility of joints, or weakness"). PFOF ¶ 49 (Id ¶ 7-8a, Table 7-1).

The facts shows this initial disability processing went beyond mere referral to an MEB. The MEB convened and concluded that Major Dolan "fails to meet retention criteria in accordance with AR 40-501 [for his left shoulder]." PFOF ¶ 50. Thirdly, the MEB then made a recommendation that "Major Dolan is unfit for retention at this point." However, because the discharge interrupted the MEB, section 14 is left empty that indicates recommendations: returned to duty, returned to duty with limitations, referred to a PEB or other action. Pl.Ex. C 17. Although the MEB is signed, further sections 16, 20-30 remain blank, including COAD, action by patient, appeal, and approval of MEB proceedings. Id C 18. See PFOF ¶ 25B (discussing special Continuation on Active Duty program).

The language of ¶¶ 1-22 and 1-23 read together states that retention past a scheduled elimination date for medical reasons is *required* when "it is determined that the officer has a medical impairment that does not meet medical retention standards." PFOF 65. There is no prerequisite for an approved MEB or PEB. It is sufficient to trigger the requirement upon a physician-directed MEB because the medical threshold is the same.

In addition there are two procedural steps beyond a physician-directed MEB that relied on the same threshold standard. Two profiling officers issued a permanent profile for such physical conditions and duty restrictions that made Dolan fall below retention standards, warranting an MEB. Secondly, the MEB could not convene unless appointed by the commander of the hospital (Medical Treatment Facility, or MTF). Pl.Appx. Vol.III 105 (¶ 7-2). Appointment of an MEB presumes that the commander made a preliminary threshold determination from the referring physician's exam. Id 60 ¶ 4-9 (based on medical exam, the MTF commander will refer soldiers to MEB "if it appears the soldier is not medically qualified to perform duty.").

Finally, the policy of the Army's disability system on the use of MEBs is set forth under A.Reg. 40-400 (*Patient Administration)* ¶ 7-5:

> Only those patients that present problematic or controversial aspects, and those in which MEB action is required by regulation, should be referred to the MEB before disposition.

PFOF ¶ 54 (Pl.Appx. Vol.III.105). The regulation already requires an MEB from physician-referrals and profiling officers. This MEB policy expands the circumstances where its use is appropriate. The three criteria are: where PEB referral is contemplated; for defects that are usually progressive and where reasonable recovery cannot be established; or where return to duty is questionable, problematic, or controversial. The evidence shows that all three criteria were at issue with Dolan's MEB— the board made a recommendation of unfitness "at this point in time," along with issuing an accompanying permanent profile for both upper an lower extremities. In sum, the MEB narrative summary shows that Dolan's entry into the disability system was required.

Plaintiff-Dolan has established that at the time of his MEB referral he remained eligible to be retained on active duty because he was not under investigation. Secondly, Dolan established that the Army was required to retain him beyond his elimination date to process him through its disability system. This relied on four separate determinations that Major Dolan had a medical impairment not meeting retention standards— physician exam and directed-MEB, hospital commander's appointment convening the MEB, the actual MEB conclusions and its recommendation of unfitness, and the permanent profile requiring an MEB.

**C. Dolan's claim is justiciable because the Army's discharge and disability procedure provide standards and tests which courts can administer within their competence.**

Defendant's argument in support of it 12(b)(1) motion is without merit. Defendant phrases its contention that the court is without jurisdiction to set aside his involuntary separation, revise his duty orders and restore him to active duty. Def. Motion 9 (citing Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953), and Murphy v. United States, 993 F.2d 871, 873 (Fed.Cir.1993). The defendant resurrects these cases as a bar to hearing cases involving military assignment orders that were voided and required extension on active duty. As set forth below, defendant's argument is

misplaced. Dolan's claim does not require the Court to peer into the underlying substantive merits of the elimination action, nor examine whether Dolan in 2001 was physically fit or unfit. This case narrowly seeks review of the procedural regularity of eliminating Dolan when retention was required for continued medical care and disability processing.

**Standard of Review**

First, the 12(b)(1) jurisdictional issue when properly framed is whether Dolan' claim is justiciable to void his discharge and find he was never legally separated. The issue has been already addressed and carefully distinguished in two cases. Dodson v. Department of Army, 988 F.2d 1199, n. 7, 1206-07 (Fed.Cir.1993) (claim justiciable that Army violated procedure by ignoring extension request pending soldier's appeal of bar to reenlistment; discharge voided with soldier reinstated to complete extension of service). The second case distinguished the cases of Orloff and Murphy. In Bond v. United States, 47 Fed.Cl. 641 (2000), the court found the officer's claim for wrongful discharge and retired back pay was justiciable. There, a reservist's release from active duty violated standards that commanders must follow when issuing certain types of duty orders:

> This court has consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy.

Id 647-48 (2000)(citing Adkins v. United States, 68 F.3d 1317, 1323 (Fed.Cir.1995), reh'g denied (1996)).

A military decision may be challenged if there is a specific constitutional, statutory, or regulatory violation. Wilson v. United States, 24 Cl.Ct. 842, 845 (1992). Regarding regulatory challenges, "[it] has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all...." Voge v. United States, 844 F.2d 776, 779 (Fed.Cir.1988).

Similarly as found in Sargisson v. United States, the court determined that,

> [t]he statute does not place any procedural or substantive limitations on the Secretary's discretion. Nevertheless, once the Secretary promulgated regulations and instructions ... his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all.

Id 913 F.2d 918, 921 (Fed.Cir.1990).

The next issue is whether the violation provides any tests or standards a court can apply to determine agency compliance. On procedural matters, the test or standard is inherent. In instances where there are applicable tests and standards, the courts do not improperly exercise any discretion reserved for the military; "it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." Bond 651, quoting Murphy, 993 F.2d at 873. In drafting the appropriate remedy in Bond that court looked to the analysis and remedy in Dodson. Id at 662-663. The Bond court similarly distinguished Orloff:

> The court refused to address the restrictions the Army placed on Dr. Orloff's medical duties, reasoning that specific assignments to duty within a general field are not reviewable. "[W]e have found no case where this Court has assumed to revise duty orders as to one lawfully in the service." Id. at 94, 73 S.Ct. 534. It is important to note that in making this statement, the Court was referring to duty assignments that were not governed by a controlling regulation or statute, which renders this aspect of the *Orloff* ruling distinguishable from the case at bar. * * * The Army's discretion in assigning Dr. Orloff was not unlimited because the statute governing the induction of doctors legally obligated the Army to assign doctors to "duties falling within 'medical and allied specialist categories.' " *Id.* at 92, 73 S.Ct. 534.

Bond 650.

In Dodson, the regulation stated that once a commander's appeal was pending for the Bar to Reenlistment, the Army could not "unilaterally discontinue" his ongoing appeal and discharge him. Id 1206. Although Dodson's had received a "Bar to Reenlistment" it was imposed under the Army's Qualitative Management Program that retain "only those best qualified soldiers" while discharging "nonproductive solders" before their enlistment contract expires. Id 1201. The QMP discharge is analogous to Dolan's elimination procedure because both allow the Army to involuntarily discontinue service for adverse reasons.

Sergeant Dodson was not a commissioned officer with an indefinite status. Rather, his remedy was limited to retention for the remainder of his enlistment contract. The court could not re-enlist Dodson to continue his service beyond that point. "We can however remedy the defective

process so as to put Dodson into the position that he would have been had the proper procedures been followed at the relevant times." Id 1208. There is no enlistment impediment with Major Dolan as an officer on indefinite status. Pl.Appx.Vol.II 24 (¶ 1-22f, default standard is that "the officer will be retained until a [disability] decision is reached").

The retention remedy in Dodson was similar in Bond although LTC Bond was an officer on indefinite status. When the reservist LTC Bond was activated to begin his active duty, he reached 18 years of service to apply for "sanctuary" to reach a 20 year retirement.[1] After Bond started his active duty tour, his request to be retained on active duty was denied, and was released. His commander had determined his orders were for reserve training not active duty. Because the commander failed to apply the regulatory standards for types of duty, the orders were misclassified as "for training." The Court found that

> When Bond began the [active] duty, he was qualified to request sanctuary, which was improperly denied. Because LTC Bond properly applied to remain on active duty under the provisions of ...., the Air Force erred in involuntarily releasing him before he became eligible for retirement pay.

Id 665. In subsequent proceedings to determine appropriate relief, the Air Force agreed to constructively reinstate Bond to complete 20 years on active duty, then retired him with back pay.[2]

In sum, there are tests or standards against which this Court can measure the Army's compliance in 2001 with its "simultaneous processing" rule for both elimination and disability. PFOF ¶¶ 21-22. These standards are amply set forth in Dolan's Proposed Finding of Facts. They limit the Army's discretion to eliminate an officer by "requiring" retention for the medical reasons of continued care and/or disability processing until whenever a retention decision is reached by the proper authority." ¶¶ 1-22b, 1-23, A.Reg. 600-8-24. Continued care means "attainment of maximum hospital benefits." PFOF 26D (A.Reg. 635-40 (¶ 3-7). For the latter medical reason of

---

[1] The sanctuary statute is 10 U.S.C. § 1163(d) (1988)("member of a reserve component who is on active duty (other than for training) and within two years of becoming eligible for retired pay...may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.").

[2] Although this specific remedy is unreported in the initial decision, Bond's counsel was the undersigned.

disability processing, retention is allow processing "through the MEB/PEB system" until a final result. That means at least through formal review before the Army Physical Disability Agency, and appeal before the Physical Disability Appeal Board. And still found unfit, to allow forwarding to the Secretary for "appropriate disposition" with the suspended elimination action. ¶ 1-23b.

Absent ineligible officers under investigation, the medical retention request must meet the threshold determination that the officer "has a medical impairment not meeting retention standards." ¶ 1-23. The tests include whether there is a physician-directed MEB after an exam, or from issuance of permanent physical profile. The Surgeon General's disapproval of the Dolan's retention request in 2001 admitted that the request was submitted for "physical disability processing." Pl.Ex. C 26 ¶ 3. The only reason for the disapproval of the retention request was ineligibility— albeit erroneously— for officers under investigation, citing under ¶ 1-23a.

Finally, the Army was not obligated to create these regulatory standards to determine when officers facing elimination are medically retained. Service v. Dulles, 354 U.S. 363, 388 (1957) (while Secretary was not obligated to impose upon himself more rigorous substantive and procedural standards, having done so he could not proceed without regard to them). It follows that when the Army created medical retention rules to suspend eliminations, it was implementing the soldiers' statutory entitlements to timely access to medical care. The Army could not in 2001 ignore its own rules. PFOF ¶¶ 25, 56. (10 U.S.C. § 1074, entitled to medical care under timeliness standards); DODD 1332.18 (members referred into the disability system shall be processed in timely manner; service secretaries shall manage their disability systems to ensure evaluation accomplished in timely manner).

**D. Because the Army's refusal to continue Dolan on active duty for a medical evaluation was unlawful, he was never legally separated in March 2001.**

Once Dolan met the requirements for medical hold, and the extension request was properly submitted, the Army in March 2001 could not unilaterally discontinue his ongoing disability process and eliminate him. This is a wrongful discharge because by regulation, until completed disability

results are forwarded to the Secretary, any action approving elimination was *ultra vires*, and the discharge orders for March 14, 2001, were without effect.

This conclusion not does not require the Court to improperly exercise any discretion reserved for the military, nor to revise duty orders to reinstate Dolan, nor to mandate a specific remedy. But rather, to merely determine whether the procedures were followed by applying the facts to regulatory standards— as the courts in Bond and Dodson recognized the separation dates became a nullity with retention occurring by operation of law. Similarly, the remedy for the defective process is to put Dolan back into the position he would have been had Army followed its medical retention procedures at the relevant time.

The defendant's argument in both motions already begs this result with its hypothetical question of how long Major Dolan should have been retained in a pay status beyond March 14, 2001, in order to proceed through the disability system:

> Even assuming, arguendo, Mr. Dolan's allegation was not properly processed...he would not be entitled to be restored to active duty with back pay and allowances *until* qualifying for 20-year retirement.
> * * *
> Assuming, arguendo he was not under investigation...he should have been processed in accordance with paragraph 1-23....*through the MEB/PEB process*....if found physically fit, the Army Physical Disability Agency [APDA] would have approved the findings and forwarded them in order *to proceed* with the elimination.

Def.Motion 12-13 [italics added].

But defendant's motion to remand sidesteps the underlying issue of unlawful separation. It bypasses the remedies in Dodson and Bond that restored those plaintiffs' pay status. Defendant detours the Court by disguising this case as a traditional disability claim that maintain the *status quo* so that a BCMR can reconsider new medical evidence whether to replace the discharge into a disability retirement. That remedy applies to former members already placed into an incorrect status and seeking to convert that into an appropriate disability status. Sawyer v. United States, 930 F.2d 1557 (Fed.Cir.1991) (service member disabled from own misconduct and discharged without benefits, sought change into disability with pay); Robbins v. United States, 29 Fed. Cl. 717 (1993) (sought increased disability rating to qualify for medical retirement from medical discharge with

severance pay); Jordan v. United States, 205 Ct.Cl. 65 (1974)(sought disability retired pay from date of honorable discharge).

The defendant cannot sever the issues of unlawful separation from the disability evaluation. Dolan has established that his elimination could not go forward without the hearings and reviews accompanying the entire disability evaluation process. Therefore, defendant has no basis to retroactively justify the 2001 discharge. Cf. Hamlin v. United States 391 F.2d 941, 943 (1968) (officer automatically dismissed after civilian court's bribery indictment; when indictment rescinded Army could not retroactively justify officer's prior discharge without conducting pre-discharge administrative hearing). Analogous to Dodson, the officer in Hamlin was unlawfully dismissed.

**E. Dolan was prejudiced when the Army failed to medically retain him in pay status after March 14, 2001, cutting short his MEB, ending further disability proceedings.**

**(1) The Army's procedural error in denying medical retention placed Dolan in the disadvantaged position to overcome a presumption of fitness that was permanently established upon discharge, therefore prejudicing his right to a fair and impartial hearing on unfitness and final action on elimination.**

The presumption of fitness.

When a soldier is processed for non-disability separation, the continued performance of duty creates a presumption of fitness upon discharge. Statute also provides that compensable disabilities may not be awarded unless it was determined that medical impairments were unfitting to perform military duties while in a pay status. DoD disability regulation defines *presumption* as an "inference of truth that needs no proof to support." PFOF ¶¶ 55, 55A.

Once the fitness presumption applies, it is difficult to overcome by former service members— the evidentiary burden shifts to them. Military records must show (1) the soldier was, in fact, physically unable to perform duties with a causative relationship to the medical condition, or (2) an acute, grave illness or injury or other significant deterioration had occurred before separation. Id ¶ 55A. Consequently, the fitness presumption places a high premium on retaining eligible soldiers to complete disability evaluation:

> it is critical that MEBs are complete and reflect all of the soldier's medical problems and physical limitations * * * evaluate thoroughly and report all abnormalities and their impact on fitness for duty ...This particularly important when there is a chronic condition.

PFOF ¶ 54 (uses of MEB). Completing these medical and physical evaluations while still on active duty underpins Army policy that its disability processing "protect the rights and interests" of the soldier. Pl.Appx. Vol.III. 47.

The Army discharged Major Dolan with an incomplete MEB. It left unresolved the medical problems, there is no recommendation for a PEB, no patient appeal, and no approved MEB proceedings. Upon discharge, the statutory and regulatory "presumption of fitness" forever shifted the burden of proof to Dolan— as any to former servicemember— to then prove that these medical impairments MEB made him physically unfit *at the time* of discharge. But even this MEB was without dispute tentative, unchallenged by appeal, nor approved. In effect, non-final and precatory. Instructive here is Ferrell v. United States 23 Cl.Ct. 562, 570 (1991) (former airman sought to convert voluntary discharge into disability benefits after denied "medical hold" during service; prejudiced in BCMR appeal because as a former member was nearly impossible to overcome presumption of fitness).

Secondly, Major Dolan's premature removal from a pay status cast in stone this presumptive bias for the entire disability process that follows. It forecloses the fairness and impartiality of a hearing on the ultimate question of unfitness, under 10 U.S.C. § 1214. This in turn defeats the simultaneous processing rule because a biased disability process ultimately corrupts the final Secretarial "appropriate disposition" on the pending elimination. A.Reg. 600-8-24 ¶ 1-23b. The overall disposition presupposes that Dolan, as every similarly situated officer, completed the entire MEB/PEB process on active duty. Id (retained officer "will be processed through the MEB/PEB system" until final result). Dolan has much more at stake than loss of monetary disability benefits, but the lifelong stigma of a General Discharge.

Thirdly, once the level playing field was erased in 2001, the ex-soldier and civilian Dolan no longer is provided an unbiased evaluation on the post-discharge evidence in this case. The high bar

of presumptive fitness now recharacterizes this evidence as *extra*-service documents with dubious probative value. This includes:

1). The other medical impairments reported in his health questionnaire of March 16, and IG complaint of March 29 (postoperative perirectal abscess and related degenerative disc disease, chronic stress syndrome and depression, hearing problems [tinnitus]).Pl.Ex.C 25A-25C; Id D28-29;

2). The letter of support submitted post-discharge with the questionnaire, from his psychiatrist for ongoing psychiatric problems; Pl.Ex. C 22A.

3). The proffered Addendum of March 26 to the MEB by LTC Schaefer regarding the degenerative disc disease; Pl.Ex. C 21.

4). Reevaluation whether ongoing physical therapy for shoulders and knees had no reasonable expectation of recovery. Pl.Ex.C25C (health questionnaire).

5). Major Dolan's right to counseling by a PEBLO was terminated upon discharge. The PEBLO's purpose is to guide soldiers through the MEB process, to allow proper exercise of rights to explain, augment or appeal MEB. In effect, to ensure the MEB is complete and accurate after full participation and input from the patient.

As a consequence, this post-discharge evidence is relegated to an inferior evidentiary status equivalent to VA disability ratings based on disparate civilian system— either immaterial or irrelevant. Although VA ratings may sometimes be helpful, the military is always quick to show VA ratings never bind the military's unfitness equation, and thus are routinely discounted by the presumption of fitness at discharge. Haskins v,. United States, 51 Fed.Cl. 818, 826 (2002)(VA ratings not binding on Army to increase ratings for shoulder and psychological conditions); Aubre v. United States, 40 Fed.Cl. 371, 380 (1998)(proper for BCMR to discount VA ratings as they afford relief to former members later disabled for service connected injuries, not whether plaintiff disabled at the time of discharge); Pomory v. United States, 39 Fed.Cl. 213, 219 (1997)(Army entitled to give little weight to VA ratings).

So in Dolan's circumstance at the time of discharge is lacking final resolution on his medical impairments from an MEB, and nothing from a PEB on unfitness. The Army deprived Dolan of

that opportunity. He is now, in effect, placed in the unfavorable position of attempting to complete the Army's aborted disability process for various conditions but with already marginalized VA ratings and other post-discharge evidence. Pl.Ex. E 51 (effective March 15, 2001, VA awarding 20% for left shoulder degenerative joint disease; 10% right shoulder degenerative joint disease; 10% left knee patellafemoral syndrome; 10% degenerative disc disease at L4-5 and related 10% for perirectal abscess, 30% chronic depression and stress, and 10% hearing disorder tinnitus).

This biased disability re-evaluation will violate the regulatory policy that to ensure that the "rights and interests of the Government and the solder are protected." Pl.Appx. Vol.III. 47. Major Dolan also signed a contract of rights on March 13 as legal consideration for retention. PFOF ¶ 61 (affidavit). PFOF ¶ 61.[3] One of the implied regulatory and contract "rights" is a disability evaluation in the proper pay status unencumbered with the evidentiary burdens imposed on former members with the fitness presumption. Pl.Appx.Vol.II 24 (¶ 1-22f, "the officer will be retained until a [disability] decision is reached").

The biased disability re-evaluation that now prejudices Dolan after wrongfully discharged also violates the military's equal protection statute:

**10 U.S.C. § 10209. Regular and reserve components: discrimination prohibited**

Laws applying to both Regulars and Reserves shall be administered without discrimination–

(1) among Regulars
(2) among Reserves; and
(3) between Regulars and Reserves.

Pl.Appx.Vol.III 115 The simultaneous processing rules under ¶¶ 1-22, 1-23 of A.Reg. 600-8-24, that retain officers for disability and elimination processing make no distinction between a soldier's component when on active duty— nor even among Reservists based on the type of active duty (e.g. in AGR, presidential recall, extended tours). Major Dolan's unlawful discharge from active duty

[3] "Having been fully advised of the rights and advantages that may accrue to me by voluntarily remaining on active duty...for the purpose of completing hospital care and/or physical disability evaluation under the provisions of Chapter 61, Title 10, USC, .... in consideration of the above, I DO desire retention on active duty."

subjects him now as a civilian to the adverse presumptions of fitness that do not apply to soldiers medically retained "through the MEB/PEB process" until the final result. Id 1-23(b).

In sum, Defendant's remand seeks allegedly to reconsider the fitness question as a predicate to the ultimate fate of Dolan's elimination action. Defendant disingenuously offers Dolan the same "catch 22" situation the court found "troubling" in Ferrell. Id 569 (Ferrell after remand was handicapped and unable to show physical disability at time of discharge; but the reason was because the failure to place his discharge on medical hold denied him "the opportunity to prove he was disabled" during service).

**(2) Prejudice from missing medical and personnel records, with inability to reconstruct six years later Dolan's medical condition at time of discharge.**

No doubt complicated by the fact Dolan was discharged six years ago, defendant and plaintiff are unable to obtain Dolan's complete personnel and health records. This difficulty is first reflected in the BCMR's 2004 decision containing appalling factual mistakes, some the result of an attempt to fill gaps in the "evidence of record." 32 C.F.R. § 581.3(c)(2)(iii) (cases decided on evidence of record); Id § 583.1(b)(5), (6)(Army Records Holding Agencies and staff offices will furnish to Board all requested military records, documents, investigations and information).

Prior to defendant's April 26 motion for extension of time, opposing counsel contacted undersigned asking for Dolan's records because the Army was unable to locate them. Undersigned replied that his files were incomplete as well, with Dolan's own pending request from the military archives of the National Personnel Records Center (NPRC). Defendant then filed for its April extension stating "the Army has not yet received Mr. Dolan's underlying Army records." Id 2. And shortly before defendant filed its dispositive motion in May, opposing counsel again called saying it still had no records and asking plaintiff for assistance. Despite a motion to remand, defendant provides no administrative record. It shifts that burden on Dolan to "include any and all materials he deems appropriate." Def.Motion. 14.

Dolan, through counsel, did in March 2007 request his records from the NRPC. Pl.Ex. A 1 (NRPC reply letter). Responses were provided in April and May. However, "some personnel and

health records were missing or no longer available." Pl.Ex. F 54 ¶ 1 (Dolan Decl.) For example, the missing records relate to pre-discharge medical problems with his knees and shoulders. This included missing records of a physician's prognosis of unfitness for duty from chronic knee pain. However, surgery was postponed in lieu of the priority of remedial shoulder surgery and it own six-month therapy plan. Id ¶¶ 2-6.

Missing and incomplete records presents insurmountable practical barriers when trying to recreate Dolan's medical condition at the time of discharge. This is illustrated in Ferrell when the plaintiff suffered prejudice without disability proceedings before discharge:

> Instead, an MEB and PEB were convened five years later in an effort to determine Ferrell's condition. The Air Force regulations highlight the necessity to evaluate potential disability retirees prior to discharge.

Id at 569.

Although Mr. Ferrell before the court sought the traditional relief of converting his discharge into disability benefits, that aspect of the case is distinguishable from Dolan. Medical hold was denied because Ferrell submitted and was processed for a voluntary discharge. Secondly, he never met the medical threshold requirements for a hold— no physician referred him to an MEB, and at the time only had a temporary physical profile that "permits" future monitoring and evaluation. Id 569. The court was left speculating that a physician should have referred him to an MEB that then should have evaluated the temporary profile, so that a medical hold would be appropriate. Id.

**(3) With nearly 19 years active duty at discharge, the failure to retain prejudiced Dolan's right to additional service likely to qualify for retirement-in-lieu of elimination.**

The defendant's motions argue that it would make no difference if Dolan was retained because "under no circumstances would he have been entitled to remain on active duty until reaching retirement." Id 12. Defendant erroneously believes that Dolan's retention— with barely 18 years service— would never reach the requisite 19 ½ years to apply for retirement in-lieu, an option until final action by the Secretary. Properly calculated, Dolan on March 14, 2001, would have accrued about 18 years six months active service. And one of the express advantages advised to

every soldier medically retained is "the additional service is creditable for longevity and retirement." Pl.Appx. Vol.II 24 (A.Reg. 600-8-24, 1-22d(4)).

Generally, medical retention for just MEB/PEB processing can up to 5 months, bringing Dolan up to nearly 19 years. Pl.Appx.Vol.V 155 (GAO Report, *The Military Disability System: Improved Oversight Needs To Ensure Consistent and Timely Outcomes* (March 2006). The report found that since 2001, MEB/PEB processing times for most disability cases fails to meet the 70-day time limit with the majority or 44% over 90 days, and of that 24% over 120 days.

These GAO figures do not include two further boards— review of PEBs by the Army Physical Disability Agency, and appeal before the Physical Disability Appeal Board. The additional time for these actions is not stated. But review and appeal does allow for written rebuttals, and a formal hearing if not already provided before a PEB. Pl.Appx. Vol.III 75-76. Under traditional administrative practice it can be presumed 30-45 days for each board to review a rebuttal and decide, or another 60-90 total days.

In Dolan's case, there is additional time required assuming Dolan is unfit. After this finding, both the elimination and disability results must be "forwarded to the Secretary of the Army for determination of appropriate disposition." This certainly is not a mere cipher but carefully weighing the important competing interests of elimination over depriving an officer of disability benefits for injuries accrued over a military career.

So all total, counting MEB/PEB processing, appellate reviews before final Secretarial action, brings Dolan within the 19½ years time eligibility window for retirement in-lieu. With the corrected service of over 19 years — versus 18 years— the defendant cannot speculate in hindsight (or on remand) what impact this would have on the Secretary's "appropriate disposition." Wagner v. United States, 365 F.3d 1358, 1364-65 (2004)(when board released officer on mistaken calculation he had less than 18 years so as to not require Secretarial preapproval, harmless error doctrine inapplicable so Secretary could not approve release post hoc).

**F. Because Dolan was never legally separated in March 14, 2001, he effectively remains on active duty; the appropriate remedy is for the parties to confer on the appropriate remedy.**

**(1) Because disability processing is time-barred after 1 year, the contingent elimination action cannot reach an appropriate final disposition.**

Completion of an MEB "normally must not exceed 30 days," while medical exams for purposes of separation are invalid after 12 months. Thirdly, members on active duty "shall" be referred into the disability evaluation system within one year after diagnosis of a medical impairment. PFOF ¶ 55. A.Reg. 635-40 ¶ 1-1. Moreover, all involuntary discharges "will be processed without delay." PFOF ¶ 57A.

Even assuming Dolan is constructively restored to active duty, it is a impossible to protect his rights in a new disability evaluation with incomplete records while trying to determine medical conditions six years ago. PFOF ¶ 57 (10 U.S.C. § 1074, timely access to care; DODD 1332.18 at ¶ 3.6, referral into the disability evaluation system shall be processed in a timely manner. Because the Army at this juncture is unable to provide Dolan with the opportunity for final disability results, the Secretary lacks authority to proceed in due course to make an "appropriate disposition, under ¶1-23b, A.Reg.600-8-24. Final action is foreclosed, nor be resurrected. This precludes defendant from arguing in its 12(b)6) motion that "only two possible outcomes" remain in this case under the simultaneous processing rule— award of disability benefits or elimination. Def.Motion. 13. No amendment to the complaint is necessary to alternatively add a claim for disability benefits.

Defendant may attempt to overcome this procedural roadblock. Perhaps by stipulating that <u>if</u> the simultaneous processing rules had been followed in 2001, Major Dolan would have been found unfit at some rating percentage, even accepting the VA's 100% overall rating. But this harmless error approach is inapplicable— the failure to complete the disability evaluation board proceedings was a "structural defect" in the elimination mechanism with the effect of such error unquantifiable, incapable of review. <u>Wisotsky v. United States</u>, 69 Fed.Cl. 299, 307 (2006)(<u>citing Arizona v. Fulminante</u>, 499 U.S. 279, 309 (1991), <u>and</u> <u>Wagner</u>, <u>supra</u> at 1363-64).

Because Dolan was never legally separated, final disposition on elimination is foreclosed, nor can be resurrected. Dolan would then be eligible for retirement. See e.g. Clary v. United States, 33 F.3d 1345, 1350 (Fed.Cir. 2003)(when officer met Navy's eligibility criteria for early retirement after BOI, entitlement was appropriate because its criteria equates to the 20-year retirement entitlement); Metz. v. United States, 65 Fed.Cl. 631, 637-38 (2005) (after setting aside as erroneous airman's resignation-in-lieu of court-martial for ineffective assistance of counsel, Air Force agreed there was no longer impediment to voluntary retirement), rev'd on other grounds 466 F.3d 991 (2006)(voluntary resignation deprived court of jurisdiction to enforce award of early retired pay).

The courts in Wisotsky and Wagner found the servicemembers were not legally separated, then instructed the parties to confer on damages and appropriate relief. Id at 311 (parties consult to determine appropriate relief); Id 1365 (remand to lower court for entry of appropriate remedy).

## CONCLUSION

For the foregoing reasons, the Court should grant Dolan's motion for summary judgment, and deny both defendant motions to dismiss or in the alternative to stay proceedings.

August 13, 2007

Respectfully submitted,
a/s John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO. 80439
(303) 670-3825