IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-166C (Judge C.O.C. Miller)

PAUL E. DOLAN

Plaintiff,

v.

THE UNITED STATES

Defendant,

**PLAINTIFF'S EXHIBIT E**

August 3, 2007

John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825
Counsel for plaintiff

EXHIBIT E, TABLE OF CONTENTS

Department of Defense Form 149, May 7, 2002, Major Dolan's Application for Correction of Military Records to Army BCMR....34

Record of Proceedings, February 24, 2004, and notification, Army BCMR, Docket Number AR2004-4988....35-47

Letter, April 25, 2005, denying request for reconsideration by BCMR....47A

Service-connected disability compensation decision, Department of Veterans Affairs, April 7, 2003 (retroactive to March 15, 2001; 80% for seven disabilities)....48-51

Service-connected disability compensation decision, Department of Veterans Affairs, September 15, 2004 (upgrade of depression from 30% to 50%, 100% rating for total unemployability....52-53

PAGES 32-33 OMITTED

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read instructions on reverse side BEFORE completing application.)*

*Form Approved OMB No. 0704-0003 Expires Sep 30, 2003*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10 US Code 1552, EO 9397.

**PRINCIPAL PURPOSE:** To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

**ROUTINE USE(S):** None.

**DISCLOSURE:** Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

## 1. APPLICANT DATA

a. BRANCH OF SERVICE *(X one)*: [X] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

| b. NAME *(Last, First, Middle Initial) (Please print)* | c. PRESENT PAY GRADE | d. SERVICE NUMBER *(If applicable)* | e. SSN |
|---|---|---|---|
| DOLAN, PAUL E. | MAJOR/O-4 | NA | 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 |

| 2. TYPE OF DISCHARGE *(If by court-martial, state type of court)* | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES *(Active duty, Retired, Reserve, etc.)* | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY *(YYYYMMDD)* |
|---|---|---|
| GENERAL UNDER HONORABLE | DISCHARGED AD/AGR | 20010314 |

**5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD**
9TH REGIONAL SUPPORT COMMAND
HONOLULU, HAWAII 96819-2135

**6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(No expense to the Government) (X one)*
[X] YES [ ] NO

**7. COUNSEL** *(If any)*
a. NAME *(Last, First, Middle Initial)*: NA
b. ADDRESS *(Street, Apartment Number, City, State and ZIP Code)*: NA

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:**
REQUEST REINSTATEMENT ON ACTIVE DUTY AND ANY ENTITLEMENTS DO TO ME. I HAD OVER 18 YEARS AFS AT MY DATE OF DISCHARGE AND WAS UNDER MEDICAL REHAB FOR SURGERY, REQUESTED HOLD.

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**
1. I WAS DISCHARGED WITH 18 YRS OF AFS THE DISCHARGED AUTHORITY WAS MISLEAD TO BELIEVE I HAD LESS THAN 18 YRS AFS. 2. THE ELIMINATION IS CONTRARY TO AR'S AND THE TOWER AMENDMENT. 3. THE MEDICAL HOLD EXTENSION FOR MEB PROCESSING WAS IGNORED.

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:** *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*
1. DAF 1506, COMP. OF SERVICE (ERRONEOUS) DTD 10/24/00. 2. DDF 214 DTD 03/14/ 01 3. ARPC F 249-2-E, STATEMENT OF RETIREMENT POINTS, DTD 06/26/00 & 05/04/01. 4. DAF 1559-R, INSPECTOR GENERAL ACTION REQUEST, DTD 03/29/01. 5. MEMO DTD 03/15/01, MED RETENT. 6. MEMO DTD 03/13/01, REQUST FOR EXTENSION. 7. AFFIDAVIT DTD 03/13/01. 8. MESS. DTD 02/13/01, SEPARATION. 9. ORDERS#D-02-800029, DISCHARGE. 10. DDF 257A DTD 03/14/01, GENERAL DISCHARGE. 11. ORDERS# R-08-004942 DTD 08/2798 AD

**11. ALLEGED ERROR OR INJUSTICE**

| a. DATE OF DISCOVERY *(YYYYMMDD)* | b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION. |
|---|---|
| 20010314 | NA |

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**
[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE** *(Applicant should forward notification of all changes of address.)*
P.O. BOX 1100
STRATFORD, CONNECTICUT 06615

b. TELEPHONE NUMBER *(Include Area Code)*: (800) 301-9918

DOCUMENT NUMBER *(Do not write in this space.)*: 89515 6-4-04

| 15. DATE SIGNED *(YYYYMMDD)* | 16. SIGNATURE *(Applicant must sign here.)* |
|---|---|
| 20020507 | [signature] |

AR20020763411

Department of the Army
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY 2ND FLOOR
ARLINGTON, VA 22202-4508

March 3, 2004

SFMR-RBR/DLT
DOLAN, PAUL E.
AR2003084896

Mr. Paul E. Dolan
PO Box 6
Machias, ME 04654-0006

Dear Mr. Dolan:

I regret to inform you that the Army Board for Correction of Military Records has denied your application.

The Board considered your application under procedures established by the Secretary of the Army. I enclose a copy of the Board's Record of Proceedings. This decision explains the Board's reasons for denying your application.

This decision is final. You may request reconsideration only if you can present newly discovered relevant evidence that was not available to the Board when it denied your application.

Sincerely,

Victor D. Whitney Team Chief
For Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure

Department of the Army
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY 2ND FLOOR
ARLINGTON, VA 22202-4508

March 3, 2004

SFMR-RBR/DLT

MEMORANDUM FOR U.S. ARMY REVIEW BOARDS AGENCY SUPPORT DIVISION – ST. LOUIS (SFMR-RBR-SL), 9700 PAGE AVENUE, ST. LOUIS, MISSOURI 63132-5200

SUBJECT: Army Board for Correction of Military Records Record of Proceedings DOLAN, PAUL E., 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, AR2003084896

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Prior to closing out the case, please refer to any Note contained in the Board Determination/Recommendation portion of the Board's Record of Proceedings, and take such administrative action as may be contained therein.

Victor D. Whitley Team Chief
For Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosures

CF:
( )OMPF

DEPARTMENT OF THE ARMY
BOARD FOR THE CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY, 2ND FLOOR
ARLINGTON VA 22202-4508

# RECORD OF PROCEEDINGS

IN THE CASE OF: DOLAN, PAUL E.
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

BOARD DATE: 24 February 2004
DOCKET NUMBER: AR2003084896

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Ms. Lee Tinsley | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. Raymond V. O'Connor, Jr. | Chairperson |
| Mr. Lawrence Foster | Member |
| Ms. Margaret V. Thompson | Member |

The applicant and counsel if any, did not appear before the Board.

The Board considered the following evidence:

Exhibit A - Application for correction of military records.

Exhibit B - Military Personnel Records (including advisory opinion, if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests reinstatement to active duty with any entitlements due to him.

2. The applicant states that he has over 18 years of active federal service (AFS) and was undergoing medical rehabilitation during which he requested to be put on medical hold at the time of his discharge. The applicant also contends that the discharge authority was misled into believing the applicant had less than 18 years of AFS. The applicant also contends that his discharge was contrary to Army regulation and was contrary to the Tower Amendment because his request for medical hold was ignored.

3. The applicant provides the following documents in support of his application:

a. DA Form 1506 (Statement of Service for Computation of Length of Service for Pay Purposes).
b. DD Form 214 (Certificate of Release or Discharge from Active Duty).
c. ARPC Form 249-2-E (Chronological Statement of Retirement Points).
d. DA Form 1559-R (Inspector General Action Request).
e. Medical Retention Denial Memorandum, dated 15 March 2001.
f. Memorandum, dated 13 March 2001, requesting extension due to a pending Medical Evaluation Board.
g. Signed affidavit, dated 13 March 2001, indicating receipt of a list of retention advantages.
h. Message, dated 13 February 2001, concerning applicant's separation.
i. Applicant's discharge order #D-02-800029.
j. DD Form 257A (Discharge Certificate).
k. Order #R-08-004942, dated 27 August 1998, putting the applicant in AGR status.

CONSIDERATION OF EVIDENCE:

1. The applicant entered into the U.S. Army on 28 April 1975 in an enlisted status. The applicant was honorably separated on 27 April 1979 and transferred in an enlisted status to the U.S. Army Reserve Control Group (Reinforcement).

2. On 19 May 1981, he was appointed as a second lieutenant in the U.S. Army Reserve Control Group (Officer Active Duty Obligor) pending initial assignment and transfer to the Army National Guard of the United States. On 10 July 1981 the applicant was transferred to the Oklahoma Army National Guard. From 11 September 1981 to 11 December 1981, he attended the Officer Basic Course in an active duty for training status. Upon completion of this course, he was returned to the U.S. Army Reserve Control Group (Officer Active Duty Obligor) on 4 January 1983.

3. From 20 January 1985 to 25 July 1985, the applicant attended the Military Police Officer Advanced Course in an active duty for training status. Upon completion of this course, he was returned to his Army Reserve unit. On 28 February 1988, he was ordered to active duty in the Army Reserve Active Guard Reserve (AGR) program for a period of 3 years.

4. On 27 February 1988, the applicant was initially assigned to the U.S. Army Recruiting Brigade Indianapolis, (Indiana) as the operations officer in the rank of first lieutenant. The applicant was promoted to captain on 26 May 1988. On 22 July 1996, he was reassigned to the 88th Regional Support Command, Fort Snelling, Minnesota, as the Deputy Provost Marshal Officer. On 15 August 1996 the applicant was promoted to major.

5. On 27 August 1998, orders were issued for the applicant to report to a new assignment with the Headquarters, 9th Regional Support Command (9th RSC), Honolulu, Hawaii, as the Equal Employment Opportunity Officer, with a report date of 5 October 1998.

6. Records show the applicant was absent without authorization from the 9th RSC from 6 October 1998 to 31 October 1998. At the time of the offense the applicant was serving as a major in the USAR AGR program.

7. On 1 December 1998, the applicant received a referred Officer Evaluation Report (OER) for the period 1 December 1996 to 22 June 1997. The referral memorandum stated the reasons for referral were: a.) a performance evaluation of "Often Failed Requirements"; b.) a potential evaluation in Part Vd of "Do Not Promote"; c.) narrative comments that are so derogatory that the report may have an adverse impact on the applicant's career, and; d.) an entry of "Fail" in Part IVa, item 3, indicating noncompliance with Army Regulation 350-15.

8. On 25 February 1999, the Commanding General of the 25th Infantry Division (Light) and U.S. Army, Hawaii, notified the applicant that he was considering whether the applicant should be punished under Article 15, Uniformed Code of Military Justice (UCMJ), for the following misconduct:

a.) In that, on or about 6 October 1998, without authority, the applicant absented himself from his unit, to wit: HQ, 9th RSC, located at Fort Shafter Hawaii and did remain so absent until on or about 1 November 1998 in violation of Article 86, UCMJ;

b.) In that the applicant received a lawful command from his superior commissioned officer, then known to him to be his superior commissioned officer, to report to the 9th RSC immediately, or words to that effect, did, at or near Bar Harbor, Maine, on or about 28 October 1998, willfully disobey the same order in violation of Article 90, UCMJ;

c.) In that the applicant, did, at Fort Shafter, Hawaii, on or about 23 November 1998, in a sworn statement, wrongfully and unlawfully made a false statement in substance as follows: "I was not informed of any alterations made to my DA Form 31", which statement the applicant did not then believe to be true in violation of Article 134, UCMJ.

9. The Commanding General of the 25th Infantry Division (Light) and U.S. Army, Hawaii, also advised the applicant of his rights, specifically, the applicant was not required to make any statements but if he did then they could be used against him during the proceedings or at trial by court-martial. The applicant was also advised that he had several rights under the current Article 15 proceedings. The Commanding General went on to inform the applicant that he had not made a decision yet on whether or not the applicant would be punished and that he would not impose punishment if he were not convinced beyond a reasonable doubt that the applicant committed the offense(s). The applicant was also informed that he was entitled to an open hearing before him and that the applicant could have someone speak on his behalf, present witnesses or other evidence that would show why the applicant shouldn't be punished or why punishment should be light. The applicant was also informed that if he did not want the matter disposed of under Article 15, then he had the right to demand trial by court-martial instead. The applicant was told of his right to legal counsel and that he had 48 hours to decide what he wanted to do.

10. On 17 March 1999 the applicant appeared before the Commanding General of the 25th Infantry Division (Light) and U.S. Army, Hawaii and indicated that he wanted a closed hearing and did not request a person to speak on his behalf.

11. The Commanding General of the 25th Infantry Division (Light) and U.S. Army, Hawaii, in a closed hearing, considered all matters presented in defense, mitigation and/or extenuation and imposed the following punishment: "Forfeiture of $2283.00 per month for 2 months, suspended, to be automatically remitted if not vacated before 13 September 1999 and to receive a written reprimand." The General officer imposing punishment also directed that the DA Form 2627 (Record of Proceedings Under Article 15) be filed in the applicant's performance fiche.

12. The Commanding General of the 25th Infantry Division (Light) and U.S. Army, Hawaii, tendered a Memorandum of Reprimand (GOMOR), dated 23 March 1999, to the applicant. Finally, the Commanding General advised the applicant of his right to appeal to the General Officer in Command of U.S. Army Pacific within 5 days.

13. Subsequently, on 7 April 1999, the applicant in his own hand indicated he would appeal and would submit additional matters. The applicant submitted a 12-page memorandum, dated 12 April 1999, requesting an extension of time to appeal his Article 15 and setting forth "Tentative Submission of Appeal Considerations."

14. On 23 April 1999, the same Commanding General who tendered the applicant's GOMOR reviewed the applicant's appeal and elected to take no action. He further stated that the matters stated in the reprimand accurately reflected the facts and that the punishment imposed was appropriate.

15. On 12 May 1999, the colonel in the position of Staff Judge Advocate of the 25th Infantry Division (Light) and U.S. Army, Hawaii opined: "I have considered the appeal and it is my opinion that: the proceedings were conducted in accordance with the law and regulation and the punishment adjudged was not unjust nor disproportionate to the offense committed."

16. On 12 May 1999 the General Officer in command of U.S. Army Pacific, considered the applicant's appeal. After consideration of all matters presented in the appeal, the General Officer in Command of U.S. Army Pacific denied the applicant's appeal. On 25 May 1999 the applicant indicated in his own hand that he had seen the action taken on his appeal.

17. On 20 September 1999, the applicant was notified of initiation of elimination proceedings under the provisions of Chapter 4, Army Regulation 600-8-24, by reason of unacceptable conduct. The applicant's chain of command recommended approval of the applicant's resignation in lieu of elimination with the issuance of a general, under honorable conditions discharge.

18. On 24 October 2000 an official of the Full Time Support Management Division (FTSMD), of the U.S. Army Reserve Personnel Command (AR-PERSCOM), prepared a DA Form 1506 (Statement of Service for Computation of Length of Service for Pay Purposes). This form indicated the applicant's total years of federal active service as of 24 October 2000 was 17 years, 9 months, 22 days and that his total creditable service is 25 years, 5 months, 27 days.

19. The Department of the Army Board of Review for Eliminations reviewed the applicant's case and found that the applicant should be eliminated from the Army based on significant misconduct, moral or professional dereliction. The Army Board of Review for Eliminations recommended that the applicant be eliminated and issued a general discharge.

20. On 7 February 2001, the Deputy Assistant Secretary (Army Review Boards) considered the recommendations of the Army Board of Review for Eliminations and forwarded these recommendations to the Senior Official, Office of the Assistant Secretary of the Army (Manpower & Reserve Affairs).

21. Records show that at that time there was no appointed Assistant Secretary of the Army (Manpower & Reserve Affairs) and the Senior Official did not have authority to act on cases involving officers with over 18 years of AFS. As a result, the Senior Official forwarded the case for decision by the Acting Secretary of the Army. On 8 February 2001, the Acting Secretary of the Army approved the applicant's elimination from the Army with a characterization of under honorable conditions (general discharge).

22. On 12 February 2001, the Deputy Assistant Secretary (Army Review Boards) notified the Commander, U.S. Total Army Personnel Command of the Acting Secretary of the Army's decision to eliminate the applicant with a "General (Under Honorable Conditions) Discharge."

23. On 13 February 2001, a message was forwarded from the Commander, U.S. Total Army Personnel Command to the Commanding General of Headquarters, 25th Infantry Division (Light) and U.S. Army, Hawaii, on behalf of the Deputy Assistant Secretary (Army Review Boards), approving the elimination of the applicant from the Army. The message went on to state that the applicant would be discharged as soon as possible but no later than 21 calendar days after the officer is officially notified and in no event would the discharge be delayed past 30 days from the date of the message.

24. On 22 February 2001, Order D-02-800029 was issued by AR-PERSCOM directing the discharge of the applicant from the Army effective 14 March 2001.

25. On 13 March 2001, the applicant signed an affidavit attesting to the understanding of rights and advantages of remaining on active duty status beyond his scheduled release date in order to complete physical disability evaluation.

26. Also on 13 March 2001, the applicant submitted a memorandum requesting a 90-day extension beyond his separation date of 14 March 2001 because of a pending medical evaluation board.

27. On 14 March 2001, the applicant was separated from active duty and issued a DD Form 214 (Certificate of Release or Discharge from Active Duty). This DD Form 214 shows that the applicant was separated by reason of unacceptable conduct in accordance with paragraph 4-2b of Army Regulation 600-8-24. This document also shows that his characterization of service was under honorable

conditions (general) and, at the time of separation, the applicant had a total of 25 days of lost time and 18 years, 0 months and 20 days AFS.

28. On 15 March 2001, a memorandum from The Office of The Surgeon General of the Army, recommended disapproval of the applicant's request for medical retention. The reason stated for the disapproval was Army Regulation 600-8-24, paragraph 1-23a, which specifically excludes officers, who have been processed for dismissal, from physical disability processing.

29. On 29 March 2001, the applicant filed an Inspector General Action Request requesting to remain on active duty for the purpose of a "properly conducted medical evaluation board" to evaluate the applicant's "service connected" injuries. He also disputes the Surgeon General's decision to disapprove his request for medical retention and cites Army Regulation 600-8-24. The applicant also restates his contentions of having over 18 years of AFS and that he is authorized full retirement, not dismissal, under the provisions of the Tower Amendment.

30. Telephonic coordination with the applicant on 19 February 2004 revealed that he incorrectly referred to the "Tower Amendment". The applicant stated to a staff member of the Army Board for Correction of Military Records (ABCMR) that he was referring to the provision of law, which precluded separation of officers with over 18 years of AFS.

31. Army Regulation 600-8-24 (Officer Transfers and Discharges), Chapter 4 states, in pertinent part, that the following reasons (or ones similar) require an officer's record to be reviewed for consideration of terminating his or her appointment. Standing alone, one of these conditions may not support elimination, however, this derogatory information combined with other known deficiencies form a pattern that, when reviewed in conjunction with the officer's overall record, requires elimination; (1) punishment under UCMJ, article 15, (2) conviction by court-martial, (3) denial of security clearance, (4) a relief for cause officer evaluation report (OER) (DA Form 67–8, (US Army Officer Evaluation Report)) under AR 623–105, paragraph 5–18, and (5) adverse information filed in the OMPF in accordance with AR 600–37 (LOR).

32. Army Regulation 635-100 provides the authority for the separation of commissioned and warrant officers from the Active Army. Paragraph 3-58a of this regulation, in effect at the time, specifically provided for the involuntary release of officers from active duty for misconduct, moral or professional dereliction, and/or when their degree of efficiency and manner of performance require release from active duty or elimination from the service. The regulation provided that when an officer's conduct and performance warrants relief from active duty, then the officer's records and all available evidence will be forwarded for consideration by the Department of the Army Active Duty Board (DAADB)



43

which has been renamed the Department of the Army Board of Review for Eliminations.

33. Army Regulation 635-120 implements the statutory provisions of Title 10 United States Code governing officer separations and provides policies and procedures for separating the officer from active duty. Chapter 5 of this regulation provides that an officer may submit a resignation for the good of the service when court-martial charges against the officer with a view toward trial by general court-martial, the officer is under suspended sentence of dismissal, or the officer elects to tender a resignation because of reasons outlined in Army Regulation 635-100, paragraph 5-11a(7) (misconduct or moral or professional dereliction), prior to charges being preferred and prior to being recommended for elimination under the provisions of Army Regulation 635-100. The regulation provides that a resignation for the good of the service, when approved at Headquarters Department of the Army, is normally accepted as being under other than honorable conditions.

34. Chapter 1219 of Title 10 United States Code governs standards and procedures for retention and promotion of reserve officers. Section 12646(e)(1) of this law provides that a reserve commissioned officer on active duty (other than for training) or full-time National Guard duty (other than for full-time National Guard duty for training only) who is within two years of qualifying for retirement under Section 3911, Section 6323, or Section 8911 of this title may, in the discretion of the Secretary concerned, be retained on that duty for a period of not more than two years. Further, Section 12646(2) states that an officer may be retained under Title 10 on active duty or full-time National Guard duty only if: (A) at the end of the period for which the officer is retained the officer will be qualified for retirement under Section 3911, Section 6323, or Section 8911 of this title; and (B) the officer will not, before the end of that period, reach the age at which transfer from an active status or discharge is required by this title or Title 14. Section 12646(3) states that an officer who is retained on active duty or full-time National Guard duty under this provision of law may not be removed from an active status while on that duty. However, the law further provides that an officer may be discharged or transferred from an active status for physical disability, for cause, or because they have reached the age at which transfer from an active status or discharge is required by law.

35. Army Regulation 600-8-24, paragraph 1-23(a), governs referral of officers for physical disability evaluation. In pertinent part this provision of regulation states that if a commissioned or warrant officer is being processed for release from active duty (REFRAD), separation, or retirement or has been referred for elimination action, when it is determined that the officer having medical impairment does not meet medical retention standards, the officer will be processed as set forth in subparagraphs a through d, below. Subparagraph a states that an officer under investigation for an offense chargeable under the

Uniform Code of Military Justice that could result in dismissal or punitive discharge may not be referred for or continue disability processing.

36. The Table of Maximum Punishments in the Manual for Courts-Martial (MCM) shows that the applicant's offense of AWOL of more than 3 days but less than 30 days is a violation of Article 86, UCMJ, which is punishable by court-martial with a maximum sentence of confinement for six months and forfeiture of 2/3 pay for 6 months.

37. The Table of Maximum Punishments in the MCM shows that the applicant's willful disobedience of the order of a superior commissioned officer is a violation of Article 90, UCMJ, which is punishable by court-martial with a maximum sentence of a Dishonorable Discharge or a Bad Conduct Discharge, 5 years confinement, and total forfeiture of pay.

38. The Table of Maximum Punishments in the MCM shows that the applicant's wrongful and unlawful sworn statement is a violation of Article 134 which is punishable by court-martial with a maximum sentence of a Dishonorable Discharge or a Bad Conduct Discharge, 3 years confinement, and total forfeiture of pay.

39. Title 10, United States Code (U.S.C.), Section 1401a(f), [also referred to as the "Tower Amendment"] was enacted in 1982 and governs retired pay for soldiers who were reduced in grade as a result of unsatisfactory performance or disciplinary action. Effectively, the amendment provides an alternate method of calculating retired pay.

40. Title 10, U.S.C., Section 12686, governs separation of Reserve officers on active duty within two years of retirement eligibility. This section states, in pertinent part, that a member of a reserve component, who is on active duty (other than training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary of the Army.

DISCUSSION AND CONCLUSIONS:

1. The applicant contends that he should not have been separated because he had over 18 years of service and was pending a medical evaluation.

2. Records show the applicant was AWOL (absent without leave), willfully disobeyed a direct order from a superior commissioned officer and made a false sworn statement for which he received non-judicial punishment administered by the Commanding General of the 25th Infantry Division. The applicant appealed

the punishment to the Commanding General of U.S, Army Pacific who denied the appeal.

3. As a result of his offenses, the applicant was processed for elimination with a recommendation for separation with a general discharge (under honorable conditions).

4. In accordance with Army Regulation 635-100 his case was considered by the Army Board of Review for Eliminations. That board recommended that the applicant be separated with a general discharge (under honorable conditions).

5. The Deputy Assistant Secretary (Army Review Boards) forwarded the recommendation of the Army Board of Review for Eliminations to the Senior Official, Office of the Assistant Secretary of the Army (Manpower & Reserve Affairs).

6. Records show the Senior Official, Office of the Assistant Secretary of the Army (Manpower & Reserve Affairs) forwarded the recommendation to eliminate the applicant from the Army with a general discharge (under honorable conditions) in accordance with the law and regulations in effect at the time pertaining to officers with over 18 years of AFS.

7. The Acting Secretary of the Army approved the recommendation to eliminate the applicant with a general discharge. Accordingly, the commanding general of PERSCOM directed the separation of the applicant for moral and professional dereliction with a general discharge (under honorable conditions).

8. Based on a telephonic conversation with the applicant, it is clear he was referring to Title 10, U.S.C., Section 12686, not the "Tower Amendment". Thus, he contends that he should not have been discharged based on having over 18 years of AFS. However, this latter section also states that the Secretary of the Army can discharge a Reserve officer with over 18 years of AFS prior to retirement eligibility.

9. Contrary to his contention that the discharge authority was "misled" about his years of active Federal service, military records clearly show proper elimination procedures were followed in the applicant's case for an officer with over 18 years of active Federal service.

10. The applicant also contends that his discharge was contrary to Army regulation and was contrary to the Tower Amendment because his request for medical hold was ignored.

11. Army regulation clearly provides that an officer referred for elimination action for offenses, which could result in a punitive discharge, may not be referred for processing by a medical or physical evaluation board.

12. The Manual for Courts-Martial shows that the applicant's offense of willfully disobeying the order of a superior commissioned officer and making a false sworn statement are violations of Article 90, UCMJ, and Article 134, UCMJ, respectively, each of which are punishable by court-martial with a maximum sentence of a Dishonorable Discharge or a Bad Conduct Discharge, both of which are punitive discharges.

13. Therefore, the applicant's contention that he should have been retained for disability processing is contrary to Army regulation and he was so notified of this fact in writing from the Office of The Surgeon General of the Army.

14. Based on all of the foregoing, there is no basis for the applicant to be reinstated or to receive any entitlements to which he believes are due to him.

BOARD VOTE:

________ ________ ________ GRANT RELIEF

________ ________ ________ GRANT FORMAL HEARING

[signature] LF MNT DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

[signature]
CHAIRPERSON



47

2pg

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

April 25, 2005

AR20040004988, Dolan, Paul E.

Mr. Paul E. Dolan
PO Box 6
Machiah ME 04654 0006

Dear Mr. Dolan:

This is in response to your July 19, 2004 request to the Army Board for Correction of Military Records (ABCMR). Your request is accepted as a request for reconsideration of ABCMR Docket Number AR2003084896. This case was considered by the ABCMR on February 24, 2004 .

Army Regulation 15-185 sets forth procedures for processing requests for correction of military records. A recent court decision ordered the deletion of paragraph 2-15b which applies to requests for reconsideration. The effect of this court decision now permits an applicant to request reconsideration of an earlier ABCMR decision if the request is received within one year of the ABCMR's original decision and it has not previously been reconsidered. Such requests must provide new evidence or argument that was not considered at the time of the ABCMR's prior consideration.

The ABCMR staff reviewed your request for reconsideration and examined the original ABCMR decision with the evidence that you submitted in support of that case.

From that review, it was determined that although your request was received within one year of the ABCMR's original decision, you have not presented any new evidence or argument that was not considered by the ABCMR in the earlier decision. Therefore, we are returning your request without action.

The ABCMR will not consider any further requests for reconsideration of this matter without new evidence. However, you have the option to seek relief in a court of appropriate jurisdiction.

Sincerely,

Edmund P. Mercanti

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure

47-A

DEPARTMENT OF VETERANS AFFAIRS
Medical and Regional Office Center
Veterans Service Center (21)
1 VA Center
Togus, ME 04330

April 7, 2003

In Reply Refer To: 402/21
CSS 040 52 1419
DOLAN, P E

PAUL E DOLAN
PO BOX 6
MACHIAS ME 04654

Dear Mr. Dolan:

We made a decision on your claim for service connected compensation received on January 31, 2003.

This letter tells you about your entitlement amount and payment start date and what we decided. It includes a copy of our rating decision that gives the evidence used and reasons for our decision. We have also included information about additional benefits, what to do if you disagree with our decision, and who to contact if you have questions or need assistance.

## What Is Your Entitlement Amount And Payment Start Date?

Your monthly entitlement amount is shown below:

| Monthly Entitlement Amount | Payment Start Date | Reason For Change |
|---|---|---|
| $969.00 | Apr 1, 2001 | Grant of increased compensation and new service connected conditions |
| 995.00 | Dec 1, 2001 | Cost of living adjustment |
| 1,008.00 | Dec 1, 2002 | Cost of living adjustment |

We are paying you as a single veteran with no dependents.

You are entitled to receive either service-connected disability compensation or non service-connected disability pension. We continued your compensation payment **of $1008.00 from February 2, 2003,** because it is the greater benefit. If you elect payment for your nonservice-connected disabilities, we would pay you **pension of $774.00** per month beginning February 1, 2003. If you want to receive pension instead of compensation, let us know. The law does not permit us to pay you both benefits at the same time.

CSS 040 52 1419
Dolan, P E

## When Can You Expect Payment?

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings, in approximately 15 days. Payment will then be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

## What Did We Decide?

We determined that the following condition(s) was/were related to your military service, so service connection has been granted:

| Medical Description | Percent (%) Assigned | Effective Date |
|---|---|---|
| Hearing loss, left ear | 0% | Mar 15, 2001 |
| Patellofemoral syndrome, left knee | 10% | Mar 15, 2001 |
| Degenerative joint disease, right shoulder | 10% | Mar 15, 2001 |
| Tinnitus | 10% | Mar 15, 2001 |

We determined that the following condition(s) was/were not related to your military service, so service connection couldn't be granted:

| Medical Description |
|---|
| Hearing loss, right ear |

We determined that the following service connected condition(s) has/have worsened, so we granted an increase in your assigned percentage:

| Medical Description | Old Percent (%) Assigned | New Percent (%) Assigned | Effective Date |
|---|---|---|---|
| Chronic depression | 10% | 30% | Mar 15, 2001 |
| Degenerative joint disease, left shoulder | 10% | 20% | Mar 15, 2001 |
| Post operative perirectal abscess | 0% | 10% | Mar 15, 2001 |

Deg. Doc Do 24-25.

**DEPARTMENT OF VETERANS AFFAIRS**
**TOGUS REGIONAL OFFICE**
**I VA CENTER**
**TOGUS ME 04330**

**Paul E. Dolan**

**VA File Number**
**040 52 1419**

**Represented by:**
**MAINE DEPARTMENT OF VETERANS SERVICES**

**Rating Decision**
**April 2, 2003**

## INTRODUCTION

You are a Vietnam Era, Peacetime and Gulf War Era veteran. You served in the Army from April 28, 1975 to April 27, 1979 and from February 28, 1988 to March 14, 2001. You filed a claim for increased evaluation for degenerative joint disease bilateral shoulders with residuals of post operative superior labral acromioclavicular tear, left shoulder, degenerative disc disease L4-L5, lumbosacral spine, medical meniscus tear, right knee, chronic depression, residuals of postoperative perirectal abscess and residuals of post operative hiatal hernia/reflux that was received on January 31, 2003. We are also addressing entitlement to service connection for hearing loss, tinnitus and a left knee condition as the evidence shows you failed to report for VA examination however you reopened your claim within a year of notification of the denial for these conditions. We grant service connection for a disease or disability that began in military service or was caused by some event or experience in service.

## DECISION

1 . Evaluation of chronic depression and stress, which is currently 0 percent disabling, is increased to 30 percent effective March 15, 2001.

2 . Evaluation of degenerative joint disease, left shoulder with residuals of post-operative superior labral acromioclavicular tear, left shoulder (minor), which is currently 10 percent disabling, is increased to 20 percent effective March 15, 2001.

3 . Evaluation of degenerative disc disease L4-5, lumbosacral spine with chronic intermittent muscle strain (claimed as due to spinal block for perirectal abscess surgery), which is currently 10 percent disabling, is continued.

4 . Service connection for patellafemoral syndrome, left knee is granted with an evaluation of 10 percent effective March 15, 2001.

5 . Service connection for degenerative joint disease, right shoulder is granted with an evaluation of 10 percent effective March 15, 2001.

6 . Service connection for tinnitus is granted with an evaluation of 10 percent effective March 15, 2001.

7 . Service connection for scars, residual of surgery is granted with an evaluation of 0 percent effective March 15, 2001.

8 . Evaluation of residuals of post-operative perirectal abscess, which is currently 0 percent disabling, is increased to 10 percent effective March 15, 2001.

9 . Evaluation of medial meniscus tear, right knee, which is currently 0 percent disabling, is continued.

10 . Evaluation of residuals of post-operative hiatal hernia (claimed as reflux disease and scars), which is currently 0 percent disabling, is continued.

11 . Service connection for hearing loss, left ear is granted with an evaluation of 0 percent effective March 15, 2001.

12 . Service connection for hearing loss, right ear is denied.

DEPARTMENT OF VETERANS AFFAIRS
Togus Regional Office
Veterans Service Center (21)
1 VA Center
Augusta, ME 04330-6795

September 15, 2004

In Reply Refer To: 402/21/dmh
CSS 040 52 1419

PAUL E DOLAN
PO BOX 6
MACHIAS ME 04654

Dear Mr. Dolan:

We made a decision on your claim for an increase in your service connected compensation received on July 27, 2004.

This letter tells you about your entitlement amount and payment start date and what we decided. It includes a copy of our rating decision that gives the evidence used and reasons for our decision. We have also included information about additional benefits, what to do if you disagree with our decision, and who to contact if you have questions or need assistance.

## What Is Your Entitlement Amount And Payment Start Date?

Your monthly entitlement amount is shown below:

| Monthly Entitlement Amount | Payment Start Date | Reason For Change |
|---|---|---|
| $2,193.00 | Sep 1, 2003 | Increase granted |
| 2,239.00 | Dec 1, 2003 | Cost of Living Adjustment |

We are paying you as a single veteran with no dependents.

## When Can You Expect Payment?

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings, in approximately 15 days. Payment will then be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

## What Did We Decide?

CSS 040 52 1419

We determined that the following service connected condition(s) has/have worsened, so we granted an increase in your assigned percentage:

| Medical Description | Old Percent (%) Assigned | New Percent (%) Assigned | Effective Date |
|---|---|---|---|
| Chronic depression and stress | 30% | 50% | Aug 25, 2003 |

We assigned a permanent and total disability evaluation for your service connected disability/disabilities, effective August 26, 2004.

* We granted entitlement to the 100% rate effective August 25, 2003, because you are unable to work due to your service connected disability/disabilities.

No examination will be scheduled in the future for your permanent and total disability/disabilities.

Your overall or combined rating is 80%. We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions.

We have enclosed a copy of your Rating Decision for your review. It provides a detailed explanation of our decision, the evidence considered and the reasons for our decision. You can find the decision discussed in the section titled *"Decision."* The evidence we considered is discussed in the section titled *"Evidence."* The reasons for our decision can be found in the portion of the rating titled *"Reasons for Decision"* or *"Reasons and Bases."*

We enclosed a VA Form 21-8760, "Additional Information for Veterans with Service-Connected Permanent and Total Disability," which explains certain factors concerning your benefits.

## Are You Entitled To Additional Benefits?

Your dependents may be eligible for Dependents' Educational Assistance. We are enclosing a "Summary of Education Benefits," which explains the program. To make a claim, complete and return the enclosed VA Form 22-5490.

You may be able to receive vocational rehabilitation employment services. The enclosed VA Form 28-8890, "Important Information About Vocational Rehabilitation Benefits," explains

Department of Veterans Affairs
Togus Regional Office
Veterans Service Center (21)
1 VA Center
Augusta ME 04330-6795

May 11, 2005

In Reply Refer To: 402/21/dt
040521419

PAUL E DOLAN
P O BOX 6
MACHIAS ME 04654

DearMr Dolan:

The records of the Department of Veterans Affairs (VA) disclose that you are rated 100% permanently and totally disabled due to service-connected disabilities, effective August 26, 2004.

Sincerely yours,

*S. Karczewski*

S. KARCZEWSKI
Veterans Service Center Manager