IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-166C (Judge C.O.C. Miller)

PAUL E. DOLAN

Plaintiff,

v.

THE UNITED STATES

Defendant,

PLAINTIFF'S APPENDIX
VOLUME I

August 3, 2007

John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825
Counsel for plaintiff

APPENDIX V1, TABLE OF CONTENTS

Order No. 02-08 (2002),
*Army National Guard AGR Temporary Early Retirement Authority for FY 2002 (TERA)*
California National Guard.........................................................................................1

Department of the Army FY 2000/20001 Biennial Budget Estimate (Feb 1999),
Army Reserve Personnel (TERA)..........................................................................2-4

Manual for Courts-Martial, (2000 Edition),
R.C.M. 303, R.C.M. 306..........................................................................................5-8

Army Regulation,
AR 600-8-2, *Suspension of Favorable Personnel Actions (Flags)* (1987), and (2004).....9-13

CALIFORNIA

Technician/AGR Administrative Instruction

National Guard Technicians - CAL NG Active Guard/Reserve

MILITARY DEPARTMENT

P. O. BOX 269101
Sacramento, CA 95826-9101

NUMBER

02-08 **EXPIRES 30 SEPTEMBER 2002** 23 January 2002

# NATIONAL GUARD ACTIVE GUARD RESERVE (AGR) TEMPORARY EARLY RETIREMENT AUTHORITY (TERA) FISCAL YEAR 2002

1. The Defense Authorization Act for Fiscal Year 2002 did not include funding for the TERA program. Therefore, National Guard Bureau will not offer TERA to the Active Guard Reserve this fiscal year.

2. Point of contact for this TAAI is SGM Patrick Flannery at CAGNET 6-3419, DSN 466-3419 or commercial (916) 854-3419.

FOR THE ADJUTANT GENERAL:

JEFFREY D. STUARD
Colonel, CA ANG
Director for Human Resources

DISTRIBUTION:
Army: TA
Air: TA

# DEPARTMENT OF THE ARMY

## FY 2000/2001 Biennial Budget Estimates

### FEBRUARY 1999

## RESERVE PERSONNEL, ARMY

Appropriation
Reserve Personnel, Army

BUDGET PROGRAM, PROGRAM ELEMENT/AGGREGATION OR BUDGET PROJECT ACCOUNT
4000 RESERVE COMPONENT PERSONNEL
BUDGET ACTIVITY 2T: 4H00 - ADMINISTRATION AND SUPPORT

| 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|
| 752,297 | 811,292 | 870,117 | 898,400 |

PART 1 - PURPOSE AND SCOPE

1. Active Guard and Reserve (AGR) Personnel

The funds requested in this budget activity are to provide for pay and allowances, ret ired pay accrual, uniform allowances, subsistence, and permanent change of station travel (including PCS-TDY enroute) costs of Army Reserve officers and enlisted personnel serving on active duty as authorized by Title 10, United States Code, Chapter 1209.

The AGR soldier is an Army Reserve member serving on active military service in the Full Time Support Program. AGRs provide direct support to prepare Reserve Components for their wartime mission. The AGR soldier works full time for the purposes of organizing, administering, recruiting, instructing, or training the Army Reserve. AGRs deploy keeping reserve units filled with qualified personnel, a vital aspect of readiness.

Over the past several years, more and more Active Army missions have been transferred to the Army Reserve. The Army has been able to meet these missions because full time support personnel have been available to support reserve unit commanders.

AGR soldiers must meet the same standards as soldiers in the Active Army. They compete against each other, members of the Individual Reserve, and troop program unit members for promotion. They serve in areas that are generally remote from an Active Army installation. AGR soldiers can achieve active retirement (Title 11) under this program.

The Active Guard and Reserve Program consists of the following categories:

a. Personnel/Finance Support. Provides Army Reserve personnel to administer and operate the USAR pay (DJMS-RC) and personnel systems (SIDPERS). The DJMS-RC pay system processes payments for USAR troop program unit personnel taking part in Inactive Duty Training (IDT).

b. Readiness Support: Provides USAR personnel at Active Army installations or headquarters elements to accomplish special purpose functions relating to USAR operations, administration, and logistical requirements.

c. Recruiting: Provides USAR personnel at Major Army Commands, Region Recruiting Commands, District Recruiting Commands and recruiting stations to operate the USAR recruiting programs.

d. Retention: Provides USAR personnel at Major Army commands, Continental US Armies, and Major USAR Command levels to operate the USAR retention program.

e. Unit Full Time Support: Provides USAR personnel to troop program units specifically to increase readiness/mobilization capability.

4. Separations:

This section addresses transition enhancements and transition initiatives for the USAR identified by P.L. 102-484, Title 44, Subtitle A & B. USAR AGR soldiers are authorized the same transition enhancements as the Active Army. Special Separation Benefit, Voluntary Separation Incentive, and Temporary Early Retirement Authority may be offered to encourage voluntary separations to aid in reducing and shaping the force. Guard and Reserve Component Transition Benefits are available for USAR soldiers who involuntarily lose their Selective Reserve Status due to force reductions during the Force Reduction Transition Period. Transition Initiatives and Benefits available are summarized as follows:

Special Separation Benefit (SSB): Officer and Enlisted costs associated with AGR personnel, who have more than six years of service but less than twenty, who voluntarily leave active duty, or who elect to receive the SSB.

Voluntary Separation Incentive (VSI): Officer and Enlisted costs associated with AGR personnel, who have more than six years of service but less than twenty, who voluntarily leave active duty, and who elect to receive the VSI.

Temporary Early Retirement Authority (TERA): Officer and Enlisted costs associated with AGR personnel, who have more than six years of service but less than twenty, who voluntarily elect to retire.

Reserve Involuntary Separation Pay (RISP): Officer and Enlisted Troop Program Units (TPU's), who have more than six years of service but less than 15 years and who are involuntarily separated or transferred from the Selective Reserve.

Reserve Special Separation Pay (RSSP): Officer and enlisted TPUs having more than twenty years service, who qualify for non-regular retirement at age 60 but are not yet 60, who are involuntarily separated or transferred from the Selective Reserve, and who transfer into the Retired Reserve. Also includes all RSSP anniversary payments associated with Army National Guard soldiers who have transferred to the Retired Reserve as a result of this benefit.

# MANUAL

# FOR

# COURTS-MARTIAL

# UNITED STATES

# (2000 EDITION)

The 2000 Edition of the MCM is a complete revision of the 1984 MCM incorporating all Executive Orders (EO) through 6 Oct 1999 (EO 12473 promulgating the 1984 MCM; EO 12484, 15 Nov 84; EO 12550, 19 Feb 86; E0 12586, 3 Mar 87; EO 12708, 23 Mar 90; EO 12767, 27 Jun 91; EO 12888, 23 Dec 93; EO 12936, 10 Nov 94; EO 12960, 12 May 95; EO 13086, 27 May 98; EO 13140, 6 Oct 99). Copies of each Executive Order can be found in Appendix 25.

may enter a private dwelling for the purpose of making an apprehension under these rules unless:

(A) Pursuant to consent under Mil. R. Evid. 314(e) of 316(d)(2);

(B) Under exigent circumstances described in Mil. R. Evid. 315(g) or 316(d)(4)(B);

(C) In the case of a private dwelling which is military property or under military control, or non-military property in a foreign country.

(i) if the person to be apprehended is a resident of the private dwelling, there exists, at the time of the entry, reason to believe that the person to be apprehended is present in the dwelling, and the apprehension has been authorized by an official listed in Mil. R. Evid. 315(d) upon a determination that probable cause to apprehend the person exists; or

(ii) if the person to be apprehended is not a resident of the private dwelling, the entry has been authorized by an official listed in Mil. R. Evid. 315(d) upon a determination that probable cause exists to apprehend the person and to believe that the person to be apprehended is or will be present at the time of the entry;

(D) In the case of a private dwelling not included in subsection (e)(2)(C) of this rule,

(i) if the person to be apprehended is a resident of the private dwelling, there exists at the time of the entry, reason to believe that the person to be apprehended is present and the apprehension is authorized by an arrest warrant issued by competent civilian authority; or

(ii) if the person to be apprehended is not a resident of the private dwelling, the apprehension is authorized by an arrest warrant and the entry is authorized by a search warrant, each issued by competent civilian authority.

A person who is not a resident of the private dwelling entered may not challenge the legality of an apprehension of that person on the basis of failure to secure a warrant or authorization to enter that dwelling, or on the basis of the sufficiency of such a warrant or authorization. Nothing in this subsection ((e)(2)) affects the legality of an apprehension which is incident to otherwise lawful presence in a private dwelling.

### Discussion

For example, if law enforcement officials enter a private dwelling pursuant to a valid search warrant or search authorization, they may apprehend persons therein if grounds for an apprehension exist. This subsection is not intended to be an independent grant of authority to execute civilian arrest or search warrants. The authority must derive from an appropriate Federal or state procedure. *See e.g.* Fed. R. Crim. P. 41 and 28 C.F.R. 60.1.

## Rule 303. Preliminary inquiry into reported offenses

Upon receipt of information that a member of the command is accused or suspected of committing an offense or offenses triable by court-martial, the immediate commander shall make or cause to be made a preliminary inquiry into the charges or suspected offenses.

### Discussion

The preliminary inquiry is usually informal. It may be an examination of the charges and an investigative report or other summary of expected evidence. In other cases a more extensive investigation may be necessary. Although the commander may conduct the investigation personally or with members of the command, in serious or complex cases the commander should consider whether to seek the assistance of law enforcement personnel in conducting any inquiry or further investigation. The inquiry should gather all reasonably available evidence bearing on guilt or innocence and any evidence relating to aggravation, extenuation, or mitigation.

The Military Rules of Evidence should be consulted when conducting interrogations (*see* Mil. R. Evid. 301-306), searches (*see* Mil. R. Evid. 311-317), and eyewitness identifications (*see* Mil. R. Evid. 321).

If the offense is one for which the Department of Justice has investigative responsibilities, appropriate coordination should be made under the Memorandum of Understanding, *see* Appendix 3, and any implementing regulations.

If it appears that any witness may not be available for later proceedings in the case, this should be brought to the attention of appropriate authorities. *See also* R.C.M. 702 (depositions).

A person who is an accuser (*see* Article 1(9)) is disqualified from convening a general or special court-martial in that case. R.C.M. 504(c)(1). Therefore, when the immediate commander is a general or special court-martial convening authority, the preliminary inquiry should be conducted by another officer of the command. That officer may be informed that charges may be preferred if the officer determines that preferral is warranted.

## Rule 304. Pretrial restraint

(a) *Types of pretrial restraint.* Pretrial restraint is moral or physical restraint on a person's liberty which is imposed before and during disposition of offenses. Pretrial restraint may consist of conditions

(l) *Confinement after release.* No person whose release from pretrial confinement has been directed by a person authorized in subsection (g) of this rule may be confined again before completion of trial except upon the discovery, after the order of release, of evidence or of misconduct which, either alone or in conjunction with all other available evidence, justifies confinement.

### Discussion

*See* R.C.M. 304(b) concerning who may order confinement.

(m) *Exceptions.*

(1) *Operational necessity.* The Secretary of Defense may suspend application of subsections (e)(2) and (3), (f), (h)(2)(A) and (C), and (i) of this rule to specific units or in specified areas when operational requirements of such units or in such areas would make application of such provisions impracticable.

(2) *At sea.* Subsections (e)(2) and (3), (f), (h)(2)(C), and (i) of this rule shall not apply in the case of a person on board a vessel at sea. In such situations, confinement on board the vessel at sea may continue only until the person can be transferred to a confinement facility ashore. Such transfer shall be accomplished at the earliest opportunity permitted by the operational requirements and mission of the vessel. Upon such transfer the memorandum required by subsection (h)(2)(C) of this rule shall be transmitted to the reviewing officer under subsection (i) of this rule and shall include an explanation of any delay in the transfer.

### Discussion

Under this subsection the standards for confinement remain the same (although the circumstances giving rise to the exception could bear on the application of those standards). Also, pretrial confinement remains subject to judicial review. The prisoner's commander still must determine whether confinement will continue under subsection (h)(2)(B) of this rule. The suspension of subsection (h)(2)(A) of this rule removes the 72-hour requirement since in a combat environment, the commander may not be available to comply with it. The commander must make the pretrial confinement decision as soon as reasonably possible, however. (This provision is not suspended under subsection (2) since the commander of a vessel is always available.)

## Rule 306. Initial disposition

(a) *Who may dispose of offenses.* Each commander has discretion to dispose of offenses by members of that command. Ordinarily the immediate commander of a person accused or suspected of committing an offense triable by court-martial initially determines how to dispose of that offense. A superior commander may withhold the authority to dispose of offenses in individual cases, types of cases, or generally. A superior commander may not limit the discretion of a subordinate commander to act on cases over which authority has not been withheld.

### Discussion

Each commander in the chain of command has independent, yet overlapping discretion to dispose of offenses within the limits of that officer's authority. Normally, in keeping with the policy in subsection (b) of this rule, the initial disposition decision is made by the official at the lowest echelon with the power to make it. A decision by a commander ordinarily does not bar a different disposition by a superior authority. *See* R.C.M. 401(c); 601(f). Once charges are referred to a court-martial by a convening authority competent to do so, they may be withdrawn from that court-martial only in accordance with R.C.M. 604.

*See* Appendix 3 with respect to offenses for which coordination with the Department of Justice is required.

(b) *Policy.* Allegations of offenses should be disposed of in a timely manner at the lowest appropriate level of disposition listed in subsection (c) of this rule.

### Discussion

The disposition decision is one of the most important and difficult decisions facing a commander. Many factors must be taken into consideration and balanced, including, to the extent practicable, the nature of the offenses, any mitigating or extenuating circumstances, the character and military service of the accused, any recommendations made by subordinate commanders, the interest of justice, military exigencies, and the effect of the decision on the accused and the command. The goal should be a disposition that is warranted, appropriate, and fair.

In deciding how an offense should be disposed of, factors the commander should consider, to the extent they are known, include:

(A) the character and military service of the accused;
(B) the nature of and circumstances surrounding the offense and the extent of the harm caused by the offense, including the offense's effect on morale, health, safety, welfare, and discipline;
(C) appropriateness of the authorized punishment to the particular accused or offense;
(D) possible improper motives of the accuser;
(E) reluctance of the victim or others to testify;
(F) cooperation of the accused in the apprehension or conviction of others;

(G) availability and likelihood of prosecution of the same or similar and related charges against the accused by another jurisdiction;
(H) availability and admissibility of evidence;
(I) existence of jurisdiction over the accused and the offense; and
(J) likely issues.

(c) *How offenses may be disposed of.* Within the limits of the commander's authority, a commander may take the actions set forth in this subsection to initially dispose of a charge or suspected offense.

### Discussion

Prompt disposition of charges is essential. *See* R.C.M. 707 (speedy trial requirements).

Before determining an appropriate disposition, a commander should ensure that a preliminary inquiry under R.C.M. 303 has been conducted. If charges have not already been preferred, the commander may, if appropriate, prefer them and dispose of them under this rule. *But see* R.C.M. 601 (c) regarding disqualification of an accuser.

If charges have been preferred, the commander should ensure that the accused has been notified in accordance with R.C.M. 308, and that charges are in proper form. *See* R.C.M. 307. Each commander who forwards or disposes of charges may make minor changes therein. *See* R.C.M. 603(a) and (b). If major changes are necessary, the affected charge should be preferred anew. *See* R.C.M. 603(d).

When charges are brought against two or more accused with a view to a joint or common trial, *see* R.C.M. 307(c)(5); 601(e)(3). If it appears that the accused may lack mental capacity to stand trial or may not have been mentally responsible at the times of the offenses, *see* R.C.M. 706; 909; 916(k).

(1) *No action.* A commander may decide to take no action on an offense. If charges have been preferred, they may be dismissed.

### Discussion

A decision to take no action or dismissal of charges at this stage does not bar later disposition of the offenses under subsection (c)(2) through (5) of this rule.

*See* R.C.M. 401(a) concerning who may dismiss charges, and R.C.M. 401(c)(1) concerning dismissal of charges.

When a decision is made to take no action, the accused should be informed.

(2) *Administrative action.* A commander may take or initiate administrative action, in addition to or instead of other action taken under this rule, subject to regulations of the Secretary concerned. Administrative actions include corrective measures such as counseling, admonition, reprimand, exhortation, disapproval, criticism, censure, reproach, rebuke, extra military instruction, or the administrative withholding of privileges, or any combination of the above.

### Discussion

Other administrative measures, which are subject to regulations of the Secretary concerned, include matters related to efficiency reports, academic reports, and other ratings; rehabilitation and reassignment; career field reclassification; administrative reduction for inefficiency; bar to reenlistment; personnel reliability program reclassification; security classification changes; pecuniary liability for negligence or misconduct; and administrative separation.

(3) *Nonjudicial punishment.* A commander may consider the matter pursuant to Article 15, nonjudicial punishment. *See* Part V.

(4) *Disposition of charges.* Charges may be disposed of in accordance with R.C.M. 401.

### Discussion

If charges have not been preferred, they may be preferred. *See* R.C.M. 307 concerning preferral of charges. However, *see* R.C.M. 601(c) concerning disqualification of an accuser.

Charges may be disposed of by dismissing them, forwarding them to another commander for disposition, or referring them to a summary, special, or general court-martial. Before charges may be referred to a general court-martial, compliance with R.C.M. 405 and 406 is necessary. Therefore, if appropriate, an investigation under R.C.M. 405 may be directed. Additional guidance on these matters is found in R.C.M. 401-407.

(5) *Forwarding for disposition.* A commander may forward a matter concerning an offense, or charges, to a superior or subordinate authority for disposition.

### Discussion

The immediate commander may lack authority to take action which that commander believes is an appropriate disposition. In such cases, the matter should be forwarded to a superior officer with a recommendation as to disposition. *See also* R.C.M. 401(c)(2) concerning forwarding charges. If allegations are forwarded to a higher authority for disposition, because of lack of authority or otherwise, the disposition decision becomes a matter within the discretion of the higher authority.

A matter may be forwarded for other reasons, such as for investigation of allegations and preferral of charges, if warranted (*see* R.C.M. 303; 307), or so that a subordinate can dispose of the matter.

# RECORD OF PROCEEDINGS UNDER ARTICLE 15, UCMJ

For use of this form, see AR 27-10; the proponent agency is TJAG.

*See Notes on Reverse Before Completing Form*

| NAME | GRADE | SSN | UNIT | PAY *(Basic & Sea/Foreign)* |
|---|---|---|---|---|
| | | | | |

1. I am considering whether you should be punished under Article 15, UCMJ, for the following misconduct: [1/]

2. You are not required to make any statements, but if you do, they may be used against you in this proceeding or at a trial by court-martial. You have several rights under this Article 15 proceeding. First I want you to understand I have not yet made a decision whether or not you will be punished. I will not impose any punishment unless I am convinced beyond a reasonable doubt that you committed the offense(s). You may ordinarily have an open hearing before me. You may request a person to speak on your behalf. You may present witnesses or other evidence to show why you shouldn't be punished at all *(matters of defense)* or why punishment should be very light *(matters of extenuation and mitigation)*. I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. [2/] If you do not want me to dispose of this report of misconduct under Article 15, you have the right to demand trial by court-martial instead. [3/] In deciding what you want to do you have the right to consult with legal counsel located at ______________________________ . You now have 48 hours to decide what you want to do. [4/]

| DATE<br>TIME | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| | | |

3. Having been afforded the opportunity to consult with counsel, my decisions are as follow: *(Initial appropriate blocks, date, and sign)*

*a.* [ ] I demand trial by court-martial.

*b.* [ ] I do not demand trial by court-martial and in the Article 15 proceedings:

*(1)* I request the hearing be [ ] Open [ ] Closed. *(2)* A person to speak in my behalf [ ] Is [ ] Is not requested.

*(3)* Matters in defense, mitigation, and/or extenuation: [ ] Are not presented [ ] Will be presented in person [ ] Are attached.

| DATE | NAME AND GRADE OF SERVICE MEMBER | SIGNATURE |
|---|---|---|
| | | |

4. In a(n) [ ] Open [ ] Closed hearing [5/] all matters presented in defense, mitigation, and/or extentuation, having been considered, the following punishment is imposed: [5/] [6/]

5. I direct the original DA Form 2627 be filed in the [ ] Performance fiche [ ] Restricted fiche of the OMPF. [7/]

6. You are advised of your right to appeal to the ______________________ within 5 calendar days. An appeal made after that time may be rejected as untimely. Punishment is effective immediately unless otherwise stated above.

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| | | |

7. *(Initial appropriate block, date, and sign)*

*a.* [ ] I do not appeal *b.* [ ] I appeal and do not submit additional matters [8/] [9/] *c.* [ ] I appeal and submit additional matters [8/] [9/]

| DATE | NAME AND GRADE OF SERVICE MEMBER | SIGNATURE |
|---|---|---|
| | | |

8. I have considered the appeal and it is my opinion that:

| DATE | NAME AND GRADE OF JUDGE ADVOCATE | SIGNATURE |
|---|---|---|
| | | |

9. After consideration of all matters presented in appeal, the appeal is:

[ ] Denied [ ] Granted as follows: [10/]

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| | | |

| 10. I have seen the action taken on my appeal. | DATE | SIGNATURE OF SERVICE MEMBER |
|---|---|---|
| | | |

11. ALLIED DOCUMENTS AND/OR COMMENTS [11/] [12/] [13/]

## NOTES

1/ Insert a concise statement of each offense in terms stating a specific violation and the Article of the UCMJ *(Part IV, MCM)*. If additional space is needed, use item 11 or continuation sheets as described in note 11 below.

2/ Inform the member of the maximum punishment which may be imposed under Article 15.

3/ Inform the member that if he or she demands trial, trial could be by SCM, SPCM, or GCM. Additionally, inform the member that he or she may object to trial by SCM and that at SPCM or GCM he or she would be entitled to be represented by qualified military counsel, or by civilian counsel at no expense to the government. If the member is attached to or embarked in a vessel, he or she is not permitted to refuse Article 15 punishment. In such cases, all reference to a demand for trial will be lined out and an appropriate remark will be made in item 11 indicating the official name of the vessel and that the member was attached to or embarked in the vessel at the time punishment was imposed.

4/ Give the member copy 5 of this form.

5/ Offenses determined not to have been committed will be lined out. If the imposing commander decides not to impose any punishment, the member will be notified and all copies of this form destroyed.

6/ Amounts of forfeitures of pay will be rounded off to the next lower whole dollar. If a punishment is suspended, the following statement should be added after it: To be automatically remitted if not vacated before *(date)*. If punishment includes a written admonition or reprimand, it will be attached to this form and listed in item 11.

7/ The imposing commander will initial the appropriate block. The OMPF performance fiche is routinely used by MOS/specialty career managers and DA selection boards. The OMPF restricted fiche is not given to MOS/speciality career managers or DA selection boards without approval of the Cdr, MILPERCEN or selection board proponent.

8/ If the member appeals, this form and all written evidence considered by the imposing commander will be forwarded to the superior authority.

9/ Before acting on an appeal, it must be referred to a judge advocate for advice when the punishment, whether or not suspended, includes reduction of one or more pay grades from the fourth or a higher pay grade, or is in excess of one of the following: 7 days arrest in quarters, 7 days correctional custody, 7 days forfeiture of pay, or 14 days of either extra duties or restriction. *(See Article 15e (1) to (7), UCMJ.)*

10/ The superior authority will initial the appropriate block. If the appeal is granted, the specific relief granted will be stated according to note 12.

11/ In this space indicate the number of pages attached as follows: Allied documents on appeal consist of ________ pages. Allied documents include all written matters considered by the imposing commander submitted by the member on appeal and the commander's rebuttal, if applicable. If additional space is needed for completion of any item *(s)*, use plain bond headed "Continuation Sheet 1", etc.

12/ Applicable portions of the following format may be used to record action taken on appeal. Appropriate language should be entered in item 11 or, if necessary, on a continuation sheet. Supplementary actions *(para 3-38, AR 27-10)* will be recorded on DA Form 2627-2.

Suspension, Mitigation, Remission, or Setting Aside

*(DATE)*

On *(date)*, The punishment(s) of ______________________________________________,
imposed on *(date of punishment) (was) (were) (suspended and will be automatically remitted if not vacated before (date)) (mitigated to) (set aside, and all rights, privileges, and property affected restored) (by my order) (by order of) (the officer who imposed the punishment) (the successor in command to the imposing commander) (as superior authority).*

*(Typed name, grade, and organization of commander)* /s/______________________________

13/ Racial/ethnic identifiers will be placed in Item 11 *(Chapter 15, AR 27-10)*.

Headquarters
Department of the Army
Washington, DC
30 October 1987

*Army Regulation 600–8–2

Effective 30 November 1987

Personnel—General

# Suspension of Favorable Personnel Actions (Flags)

This UPDATE printing publishes a new regulation that is effective 30 November 1987.

By Order of the Secretary of the Army:

CARL E. VUONO
*General, United States Army*
*Chief of Staff*

Official:

R. L. DILWORTH
*Brigadier General, United States Army*
*The Adjutant General*

**Summary.** This regulation prescribes policies, operating tasks, and steps governing the suspension of favorable personnel actions as a function.

**Applicability.** This regulation applies to the Active Army, the Army National Guard, and the U.S. Army Reserve.

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Internal control systems.** This regulation is subject to the requirements of AR 11–2. It contains internal control provisions but does not contain checklists for conducting internal control reviews. These checklists are being developed and will be published at a later date.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from HQDA (DAPC–MSP–F), ALEX VA 22332–0400.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by The Adjutant General. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA (DAPC–MSP–F), ALEX VA 22332–0400.

**Distribution.** Active Army, B; ARNG, D; and USAR, D.

**Contents** (Listed by paragraph number)

**Chapter 1**
**Introduction**

*Section I*
*General*
Purpose • 1–1
Explanation of abbreviations and terms • 1–2
References • 1–3
Proponent responsibility • 1–4
Manpower resources • 1–5
Levels of work • 1–6
The flagging process • 1–7

*Section II*
*Principles and Standards*
The principle of support • 1–8
Wartime standards of service • 1–9
Peacetime standards of service • 1–10

*Section III*
*Policy*
Categories of flags • 1–11
Circumstances requiring a non-transferable flag • 1–12
Circumstances requiring a transferable flag • 1–13
Actions prohibited by a flag • 1–14
Processing exceptions • 1–15
Retaining soldiers past their ETS/ESA/MRD • 1–16

**Chapter 2**
**Operating Tasks**

*Section I*
*Task: Initiate the Flag*
Rules for initiating the flag • 2–1
Steps for initiating the flag • 2–2

*Section II*
*Task: Manage the Flagging System*
Rules for managing the flagging system • 2–3
Steps for managing the flagging system • 2–4

*Section III*
*Task: Transfer the Flag*
Rules for transferring the flag • 2–5
Steps for transferring the flag • 2–6

*Section IV*
*Task: Remove the Flag*
Rules for removing the flag • 2–7
Steps for removing the flag • 2–8

*Section V*
*Task: Request Authority To Retain Beyond ETS/ESA/MRD*
Rules for retaining beyond ETS/ESA/MRD • 2–9
Steps for retaining beyond ETS/ESA/MRD • 2–10

**Chapter 3**
**Managing Flagging Actions in SIDPERS**

*Section I*
*SIDPERS Transactions*
General guidance • 3–1
Submitting the transaction • 3–2
Entering the control data • 3–3
Entering action data for the initial flag • 3–4
Entering action data to delete an erroneous flag • 3–5
Entering action data to transfer a flag • 3–6
Entering action data to remove a flag • 3–7
Entering action data to report a delay in separation • 3–8
Reason and Report codes for a FLAG transaction • 3–9

*This regulation supersedes AR 600–31, 1 July 1984.

(a) *Command and staff (C&S).* C&S includes work required to manage the personnel strength of a command and work required to support the commander's decision process. The headquarters elements of all Army commands are responsible for C&S work. (Brigades within Army divisions are notable exceptions.) C&S work includes enlisted and officer strength management, awards and decorations, release from active duty (that is, eliminations), special correspondence, and personnel actions requiring a commander's decision.

(b) *Personnel support (PS).* PS work is performed by personnel support activities, either in the Personnel Service Center or as part of the base operations (BASOPS) support structure.

*b.* The guidance in chapter 2 will typically address the following levels of work:

(1) *Soldiers.* Work beginning with input from a soldier.

(2) *Unit.* Work executed at unit level.

(3) *Battalion.* Work executed at battalion level.

(4) *Command and staff (C&S).* Work executed within the chain of command (other than the battalion). The specific C&S work center covered by this regulation is plans and staff support (SS).

(5) *Personnel support (PS).* Work executed in a personnel support organization. The specific PS work centers covered by this regulation are officer records (OR), enlisted records (ER), flagged records (FR), and in and out processing (IO).

### 1–7. The flagging process

The flagging process includes the physical security and separate maintenance of the Military Personnel Records Jacket, U.S. Army (MPRJ) of soldiers not in good standing. The process depends on timely and accurate reports from commanders to initiate, transfer, and remove flags.

## Section II
## Principles and Standards

### 1–8. The principle of support

The Department of the Army will operate a system to guard against the accidental execution of specified favorable personnel actions for soldiers not in good standing.

### 1–9. Wartime standards of service

*a.* The flagging system will be suspended for the deploying force; thus, the manpower required to support the flagging system will be resourced in the Table of Distribution and Allowances (TDA).

*b.* The policy that precludes executing favorable actions (para 1–14) will remain in force.

### 1–10. Peacetime standards of service

*a.* A flag will be initiated immediately when a soldier's status changes from favorable to unfavorable.

*b.* Flagged MPRJs will be maintained in a restricted access area.

*c.* Active flag cases will be reviewed monthly.

*d.* A flag will be removed immediately when a soldier's status changes from unfavorable to favorable.

## Section III
## Policy

### 1–11. Categories of flags

Flags will be submitted when an unfavorable action or investigation (formal or informal) is started against a soldier by military or civilian authorities. Flags are classified into the two categories described below, depending upon the specific action or investigation.

*a.* Non-transferable. The flag may not be transferred to another unit (except where consistent with paragraph 1–15).

*b.* Transferable. The flag may be transferred to another unit.

### 1–12. Circumstances requiring a non-transferable flag

The specific actions and investigations requiring a non-transferable flag and the reasons for removing the flag are as follows:

*a.* Adverse actions.

(1) *Charges, restraint, or investigation.* Remove the flag when soldier is released without charges, charges are dropped, or punishment is completed.

(2) *Court-martial.* Remove the flag upon completion of punishment, to include any term of suspension.

(3) *Nonjudicial punishment.* Remove the flag upon completion of punishment, to include any term of suspension.

(4) *Absent without leave (AWOL).* Remove the flag upon completion of punishment.

(5) *Administrative reduction.* Remove the flag on the day of reduction.

(6) *Letter of admonition, censure, or reprimand not administered as nonjudicial punishment.* Remove the flag on the day the letter is signed by the commander.

*b.* Elimination—field initiated. Remove the flag when soldier is reassigned to a transition point.

*c.* Removal from a promotion, command, or school selection list—field initiated. ~~Remove the flag on the day the Headquarters, Department of the Army (HQDA) decision is received.~~ See IOL

*d.* A referred officer evaluation report (OER) when on a promotion list. Remove the flag when received and accepted by HQDA.

*e.* A security violation.

(1) *Local security violation.* Remove the flag upon direction of the commander.

(2) *Violation of Title 18 of the United States Code concerning sabotage, espionage, treason, sedition, or criminal subversion.*

(*a*) When case is closed favorably, remove the flag upon direction of the Commander, U.S. Army Central Personnel Security Clearance Facility (CCF).

(*b*) When case is closed unfavorably, remove the flag upon direction of the Secretary of the Army.

(3) *Violation of Articles 94, 104, 106, 133, and 134 of the Uniform Code of Military Justice (UCMJ).* Remove the flag upon direction from the Secretary of the Army.

*f.* Elimination or removal from promotion, command, or school selection list—HQDA initiated. HQDA will remove the flag.

## 1–13. Circumstances requiring a transferable flag

The specific actions and investigations requiring a transferable flag and the reasons for removing the flag are as follows:

*a.* HQDA directed reassignment of flagged soldier. Remove the flag according to HQDA guidance.

*b.* Movement of an adverse action into the punishment phase. Remove the flag according to the rules in paragraph 1–12*a*.

*c.* Failure to pass the Army Physical Fitness Test (APFT) or failure to take the APFT within the required period. Remove the flag (code E/type report) on the day the soldier passes the APFT or at expiration term of service (ETS)/expiration of service agreement (ESA)/mandatory release date (MRD).

*d.* Entry into Weight Control Program. Remove the flag (code E/type report) on the day the commander decides that the soldier is in compliance with the program.

## 1–14. Actions prohibited by a flag

A flag prohibits the personnel actions listed below (see paragraph 1–15 for exceptions). The PSC will control the MPRJ to guard against accidental execution of—

*a.* Appointment, reappointment, reenlistment, and extension.

*b.* Entry on active duty (AD) or active duty for training (ADT).

*c.* Reassignment.

*d.* Promotion or reevaluation for promotion.

*e.* Awards and decorations.

*f.* Attendance at civil or military schooling.

*g.* Unqualified resignation or discharge.

*h.* Retirement.

*i.* Advanced or excess leave.

*j.* Payment of enlistment bonus (EB) or selective reenlistment bonus (SRB).

*k.* Assumption of command.

*l.* Family member travel to an oversea command (when sponsor is overseas).

*m.* Command sponsorship of family members in an oversea command (when sponsor is overseas).

## 1–15. Processing exceptions

*a. APFT.*

(1) Flags for APFT failure block promotion, reenlistment, and extension only.

(2) A flag is not initiated if the soldier has a limiting physical profile that specifically prohibits taking the APFT.

*b. Weight control.*

(1) Flags for weight control block only attendance at full-time civil or military schooling, promotion, assumption of command, and reenlistment or extension.

(2) Soldiers attending a civil or military school on the date of the flag will not be removed from such schooling.

(3) Commanders may approve reenlistments and extensions under certain medical conditions as advised by the supporting total Army career counselor.

*c. Reassignment.*

(1) HQDA will reassign soldiers returned to military control from dropped from the rolls (DFR).

(2) Soldiers in receipt of HQDA reassignment instructions may depart when their case moves into the punishment phase if the punishment does not require the soldier's continued presence.

(3) Major oversea commanders approve intra-command reassignments.

*a.* FLAG–1. Enter the reason code reflected in the data base and the report code (C for favorable, D for unfavorable, or E for other).

*b.* FLAG–1. Enter the effective date of removal as a six-position date (YYMMDD).

### 3–8. Entering action data to report a delay in separation

Enter the following data to report a delay in separation:

*a.* In the control data, enter the transaction date (YYMMDD), mnemonic DSEP, five-position name, SSN, and your originator code.

*b.* In the action data area, enter the reason code F for flagged.

### 3–9. Reason and Report codes for a FLAG transaction

*a.* Use the following codes for the reason data of the flag transaction:

| Code | Reason |
|---|---|
| | Non-transferable |
| A | Adverse action (charges, restraint, or investigation; courts-martial; nonjudicial punishment; AWOL; administrative reduction; and letter of reprimand when not administered as nonjudicial punishment). |
| B | Elimination—field initiated. |
| C | Removal from selection list—field initiated. |
| D | Referred OER. |
| E | Security violation. |
| F | Elimination or removal from selection list—HQDA initiated. |
| | Transferable |
| G | Adverse action—HQDA directed reassignment. |
| H | Adverse action—punishment phase. |
| J | APFT failure. |
| K | Weight control program. |

*b.* Use the following codes for the report data of the flag transaction:

| Code | Report |
|---|---|
| A | Initial report |
| C | Final favorable report |
| D | Final unfavorable report |
| E | Final other report |
| Z | Delete erroneous flag |

## Section II
## SIDPERS Management Reports

### 3–10. General guidance for the SIDPERS AAC–C95 report (Suspension of Favorable Personnel Actions Roster)

*a.* The FLAG transaction updates the SIDPERS Personnel File (SPF). Therefore, every flagged soldier should be listed on the AAC–C95 report.

*b.* Local SIDPERS transactions update HQDA automated data bases. Therefore, each soldier on the AAC–C95 report will also be flagged on the HQDA Officer Master File/Enlisted Master File.

*c.* The date a soldier completed a previous weight control program remains on the AAC–C95 report for 36 months.

### 3–11. Instructions for reviewing the SIDPERS AAC–C95 report

*a.* The PSC personnel automation section will—

(1) Produce the AAC–C95 report monthly.

(2) Distribute four copies to the flagged records work center.

### 1–12. Circumstances requiring a non-transferable flag

The specific actions and investigations listed below require a non-transferable flag.

*a.* Adverse actions.

(1) *Charges, restraint, or investigation.* Remove the flag when soldier is released without charges, charges are dropped, or punishment is completed.

(2) *Court-martial.* Remove the flag upon completion of punishment, to include any term of suspension. However, a flag for a soldier on a HQDA promotion list (officer promotable to 03–06, warrant officers promotable to CW3–CW5, and enlisted soldiers promotable to E7–E9) who is flagged for a court-martial, can only be removed by HQDA (AHRC-Alexandria-MSP-S). Forward a copy of the initial DA Form 268 along with supporting documentation to HQDA (AHRC-Alexandria-MSP-S).

(3) *Nonjudicial punishment.* Remove the flag upon completion of punishment, to include any term of suspension. However, a flag for a soldier on a HQDA promotion list (officer promotable to 03–06, warrant officers promotable to CW3–CW5, and enlisted soldiers promotable to E7–E9) who is flagged for nonjudicial punishment can only be removed by HQDA (AHRC-Alexandria-MSP-S). Forward a copy of the initial DA Form 268 along with supporting documentation to HQDA (AHRC-Alexandria-MSP-S).

(4) *Absent without leave (AWOL).* Remove the flag upon completion of punishment.

(5) *Administrative reduction.*Remove the flag on the day of reduction.

(6) *Memorandums of admonition, censure, or reprimand not administered as nonjudicial punishment.* Remove the flag upon completion of filing instructions. However, a flag for a soldier on a HQDA promotion list (officer promotable to 03–06, warrant officers promotable to CW3–CW5, and enlisted soldiers promotable to E7–E9) who is flagged for one of these memorandums can only be removed by HQDA (AHRC-Alexandria-MSP-S). Forward a copy of the initial DA Form 268 along with supporting documentation to HQDA (AHRC-Alexandria-MSP-S).

(7) *AMEDD soldiers who are not in compliance with AR 40–68.* Remove the flag (code type E) on the date of compliance.

*b.* Elimination—field initiated. Remove the flag when soldier is reassigned to a transition point.

*c.* Removal from a promotion, command, or school selection list—field initiated. A flag for a soldier on a HQDA promotion list (officer promotable to 03–06, warrant officers promotable to CW3–CW5, and enlisted soldiers promotable to E7–E9) who is flagged for removal from command, promotion, or school list can only be removed by HQDA (AHRC-Alexandria-MSP-S). Forward a copy of the initial DA Form 268 along with supporting documentation to HQDA (AHRC-Alexandria-MSP-S).

*d.* A referred officer evaluation report (OER) when on a promotion list. Remove the flag when received and accepted by HQDA.

*e.* A security violation.

(1) *Local security violation.* Remove the flag upon direction of the commander.

(2) *Violation of Title 18 of the United States Code concerning sabotage, espionage, treason, sedition, or criminal subversion.*

*(a)* When case is closed favorably, remove the flag upon direction of the Commander, U.S. Army Central Personnel Security Clearance Facility (CCF).

*(b)* When case is closed unfavorably, remove the flag upon direction of the Secretary of the Army.

(3) *Violation of Articles 94, 104, 106, 133, and 134 of the Uniform Code of Military Justice (UCMJ).*Remove the flag upon direction from the Secretary of the Army.

*f.* Elimination or removal from promotion, command, or school selection list—HQDA initiated. HQDA will remove the flag.

### 1–13. Circumstances requiring a transferable flag

The specific actions and investigations listed below require a transferable flag.

*a.* HQDA directed reassignment of flagged soldier. Remove the flag according to HQDA guidance.

*b.* Movement of an adverse action into the punishment phase. Remove the flag according to the rules in paragraph 1–12*a.*

*c.* Failure to pass the Army Physical Fitness Test (APFT) or failure to take the APFT within the required period. Remove the flag (code E/type report) on the day the soldier passes the APFT or at expiration term of service (ETS)/ expiration of service agreement (ESA)/mandatory release date (MRD).

*d.* Entry into Weight Control Program. Remove the flag (code E/type report) on the day the commander decides that the soldier is in compliance with the program.

*e.* Soldiers who are command referred to the Arny Substance Abuse Program (ASAP) in accordance with AR 600–85, paragraph 5–7. Remove the flag on date of compliance (Code E type report).

**Headquarters**
**Department of the Army**
**Washington, DC**
**30 October 1985**

***Army Regulation 195–2**

**Effective 30 October 1985**

**Criminal Investigation**

# Criminal Investigation Activities

By Order of the Secretary of the Army:

JOHN A. WICKHAM, JR
*General, United States Army*
*Chief of Staff*

Official:

MILDRED E. HEDBERG
*Brigadier General, United States Army*
*The Adjutant General*

**History.** This UPDATE printing publishes a revision which is effective 30 October 1985. Because the structure of the entire revised text has been reorganized, no attempt has been made to highlight changes from the earlier regulation dated 6 May 1977.

**Summary.** This regulation covers Department of the Army policy on criminal investigation activities, including the utililzation, control, and investigative responsibilities of all personnel assigned to CID elements. It also delineates responsibility and authority between Military Police (MP) and The United States Army Criminal Investigation Command (USACIDC).

**Applicability.** This regulation applies to the Active Army and the U.S. Army Reserve (USAR). It applies to the Army National Guard (ARNG) when in active Federal service.

**Proponent and exception authority.** Not applicable

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Army management control process.**

**Supplementation.** Supplementation of this regulation and establishment of forms other than DA Forms are prohibited without prior approval from the Commander, United States Army Criminal Investigation Command, ATTN: CIPP–PD, 5611 Columbia Pike, Falls Church, VA 22041–5015.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by The Adjutant General. Users will destroy interim changes on their expiration date unless sooner superseded or rescinded.

**Suggested Improvements.** The proponent agency for this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA (DAPE–HRE–PO), Washington, DC 20310.

**Distribution.** Active Army, A; USAR, A; ARNG, D.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Investigative policies • 1–5, *page 1*

**Chapter 2**
**USACIDC Organization,** *page 3*
General • 2–1, *page 3*
CID support to the Army in the field • 2–2, *page 3*

**Chapter 3**
**Criminal Investigation Activities,** *page 3*

*Section I*
*General, page 3*
Investigative authority of the Army • 3–1, *page 3*
USACIDC investigative responsibility • 3–2, *page 3*
Investigative responsibility of the USACIDC and military police • 3–3, *page 3*
Assumption of investigative responsibility by the USACIDC • 3–4, *page 4*
Agreements between the USACIDC and provost marshals or security elements • 3–5, *page 4*
Referral of investigations • 3–6, *page 4*
Army Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) • 3–7, *page 4*
Self-admitted homosexuality • 3–8, *page 4*
Customs and postal matters • 3–9, *page 4*

*Section II*
*Crime Prevention Surveys and Protective Services, page 4*
Crime prevention surveys • 3–10, *page 4*
Protective services • 3–11, *page 4*

*Section III*
*Operational Considerations, page 5*
Freedom of movement • 3–12, *page 5*
Crime scenes • 3–13, *page 5*
Coordination • 3–14, *page 5*
Access to Army facilities and records • 3–15, *page 5*
Security clearances and special background investigations • 3–16, *page 5*
CID use of the National Crime Information Center (NCIC) • 3–17, *page 5*
Warning of rights • 3–18, *page 6*

*Section IV*
*CID Special Agents, page 6*

* This regulation supersedes AR 195–2, 6 May 1977; and rescinds DA Form 2800, January 1976, and DA Form 4733 (Test), November 1978.



**Unclassified**

# Chapter 1 General

## 1–1. Purpose

This regulation—

*a.* Prescribes Department of the Army policy on criminal investigation activities, including the utilization, control, and investigative authority and responsibilities of all personnel assigned to criminal investigation (CID) elements.

*b.* Constitutes the basic authority for the conduct of criminal investigations, crime prevention surveys, protective service missions, and the collection, retention, and dissemination of criminal information.

*c.* Delineates responsibility and authority between military police and the U.S. Army Criminal Investigation Command (USACIDC).

## 1–2. References

Required and related publications are listed in appendix A.

## 1–3. Explanation of abbreviations and terms

Abbreviations and special terms used in this regulation are explained in the glossary.

## 1–4. Responsibilities

*a.* The Commanding General, USACIDC, will—

(1) Establish policies for the release of information from, and the amendment of, criminal investigation records and reports of investigations.

(2) Evaluate Army law enforcement polygraph program activities and provide membership on DOD polygraph committees.

(3) Maintain overall responsibility for Army investigations of offenses involving "controlled substances" as defined in 21 U.S.C. 812.

(4) Plan for and provide CID support for each contingency plan maintained by HQDA and its subordinate commands. Plans for criminal investigative support will be coordinated with the commander responsible for the overall contingency plan.

*b.* The Commanding General, U.S. Army Training and Doctrinal Command (TRADOC) is responsible for the formal training of USACIDC personnel at TRADOC schools as necessary to meet the requirements of USACIDC.

*c.* The Commanding General, U.S. Army Materiel Command (AMC) is responsible for the formal training of USACIDC personnel at AMC schools as necessary to meet the requirements of USACIDC.

*d.* Within their respective areas of responsibilities, major Army commanders and subordinate commanders will support the Army CID program by providing facilities and support required by the USACIDC mission and authorized by applicable regulations or memoranda of understanding to assist the USACIDC in meeting the criminal investigative, crime prevention, and protective service requirements of subordinate commands, installations, and other supported Army activities.

*e.* CID elements at all levels will provide statistical data to supported commands relative to the number and types of serious crimes and incidents investigated, subjects identified, value of property stolen or recovered, and other information reflecting the status of discipline, law, and order necessary for the completion of reports required by HQDA (e.g., DA Form 2819, Law Enforcement and Discipline Report). Statistical data necessary to support locally established reports may be provided within the administrative and record keeping capabilities of the supporting CID element.

*f.* Commanders or supervisors receiving CID reports for action will take the following actions:

(1) Commanders or supervisors receiving action copies of final CID Reports of Investigation (ROI) pertaining to a member of their organization are required to—

*(a)* Reply within 60 days through local command channels (using DA Form 4833, Commander's Report of Disciplinary or Administrative Action), to the USACIDC element preparing the ROI, indicating the judicial, nonjudicial, or administrative action, or lack thereof, taken against persons listed in the title block of the final ROI who are under their supervision or command. Changes to judicial, nonjudicial, or administrative action resulting from subsequent appellate action will also be reported by commanders and supervisors to the USACIDC. The report of action taken is necessary to ensure completion of investigative files and to protect the rights of individuals involved.

*(b)* Notify all persons listed in the title block, who have no action taken against them, that their name will remain in the title block of the report and that the report will be indexed, and, therefore, retrievable by their name. Individuals will also be informed of the purposes for which the reports are used (e.g., other criminal investigations, security clearances, other purposes as authorized by the Privacy Act and AR 340–21) and the fact that such use may have an impact upon their military or civilian careers. Individuals will be informed also that the removal of their name from the title block or other amendment of the report may be accomplished only by submitting a written request to the Director, U.S. Army Crime Records Center, 2301 Chesapeake Ave, Baltimore, MD 21222–4099. Requests for amendment will be considered only as set forth in paragraph 4–4.

(2) Commanders or supervisors of activities, facilities, units, or installations who have received a crime prevention survey by the USACIDC will furnish a report of corrective action taken or a statement that no corrective action was taken as a result of the survey. This report of corrective action must be forwarded by the commanders or supervisors through local command channels to the commander two levels above the activity, unit, facility, or installation surveyed within 90 days of the date of the survey, but in no case will reports be forwarded above MACOM level. An information copy of the corrective actions will be provided the appropriate USACIDC field element within 90 days of the date of the survey. A report of corrective action is not required for crime prevention survey when—

*(a)* Requested by the commanders or supervisors of activities, facilities, units, or installations.

*(b)* Conducted in support of a crime prevention program.

*(c)* Crime conducive conditions are not identified.

## 1–5. Investigative policies

*a.* The USACIDC is the sole agency within the United States Army responsible for the investigation of felonies, except as otherwise prescribed in this regulation and AR 190–30. USACIDC directives and policies as they relate to criminal investigation activities will be followed by all CID personnel and elements throughout the United States Army.

*b.* Offenses will be reported as follows:

(1) Commanders will ensure that criminal incidents or allegations in the Army affecting or involving persons subject to the Uniform Code of Military Justice, civilian employees of the Department of Defense if related to their assigned duties or position, government property under Army jurisdiction, or those incidents occurring in areas under Army control are reported to military police or security police in accordance with AR 210–10, paragraph 2–19. Information indicating a violation of AR 600–50 or the Federal Acquisition Regulation (FAR) that develops into possible criminal activity will also be reported to the military police or security police.

(2) Barracks larcenies of property of a value of less than $1,000 and simple assaults occurring in unit areas and not resulting in hospitalization will be reported to law enforcement activities for statistical and crime reporting purposes, but a law enforcement investigation is not required. Unit commanders will take appropriate action on these incidents. A law enforcement investigation will normally be conducted only when it is considered necessary by the provost marshal or security officer; commander, CID element; or when requested by a field grade commander in the chain of command of the unit concerned. Nothing in this regulation will be

construed to allow the withholding of medical treatment to avoid MP or CID involvement.

*c.* Military police and security police will promptly refer all crimes or incidents falling within CID investigative responsibility to the appropriate CID element for investigation. Initially, notification will normally be accomplished by direct contact between the military police or security police desk sergeant and the supporting CID unit. Formal referral will be by DA Form 3975, Military Police Report. This form will also be used by the USACIDC to report acceptance or declination of the investigation.

*d.* Commanders of installations or activities without assigned military police or security police will report criminal incidents or allegations to the supporting USACIDC element or the supporting military police or security police as appropriate.

*e.* The USACIDC will determine appropriate investigative action in accordance with this regulation for all criminal incidents or allegations reported to it or developed through its own sources. Necessary reports will be prepared reflecting the results thereof.

*f.* The USACIDC element receiving reports of criminal incidents or allegations from other than military police or security police will notify the appropriate provost marshal or security officer of the incident, unless such notification will compromise the investigation. (See para 3–14.)

*g.* Title 28, U.S.C., Section 535, requires that any information, allegation, or complaint relating to violations of title 18, U.S. Code, involving Government officials and employees will be reported expeditiously to the Department of Justice, unless the responsibility to investigate the matter is conferred upon the DOD (e.g., an offense under the Uniform Code of Military Justice (UCMJ)) or as otherwise provided by law or agreement with the Attorney General (e.g., the DOD/DOJ Memorandum of Understanding).

(1) For violations in the United States, the normal method of referral and consultation with the appropriate Department Of Justice agency (e.g., FBI, U.S. Attorney) on all such violations involving either military or civilian personnel established pursuant to AR 27–10, chapter 2, will suffice and should be used.

(2) In the case of overseas violations or loss or injury to the United States that affect Armed Forces activities, and which involve any civilian as a suspect or subject, whether or not such person is a DOD employee (e.g., a defense contractor), a full report on the nature and apparent scope of the violation, loss, or injury will be provided through USACIDC channels. Headquarters, USACIDC, will notify DOJ through DAJA–LT as appropriate. A prompt initial notification should be submitted through USACIDC channels in all instances involving bribery or conflict of interest and in those instances of fraud, theft, and unlawful destruction of Government property when the loss to the United States exceeds or is expected to exceed $1,000.

*h.* Information concerning purely political activities and personalities, or disorders in which no crime is indicated or suspected will not be collected, recorded or reported by the USACIDC.

*i.* Continuous criminal investigation-military intelligence liaison will be maintained. Information concerning an offense or incident involving any person having access to classified defense information will be expeditiously provided to the proper military intelligence (MI) representative. Similarly, in accordance with AR 381–10 and AR 381–20, MI components are obliged to expeditiously report criminal information to the appropriate military law enforcement authority. Certain intelligence-related crimes such as actual or alleged espionage, treason, or sedition may present situations where MI and CID have concurrent investigative jurisdiction. The primary responsibility of MI is to investigate such incidents for intelligence and security-related purposes. CID shares the responsibility to investigate the incident for the purpose of reporting crime within Army investigative jurisdiction. The lead agency concept will be employed, based on coordination with the proper MI component, to determine the agency to undertake primary investigative responsibility. Generally, MI will take the investigative lead to first exhaust all intelligence or security dimensions of an incident before investigation for possible criminal prosecution is initiated. In situations such as known or suspected sabotage, when immediate evaluation of a crime scene is of paramount importance, the USACIDC should take the investigative lead.

*j.* The receiving USACIDC element will refer information related to systemic weaknesses or managerial deficiencies not of a criminal nature to the appropriate Inspector General office, in accordance with AR 20–1, appendix D.

*k.* Criminal information will be handled as follows:

(1) The USACIDC has primary responsibility to operate a criminal information program. The program will be designed to obtain, record, process, and disseminate information concerning criminal activities directed against, involving, or affecting U.S. Army operations, material or personnel. The program will also develop, analyze, and report on the methods of operations used in criminal activities and assess the vulnerability of Army activities to crime. The focus of the criminal information program will be the detection, analysis, and prevention of criminal activity affecting the Army. Information gathered may be factual, fragmentary, or unsubstantiated.

(2) The USACIDC criminal investigation information gathering activities are not “counter-intelligence related” and are excluded from the provisions of AR 380–13. AR 380–13 restrictions are applicable to any information acquired through criminal investigations or criminal investigation activities which is not related to law enforcement or crime prevention. Criminal information files will be maintained and reviewed in accordance with AR 380–18. Safeguards will be established to preclude unauthorized release of information.

(3) CID units will ensure that within their area of responsibility there is close coordination and mutual exchange of criminal information between their unit and other military and civilian law enforcement agencies on matters of common interest. Source confidentiality will be maintained.

(4) In no case will criminal information be restricted to CID channels when that information provides strong indications that an offense is imminent and the commission of that offense will affect the safety or security of U.S. Army operations, personnel or material. Release will be made only to the extent necessary to prevent the commission of the offense.

(5) Information concerning criminal activity of interest to U.S. Government agencies other than the Department of Defense and other law enforcement agencies will be reported to the appropriate agency. In overseas areas where representatives of other Federal investigative agencies are not present, information of interest to those agencies will be forwarded to the Commander, USACIDC, ATTN: CIOP–ZA, 5611 Columbia Pike, Falls Church, VA 22041–5015 for appropriate dissemination. All releases of information under this provision will be in accordance with AR 340–21.

(6) Criminal information about an individual may be disseminated outside law enforcement channels only to those persons whose official duties create a definite and identifiable need for them to have access. Dissemination will be made to the minimum number of persons possible. All releases of information under this provision will be in accordance with AR 340–21.

*l.* The contents of Army investigative files will be restricted to information that is necessary and relevant to authorized criminal investigation and law enforcement information gathering activities.

*m.* Collateral reports of investigations (transmitting reports of criminal investigations received from civilian agencies) pertaining to offenses within USACIDC’s normal investigative responsibility will be forwarded by provost marshals or security officers in accordance with AR 190–45 to the U.S. Army Crime Records Center. An information copy of the DA Form 3975, with the civilian police report as an enclosure, will be provided to the supporting CID element to ensure the receipt of criminal information. When the overall interests of the Army would be best served, the USACIDC may assume collateral reporting responsibility for any particular off-post investigation by notifying the appropriate provost marshal or security officer.

*n.* All requests for USACIDC elements to become involved in missions or tasks not enumerated in AR 10–23 or this regulation

will be referred to the Commanding General, USACIDC, ATTN: CIOP–ZA.

## Chapter 2
## USACIDC Organization

### 2–1. General

*a.* The USACIDC is a major Army command of the Department of the Army. (See AR 10–5 and AR 10–23.) It is composed of a command headquarters, forensic laboratories, the U.S. Army Crime Records Center, the U.S. Army Protective Services Activity, and worldwide field investigative units.

*b.* In non-tactical situations, each USACIDC unit is normally a tenant activity at an Army installation, providing investigative support to the installation commander as well as to the commanders of all other Army elements located within a USACIDC specified geographic area of responsibility. The commander or special agent-in-charge at each unit provides advice and guidance on all CID matters to supported commanders and provost marshals or security officers.

### 2–2. CID support to the Army in the field

*a.* During tactical operations and field exercises and in active theaters of operation, the Commanding General, USACIDC, will provide CID support to tactical units and their supporting elements under one of the following options:

(1) *General support.* CID support is provided to the supported force in a given geographic area by CID elements under command and control of a USACIDC headquarters.

(2) *Direct support.* CID support is provided by a USACIDC element on a dedicated support basis to the supported organization, although the CID element is neither attached to nor under the command or control of the supported organization.

(3) *Attachment.* USACIDC elements are temporarily placed under the command and control of the supported commander. Reassignment, promotion, and accreditation responsibilities are retained by the USACIDC.

*b.* The selection of the method of support will be coordinated between the appropriate USACIDC headquarters and the headquarters planning for the contingency or operation. Final approval concerning the attachment of USACIDC elements rests with the Commanding General, USACIDC. The commander of the supported tactical force will provide necessary logistical and administrative support to CID elements when attached or in direct support.

*c.* Regardless of the support option selected, criminal investigations will be conducted, prepared, administered, reported, and distributed in accordance with AR 10–23, AR 195–1, appropriate provisions of this regulation, and applicable USACIDC regulations and directives.

## Chapter 3
## Criminal Investigation Activities

### Section I
### General

### 3–1. Investigative authority of the Army

*a.* Investigative authority refers to matters concerning which the Army has the legal authority (jurisdiction) to conduct a criminal investigation. Investigative responsibility refers to those matters within the Army's overall investigative authority which the USACIDC has responsibility to ensure are properly investigated.

*b.* The Army has investigative authority whenever an Army interest exists and investigative authority has not been specifically reserved to another agency (see para 3–6 below; AR 20–1,app D; and the Memorandum of Understanding between the Department of Defense and the Department of Justice relating to the investigation and prosecution of certain crimes). Generally, an Army interest exists when one or more of the following apply:

(1) The crime is committed on a military installation or facility.

(2) There is a reasonable basis to believe that a suspect may be subject to the UCMJ.

(3) There is a reasonable basis to believe that a suspect may be a civilian employee of DOD who has committed an offense in connection with his or her assigned duties.

(4) The Army is the victim of the crime; e.g., the offense involves the loss or destruction of government property or allegations of fraud (as defined in DOD instructions concerning the criminal investigation of fraud offenses) relating to Army programs or personnel.

(5) There is a need to protect personnel, property, or activities on Army installations from criminal conduct on military installations that has a direct adverse effect on the Army's ability to accomplish its mission; e.g., the introduction of controlled substances onto Army installations.

### 3–2. USACIDC investigative responsibility

*a.* Inside CONUS, Alaska, and Hawaii, the USACIDC will normally exercise investigative responsibility for those offenses listed in appendix B and which are within the Army's investigative authority. However, when Federal, State, or local civil law enforcement authorities have concurrent jurisdiction, investigative responsibility will be determined in coordination with that authority. When concurrent jurisdiction or authority to investigate exists and neither the Army nor the civil authorities accede to the other's primary responsibility to investigate, both may pursue the investigation in fulfillment of their respective interests, with neither impeding the other.

*b.* Outside CONUS, the USACIDC will normally have investigative responsibility for those offenses listed in appendix B which are also within the Army's investigative authority, and when investigation would not be prohibited by status of forces agreements or other host country laws. In the absence of any agreement, the USACIDC will investigate offenses after coordination with appropriate host country authorities.

### 3–3. Investigative responsibility of the USACIDC and military police

*a.* The USACIDC is responsible for investigating those Army-related felonies (offenses punishable by death or confinement for more than 1 year) listed in appendix B. Exceptions to this general policy are described in paragraphs *a*(1) through (10) below and 3–4.

(1) *Property-related offenses.* The USACIDC is responsible for investigating property-related offenses when the value of the property taken, destroyed, or damage inflicted is $1,000 or more (except as listed in app B) or when the property is of a sensitive nature (app G). A preliminary investigation by the USACIDC is also required for purposes of determining criminal intent in the case of lost sensitive arms, ammunition, and explosives when the quantities involved meet the thresholds in AR 190–11, appendix A. (See AR 190–11, para 7–20,*a*(1)*(b)).* Military police are responsible for investigating property-related offenses when the value is less than $1,000. When requested by a supported commander, the USACIDC may investigate property crimes of lesser value, such as a series of minor larcenies which appears to be the work of an organized group.

(2) *Drug offenses.* The USACIDC has overall responsibility for offenses involving controlled substances. Use and possession of non-narcotic controlled substances in amounts indicative only of personal use are normally investigated by military police, whereas the USACIDC investigates use, possession, manufacture, or distribution of controlled substances classified as narcotics, and the distribution of non-narcotic controlled substances. When appropriate, the investigation by a joint CID/MP team of all drug offenses on an installation is recommended. This can be accomplished with the primary investigative and reporting procedures of the military police

and CID remaining unchanged. This approach fosters better coordination and is encouraged when deemed in the best interest of the overall drug suppression effort.

(3) *Misdemeanors.* The USACIDC retains investigative responsibility for a limited number of misdemeanors due to the complex nature of the investigation required. Such offenses are reflected in appendix B.

(4) *Noncombat deaths.* The USACIDC is responsible for investigating noncombat deaths to the extent necessary to determine whether criminality is involved.

(5) *Military offenses.* Certain military offenses, such as misbehavior as a sentinal or disrespect, will not normally be investigated either by the USACIDC or the military police. However, when the significance of the incident or the complexity of the facts dictate, the USACIDC or the military police may assume investigative responsibility.

(6) *Crimes affecting Reserve Components.* Crimes in which a Reserve component is affected by fraud, theft, diversion, or destruction of United States Government funds or property may be investigated by the USACIDC. Other cases affecting a U.S. Army interest may be investigated pursuant to instructions of the Commanding General, USACIDC.

(7) *War crimes.* The USACIDC is responsible for investigating suspected war crimes when a violation of the UCMJ listed in appendix B is indicated or when otherwise directed by HQDA.

(8) *Adultery and fraternization.* When they are the only offenses involved, adultery and fraternization will not normally be investigated by either the USACIDC or military police. The offenses will be reported by military police (using DA Form 3975) through command channels to the appropriate commander.

(9) *Offenses involving senior personnel.* The USACIDC will investigate any felony offense involving senior level personnel (active duty general or flag officer, member of the Senior Executive Service (SES), or Executive Schedule personnel) as subjects without regard for the limitations imposed in appendix B. Other offenses involving these personnel as subjects may be investigated by the USACIDC if the sensitivity of the incident or complexity of the matter so dictates.

(10) *Aggravated assaults.* The USACIDC is responsible for investigating aggravated assaults which result in the victim being hospitalized for treatment (not mere observation) for a period of more than 24 hours. All other aggravated assaults will be investigated by military police.

*b.* The USACIDC may conduct a preliminary investigation as required to determine whether the USACIDC has investigative authority or responsibility or whether there is an Army interest in the matter. If the preliminary investigation reveals that one or more of the foregoing is lacking, the matter will be referred to the appropriate action agency.

### 3–4. Assumption of investigative responsibility by the USACIDC

The USACIDC may assume responsibility for investigating any criminal offense within the investigative authority on the Army when appropriate to a related investigation or to further the law enforcement or crime prevention goals of the Army. When the USACIDC assumes control of an investigation from the military police and initiates an ROI, the investigation will be carried through to conclusion by the USACIDC. Conducting a preliminary investigation does not presuppose assuming control of an investigation.

### 3–5. Agreements between the USACIDC and provost marshals or security elements

Modification of investigative responsibility by mutual agreement is not authorized at a local or MACOM level. Memoranda of understanding establishing drug suppression teams and delineating their logistical and administrative support are, however, authorized.

### 3–6. Referral of investigations

For some criminal offenses within USACIDC investigative responsibility, another agency may have primary responsibility to investigate. In such cases, the other agency will be promptly informed of the allegation and, if the other agency assumes the responsibility to investigate the case, it will be referred to that agency. The USACIDC will submit a report of investigation reflecting the referral and the results of the investigation by the other agency. If the other agency ceases the development or completion of investigative leads, the USACIDC may conduct further investigation provided the other agency presents no valid objections. If the other agency declines to investigate, the USACIDC may conduct the investigation.

### 3–7. Army Alcohol and Drug Abuse Prevention and Control Program (ADAPCP)

In compliance with the Army's ADAPCP policy, CID will investigate participants in ADAPCP for controlled substance offenses only if the offense occurred after entry into the program or if the participant had been identified as a suspect or subject prior to the time of entry into the program. Participants in ADAPCP will not be knowingly approached by CID special agents for the purpose of soliciting information about controlled substances distribution unless the participant voluntarily offers to provide such information. (See AR 600–85.)

### 3–8. Self-admitted homosexuality

When cases of self-admitted homosexuality are referred to the USACIDC, a preliminary investigation will be conducted to determine if a criminal offense has occurred after the person became subject to the UCMJ. If an offense within USACIDC investigative responsibility is substantiated, a report of investigation will be prepared. If the individual refuses to provide information concerning specific criminal sexual acts, including names, places, and dates, and no other credible information is developed, a criminal information report will be prepared reflecting the admission and any other pertinent information. The individual's commander and the local military intelligence activity will be provided this information. Self-admissions made directly to CID special agents of homosexual acts which occurred prior to the person becoming subject to the UCMJ will be similarly reported to the person's commander and the local military intelligence unit.

### 3–9. Customs and postal matters

*a.* Postal and customs authorities periodically find unauthorized material (e.g., contraband, explosives, ammunition, or unauthorized or illegal weapons) that may be property of the U.S. Government.

*b.* When requested, CID special agents or military police will receipt for such confiscated U.S. Government property. Such property will be returned to Government supply channels when no longer required for evidentiary purposes.

*c.* Recovery of weapons, ammunition, and explosives will be reported by the Army element receipting for them in accordance with AR 190–11.

*d.* The USACIDC will investigate such incidents when appropriate and in conformance with this regulation.

## Section II
## Crime Prevention Surveys and Protective Services

### 3–10. Crime prevention surveys

The USACIDC conducts crime prevention surveys to support commanders within the context of the Army Crime Prevention Program. Crime prevention surveys may be initiated by the CID element commander or may be conducted in response to a request of the supported commander.

### 3–11. Protective services

The USACIDC plans for and conducts protective service operations generally using methods, procedures, and equipment similar to those

**AR 600–37**
Unfavorable Information

**AR 600–50**
Standards of Conduct for Department of the Army Personnel

**AR 700–84**
Issue and Sale of Personal Clothing

**AR 740–26**
Physical Inventory Control

**FAR**
Federal Acquisition Regulation

**FRCrP**
Federal Rules of Criminal Procedure

**MCM**
Manual for Courts Martial, United States, 1984

### Section III
### Prescribed Forms

**DA Form 2804**
Crime Records Data Reference. (Cited in para 4–2*b* and appendix E.)

**DA Form 4833**
Commanders Report of Disciplinary or Administrative Action. (Cited in para 1–4*f*(1)*(a)* and 5–1.)

### Section IV
### Referenced Forms

**DD Form 543**
Request for Records

**DD Form 1056**
Authorization to Apply for a No-Fee Passport and/or Request for Visa

**DA Form 3975**
Military Police Report

## Appendix B
## Offenses within CID Investigative Responsibility

**Table B–1**

| Article of UCMJ | Description of offense |
|---|---|
| 77 | Principals of an offense listed in this appendix |
| 78 | Accessory after the fact to an offense listed in this appendix |
| 80 | Attempts to commit an offense listed in this appendix |
| 81 | Conspiracy to commit an offense listed in this appendix |
| 82 | Solicitation to mutiny or commit an act of sedition (see Article 94) |
| 84 | Effecting an unlawful enlistment, appointment, or separation |
| 92 | Violation of a punitive lawful general order or regulation. (This pertains to those criminal offenses not covered by a specific article such as currency violations, black marketing in the aggragate amount of $1,000 or more in a 30-day period, or conflict of interest) |
| 93 | Cruelty, oppression, or maltreatment |
| 94 | Mutiny, sedition |
| 96 | *a.* Releasing without proper authority a prisoner duly committed to his charge.<br>*b.* Suffering a prisoner duly committed to his charge to escape through design. |
| 97 | Unlawful detention |
| 103 | *a.* Captured or abandoned property of a value of $1,000 or more or any property of a sensitive nature as described in appendix G, failing to secure, report and turnover, selling, or otherwise wrongfully dealing in or disposing of<br>*b.* Looting or pillaging |
| 107 | False official statements when in conjunction with another offense normally investigated by CID |
| 108 | *a.* Selling or otherwise disposing of military property of the United States of an aggregate value of $1,000 or more, or any property of a sensitive nature as described in appendix G<br>*b.* Willfully damaging, destroying or losing, or willfully suffering to be lost, damaged, destroyed, sold, or wrongfully disposed of, military property of the United States of a value or damage of $1,000 or more |
| 109 | Wasting, spoiling, destroying, or damaging any propery other than military property of the United States of an aggregate value or damage of $1,000 or more |
| 110 | Hazarding or suffering to be hazarded any vessel of the armed forces |
| 112a | Wrongful use, possession, manufacture, distribution, introduction, importation, exportation of controlled substances (except as provided in 3–3*a*(2) |
| 115 | Malingering involving intentional self-inflicted injury requiring hospitalization |
| 116 | Riot |
| 118 | Murder |
| 119 | Manslaughter |
| 120 | Rape or carnal knowledge |
| 121 | *a.* Larceny or wrongful appropriation of property, including aircraft or vessels, of an aggregate value of $1,000 or more<br>*b.* Larceny of any motor vehicle of a value of $1,000 or more |

**Table B–1**
**—Continued**

*c.* Larceny or wrongful appropriation of any property of a sensitive nature, as defined in appendix G
*d.* Wrongful appropriation of a motor vehicle when damage of $1,000 or more results

**Article of UCMJ:** 122
**Description of offense:** Robbery

**Article of UCMJ:** 123
**Description of offense:** Forgery

**Article of UCMJ:** 123a
**Description of offense:** Check, worthless, making, drawing, uttering, or delivering, with intent to defraud (for procurement of any article or thing of value) in the aggregate amount of $1,000 or more

**Article of UCMJ:** 124
**Description of offense:** Maiming

**Article of UCMJ:** 125
**Description of offense:** Sodomy

**Article of UCMJ:** 126
**Description of offense:**
*a.* Aggravated arson
*b.* Simple arson where property damage is of a value of $1,000 or more

**Article of UCMJ:** 127
**Description of offense:** Extortion

**Article of UCMJ:** 128
**Description of offense:**
*a.* Assault (consummated by a battery) on a child under the age of 16 years
*b.* Aggravated assault when the victim is hospitalized as a result

**Article of UCMJ:** 129
**Description of offense:** Burglary, when associated with another crime normally investigated by the USACIDC

**Article of UCMJ:** 130
**Description of offense:** Housebreaking, when associated with another crime normally investigated by CID

**Article of UCMJ:** 131
**Description of offense:** Perjury

**Article of UCMJ:** 132
**Description of offense:** Frauds against the United States when the amount involved is $500 or more.

**Article of UCMJ:** 134
**Description of offense:** Assault
*a.* Indecent
*b.* With intent to commit voluntary manslaughter, robbery, sodomy, arson, or burglary
*c.* With intent to commit murder or rape

**Article of UCMJ:** 134
**Description of offense:** Bigamy

**Article of UCMJ:** 134
**Description of offense:** Bribe or graft: accepting, asking, receiving, offering, promising, or giving

**Article of UCMJ:** 134
**Description of offense:** Burning, with intent to defraud

**Article of UCMJ:** 134
**Description of offense:** False or unauthorized military pass, permit discharge certificate, or identification card: making, altering, selling, possessing, counterfeiting, or using with intent to defraud or deceive

**Article of UCMJ:** 134
**Description of offense:** False pretenses, obtaining services under, of a value of $1,000 or more

**Article of UCMJ:** 134
**Description of offense:** Homicide, negligent

**Article of UCMJ:** 134

**Table B–1**
**—Continued**

**Description of offense:** Impersonating an officer, warrant officer, non-commissioned or petty officer or agent of superior authority, with intent to defraud

**Article of UCMJ:** 134
**Description of offense:** Indecent acts or liberties with a child under the age of 16

**Article of UCMJ:** 134
**Description of offense:** Indecent acts with another

**Article of UCMJ:** 134
**Description of offense:** Kidnapping

**Article of UCMJ:** 134
**Description of offense:** Mail, taking, opening, secreting, destroying, or stealing

**Article of UCMJ:** 134
**Description of offense:** Mails, depositing or causing to be deposited obscene or indecent matters in

**Article of UCMJ:** 134
**Description of offense:** Misprision of a felony

**Article of UCMJ:** 134
**Description of offense:** Obstructing justice

**Article of UCMJ:** 134
**Description of offense:** Pandering

**Article of UCMJ:** 134
**Description of offense:** Perjury, subornation of

**Article of UCMJ:** 134
**Description of offense:** Public record, wrongfully altering, concealing, removing, mutilating, obliterating, or destroying

**Article of UCMJ:** 134
**Description of offense:** Soliciting another to commit an offense listed in this appendix (other than article 94)

**Article of UCMJ:** 134
**Description of offense:** Stolen property, knowingly receiving, buying, concealing; of an aggregate value of $1,000 or more

**Article of UCMJ:** 134
**Description of offense:** Threat or hoax, bomb

## Appendix C
## Preparation of DA Report of Investigation

***(Appendix C will be publilshed at a later date. MPI will continue to use their current forms until this appendix is published.)***

## Appendix D

***(Appendix D will be published at a later date)***

## Appendix E
## Preparation of the DA Form 2804, Crime Records Data Reference

### E–1. General

Potential investigative assistance can be negated by failure to provide complete data on DA Form 2804, Crime Records Data Reference, by misspelling names, or by listing incorrect data. Careful attention to the completion of this form is essential to its utility.