IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-166C (Judge C.O.C. Miller)

PAUL E. DOLAN

Plaintiff,

v.

THE UNITED STATES

Defendant,

PLAINTIFF'S APPENDIX
VOLUME 2

August 3, 2007

John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825
Counsel for plaintiff

# APPENDIX TABLE OF CONTENTS

Army Regulation,
AR 600-8-24, *Officer Transfers and Discharges* (1995)................................................21-35

Headquarters
Department of the Army
Washington, DC
21 July 1995

*Army Regulation 600–8–24

Effective 1 November 1995

Personnel–General

# Officer Transfers and Discharges

By Order of the Secretary of the Army:

DENNIS J. REIMER
*General, United States Army*
*Chief of Staff*

Official:

JOEL B. HUDSON
*Acting Administrative Assistant to the Secretary of the Army*

**History.** This publication is a consolidation of AR 635–100 and AR 635–120. All actions that were initiated under AR 635–100 and AR 635–120 prior to the effective date of AR 600–8–24 will continue to be processed until completion under the regulation that initiated the action.

**Summary.** This regulation prescribes policies and procedures governing transfer and discharge of Army officer personnel. This regulation includes policy statements, operating tasks, rules in support of operating tasks, and sequential steps of each operating task.

**Applicability.** This regulation applies to all commissioned and warrant officers of the Active Army, the Army National Guard of the United States, and the U.S. Army Reserves when serving on active duty for a period of 30 or more consecutive days.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff for Personnel (DCSPER). The proponent has the authority to approve exceptions to this publication that are consistent with controlling law and regulation. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency in the grade of colonel or the civilian equivalent.

**Army management control process.** This regulation contains management control provisions but does not contain checklists for conducting management control reviews used to accomplished assessment of management controls.

**Supplementation.** Supplementation of this regulation and establishment of command or local forms are prohibited without prior approval from HQDA, ODCSPER, through CDR PERSCOM (TAPC–PDT–PM), ALEXANDRIA VA 22332–0478.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Administrative Assistant to the Secretary of the Army. Users will destroy interim changes on their expiration date unless sooner superseded or rescinded.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to CDR PERSCOM (TAPC–PDT–PM), ALEXANDRIA VA 22332–0478.

**Distribution.** Distribution of this publication is made in accordance with the requirements on DA Form 12–09–E, block number 5463, intended for command level A, B, C, D, and E for Active Army, Army National Guard, and U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*

*Section I*
*Overview, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Manpower requirements • 1–5, *page 1*
Levels of work • 1–6, *page 1*
The officer transfer/discharge process • 1–7, *page 1*
Headquarters, Department of the Army (HQDA), addresses for officers • 1–8, *page 1*

*Section II*
*Principles and Standards, page 2*
Principles of support • 1–9, *page 2*
Standards of service • 1–10, *page 2*

*Section III*
*Scope, page 2*
Eligibility for voluntary separation • 1–11, *page 2*
Counseling • 1–12, *page 2*
Separation pay • 1–13, *page 3*
Leave • 1–14, *page 3*
Recoupment • 1–15, *page 3*
An officer under investigation or pending court-martial • 1–16, *page 3*
An officer awaiting appellate review of adjudged dismissal or dishonorable discharge • 1–17, *page 3*
Action required prior to involuntary separation or Under Other Than Honorable discharge of personnel with access to sensitive programs • 1–18, *page 3*
Reassignment of an officer pending involuntary separation • 1–19, *page 3*
Termination of appointment (ADL officer only) • 1–20, *page 3*
Types of administrative discharge/character of service • 1–21, *page 3*
Medical examination/retention • 1–22, *page 4*
Referral for physical disability evaluation • 1–23, *page 4*
Indebtedness • 1–24, *page 4*
Return from overseas • 1–25, *page 4*
Assignment of personnel to a U.S. Army transition point/transition activity (TP/TA) • 1–26, *page 5*
Separation requests/actions for RC • 1–27, *page 5*
Separating an officer in a foreign country • 1–28, *page 5*

*This regulation supersedes AR 635–100, 1 May 1989, and AR 635–120, 1 June 1989.



UNCLASSIFIED

## Section II
## Principles and Standards

### 1-9. Principles of support

The Military Personnel System will direct a function to—

*a.* Provide a mechanism to terminate the services of an officer prior to the terms of the original contract (both voluntarily and involuntarily).

*b.* Provide authority to transfer officers from one component to another.

*c.* Provide authority to discharge officers from all military obligations.

*d.* Support the Army's personnel life-cycle function of transition.

### 1-10. Standards of service

*a.* The officer transfer/discharge program is—

(1) A wartime military personnel function.

(2) Provided its function resources by the TOE PSC.

(3) The functional responsibility of the Personnel Operations Branch and PPAA work center (and their tactical counterpart).

*b.* Involuntary transfers and discharges will be processed to completion without delay upon initiation by the commander.

*c.* Wartime standards will be extended or curtailed as follows:

(1) Terms of service will be extended by the President and/or Congress through declaration of national emergency or war.

(2) Transfer and discharge authority (voluntary and involuntary) will be curtailed by the Secretary of the Army.

## Section III
## Scope

### 1-11. Eligibility for voluntary separation

*a.* An officer may request separation from the Army under the provisions of this regulation. The appropriate commander will ensure that the officer is separated on the date specified in the separation order and furnish the discharge certificate specified by CG, PERSCOM (if appropriate).

*b.* A request for separation may be disapproved by the approval authority when the—

(1) Officer is under investigation or charges.

(2) Officer is awaiting result of trial.

(3) Officer is being considered for involuntary separation (Department of the Army Active Duty Board (DAADB) or elimination).

(4) Officer is absent without leave (AWOL).

(5) Officer is under control of civil authorities.

(6) Officer is mentally incompetent.

(7) Officer is in default with respect to public property or funds.

(8) Officer has not fulfilled an active duty service obligation (ADSO) specified in AR 350–100.

(9) Officer has not completed an initial USAR AGR tour or when voluntary separation is not in the best interests of the USAR AGR program.

(10) Secretary of the Army determines that existing needs of the Service require delay of favorable separation action. The retention period will be specified when the decision is made to delay the separation.

(11) President or Congress has declared a period of national emergency or war is imminent or in progress.

*c.* Voluntary requests for separation under this regulation may be accepted only from an officer who is mentally competent when the request is submitted. When an officer is medically incapacitated from further military service due to a physical or mental condition, the officer's case will be delayed until he or she recovers or the officer is processed through medical channels.

### 1-12. Counseling

*a.* When a commissioned officer (except for chaplains, judge advocates, and Army Medical Department (AMEDD) personnel) with less than 10 years active Federal commissioned service (AFCS) submits a request for a voluntary REFRAD under chapter 2 or an unqualified resignation under chapter 3, the first colonel in the officer's chain of command or supervision will counsel the officer (this is only required when listed in the appropriate table). The judge advocates, chaplains, and AMEDD officers will be counseled by a senior officer of their branch in the chain of technical supervision or as specifically designated by their branch. The requirement for counseling is waived for a Reserve Component (RC) officer on the active duty list (ADL) or an AGR officer who is one-time nonselect for promotion.

*b.* Counseling will include—

(1) Advice concerning the opportunities available in a military career.

(2) A discussion of the officer's previously achieved investment in the Army.

(3) A determination as to whether the officer has satisfied all applicable service obligations, as computed by PERSCOM.

(4) A determination that the officer is not under investigation or charges, awaiting results of trial, or being considered for administrative elimination.

(5) A determination that the officer is not absent without leave (AWOL), in the confinement of civil authorities, suffering from a severe mental disease or defect, or in default in respect to public property or public funds.

(6) Advice encouraging a Regular Army (RA) officer to accept an appointment in the USAR. An RC officer will be encouraged to retain his or her commissioned status in the USAR.

(7) Information concerning USAR career opportunities may be obtained from agencies listed in table 1-1.

**Table 1-1**
**USAR addresses**

| Officers assigned to | Send requests to |
|---|---|
| CONUS (and all other areas not specifically identified below) | COMMANDER<br>ARPERCEN<br>ATTN: ARPC–OP<br>9700 PAGE BOULEVARD<br>ST LOUIS MO 63132–5200<br>Telephone:<br>1–800–325–4898 |
| U.S. ARMY, EUROPE (USAREUR) | COMMANDER<br>1st PERSCOM<br>ATTN: AEUPE–PSSD–TMD–AR<br>Unit 29058<br>APO AE 09081<br>Telephone:<br>COM 06202–24001<br>ETS 379–6615/7708 |
| Eighth U.S. Army (Korea) | COMMANDER<br>8th PERSCOM<br>ATTN: EAPC–PM–R<br>APO AP 96301<br>Telephone:<br>Yongsan 724–8472/8491<br>Defense Switched Network (DSN) 315–724–8472/8491 |
| U.S. ARMY, PACIFIC (USARPAC)<br>All Pacific areas except Korea | COMMANDER<br>U.S. ARMY PACIFIC<br>ATTN: APAG–R<br>FORT SHAFTER HI 96858<br>Telephone:<br>808–438–6135 |
| USAR AGR | COMMANDER<br>ARPERCEN<br>ATTN: ARPC–ARO<br>9700 Page Boulevard<br>ST LOUIS MO 63132–5200<br>Telephone:<br>1–800–325–5200 |

**1–13. Separation pay**

Eligibility for and payment of separation pay is governed by Department of Defense (DOD) Instruction 1332.29 and the Department of Defense Military Pay and Allowances Entitlements Manual (DODPM). See DODPM, part 4, chapter 4, section B, for determination of entitlements to nondisability separation pay.

**1–14. Leave**

Commanders may grant leave in accordance with AR 600–8–10 in conjunction with an officer's separation. However, this leave must be taken prior to the effective date of separation.

**1–15. Recoupment**

Individuals who participate in certain advanced education programs and fail to complete their educational requirements or military service obligations (Active Army and/or RC) are subject to the recoupment provisions of AR 37–104–4, chapter 3. This must be accomplished prior to separation of an individual who has not fulfilled the ADSO incurred as a result of participation in that advanced education program, according to section 2005, title 10, United States Code (10 USC 2005).

**1–16. An officer under investigation or pending court-martial**

An officer pending court-martial charges or investigation with a review toward court-martial will not be separated without HQDA approval.

**1–17. An officer awaiting appellate review of adjudged dismissal or dishonorable discharge**

An officer who has been convicted and sentenced to dismissal or dishonorable discharge will not be discharged prior to completion of appellate review without prior approval of CG, PERSCOM. An RA officer may be processed for excess leave under AR 600–8–10;. An RC officer may be released from AD per paragraphs 2–37 and 2–38 of this regulation.

**1–18. Action required prior to involuntary separation or Under Other Than Honorable discharge of personnel with access to sensitive programs**

*a.* Procedures described below apply to officers in the following categories:

(1) Knowledge of sensitive compartmented information (SCI).

(2) Nuclear Weapon Personnel Reliability Program assignment.

(3) Knowledge of Single Integrated Operational Plan—Extremely Sensitive Information (SIOP-ESI).

(4) Special Access Program (SAP) knowledge.

(5) Presidential Support assignment.

*b.* Prior to involuntary separation or other than honorable discharge of personnel in any of the above categories, the individuals's commander/supervisor will coordinate with the supporting security official (Assistant Chief of Staff (Intelligence) (G2)/Intelligence Officer, U.S. Army (S2)/Security Manager). Special security policies apply that may impact the separation procedure. Separation/discharge will not be effected unless the security official concurs with the action.

**1–19. Reassignment of an officer pending involuntary separation**

Unless otherwise directed by CG, PERSCOM, or CDR, ARPERCEN, for USAR AGR officers, an officer pending an involuntary separation action will remain at the location of his or her current assignment until the case is closed.

**1–20. Termination of appointment (ADL officer only)**

Acceptance of the resignation or the discharge of an officer in a Regular Army (RA) or Reserve status, unless otherwise specified in this regulation, will result in appropriate action being taken to terminate any warrant or temporary commission he or she may be holding simultaneously. However, when the best interests of the Government and the individual will be served, a warrant officer may, at the discretion of the accepting authority, be permitted to resign from a particular warrant or commissioned status.

**1–21. Types of administrative discharge/character of service**

When an officer's tour of AD is terminated due to discharge, retirement, or REFRAD, the period of service will be characterized as "Honorable," "General" ("Under Honorable Conditions"), "Under Other Than Honorable," or "Dishonorable" (warrant officers who do not hold a commission only), depending on the circumstances. The character of service will be predicated on the officer's behavior and performance while a member of the Army. Characterization normally will be based on a pattern of behavior and duty performance rather than an isolated incident. However, there are circumstances in which conduct reflected by a single incident may provide the basis of characterization of service.

*a. Honorable characterization of service.* An officer will normally receive an Honorable characterization of service when the quality of the officer's service has met the standards of acceptable conduct and performance of duty for an officer. The DD Form 256A (Honorable Discharge Certificate) will be furnished to a discharged officer; however, a certificate is not issued when an officer is released from AD. When the separation is based solely on preservice activities or substandard performance of duty, it will be Honorable.

*b. Under Honorable Conditions characterization of service.* An officer will normally receive an Under Honorable Conditions characterization of service when the officer's military record is satisfactory but not sufficiently meritorious to warrant an Honorable discharge. The DD Form 257A (General Discharge Certificate) will be furnished to a discharged officer; however, a certificate will not be issued when an officer is released from AD. A separation under honorable conditions will normally be appropriate when an officer—

(1) Submits an unqualified resignation or a request for REFRAD under circumstances involving misconduct.

(2) Is separated based on misconduct, including misconduct for which punishment was imposed, which renders the officer unsuitable for further service, unless an Under Other Than Honorable Conditions separation is appropriate.

(3) Is discharged for physical disability resulting from intentional misconduct or willful neglect, or which was incurred during a period of unauthorized absence.

(4) Is discharged under the Military Personnel Security Program if directed by HQDA (AR 604–10).

*c. Under Other Than Honorable Conditions characterization of service.* A discharge Under Other Than Honorable Conditions is an administrative separation from the service under conditions other than honorable. A discharge certificate will not be issued. An officer will normally receive an "Under Other Than Honorable Conditions" when he or she—

(1) Resigns for the good of the service (chap 3).

(2) Is dropped from the rolls of the Army per paragraph 5–15.

(3) Is involuntarily separated due to misconduct, moral or professional dereliction, or in the interest of national security.

(4) Is discharged following conviction by civil authorities (see para 2–35).

*d. Dishonorable characterization of service.* A Dishonorable Discharge is issued only to a warrant officer who is not commissioned as a result of sentence by court-martial. A discharge certificate will not be issued.

*e. Undetermined characterization of service.* An officer's service will be characterized as "to be determined" when released from AD duty when being processed for elimination action (chap 4) or when undergoing investigation as an alleged security risk under AR 604–10.

*f. No formal discharge certificate.* No formal discharge certificate will be issued when the officer is—

(1) Dropped from the rolls of the Army (paras 5–15 and 5–16).

(2) Dismissed as a result of sentence of court-martial.

(3) Removed under the criminal code of the United States.

(4) Discharged Under Other Than Honorable Conditions.

(5) Separated as a Dishonorable discharge (applies only to a warrant officer who does not hold a commission).

*g. Release or discharge from active duty.* A DD Form 214 (Certificate of Release or Discharge from Active Duty) will be furnished as prescribed in AR 635-5 to an officer who is separated from AD after completing 90 calendar days of continuous AD.

## 1-22. Medical examination/retention

*a.* The officer's immediate commander will ensure that medical examination procedures are followed as stated in AR 40-501.

*b.* An officer may only be retained past his or her separation date for medical reasons when continued hospitalization and/or physical disability processing is required. An officer being retired (voluntary or involuntary) due to maximum age (paras 6-26 and 6-27) or length of service (para 6-28) will not be retained on AD unless the medical condition requires referral to a Physical Evaluation Board (PEB) (para 6-7). An officer who is medically fit for retention will not be retained beyond the established separation date. An officer will not be retained without his or her written consent (see *f* below).

*c.* The commander of the medical treatment facility (MTF) will forward requests for retention endorsed by the officer's unit commander, through the Office of the Surgeon General, HQDA (DASG-PSA), FALLS CHURCH VA 22041-3258; to CDR PERSCOM (TAPC-PDT-RS), 200 STOVALL STREET, ALEX VA 22332-0478; or for AGR personnel to CDR ARPERCEN (ARPC-AR), 9700 PAGE BLVD, ST LOUIS MO 63132-5200; or HQDA (DAAR-SO), CHIEF ARMY RESERVE, 2400 ARMY PENTAGON, WASH DC 20310-2400, as appropriate, for approval. The requests will include the following information:

(1) Officer's name, rank, and social security number (SSN).

(2) Reason for release (for example, nonselection for promotion).

(3) Scheduled release date.

(4) Medical reasons for retention.

(5) Medical facility point of contact.

(6) A copy of the retention affidavit (fig 1-1).

*d.* The officer will be advised of the following retention advantages:

(1) Medical care and/or hospitalization provided.

(2) Normal benefits such as pay and allowances, to include continued post exchange and commissary privileges.

(3) Dependent medical care when an officer is ordered to AD for more than 30 days.

(4) The additional active service is creditable for longevity and retirement. For Reserve officers ordered to AD for 30 days or less, any retention under *b* above past the termination date of the orders is not creditable as AD for retirement under section 1331, title 10, United States Code (10 USC 1331). (See g below.)

(5) State income tax benefits where allowed by law.

*e.* Advise the officer that if he or she is eligible for disability separation, the advantages are as follows:

(1) If permanently retired, election of the most favorable retired pay allowed. If temporarily retired, the same selection of pay is authorized, but the minimum will not be less than 50 percent of the basic pay.

(2) If retired, the officer, along with his or her dependents, will be eligible for certain medical care when facilities and staffing permit at uniformed services facilities and certain medical care in civilian facilities (see AR 40-3).

(3) The percentage of retired pay that is based on the disability will be exempt from taxation.

(4) If discharged for disability, the officer may be entitled to separation pay.

*f.* The retained officer will sign the retention affidavit (fig 1-1). The next of kin or legal representative will sign for the retained officer when the retained officer is mentally incompetent or unable to sign. If the officer is unable to sign and the next of kin or legal representative cannot be located or will not indicate whether the officer will be retained, the officer will be retained until a retention decision is reached. The hospital commander will forward the details of the case as required by *c* above. File a copy in the officer's DA Form 201 (Military Personnel Records Jacket, U.S. Army).

*g.* See AR 135-381 concerning procedures for RC officers on active duty for training (ADT), temporary tours of active duty (TTAD), or active duty for special work (ADSW) tours of 30 calendar days or less and are hospitalized.

## 1-23. Referral for physical disability evaluation

If a commissioned or warrant officer is being processed for REFRAD, separation, or retirement or has been referred for elimination action, when it is determined that the officer has a medical impairment that does not meet medical retention standards, the officer will be processed as set forth in paragraphs *a* through *d* below.

*a.* A commissioned or warrant officer under investigation for an offense chargeable under the Uniform Code of Military Justice (UCMJ) that could result in dismissal or punitive discharge may not be referred for or continue disability processing unless—

(1) The investigation ends without charges.

(2) The commander exercising proper court-martial jurisdiction dismisses the charges.

(3) The commander exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

*b.* When a commissioned or warrant officer, as applicable, is being processed for one of the actions listed in (1) through (6) below, the officer will be processed in accordance with the provisions of this regulation and through the MEB/PEB system. If the result of the physical disability evaluation is a finding of physical fitness, the Army Physical Disability Agency will approve the findings for the Secretary of the Army and forward the proceedings to CDR, PERSCOM (TAPC-PDT-PM), to be processed with the other action. If a physical disability evaluation results in a finding of physical unfitness, both actions will be forwarded by CG, PERSCOM (TAPC-PDT-PM), to the Secretary of the Army for determination of appropriate disposition.

(1) Referral to the DAADB except when the DAADB is convened as a result of an imposed reduction in force.

(2) Involuntary REFRAD due to civil conviction or moral turpitude.

(3) Involuntary REFRAD due to the revocation of voluntary indefinite (VI) status.

(4) Resignation for the good of the service.

(5) Referral for elimination under chapter 4.

(6) Request for separation, resignation, or retirement in lieu of elimination.

*c.* When an officer is processed for separation or retirement for reasons other than those indicated above, physical disability takes precedence if the officer is retained with his or her consent. The procedures in paragraph 1-22 will be followed.

*d.* Officers previously determined physically unfit and continued on active duty under AR 635-40 must be referred for disability evaluations at final retirement or separation.

## 1-24. Indebtedness

An officer will not be retained on AD to satisfy an indebtedness to the Government or for collection of forfeitures adjudged by court-martial. The officer's final separation order will indicate the total amount of unpaid indebtedness and forfeitures due the Government on the REFRAD date (see DODPM).

## 1-25. Return from overseas

An officer stationed outside continental United States (OCONUS), who has a pending separation action will not be returned from the OCONUS command without PERSCOM approval or in the case of officers in special branches, without notifying special branch personnel managers also.

**Table 2-12**
**Involuntary REFRAD due to nonselection of VI status or AGR continuation**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Notified by his or her commander of VI nonselection. AGR officers are notified by NGB or OCAR of their nonselection for continuation. |
| 2 | PPAA BN S-1 C&S | For VI nonselects only— Determines whether medical board proceedings are pending or appropriate per paragraph 1-23. Counsels the officer and reports a dual status officer to CDR, PERSCOM (TAPC-PDT-PM). Releases an officer as scheduled, ensuring sufficient time is provided for the officer to arrive at home not later than 2400 hours on the last day of their AD tour. The SAA is authorized to approve early release if requested. When early release is approved, and the officer is eligible to receive separation pay, ensure the officer's packet contains the following statement: "I understand this request for early REFRAD (if approved) will not constitute my release under voluntary conditions and will not preclude my entitlements to separation pay if otherwise eligible." A copy of the action will be forwarded to CDR, PERSCOM (TAPC-PDT-PM), HQDA (DAJA-PT), or HQDA (DACH-PER), as applicable. |
| 3 | PPAA (TP/TA) | Separates or releases the officer, as appropriate, on scheduled release date. Final release orders and forms will cite regulatory authority and SPD as shown in AR 635-5-1. |

**Section XIV**
**Task: Process Involuntary REFRAD Due to Revocation of VI Status**

**2-29. Rules for processing involuntary REFRAD due to revocation of VI status**

*a.* An officer identified as a substandard performer or whose file reflects misconduct, moral or professional dereliction, and who is serving a 1-year probationary period as a result of VI approval, may *have his or her VI status revoked (according to AR 135-215) and be* involuntarily released from AD.

*b.* An officer that has his or her VI revoked will be notified through channels by PERSCOM (TAPC-PDT-PM) or by the appropriate special branch proponent.

*c.* An officer will be separated not later than 90 calendar days after receipt of VI revocation unless—

(1) An officer is retained to complete service.

(2) Extension is approved under AR 135-215.

(3) An officer is within 2 years of retirement (an officer that completes 18 or more years AFS on his or her scheduled release date).

*d.* Character of service for REFRAD under this section will be characterized as honorable or under honorable conditions.

**2-30. Steps for processing involuntary REFRAD due to revocation of VI status**

The steps required for processing involuntary REFRAD due to revocation of VI status are as shown on table 2-13.

**Table 2-13**
**Involuntary REFRAD due to revocation of VI status**

| Step | Work center | Required action |
|---|---|---|
| 1 | PPAA BN S-1 | Notifies officer that VI status has been revoked. Determines whether medical board proceedings are pending or appropriate per paragraph 1-23. Ensures the officer is separated as scheduled. |
| 2 | PPAA (TP/TA) | Separates the officer on scheduled release date. Final orders and forms will cite regulatory authority and SPD as shown in AR 635-5-1. |

**Section XV**
**Task: Process Involuntary REFRAD by the Department of the Army Active Duty Board**

**2-31. Rules for processing involuntary REFRAD by the DAADB**

*a.* The DAADB (qualitative) is the Army's tool for ensuring that only an RC officer who consistently maintains high standards of performance, efficiency, morality, and professionalism is permitted to serve on active duty. The Director, Army Council of Review Boards, will operate the DAADB. Approval authority to release or retain an officer under this paragraph is the Secretary of the Army or his or her designated representative. His or her decisions are final.

*b.* The DAADB is one part of the Army's total "loss management" program.

*c.* Local commanders; CDR, PERSCOM; Chief, Army Reserve (CAR); CDR, ARPERCEN; Director, Army National Guard (DARNG); TJAG; or the DACH may recommend that an RC officer be considered by a DAADB to determine if the officer's manner of performance, degree of efficiency, or misconduct constitutes consideration for involuntary separation. Files referred to the DAADB will be identified according to the following criteria:

(1) Less than 18 years of AFS on the projected separation date.

(2) Evidence of a significant act or condition of misconduct or moral or professional dereliction.

(3) Degree of efficiency.

(4) Manner of performance, when compared to contemporaries, particularly in recent years of service.

(5) Relative potential for useful service.

(6) The presence of unfavorable information, with primary consideration to the most recent years of service and repetitive tendency.

(7) No established release date within 6 months of notification of referral for consideration by the DAADB.

*d.* Demonstrated significant acts or conditions of misconduct or moral or professional dereliction may be one or more of the following or similar acts or similar conditions:

(1) Discreditable or intentional failure to meet personal financial obligations.

(2) Mismanagement of personal affairs detrimentally affecting the performance of duty of the officer concerned.

(3) Mismanagement of personal affairs to the discredit of the service.

(4) Intentional omission or misstatement of fact in official statements or records for the purpose of misrepresentation.

(5) Acts of personal misconduct (including, but not limited to *acts committed while in a drunken or drug intoxicated state).*

(6) Intentional neglect or failure to perform duties.

(7) Conduct unbecoming an officer.

(8) Conduct or actions resulting in the loss of a professional status, such as withdrawal, suspension or abandon of professional license, endorsement or certification which is directly or indirectly connected with the performance of one's military duties and necessary for the performance thereof, including withdrawal of clinical privileges for an AMEDD officer.

(9) Acts of behavior not clearly consistent with the interests of the national security.

(10) Conduct or actions by a warrant officer resulting in the loss of special qualifications (such as withdrawal or revocation of Criminal Investigation Divisions (CIDs) accreditation, revocation of marine qualification license, removal from the Personnel Reliability Program (PRP), withdrawal of clinical privileges or loss of flying status), which directly or indirectly precludes a warrant officer from performing in his or her military occupational specialty (MOS) and is necessary for MOS performance. The REFRAD based on these reasons may not be utilized if reclassification action is feasible and in the best interest of the service or if loss of special qualification was due to medical reasons beyond the control of the warrant officer. In these cases, a statement from the career management division, citing the reasons the officer cannot be reclassified, must be a part of the evidence considered by the board.

(11) Failure to respond to rehabilitation efforts regarding acts of child/spouse maltreatment or abuse and/or other acts of family violence.

*e.* While not all inclusive, existence of one or more of the following or similar conditions authorizes the release from active duty of an officer because their degree of efficiency and manner of performance is substandard. The DAADB action will be initiated for conditions under (7), (9), and (10) below or elimination action will be initiated for the same conditions under chapter 4, paragraph 4–2.

(1) Downward trend in overall performance resulting in an unacceptable record of efficiency or a consistent record of mediocre service.

(2) Failure to keep pace or to progress with contemporaries, such as successive promotion failure or a low record of efficiency when compared with another officer of the same grade, branch, and length of service.

(3) Failure to exercise necessary leadership or command expected of an officer of his or her grade.

(4) Failure to assimilate technical proficiency required of the officer's grade.

(5) Failure to discharge properly assignments commensurate with the officer's grade and experience.

(6) Apathy, defective attitude, or other character disorders to include inability or unwillingness to expand effort.

(7) Failure to respond to rehabilitation efforts regarding an alcohol or other drug problem in a reasonable length of time (AR 600–85).

(8) Failure to conform to prescribed standards of dress, personal appearance, and military deportment.

(9) Failure to achieve satisfactory progress after enrollment in the Army weight control program or failure to maintain established weight/body fat standards after removal from an established weight control program (AR 600–9). This provision does not include those judge advocates and AMEDD officers who have incurred a statutory active duty service obligation for participating in Army sponsored education and training programs. These programs are the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program or the Uniformed Services University of the Health Sciences (10 USC, chapters 104, 105).

(10) When no medical problems exist, and an officer has two consecutive failures of the Army Physical Fitness Test (APFT). This provision does not include those judge advocates and AMEDD officers who have incurred a statutory active duty service obligation for participating in Army sponsored education and training programs. These programs are the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program or the Uniformed Services University of the Health Sciences (10 USC, chapters 104, 105).

*f.* A DA Form 268 (Report to Suspend Favorable Personnel Actions) will be initiated (AR 600–8–2) when an officer is identified for DAADB actions.

*g.* The DAADB is convened under prescribed guidance as stated in the Memorandum of Instruction (MOI), issued by the Secretary of the Army or his or her delegee. Therefore, the MOI may modify the terms of this regulation for the board, without changing the regulation, unless it is contrary to statute.

*h.* An officer who will complete 18 or more years of AFS on his or her scheduled release date will not be processed under this section, unless such action is approved by the Secretary of the Army.

*i.* The officer will be notified in writing (fig 2–3) by CG, PERSCOM; CAR; CDR, ARPERCEN; DARNG; TJAG; or DACH, as appropriate, through the general officer show cause authority (GOSCA) (a GOSCA could also be the initiating officer if DAADB is field initiated) that his or her record is being referred to the DAADB to be considered for involuntary REFRAD. The initiating officer will initiate the Suspension of Favorable Personnel Action.

*j.* The initiating officer (must be at GOSCA or higher level) wil consider the officer's rebuttal and either close the case and notify the officer, or forward the case with the officer's rebuttal (if submitted) to CDR, PERSCOM (TAPC–PDT–PM). If the case is not closed CDR, PERSCOM (TAPC–PDT–PM), forwards the case to DIRECTOR, ARMY COUNCIL OF REVIEW BOARDS, 2D FLOOR ROOM 200 CC MALL#4, 1941 JEFFERSON DAVIS HIGHWAY, ARLINGTON VA 22203–4508.

*k.* The Army Council of Review Boards will convene DAADB under prescribed guidance stated in the MOI. The board will forward cases with recommendations to the Secretary of the Army or his or her designated representative for the final decision. Officers cases approved for retention in the Army will be sent to CDR, PERSCOM (TAPC–PDT–PM), and closed favorably. Officers cases approved for release from active duty will be sent to CDR, PERSCOM (TAPC–PDT–PM), for REFRAD processing.

*l.* PERSCOM, OCAR, ARPERCEN, DARNG, TJAG, or DACH, as applicable, will notify the officer through channels that the DAADB selected him or her for retention.

*m.* Commander, PERSCOM (TAPC–PDT–PM), will forward the necessary documentation for officers not on the ADL to ARMY RESERVE, FULL TIME SUPPORT MANAGEMENT CENTER, ARPC–ARO, 9700 PAGE BOULEVARD, ST LOUIS MO 63132–5200.

*n.* Commdander, PERSCOM (TAPC–PDT–PM), or CDR ARPERCEN (ARPC–AR), will issue and forward separation instructions to the appropriate PSC/MPD when the Secretary of the Army or his or her designated representative approves the involuntary separation of the officer.

*o.* When the officer recommended for involuntary separation is ARNGUS or USAR, PERSCOM (TAPC–PDT–PM) will refer the officer's name to CG, ARPERCEN, or Chief, National Guard Bureau, as appropriate, for elimination consideration when so directed by the Secretary of the Army or his or her designated representative.

*p.* Secretary of the Army or his or her delegee is the final approving authority on all DAADB cases.

*q.* An officer approved for involuntary REFRAD by the Secretary of the Army—

(1) For misconduct, moral or professional dereliction and is—

*(a)* Assigned in CONUS, will be released from AD no earlier than 5 calendar days and no later than 14 calendar days after the officer receives written notification.

*(b)* Assigned OCONUS, will be returned to the CONUS separation transfer point no later than 21 calendar days after the officer receives written notification, and released from AD no later than 5 calendar days after arriving at the CONUS separation TP/TA.

(2) Solely for substandard performance of duty will be released from AD no later than 30 calendar days after the officer receives written notification. The officer will not be released prior to the 30th day without his or her consent.

*r.* While separations under this section are involuntary, there is no entitlement to separation pay (except para *s* below) unless specifically authorized for half-separation pay by the DODPM.

*s.* When budgetary or authorization limitations require a reduction of the officer strength, the DAADB may be convened under the instructions of the Secretary of the Army or his or her delegee to determine which officers will be separated. These officers are not considered ineffective or substandard in duty performance, their release is determined solely on the needs of the service. Officers designated

**Table 3–4**
**Resignation due to pregnancy**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Informs her commander that she is pregnant and is thinking of resigning. Provides supporting medical documentation. |
| 2 | SACT<br>BN S–1<br>C&S | On confirmation of an officer's pregnancy, she will be advised of the following rights and responsibilities:<br>*a.* Option to remain on AD or to request separation.<br>*b.* Entitlement to maternity care even if separated (AR 40–3).<br>*c.* Provisions for leave and absence during and after pregnancy (AR 600–8–10).<br>*d.* Provisions for maternity clothing.<br>*e.* Policy governing availability for worldwide assignment (AR 614–30).<br>*f.* Local policies governing entitlements to Government family quarters and BAS, to include when and how she would be eligible.<br>*g.* Policies governing assignment overseas (AR 614–30). If accompanied by dependent(s), requirement to make suitable arrangements for the unaccompanied evacuation of the dependents(s) in an emergency situation (for example, mobilization).<br>*h.* On PCS, the Government will pay for the child's transportation only when—<br>(1) Traveling to, from, or between OCONUS permanent station when the officer serves or has been approved to serve a "with dependents" tour and her child is command sponsored.<br>(2) Traveling to an OCONUS station, the officer must have approval of the OCONUS commander for concurrent travel of the child.<br>*i.* Availability of legal assistance counseling concerning paternity laws governing child support, passports, visa requirements, and birth registration for OCONUS, if applicable.<br>*j.* If she remains on AD, the necessity of careful planning for her child's care without sacrifice of her military responsibilities. She must consider the following:<br>(1) Who will care for the child during duty hours, alerts, field duty, and roster duty. Consideration should be given to the cost of child care.<br>(2) Plans for housing, access to duty, transportation arrangements and availability of telephone.<br>(3) Consideration of financial obligations that will accrue for child care, housing, transportation, and other emergency needs and how these obligations will be met.<br>*k.* Provisions for submission of a dependent care statement of counseling on the birth of the child, if applicable. (An officer with less than 3 years service.)<br>*l.* Provisions authorizing separation of an officer whose substandard performance of duty is not solely attributable to the condition of pregnancy. |
| 3 | SACT | Requests that counselor sign the pregnancy counseling statement and file it in the officer's MPRJ (fig 2–2). |
| 4 | SLDR | Submits resignation request (fig 3–3) if she so desires. |
| 5 | SACT<br>BN S–1<br>C&S | Processes the request. Ensures counseling has been accomplished (step 2). The request will be forwarded through channels to CDR, PERSCOM (TAPC–PDT–PM), or CDR ARPERCEN (ARPC–AR), 9700 PAGE BLVD, ST LOUIS MO 63132–5200, or HQDA (DAJA–PT) or HQDA (DACH–PER), as applicable. The request will include the following:<br>*a.* A brief synopsis of the counseling session.<br>*b.* Date officer reported on current tour of AD; type, effective date, and date of termination of current AD commitment.<br>*c.* Whether officer is occupying a key position and if a replacement is required.<br>*d.* Whether medical board or PEB proceedings are pending or appropriate.<br>*e.* Whether the officer is currently undergoing a course of instruction that upon completion or termination, will result in an ADSO. Specify course title, beginning and closing dates, and service obligation incurred.<br>*f.* Whether responsible for public property or funds.<br>*g.* Recommendation for approval or disapproval and type of discharge to be furnished. Include complete justification when approval is recommended and the officer has not fulfilled a service requirement. Also include justification for disapprovals.<br>*h.* Statement that the officer is not under investigation or charges, awaiting result of trial, being considered for administrative elimination, AWOL, or in the hands of civil authorities.<br>*i.* Date officer departed CONUS or other area of residence for OCONUS assignment. Date of arrival OCONUS of dependents—whether at Government or personal expense—whether logistical support was furnished and the rotation date, if applicable. |
| 6 | SACT<br>(TP/TA) | Upon receipt of separation instructions, processes officer for separation. Final orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

**Section VI**
**Task: Process Resignation for the Good of the Service in Lieu of General Court-Martial**

### 3–13. Rules for processing Resignation for the Good of the Service in lieu of general court-martial

*a.* An officer may submit a resignation for the good of the Service (RFGOS) in lieu of general court-martial (GCM) under the following circumstances (cannot submit unqualified resignation):

(1) Court-martial charges have been preferred against the officer with a view toward trial by GCM.

(2) The officer is under a suspended sentence of dismissal.

*b.* The tender of a RFGOS does not preclude or suspend procedures. A convening authority will not, however, take action on the findings and sentence in such cases until the Secretary of the Army or his or her delegee has acted on the RFGOS.

*c.* An officer under court-martial charges or under investigation with a view toward court-martial will be retained on AD until final disposition of the charges or investigation or until the officer's RFGOS is approved.

*d.* The commander will ensure that RFGOS are voluntary and that applicants are—

(1) Provided the opportunity to consult with legally qualified counsel who is a member of the Judge Advocate General's Corps or a civilian counsel retained by the officer at his or her own expense.

(2) Allowed a reasonable period of time to consider requesting a RFGOS.

*e.* A RFGOS will be expeditiously forwarded by the commander exercising general court-martial jurisdiction direct to CDR, PERSCOM (TAPC–PDT–PM), as outlined in paragraph 3–4. Court-martial proceedings may be continued until action by the convening authority on the findings and sentence of the court. A convening authority will not take action in a case until the Secretary of the Army or his or her delegate acts on the RFGOS. In the event trial is held prior to the time notification of action is taken on the RFGOS, the convening authority will immediately transmit to CDR, PERSCOM (TAPC–PDT–PM) the result of the trial, including sentence adjudged.

*f.* The RFGOS along with the officer's OMPF and ORB without recommendation will be forwarded by PERSCOM (TAPC–PDT–PM) to the Office of the Assistant Secretary of the Army for M&RA (Director, Army Council of Review Boards (SAMR–RB)).

*g.* When the RFGOS is not accepted, PERSCOM (TAPC–PDT–PM) will return the case to the GOSCA and provide copies to PERSCOM (TAPC–MSP–F), the appropriate career management division, and the Assistant Secretary of the Army for M&RA (SAMR–RB).

*h.* Separation instructions on approved cases will be issued and forwarded by PERSCOM (TAPC–PDT–PM) to the appropriate PSC/MPD.

*i.* An officer separated under this paragraph normally receives characterization of service of Under Other Than Honorable Conditions.

*j.* An officer who resigns for the good of the Service(regardless of the character of service received) is barred from rights under laws administrated by the Veterans Affairs based on the period of service from which the officer resigned. Exceptions are War Risk, United States Government (converted), National Service Life Insurance, or Serviceman's Group Life Insurance (38USC 3103).

### 3–14. Steps for processing RFGOS in lieu of GCM

The steps required for processing RFGOS in lieu of GCM are as shown in table 3–5.

**Table 3–5**
**RFGOS in lieu of GCM**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Submits RFGOS (fig 3–4). |
| 2 | PPAA<br>BN S–1 | Processes RFGOS and forwards through the same channels as court-martial actions to the commander exercising GCM jurisdiction. |
| 3 | C&S | When the RFGOS is submitted prior to GCM charges being preferred, the commander exercising GCM-jurisdiction includes a recommendation of approval or disapproval and recommended characterization of service and type discharge. A recommendation of disapproval must include justification. Forwards the packet to CDR, PERSCOM (TAPC–PDT–PM). An information copy of the packet will be forwarded to (interested higher headquarters, for example, MACOM) in the chain of command. |
| 4 | C&S | An RFGOS submitted by an officer after court-martial charges are preferred will be expeditiously forwarded by the commander exercising GCM jurisdiction direct to CDR, PERSCOM (TAPC–PDT–PM), as outlined in paragraph 3–4. In addition to the information required by paragraph 3–4 and figure 3–4, the data as listed in *a* through *f* below will accompany the RFGOS (all such data submitted must be legible). Court-martial proceedings may be continued until action by the convening authority on the findings and sentence of the court. A convening authority will not take action in a case until the Secretary of the Army or his or her delegate acts on the RFGOS. In the event trial is held prior to the time notification is received, the convening authority will transmit to CDR, PERSCOM (TAPC–PDT–PM), by electrical message the result of trial including any sentence. Also included will be the following:<br>*a.* Copy of court-martial charges.<br>*b.* Copy of all reports of investigations, to include Article 32 investigation (if conducted).<br>*c.* Any documentary evidence that supports acceptance of the resignation.<br>*d.* Statement signed by Staff Judge Advocate (or legal officer) in cases referred for trial as required by Manual for Courts-Martial.<br>*e.* Psychiatric evaluation when grounds exist indicating the officer is (or was at the time of misconduct) mentally incompetent.<br>*f.* Explanation of abnormal delay between date of offense, completion date of investigation and submission of resignation (if applicable). Forward the packet to CDR, PERSCOM (TAPC–PDT–PM). An information copy of the packet will be forwarded to interested higher headquarters in the chain of command. |
| 5 | C&S | When the RFGOS while under suspended sentence to dismissal is submitted, the commander exercising GCM jurisdiction includes in the packet a copy of the court-martial order. When a copy of the court-martial order is not available or if further misconduct is involved, include a summary of the facts in the forwarding endorsement. Forward the packet to CDR, PERSCOM (TAPC–PDT–PM). An information copy of the packet will be forwarded to interested higher headquarters in the chain of command. |
| 6 | PPAA<br>(TP/TA) | Upon receipt of separation instructions, separates the officer not later than 14 calendar days after receipt of notification (when officer is stationed in CONUS), or not later than 5 duty days after the officer arrives at the CONUS TP/TA. Forwards the officer's fingerprints to the Federal Bureau of Investigation (FBI) according to AR 190–47. Final orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VII
## Task: Process RFGOS Due to Homosexual Conduct

### 3–15. Rules for processing RFGOS due to homosexual conduct

*a.* An officer may elect to tender a resignation due to homosexual conduct prior to GCM charges being preferred against him or her under the UCMJ and prior to being recommended for elimination under chapter 4. The officer cannot submit unqualified resignation.

Figure 3–4. Sample format for the good of the service resignation—Continued

before a court-martial or board of officers. I have not been subject to coercion with respect to this resignation and have been advised of and fully understand the implications of this action.

2. I have been advised that prior to submitting this resignation I may, at my option, consult with and be represented by legally qualified counsel who may be a member of The Judge Advocate General's Corps or may be civilian counsel retained by me. *(Include one of the following statements: "I have elected not to exercise this right," (or) "I have been fully advised and counseled in this matter by(name) (a member of The Judge Advocate General's Corps) (or civilian counsel) on (date) at (place)").*

3. I have been afforded an opportunity to present matters in explanation, mitigation, or defense of my case and *(include one of the following statements: "Such matters are attached," or "Such matters are contained in the report of the investigation conducted under Article 32, UCMJ," or "I elect to remain silent").*

4. I understand that this resignation, if accepted, may be considered as being Under Other Than Honorable Conditions. I also understand that a resignation for the good of the Service may be withdrawn only with the approval of HQDA. I further understand that if my resignation is accepted Under Other Than Honorable Conditions, I will not be entitled to compensation for unused accrued leave.

5. If my resignation is accepted, regardless of the type of discharge certificate furnished, I understand that I will not receive separation pay and that I will be barred from all rights, based on the period of service from which I will be separated, under any laws administered by the Department of Veterans Affairs, except War Risk, U.S. Government (converted), National Service Life Insurance, or Servicemen's Group Life Insurance policies I may hold.

6. Present duty station *(address) (assignment and/or attachment, if any).*

7. I *(do/do not)* desire separation overseas. *(If currently serving in an overseas area.)*

8. My mailing address after separation will be *(address).*

9. I understand that if I participated in certain advanced programs, I may be required to reimburse the U.S. Government as stated in written agreement made by me with the U.S. Government under law and regulations.

*(Signature block)*

## Chapter 4
## Eliminations

### Section I
### Scope

#### 4–1. Overview

*a.* An officer is permitted to serve in the Army because of the special trust and confidence the President and the nation have placed in the officer's patriotism, valor, fidelity, and competence. An officer is expected to display responsibility commensurate to this special trust and confidence and to act with the highest integrity at all times. However, an officer who will not or can not maintain those standards will be separated.

*b.* Every officer deserves a fair chance to demonstrate his or her capabilities. When an officer shows ineffective tendencies (especially if the officer is inexperienced) when practicable, he or she will be given another chance under another commander. The officer's ineffectiveness will be systematically recorded in documents that specify each period covered, duties observed, and defects noted. Recommendations for elimination action will not be based on generalities and vague impressions. It is necessary to document, in writing, the precise reasons an officer is considered ineffective.

*c.* An officer who has his or her security clearance withdrawn or withheld due to unfavorable information regarding loyalty, subversion, or security may be processed for involuntary separation according to AR 604–10. The exception is a nonprobationary RA commissioned officer, who by law may be involuntarily separated under this regulation. However, the administrative procedures prescribed in AR 604–10 will be followed for a nonprobationary RA commissioned officer until the case is referred to PERSCOM (TAPC–PDT–PM).

*d.* This chapter prescribes the tasks, rules, and steps for eliminating officers in the Active Army for substandard performance of duty, misconduct, moral or professional dereliction, and in the interests of national security.

#### 4–2. Reasons for elimination

While not all inclusive, when one of the following or similar conditions exist, elimination action may be or will be initiated as indicated below for—

*a.* Substandard performance of duty.

(1) A downward trend in overall performance resulting in an unacceptable record of efficiency, or a consistent record of mediocre service.

(2) Failure to keep pace or to progress with contemporaries, as demonstrated by a low record of efficiency when compared with other officers of the same grade and competitive category. An officer who is identified by an ADL promotion board (convened in accordance with 10 USC 611a) as "not fully qualified" for promotion will be recommended for elimination under this paragraph as provided for by the Secretary of the Army in memorandum of instructions to the promotion board.

(3) Failure to exercise necessary leadership or command expected of an officer of his or her grade.

(4) Failure of an officer to absorb technical proficiency required for his or her grade and competitive category.

(5) Failure to properly perform assignments commensurate with an officer's grade and experience.

(6) Apathy, defective attitudes, or other characteristic disorders to include inability or unwillingness to expend effort.

(7) Failure to respond to alcohol or drug problem rehabilitation efforts in a reasonable length of time. (See AR 600– 85 for further explanation.) Elimination action will be initiated.

(8) Failure to conform to prescribed standards of dress, personal appearance, or military deportment.

(9) Failure to achieve satisfactory progress after enrollment in the Army weight control program or failure to maintain the weight/ body fat standards established under the provisions of AR 600–9 after removal from an established weight control program. Elimination action will be initiated. This provision does not include those judge advocates and AMEDD officers who have incurred a statutory ADSO for participating in Army sponsored education and training programs such as the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program, or the Uniform Services University of the Health Sciences (10 USC, chapters 104, 105).

(10) When no medical problems exist, and an officer has two consecutive failures of the Army Physical Fitness Test (APFT), elimination action will be initiated. This provision does not include those judge advocates and AMEDD officers who have incurred a statutory ADSO for participating in Army sponsored education and training programs such as the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship, or the Uniform Services University of the Health Sciences (10 USC, chapters 104, 105).

(11) Failure of a course at a service school for academic reasons by a probationary or nonprobationary RA officer. For failure by an RC officer, see paragraph 2–37.

(12) Failure of a probationary officer to resign under paragraph 3–9 when his or her commander determines the best interest of the Government and the individual can be served by the officer's discharge.

(13) The discovery of other conditions concerning a probationary officer that, had they been known at the time of appointment, would have precluded appointment.

(14) The discovery of any other condition concerning a probationary officer that indicates the officer's retention in the Army would not be in the best interest of the United States.

(15) Probationary RA commissioned and warrant officers entering AD who are confirmed Human Immunodeficiency Virus (HIV) positive within 180 calendar days of their original appointment or probationary USAR, ARNG commission and warrant officers who report for initial entry training in an AD (other than ADT) status and are confirmed HIV positive within 180 calendar days of reporting to AD will be processed for elimination.

*b.* Misconduct, moral or professional dereliction, or in the interests of national security.

(1) Discreditable or intentional failure to meet personal financial obligations.

(2) Mismanagement of personal affairs that are unfavorably affecting an officer's performance of duty.

(3) Mismanagement of personal affairs to the discredit of the Army.

(4) Intentional omission or misstatement of fact in official statements or records for the purpose of misrepresentation.

(5) Acts of personal misconduct (including but not limited to acts committed while in a drunken or drug intoxicated state).

(6) Homosexual conduct (see para 4–22).

(7) Intentional neglect of or failure to perform duties.

(8) Conduct unbecoming an officer.

(9) Conduct or actions that result in the loss of a professional status, such as withdrawal, suspension or abandonment of professional license, endorsement, or certification that is directly or indirectly connected with or is necessary for the performance of one's military duties. (For AMEDD officers, this includes the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges.)

(10) Acts or behavior not clearly consistent with the interests of national security. (See AR 604–10 for criteria.)

(11) Unless precluded by paragraph 4–18*d*(4), elimination action will be initiated against an officer who is medically diagnosed as drug dependent or identified as having committed an act of personal misconduct involving drugs.

(12) Conduct or actions by a warrant officer resulting in a loss of special qualifications (such as withdrawal/revocation of CID accreditation, revocation of marine qualification license, removal from the PRP, withdrawal of clinical privileges or loss of flying status) that directly or indirectly precludes a warrant officer from performing in his or her MOS and is necessary for the performance of those duties. Eliminations based on these reasons may not be utilized if reclassification action is feasible and in the best interest of the Service or if the loss of special qualifications was due to medical reasons beyond the control of the warrant officer.

(13) Failure to respond in a reasonable length of time to rehabilitation efforts regarding repeated acts of child/spouse maltreatment or abuse and/or other acts of family violence.

(14) Failure of a course at a service school by an RA officer because of misconduct, moral or professional dereliction. For failure by a Reserve Component officer, see paragraph 2–37.

*c. Derogatory information.* The following reasons (or ones similar) require an officer's record to be reviewed for consideration of terminating his or her appointment. Standing alone, one of these conditions may not support elimination, however, this derogatory information combined with other known deficiencies form a pattern that, when reviewed in conjunction with the officer's overall record, requires elimination.

(1) Punishment under UCMJ, article 15.

(2) Conviction by court-martial.

(3) Denial of security clearance. (See AR 604–10 for further explanation).

(4) A relief for cause officer evaluation report (OER) (DA Form 67–8, (US Army Officer Evaluation Report)) under AR 623–105, paragraph 5–18.

(5) Adverse information filed in the OMPF in accordance with AR 600–37.

(6) Failure of a course at a service school.

### 4–3. Medical condition

*a.* An officer referred or recommended for elimination under this chapter who does not meet medical retention standards will be processed through both the provisions of this regulation and through the MEB/PEB process as described in paragraph 1–22.

*b.* When it is determined the officer's mental condition contributed to his or her military inefficiency or unsuitability, the medical evaluation will include a psychiatric study of the officer. This study will indicate whether the officer was able to distinguish right from wrong and whether the officer currently has the mental capacity to understand board and judicial proceedings and participate in his or her defense. When applicable, the report will also indicate whether the incapacitating mental illness could have been the cause of the conduct under investigation.

*c.* At the time an officer is to appear before the Board of Inquiry, if he or she does not possess sufficient mental capacity to understand the nature of the proceedings or does not behave or cooperate intelligently in his or her defense, the proceedings will be delayed until the officer recovers, or the officer will be processed through medical channels, whichever applies.

*d.* If a physical or mental condition develops after an officer has been recommended for involuntary separation or after the Board of Inquiry proceedings are completed, the officer's commander will immediately notify PERSCOM (TAPC–PDT–PM).

### 4–4. Limitations

*a.* An officer will not be considered for involuntary separation because of conduct that has been the subject of judicial proceedings that resulted in an acquittal.

*b.* Except as provided in *d* below, no officer will be considered for elimination for reasons stated in paragraph 4–2 because of conduct

that has been the subject of administrative elimination proceedings that resulted in final determination that the officer should be retained in the Service. For purposes of this paragraph, an officer will be considered to have been the subject of elimination proceedings only if allegations against the officer were acted on by a Board of Inquiry convened under this chapter.

*c.* The limitations set forth in *b* above are not applicable when—

(1) Substantial new evidence is discovered that was not known at the time of the original proceedings despite the exercise of due diligence and that would probably produce a result significantly less favorable for the officer at a new hearing.

(2) Subsequent conduct by the officer warrants considering him or her for discharge. Such conduct need not independently justify the member's elimination but must be sufficiently serious to raise a substantial question as to the officer's potential for further useful military service. However, this exception does not permit further consideration of conduct of which the officer has been absolved in a prior final factual determination based on the merits by a judicial body.

(3) An express exemption has been granted by PERSCOM, in writing, upon a determination that administrative separation should be effected becuase of the unusual circumstances of the case.

*d.* Under the circumstances in (1) through (4) below, an officer who has been considered for elimination and retained on AD may again be required to show cause for retention:

(1) An officer may be again considered for elimination because of lack of proficiency or recurrent misconduct subsequent to the earlier consideration.

(2) An officer may be again considered for elimination because of misconduct that occurred prior to that alleged in the earlier proceedings but that was not sooner discovered despite the exercise of due diligence.

(3) An officer who has been considered for elimination for substandard performance of duty and retained may again be considered for elimination for substandard performance of duty at any time 1 year after the prior case has been closed.

(4) An officer may be considered for elimination for misconduct, moral or professional dereliction, or in the interest of national security at any time subsequent to the closing of the prior case that resulted in the officer's retention on AD. However, an officer may not again be required to show cause for retention on AD solely because of conduct that was the subject of the previous proceedings, unless the findings and recommendations of the Board of Inquiry or the Board of Review that considered the case are determined to have been obtained by fraud or collusion. The grounds for elimination in the earlier case may be joined with new grounds in the later case, provided the earlier elimination proceedings does not include a factual determination specifically absolving the member of the allegations then under consideration. If the grounds for elimination in the earlier proceedings are joined, the additional grounds considered in the subsequent proceedings need not independently justify the member's discharge but must be sufficiently serious to raise a substantial question as to the member's potential for further useful military service.

*e.* Punishment resulting from trial by court-martial or under the provisions of UCMJ, article 15, for misconduct and subsequent use of this fact in support of elimination under this regulation do not constitute double jeopardy.

### 4–5. Separation date

An officer approved for involuntary separation by the ASA (M&RA) or whose request for resignation or discharge in lieu of elimination is approved will be separated accordingly.

*a.* For misconduct, moral or professional dereliction, or in the interest of national security.

(1) In CONUS, an officer will be separated no earlier than 5 calendar days and not later than 14 calendar days after the officer receives written notification.

(2) Outside CONUS, an officer will be returned to the CONUS separation TP/TA no later than 21 calendar days after the officer receives written notification. Separation will occur no later than 5 calendar days after arriving at the CONUS TP/TA.

*b. Solely for substandard performance of duty.* Not later than the 30th calendar day after receipt of notification by the officer concerned, the officer will not be released prior to the 30th calendar day without his or her consent.

## Section II
## Boards

### 4–6. Board of Inquiry

*a.* The Board of Inquiry's purpose is to give the officer a fair and impartial hearing determining if the officer will be retained in the Army. The Government is responsible to establish, by preponderance of the evidence, that the officer has failed to maintain the standards desired for his or her grade and branch or that the officer's conduct has been prejudicial to national security. In the absence of such a showing by the Government, the board will retain the officer. However, the respondent is responsible for producing evidence to disprove the Government's position.

*b.* Boards of Inquiry are appointed by the appropriate GOSCA. Concurrence must be obtained from the appropriate commander when an officer assigned to a different command is used on a Board of Inquiry. The local installation convening the Board of Inquiry will fund the travel of board members from other installations.

*c.* The GOSCA will advise members of a Board of Inquiry that duty on the board takes priority over all other duties unless properly excused by the appointing authority.

*d.* The Board of Inquiry will be completed no later than 90 calendar days from the date the GOSCA is notified by PERSCOM to conduct the Board of Inquiry or on a GOSCA initiated elimination, from the date the GOSCA directs that a Board of Inquiry be conducted. Whenever completion of the Board of Inquiry is delayed beyond the established time, the GOSCA will notify CDR, PERSCOM (TAPC–PDT–PM), by electrical message of the reason for the delay and the projected date for the Board of Inquiry to be completed.

*e.* The CG, U.S. Army Military District of Washington, will have jurisdiction as GOSCA for all personnel assigned or attached to the U.S. Army, Military District of Washington. This authority may be delegated by the CG, U.S. Army, Military District of Washington, in appropriate cases to officers who could otherwise act as GOSCAs.

*f.* The GOSCA will issue the orders appointing the Boards of Inquiry.

*g.* Except as modified by this regulation, the board will conform to the provisions of AR 15–6 applicable to formal proceedings with respondents.

### 4–7. Board membership

*a.* Boards will consist of at least three voting members and a recorder, legal advisor, and respondent's counsel without vote. Voting members serving on a board will be RA officers on AD (unless the respondent is a RC officer) in the rank of colonel or above and be senior in grade and rank to the respondent. When the respondent is an RC officer, one or more of the voting members will be an RC officer, preferably the same component.

*b.* When an RC officer on AD is not reasonably available, the GOSCA will, through the MACOM, advise PERSCOM (TAPC–PDT–PM) and request that a retired RC (10 USC 1187) officer in the rank of colonel or above be ordered to AD to serve on the Board of Inquiry. When the GOSCA knows that an eligible and qualified retired RC officer is located in the area of responsibility, that officer's name, rank, date of rank, and address will be furnished the MACOM and to PERSCOM (TAPC–PDT–PM). The GOSCA will also include the respondent's rank and date of rank and the approximate convene date of the Board of Inquiry.

*c.* The MACOM, if possible, or the CG, PERSCOM, will make the final selection of the officer and if necessary coordinate with CG,

**4–10. Legal advisor**

The legal advisor is a JAGC officer assigned (by the appointing authority) to the Board of Inquiry to serve only as an advisor, not a voting member). The legal advisor—

*a.* Will be present at all open sessions and may be called on to advise on the admissibility of evidence, arguments, motions or other contentions of counsel, procedures, and any other matter determined appropriate by the president of the board.

*b.* Is prohibited from taking part in presenting the case or cross-examining witnesses.

*c.* Will not give *ex parte* advice, except as provided for during deliberation (para 4–15*a*), in a closed session of the Board of Inquiry.

*d.* May not dismiss any factual allegation, reason for elimination, or recommendation for elimination against the respondent but will advise the board as to the proper form of such, paying special attention to procedures for the findings and recommendation of the board (para 4–15*b*).

*e.* Will perform the duties prescribed in AR 604–10, chapter 6, paragraph 4–9*c*, when required in connection with the board proceedings .

**4–11. Respondent**

When a Board of Inquiry convenes to consider an officer's recommendation for involuntary separation, the board will determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence. The respondent will be present at all open sessions of the board unless he or she is excused by the president of the board and expressly waives the right to attend. Additionally, the respondent—

*a.* Will be provided with counsel who is an officer of the JAGC or be allowed to obtain civilian counsel of his or her own selection without expense to the Government, provided that procurement of his or her own counsel does not result in an unreasonable delay. The GOSCA will determine whether a requested delay to obtain civilian counsel is reasonable. If a requested delay is denied, the determination and the reasons will be stated in writing and made a part of the records of proceedings by the GOSCA.

*b.* Will be allowed reasonable time, as determined by the Board of Inquiry, to prepare his or her case. The respondent may submit a written request (citing the specific reasons) for continuance to the Board of Inquiry. In no instance will the officer have less than 30 calendar days from the date of notification of his or her requirement to show cause for retention on AD.

*c.* Will be allowed, at all stages of the proceedings, full access to the records of the hearings, including all documentary evidence referred to the board, except when protection of classified documents is clearly consistent with the interests of national security. In such cases, the respondent will be furnished, to the extent that the national security permits, as determined by the Secretary of the Army, a summary of the information contained in the documents withheld.

*d.* May challenge for cause any member of the board. The convening authority will appoint additional members if necessary to ensure that the board membership is not reduced to fewer than three officers.

*e.* Has the right to have knowledge of his or her past performance of duty as reflected in his or her evaluation reports.

*f.* Will be allowed to appear in person and present evidence or be represented by counsel, before a Board of Inquiry. The respondent—

(1) Will not be reimbursed for expenses incident to the appearance or assistance of civilian counsel.

(2) At any time after the appointment of the board and before the close of the proceedings, may submit documents to the Board of Inquiry from his or her record of service, letters, answers, depositions, sworn or unsworn statements, affidavits, certificates, or stipulations. This includes but is not limited to, depositions of witnesses not deemed to be reasonably available or witnesses unwilling to appear voluntarily.

(3) Will be allowed to present his or her case without undue interference by the board. However, unreasonable delays will not be tolerated. Such presentations may include any evidence relevant to a respondent's rehabilitation or reformation as well as any matters in extenuation or mitigation that the respondent desires to present.

(4) May testify in person or elect to remain silent. Should the respondent elect to testify, he or she may be required to submit to examination by the board as to any matter concerning which he or she testified but not in contravention of the UCMJ, article 31. When electing to testify, the respondent is entitled to an explanation of his or her rights regarding self-incrimination under UCMJ, article 31, and a Privacy Act statement will be prepared and signed. (See AR 15–6, app B.)

*g.* May request witnesses, members of the Army whose testimony he or she believes to be pertinent to the case, appear before a Board of Inquiry.

*h.* May question any witness brought before the board.

*i.* May, at any time prior to final action in his or her case—

(1) Apply for voluntary retirement, if eligible.

(2) Tender resignation.

(3) Request discharge (RA officers only—10 USC 1186).

*j.* Will be asked before the hearing is terminated to state for the record whether he or she has presented all available evidence in his or her behalf. If not, the respondent will be required to make a concise statement of the substance of the expected evidence. The statement and any documentary evidence referred to the board will be included in the record of hearing. The board will then determine whether the respondent will be granted additional time to produce such evidence.

*k.* Will be furnished a copy of the proceedings less classified documents if requested.

*l.* Will have the right to submit to the GOSCA a statement or brief within 7 calendar days after receipt of the Board of Inquiry report of proceedingsthe case.

**4–12. Respondent's counsel**

*a.* A JAGC officer will be assigned to each Board of Inquiry as the respondent's counsel.

*b.* The respondent is also entitled to retain civilian counsel at his or her own expense. If civilian counsel is retained, the assigned military counsel will be relieved of duties and responsibilities in connection with the case unless the respondent chooses to use any services of the assigned counsel.

*c.* The respondent's counsel may request, on the respondent's behalf, copies of documents contained in the respondent's OMPF and/or evaluation report files that may assist in preparing the case. These documents will be specifically identified and limited to documents relevant to the case. Forward requests (by electronic message) to PERSCOM (TAPC–PDT–PM).

*d.* The respondent's counsel will be present at all open sessions of the board unless his or her absence is expressly excused by the president of the board.

**4–13. Witnesses**

To the maximum extent possible, the respondent has the right to be confronted with the witnesses against him or her.

*a.* The personal appearance of witnesses should be obtained whenever practicable in preference to the use of depositions, affidavits, or written statements. Accordingly, such requests will be honored by the board if the requested witness is considered reasonably available and his or her testimony will add materially to the case. Requests for witnesses will include a statement specifying the substance of expected testimony.

*b.* The president of the Board of Inquiry will request the commander or Government agency to order witnesses to appear as witnesses for the Government that are members of the Armed Forces or civilian employees of the Government. The availability of the witness is determined by the appropriate commander. If the commander determines that a requested witness is not reasonably available, the reasons will be furnished to the president of the board, who will have this determination appended to the record of proceedings.

the members and after the substance of all proceedings is made known to the new member or members and the recorded testimony of each witness previously examined is made known to the new member. No more than one rehearing may be directed by the MACOM or the GOSCA without approval from HQDA.

**4–17. Board of Review**

*a.* An officer recommended for elimination by a Board of Inquiry will have his or her case referred to a Board of Review. The Board of Review is appointed by the Secretary of the Army and has the same board composition as the Board of Inquiry. The Board of Review, after thorough review of the records of the case, will make recommendations to the Secretary of the Army as to whether the officer should be retained in the Army. Appearance by the respondent (or the counsel) is not authorized. The Board of Review will refer to paragraph 4–22 for homosexual conduct cases.

*b.* No officer will sit as a member of the Board of Review who—

(1) Has been called as a witness.

(2) Was a member of the selection board for respondent.

(3) Appeared as a witness before or was a member on any previous Board of Inquiry, Board of Review, or board of officers with respect to the respondent.

(4) Was a member or was the reviewing authority in a court-martial before which the respondent was the accused.

(5) Previously has recommended or participated in recommending elimination or REFRAD of the officer concerned.

(6) Rendered a derogatory evaluation report on the accused.

(7) Otherwise has considered the case of the accused.

(8) Does not meet the board membership requirements.

*c.* When the board recommends—

(1) Retention in the Army (with or without reassignment), the proceedings will be forwarded to PERSCOM (TAPC–PDT–PM) and the case will be closed.

(2) Elimination from the Army (to include type of discharge and characterization, if applicable), the recommendation will be transmitted to the Secretary of the Army, who makes the final decision.

*d.* An officer discharged solely for substandard performance of duty will receive an honorable discharge. The Board of Review may recommend the characterization of discharge to be more favorable than recommended by the Board of Inquiry but not less favorable.

*e.* When the Board of Review recommends elimination, it may also recommend clemency, stating the reasons. However, only the Secretary of the Army may grant clemency.

*f.* The Board of Review will, if requested, furnish the respondent a copy of the board proceedings.

**Section III**
**Task: Process Elimination of a Nonprobationary Officer**

**4–18. Rules for processing an elimination of a nonprobationary officer**

*a.* Elimination action may be initiated by—

(1) Commanding General, PERSCOM.

(2) A GOSCA, for an officer assigned or attached to his or her command (see Glossary) (unless specifically withheld by HQDA.)

(3) The Deputy Chief of Staff for Personnel (DCSPER), when recommendations are made by HQDA promotion, school, or command selection boards that an officer should be required to show cause for retention on active duty. The DCSPER or his or her designated representative in the grade of major general or above will review such names and decide if initiation of elimination is appropriate. If initiation of elimination is appropriate, the action will be processed according to the rules and steps of the applicable sections of this chapter.

(4) The Secretary of the Army, the Chief of Staff, and such officials in their offices as are designated by them. The action will be processed according to the rules and steps of the applicable sections of this chapter.

*b.* Unless precluded by *d*(4) below, elimination action will be initiated against an officer who is identified by one or more of the reasons outlined in paragraph 4–2.

*c.* Any subordinate commander may recommend to the GOSCA the initiation of elimination proceedings for an officer in his or her command.

*d.* The commander has the discretion to initiate disciplinary action under the UCMJ or to recommend or initiate elimination proceedings under the provisions of this regulation.

(1) The fact that elimination proceedings were initiated when disciplinary action could have been taken will not affect the validity of the elimination proceedings.

(2) Elimination action will not be used in lieu of disciplinary action solely to spare an officer who may have committed serious misconduct from the harsher penalties that may be imposed under the UCMJ.

(3) Conduct that was the subject of judicial or nonjudicial punishment may be the basis for elimination proceedings under this regulation. (See para 4–4*b.*)

(4) Elimination proceedings, however, will not be initiated with respect to conduct that is the subject of UCMJ charges unless the charges are dismissed or appellate review has been completed.

*e.* Regardless of who initiates the elimination action, the initiating official will furnish the appropriate MACOM a copy of the notification memorandum. The GOSCA will ascertain the identity and location of Government witnesses and make reasonable efforts to ensure their availability to appear before a Board of Inquiry.

*f.* On receipt of elimination actions from the MACOM commander, CG, PERSCOM may take the following actions prior to the Board of Review:

(1) Close the case (prior coordination with the initiating official required for an elimination initiated under *a*(3) and (4) above and, through channels, notify the officer.

(2) Forward the case to a Board of Review.

*g.* When the Board of Review recommends elimination, the board will forward the case directly to the Secretary of the Army for the final decision.

*h.* When the Board of Review recommends retention (with or without reassignment), PERSCOM (TAPC–PDT–PM) will close the case and, through channels, notify the officer.

*i.* When the Secretary of the Army approves elimination, PERSCOM (TAPC–PDT–PM) will forward separation instructions to the appropriate PSC/MPD.

**4–19. Steps for processing an elimination of a nonprobationary officer**

The required steps for processing an elimination of a nonprobationary officer are as shown in table 4–1.

**Table 4–1**
**Processing elimination of a nonprobationary officer**

| Step | Work center | Required action |
|---|---|---|
| 1 | PPAA<br>BN S–1<br>C&S | The initiating official (para 4–18a(1) or (2) or (3) or (4) above) notifies the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on AD (fig 4–1). Initiates a DA Form 268. (See AR 600–8–2.) |
| 2 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the reasons supporting the elimination action and the factual allegations supporting the reasons. Only applicable reasons as outlined in paragraph 4–2 (or para 4–22 for homosexual conduct) that can be supported by specific factual allegations and evidence may be the basis for elimination. Evidence to support the elimination must be able to stand on its own merits. Prior coordination with the servicing judge advocate or legal advisor is required for actions initiated by the GOSCA. Advises the officer that he or she may—<br>*a.* Tender resignation in lieu of elimination (para 4–24).<br>*b.* Request discharge in lieu of elimination (an RA commissioned officer only) (para 4–24). |

**Table 4-1**
**Processing elimination of a nonprobationary officer—Continued**

**Table 4-1**
**Processing elimination of a nonprobationary officer—Continued**

| Step | Work center | Required action |
|---|---|---|
| | | *c.* Apply for retirement in lieu of elimination if otherwise eligible for voluntary retirement as stated in chapter 6, paragraph 6–17*d.* Voluntary retirement application will be amended to specifically state that the application is submitted in lieu of elimination.<br>*d.* Appear before a Board of Inquiry to show cause for retention. |
| 3 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she has 30 calendar days to acknowledge receipt in writing, to prepare a written statement or rebuttal or elect one of the options as stated in *a, b, c,* and *d* above. |
| 4 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the least favorable discharge that he or she may receive. (An officer separated solely for substandard performance (para 4–2*a*) will receive an Honorable Discharge. If separated for reason(s) under paragraph 4–2*b* or 4–22*b* (homosexual conduct) an officer may receive an Under Other Than Honorable Discharge. |
| 5 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she may consult with the local finance and accounting officer concerning possible entitlement to separation pay. |
| 6 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that if he or she requests resignation or discharge in lieu of elimination action, he or she will be separated as stated below.<br>*a.* Not later than 30 calendar days after receipt of notification that request for resignation or discharge was approved (only when separated solely for substandard performance). Release will not be prior to the 30th day without the officer's consent.<br>*b.* Not later than 14 calendar days and no earlier than 5 calendar days after receipt of notification that the request for resignation or discharge was approved when stationed in CONUS.<br>*c.* For an officer assigned OCONUS, he or she will be returned to the CONUS separation TP/TA no later than 21 calendar days after receipt of written notification that the request for resignation or discharge was approved, and separated no later than 5 calendar days after arrival at the CONUS TP/TA. |
| 7 | C&S | The initiating official personally signs the memorandum. |
| 8 | PPAA<br>BN S–1<br>C&S | The GOSCA furnishes a copy of the notification memorandum directly to CDR, PERSCOM (TAPC–PDT–PM) and the appropriate MACOM, if applicable. |
| 9 | SLDR | Officer responds with acknowledgement of receipt (fig 2–4). Submits a written statement or rebuttal or elects one of the options in step 2 above within 30 calendar days.<br>*a.* The statement or rebuttal may be prepared with the assistance of an officer of the JAGC or civilian counsel obtained by the officer at no expense to the Government.<br>*b.* The statement or rebuttal should contain any pertinent facts bearing on the question of the officer's elimination. Documents submitted must be legible and reproducible. They may be sworn or unsworn.<br>*c.* The officer submits the appropriate application for separation if in lieu of elimination option is selected.<br>*d.* The officer undergoes a separation physical examination within 5 duty days from the date the option is chosen. |
| 10 | C&S | The *initiating official* (CG, PERSCOM or GOSCA, as appropriate), on receipt of the officer's statement or rebuttal and/or option selection, will act as follows—<br>*a.* Closes the case (see para 4–22 and 4–23 for homosexual conduct). (Prior to closing cases initiated under para 4–18*a*(3) or (4), CG, PERSCOM, will coordinate with the initiating official.) (The GOSCA may only close a case that he or she initiated.)<br>*b.* Expeditiously forwards the appropriate application and all elimination papers directly to CDR, PERSCOM (TAPC–PDT–PM), if the officer elects one of the options in step 2*a* through *c* of this table. (When the GOSCA is not the GCMCA, furnishes a copy to the GCMCA.) The forwarding endorsement includes the direct point of contact for the elimination action (to include name and telephone number). Informs the MACOM of the action.<br>*c.* If the officer declines to elect an option, refer the case to a Board of Inquiry. The GOSCA is authorized to appoint a field Board of Inquiry without referral to PERSCOM. The GOSCA notifies CDR, PERSCOM (TAPC–PDT–PM), by electronic message that a Board of Inquiry is being appointed and requests that two copies of the officer's OMPF and ORB be provided.<br>*d.* Determines whether medical board or physical evaluation board proceedings are pending or appropriate (para 4–3*a*) if the case is not closed. |
| 11 | C&S | The GOSCA, prior to forwarding the case to the Board of Inquiry, ensures that—<br>*a.* With the exception of business entries and official records and reports, health records, and CID investigation reports, all statements submitted, including reports of the investigation, are under oath or affirmation. This does not apply when a witness is dead, mentally incompetent, or missing, or when the exigencies of the service preclude obtaining the officer's statement in affidavit form.<br>*b.* Documents are legible and reproducible.<br>*c.* The statement submitted by the officer is made a part of the record. |
| 12 | C&S | The GOSCA forwards the case to the Board of Inquiry. The Board of Inquiry will be completed no later than 90 calendar days from the date that the GOSCA directs that a Board of Inquiry be conducted. |
| 13 | C&S | The GOSCA forwards the Board of Inquiry proceedings to the appropriate MACOM no later than 30 calendar days after the board's *adjournment. This time limit must be met.* |
| 14 | C&S | The MACOM forwards the board's proceedings to CDR, PERSCOM (TAPC–PDT–PM), no later than 60 calendar days after the board's adjournment. This time limit must be met. |

**Table 4–1**
**Processing elimination of a nonprobationary officer—Continued**

| Step | Work center | Required action |
|---|---|---|
| 15 | C&S | The GOSCA, when a Board of Inquiry recommends retention, closes the case, notifies the officer in writing, and notifies CDR, PERSCOM (TAPC–PDT–PM), that the officer has been retained by the Board of Inquiry and of the date of the officer's notification. Forwards the board's proceedings (original copy only, either verbatim or summarized transcript) with a copy of the officer's notification memorandum through the appropriate MACOM to CDR, PERSCOM (TAPC–PDT–PM). |
| 16 | C&S | The GOSCA, when a Board of Inquiry recommends elimination, closes the case if retention is appropriate (only for eliminations initiated by a GOSCA for an officer assigned or attached to his or her command (unless specifically withheld by HQDA)) and complies with step 15 above. |
| 17 | C&S | The GOSCA, when the Board of Inquiry recommends elimination or it was initiated under paragraph 4–18*a*(1), (3), or (4), completes the following administrative actions:<br>*a.* Furnishes the officer a copy of the Board of Inquiry report and obtains a receipt of acknowledgement.<br>*b.* Gives the officer the options listed in step 2*a* through *c* of this table.<br>*c.* Advises the officer that—<br>(1) He or she may submit an appellate brief and statement within 7 calendar days after receipt of the Board of Inquiry report or proceedings.<br>(2) The entire case will be considered by a Board of Review and the officer will be entitled to a copy of the Board of Review report if the officer so desires.<br>(3) If the Board of Review determines that the officer should not be retained, the case will be referred to the Secretary of the Army for final action. If the Board of Review determines the officer should be retained, the case will be closed. In either event, the officer will be notified at the earliest and practicable time by CG, PERSCOM.<br>*d.* Have the officer undergo a separation physical examination (para 1–22).<br>*e.* Establish internal suspense controls to ensure expeditious processing of the separation physical examination. |
| 18 | C&S | The GOSCA, when a Board of Inquiry recommends elimination (after completing the administrative action required in step 17 above), forwards by personal endorsement the original report of the Board of Inquiry proceedings to the MACOM commander including—<br>*a.* Recommendation of approval or disapproval of the Board of Inquiry's recommendation (state reason(s) when disapproval is recommended). The GOSCA may recommend retention when elimination is recommended by the board.<br>*b.* A statement that the officer was furnished a copy of the Board of Inquiry report and whether the officer desires a copy of the Board of Review report.<br>*c.* A recommendation of the type of discharge to be issued. (Only applicable where the officer was required to show cause for retention for reasons indicated in paragraph 4–2*b* and provided the officer is not eligible for retirement under chap 6.) The recommendation of the type of discharge may be more favorable but may not be less favorable than that recommended by the board.<br>*d.* The officer's appellate brief (if submitted). The GOSCA must include a statement in the forwarding memorandum that the brief was reviewed and may submit any other appropriate comments concerning the brief. Derogatory information that has not been previously provided to the respondent will not be added to the forwarding memorandum. |
| 19 | C&S | The MACOM commander, when a Board of Inquiry recommends elimination does as follows:<br>*a.* Closes the case if retention is appropriate (only for eliminations initiated by a GOSCA for an officer assigned or attached to his or her command (unless specifically withheld by HQDA)).<br>*b.* If elimination is appropriate or if elimination was initiated under paragraph 4–18*a*(1), (3), or (4)—<br>(1) Forwards the Board of Inquiry proceedings to CDR, PERSCOM (TAPC–PDT–PM), recommending approval or disapproval of the Board of Inquiry's recommendations (state the reasons when disapproval is recommended). The MACOM may recommend retention when elimination is recommended by the Board of Inquiry.<br>(2) Recommends the type of discharge to be issued. (Only applicable where the officer was required to show cause for retention for the reasons stated in para 4–2*b* and provided the officer is not eligible for retirement under chap 6.) The type of discharge recommended may be more favorable but may not be less favorable, than that recommended by the board.<br>(3) Submits statement in the forwarding memorandum that the appellate brief (if submitted) was reviewed and may include any comments concerning the brief. Derogatory information that has not been previously provided to the respondent will not be added to the forwarding memorandum.<br>(4) Personally signs the forwarding endorsement. |
| 20 | PPAA (TP/TA) | On receipt of separation instructions, takes action to separate the officer. Final release orders and forms cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section IV
## Task: Process Elimination of a Probationary Officer

### 4–20. Rules for processing an elimination of a probationary officer

*a.* The rules for a nonprobationary officer (para 4–18) also apply to a probationary officer.

*b.* A probationary officer is—

(1) An RA commissioned officer with fewer than 5 years of ACS (10 USC 630).

(2) An RC officer who has fewer than 3 years commissioned service.

**Table 4-3**
**Processing elimination of an officer for homosexual conduct—Continued**

| Step | Work center | Required action |
|---|---|---|
| | | *f.* Officer's statement (in their own behalf if it is desired). |
| 12 | BN S–1<br>PPAA | The commander, if there is not sufficient evidence to make a recommendation for elimination, stops the action. |
| 13 | BN S–1<br>PPAA | The commander, if there is sufficient evidence, forwards the file with recommendation for elimination through command channels to the GOSCA for processing. Intermediate commanders may take one of the following actions:<br>*a.* Recommend disapproval of recommendation because there is not sufficient evidence that one or more of the circumstances authorizing separation under paragraph 4–22*b* has occurred.<br>*b.* Recommend approval of the commander's recommendation and forward the file to the GOSCA. |
| 14 | C&S | The GOSCA may disapprove the recommendation for elimination, close the case and return it to the originator due to insufficient evidence that one or more of the circumstances authorizing separation under paragraph 4–22*b* has occurred or may approve the recommendation and notify the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on active duty.<br>*a.* When the case is for a probationary officer, follow steps 1 through 10 of table 4–2 and step 15 below. If the officer declines to elect one of the options and if an Under Other Than Honorable Conditions Discharge is recommended, the elimination action will be processed under the actions at table 4–1, steps 1 through 19, and step 15 below. If the ASA (M&RA) directs a Board of Inquiry, the elimination action will be further processed under table 4–1, steps 10 through 19, and then return to step 15 below.<br>*b.* When the case is for a nonprobationary officer, follow steps 3 through 19 of table 4–1 and then return to step 15 below. |
| 15 | PPAA<br>(TP/TA) | On receipt of separation instructions, takes action to separate the officer. Release orders and forms will cite regulatory authority and SPD as shown in AR 635–5–1. |

## Section VI
## Task: Process an Option That an Officer Elects While Elimination Action Is Pending

### 4–24. Rules for processing an option that an officer elects while elimination action is pending

*a.* An officer identified for elimination may, at any time during or prior to the final action in the elimination case, elect one of the following options (as appropriate):

(1) Submit a resignation in lieu of elimination.

(2) Request discharge in lieu of elimination (RA officer only).

(3) Apply for retirement in lieu of elimination if otherwise eligible.

*b.* When an option is elected, elimination proceedings will be suspended pending final action on the option elected by the officer.

*c.* Any voluntary retirement of an officer who has been convicted by general court-martial and any retirement in lieu of elimination for misconduct, moral or professional dereliction, will be sent to CDR, PERSCOM (TAPC–PDT–PM), for forwarding to the Army Grade Determination Review Board to determine the highest grade the officer satisfactorily held while on AD. Final retirement grade determination is made by ASA (M&RA). The office of PERSCOM (TAPC–PDT–PM) forwards the following:

(1) Retirement application.

(2) The elimination notification memorandum (to include all supporting documentation).

(3) Officer rebuttal (if any).

(4) OMPF.

*d.* Upon final determination, PERSCOM (TAPC–PDT–PM) will forward appropriate separation instructions to the appropriate PSC/MPD.

### 4–25. Steps for processing an option that officer elects while elimination action is pending

The required steps for processing an option that officer elects while elimination action is pending are as shown in table 4–4.

**Table 4–4**
**Processing an option that officer elects while elimination action is pending**

| Step | Work center | Required action |
|---|---|---|
| 1 | SLDR | Selects an option.<br>*a.* Resignation, if reason for elimination is substandard performance of duty. (Use format shown in fig 4–4.)<br>*b.* Resignation, if reason for elimination is substandard performance and/or misconduct, moral or professional dereliction, or in the interest of national security. (Use format shown in fig 4–5.)<br>*c.* Discharge, if reason for elimination is substandard performance of duty. (Use format shown in fig 4–6.)<br>*d.* Discharge, if reason for elimination is substandard performance and/or misconduct, moral or professional dereliction, or in the interest of national security. (Use format shown in fig 4–7.)<br>*e.* Retirement. (Use format shown in figure 6–1, amended as required to specifically state that the application is submitted in lieu of elimination proceedings.) |
| 2 | PPAA<br>BN S–1 | Processes the option. Determines whether medical board or PEB proceedings are pending or appropriate (para 4–3*a*). The commander makes recommendation for approval or disapproval and for type of discharge and forwards to the GOSCA with the following documents:<br>*a.* Elimination recommendation memorandum (GOSCA to officer).<br>*b.* Self-admitted homosexual conduct statement (if applicable).<br>*c.* Report of investigation (if applicable).<br>*d.* Medical examination and mental status evaluation (if applicable).<br>*e.* DA Form 268. |
| 3 | C&S | The GOSCA makes recommendation for approval or disapproval and for type of discharge to be furnished and immediately forwards the option request, to include all supporting documents to CDR, PERSCOM (TAPC–PDT–PM), with an information copy to the MACOM commander and GCMCA (if different from the GOSCA) concerned. |
| 4 | C&S | The GOSCA advises CDR, PERSCOM (TAPC–PDT–PM), in writing of the status of the Board of Inquiry proceedings, including results and the MACOM's action (if applicable). |

*d.* An RA commissioned officer with 30 years service may upon his or her request and the approval of the Secretary of the Army be retired (10 USC 3918). Reference for computation of retired pay is 10 USC 3991.

*e.* An RA commissioned or warrant officer who has at least 40 years of service will be retired upon his or her request (10 USC 10 USC 3924). Reference for computation of retired pay is 10 USC 3991.

**6–15. Service for determining retirement eligibility**

*a.* Voluntary retirement eligibility is determined by AFS (10 USC 3926). To determine whether an officer may be retired voluntarily, his or her years of AFS are computed by adding—

(1) All active service in the Army or the Air Force.

(2) All service in the Navy or Marine Corps that would be credited for determining retirement eligibility in the respective Service (10 USC 3926(a)).

(3) For an officer of the Regular Army, all active service performed as an officer of the Philippine Constabulary.

(4) All RA commissioned officer service in the Medical Corps as a contract surgeon, acting assistant surgeon, or contract physician under a contract to serve full-time and to take and change station as ordered.

(5) All RA commissioned officer service in the Dental Corps as a contract dental surgeon or acting dental surgeon.

*b.* Constructive service as defined in paragraph 6–2*c* is not creditable for a voluntary retirement or for retired pay purposes after a voluntary retirement.

**6–16. Service obligations**

*a.* Generally, an officer who completes certain formal education or training programs accepts career status, a certain promotion, or a PCS and incurs an ADSO (AR 350–100). Normally, an officer must be able to fulfill the ADSO on or before the effective date of retirement. However, CG, PERSCOM, may grant nonstatutory waivers. Each request will be on a case by case basis.

*b.* An RC officer requesting voluntary retirement in lieu of elimination action (para 4–23) is not subject to this paragraph.

*c.* An RA warrant officer scheduled for mandatory retirement may accept an ADL promotion to pay grade CW3, CW4, or CW5 without incurring ADSO. Retention of these warrant officers beyond their mandatory retirement date is not authorized.

*d.* An officer assigned OCONUS on an unaccompanied tour must be able to complete five-sixths of the officer's tour or 12 months (whichever is later) on or before the effective date of retirement.

*e.* An officer on an accompanied tour (when dependents travel at Government expense) must be able to complete five-sixths of prescribed tour or 12 months from the date the dependents arrived (whichever is later) on or before the effective date of retirement. (The 12–month overseas restriction does not apply to an RC officer applying for retirement in conjunction with his or her REFRAD under chap 3.)

*f.* The PERSCOM may defer the voluntary retirement of an officer assigned to a critical position until a replacement is available through the normal requisitioning cycle. A request for an officer's deferment must include the justification.

*g.* The PERSCOM may waive a nonstatutory ADSO for the convenience of the Army or when substantial or undue hardship will result to the officer. The waiver request must be documented with detailed justification. When the best interest of the Army is involved, the following should be considered when processing the request for retirement:

(1) Retirement in lieu of elimination under chapter 4 or in lieu of other unfavorable personnel action justifying a waiver of the service obligation.

(2) Retirement of any officer nonselected for promotion to CW3, CW4, CW5, or lieutenant colonel.

**6–17. Voluntary retirement in lieu of mandatory retirement or in conjunction with the scheduled REFRAD**

*a.* An RA officer may request voluntary retirement in lieu of mandatory retirement under section VI of this chapter.

*b.* The CG, PERSCOM, will notify the RC officer who is on the ADL and scheduled for involuntary REFRAD under chapter 2 of his or her retirement eligibility date when it is on or before the RC officer's mandatory release date.

*c.* A retirement eligible officer who is twice nonselected for promotion to the grade of lieutenant colonel or below may retire. The officer's effective date of retirement will not be later than the mandatory separation date.

*d.* An officer who receives a notification memorandum of impending elimination may request retirement in lieu of elimination. If the officer elects to retire and the elimination action involved misconduct or moral or professional dereliction, CG, PERSCOM, will forward the retirement application and memorandum of notification for elimination with all supporting documentation to the Army Grade Determination Board. Any comment or rebuttal by the officer and the officer's OMPF will be included in the forwarding documentation. The Army Grade Determination Review Board will make recommendation as to the highest grade that the officer has served on AD satisfactorily. The effective date of retirement for an officer—

(1) With 19 years and 6 months but less than 20 years AFS will not be later than 60 days after the officer attains 20 years AFS.

(2) With 20 or more years AFS will not be later than 60 days from the date the officer elected retirement in lieu of elimination.

**Section III**
**Task: Process Retirement in Lieu of PCS**

**6–18. Rules for processing retirement in lieu of PCS**

*a.* An officer may request retirement in lieu of PCS when he or she has at least 19 years 6 months AFS and a firm PCS notification is received. The retirement request must be submitted within 30 calendar days of the alert or PCS orders (whichever is earlier).

*b.* A PCS alert is when an officer receives a firm "where and when" PCS notification from a career manager, an installation personnel officer, or his or her commander or supervisor during an interview, a telephone call, or written correspondence (to include a verified request for PCS orders). An assignment is considered "firm" when an officer is selected to fill a vacancy on a command's requisition.

*c.* All service obligations must be met (or waived) before retirement. The PSC/MPD will verify service obligations by contacting the officer's career management division before forwarding the retirement request. The waiver request must be documented with detailed justification. Requests that are not forwarded through channels will be returned.

*d.* An officer retiring in lieu of PCS will normally remain at the same duty station until retirement unless the needs of the Service or local circumstances clearly require reassignment (for example, due to deletion of the position, reorganization, disciplinary problems). If possible, the officer will be reassigned within the same installation if there is a valid need. When this is not possible, the officer may be reassigned to the closest military installation where there is a valid need. An officer will not be reassigned purposely to be closer to the requested location of retirement.

*e.* The officer may request the retirement to be effective any date not later than 6 months from the date of the PCS orders or the first day of the month after the officer attains 20 years AFS, whichever is later.

*f.* Once a retirement is approved, the appropriate career management division will revoke the PCS orders and notify the officer. The retirement will not be withdrawn nor will the effective date of the retirement be extended. However, a request for an earlier date will be considered on an individual basis. A retirement in lieu of PCS is considered approved when the request is cleared by the officer's appropriate career management division.