IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-166C (Judge C.O.C. Miller)

PAUL E. DOLAN

Plaintiff,

v.

THE UNITED STATES

Defendant,

PLAINTIFF'S APPENDIX
VOLUME 5

August 3, 2007

John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825
Counsel for plaintiff

APPENDIX VOLUME 5, TABLE OF CONTENTS

Army Regulation,
AR 140-185, *Training and Retirement Point Credits* (1987)..................................140-43

Army Regulation,
AR 37-104-4, *Military Pay and Allowances Policy* (2005)..................................143A-G

Department of Army Pamphlet
DA Pam 27-50-136, Major David Wagner "Officer Eliminations: Emphasis on Quality," *The Army Lawyer* 9 (April 1984)* ..........................................................144-48

GAO Report
GAO-06-362, "The Military Disability System: Improved Oversight Needs to Ensure Consistent and Timely Outcomes" (March 2006)..................................149-51

* The *Army Lawyer* is listed as an "official publication of the Judge Advocate Generals School U.S. Army (TJAGSA); Major David Wagner is identified as "Instructor, Administrative and Civil Law Division, TJAGSA")

**Headquarters**
**Department of the Army**
**Washington, DC**
**15 May 1987**

**Army Regulation 140–185**

**Effective 15 November 1987**

**Army Reserve**

# Training and Retirement Point Credits and Unit Level Strength Accounting Records

By Order of the Secretary of the Army:

CARL E. VUONO
*General, United States Army*
*Chief of Staff*

Official:

R. L. DILWORTH
*Brigadier General, United States Army*
*The Adjutant General*

**History.** The original form of this regulation was first published on 15 September 1979. Since that time, changes have been issued to amend the original. As of 15 May 1987, permanent Changes 1 through 12 remain in effect. This UPDATE printing incorporates those changes directly into the body of the text. To make this publication compatible with the Army electronic publishing database, figure 3–4 has been changed to table 3–1.

**Summary.** This regulation prescribes the types of training and activities for which retirement points are authorized. It discusses the procedures for recording retirement point credits and training for U.S. Army Reserve soldiers. It provides instructions for completing the DA Form 1379 (U.S. Army Reserve Components Unit Record of Reserve Training) and DA Form 1380 (Record of Individual Performance of Reserve Duty Training). This regulation also covers the basic guidance for strength accountability.

**Applicability.** This regulation applies only to United States Army Reserve soldiers. It does not apply to the Active Army or the Army National Guard.

**Proponent and exception authority.** Not applicable

**Army management control process.** This regulation is not subject to the requirements of AR 11–2. It does not contain internal control provisions.

**Supplementation.** Supplementation of this regulation and the establishment of forms other than DA Forms are prohibited without prior approval from Commander, U.S. Army Reserve Personnel Center, ATTN: DARP–ZAP–P, 9700 Page Boulevard, St. Louis, MO 63132–5200.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by The Adjutant General. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Commander,U.S. Army Reserve Personnel Center, ATTN: DARP–ZAP–P, 9700 Page Boulevard, St. Louis, MO 63132–5200.

**Distribution.** Active Army, B; USAR, A; ARNG, D.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General,** *page 1*
Purpose • 1–1, *page 1*
Applicability • 1–2, *page 1*
Eligibility • 1–3, *page 1*
Establishment of retirement year • 1–4, *page 1*
Strength accounting • 1–5, *page 1*
Duty Qualification Codes for SIDPERS-USAR Data Base • 1–6, *page 2*

**Chapter 2**
**Crediting and Awarding of Retirement Points,** *page 2*
Criteria for crediting retirement points • 2–1, *page 2*
Criteria for earning retirement points • 2–2, *page 3*



UNCLASSIFIED

program units (TPU). The Standard Installation/ Division Personnel System (SIDPERS–USAR) is an automated personnel management information system that provides data for unit strength accounting. This system will report organization, authorization and personnel data through the following functions:

*a.* The organization management function provides support to commanders in maintaining and updating unit identification and related force structure data to support the personnel distribution processes.

*b.* The personnel management function provides support to commanders for managing and controlling officer and enlisted assignments, reassignments, and transfers; and for identifying personnel requirements by grade and skill.

*c.* The position management function provides support to commanders for managing and controlling the authorized positions within each unit.

*d.* The Unit Manning Report provides each unit commander with a management tool for reviewing/maintaining personnel authorization data, and for monitoring and controlling the assignment of unit personnel to authorized positions by position number, paragraph number, and line number.

*e.* The mobilization support function supports commanders and mobilization planners by providing organization and personnel data on a recurring basis to automated systems which directly support mobilization.

*f.* The personnel actions function supports commanders and personnel staff officers in providing information to manage and control personnel actions. The Personnel Suspense Roster identifies personnel eligible to reenlist and data related to the incentive status of individual reservists.

*g.* Since SIDPERS–USAR feeds DOD Reserve Components Common Personnel Data System (RCCPDS) which provides the official assigned strengths used by the Federal Government (planning, programing and budgeting), personnel data accessions and losses must be processed quickly. The guidelines below must be followed to update DA Form 1379 and SIDPERS–USAR.

(1) Units will—

*(a)* Submit requests for assignment orders to ARPERCEN same day individual requests assignment to unit.

*(b)* Request orders for reassignment as soon as concurrence/acceptance from gaining unit is received.

*(c)* Submit requests for discharge orders 30 days prior to the individual's expiration term of service (ETS) when it is apparent individual will not reenlist.

*(d)* Not hold at the unit, under any circumstances, a request for orders when it is evident the individual will be a loss.

*(e)* Initiate immediate follow-up action when required documentation has been submitted to the SIDPERS Interface Branch to input a change to DA Form 1379; i.e. gain, loss, or personal data, and the change has not occurred on the second preprinted DA Form 1379 received after the submission of request.

(2) Area commanders will—

*(a)* Cut and return orders to units within 10 working days after request for orders has been received and approved.

*(b)* Process personnel changes, gains, and losses to the SIDPERS–USAR.

*(c)* Make inquiries to units, when possible, if a remark has been made on DA Form 1379 such as" Pending Orders" or" Pending Transfer," to determine the status of request for orders.

(3) ARPERCEN will produce orders and return to requesting unit within 30 working days after receipt for assignment—if the individual is in the Individual Ready Reserve (IRR) strength.

(4) ARPERCEN will—

*(a)* Submit records to the appropriate Continental United States Army (CONUSA) within 60 working days after receipt of request for assignment—again if the individual is in the IRR strength.

*(b)* Process other individual requests as quickly as possible.

*(c)* Provide SIDPERS–USAR data processing support.

### 1–6. Duty Qualification Codes for SIDPERS-USAR Data Base

The Duty Qualification Code indicates the ability of a person to perform the duties of the authorized position to which assigned or the duties to which assigned as excess. Follow the procedures in the SIDPERS-USAR Users Manual for accessioning and updating the Duty Qualification Codes. The qualification and training status of each person assigned will be indicated by a one-letter code. (See Table 1–1 for the Duty Qualification Codes and definitions.

## Chapter 2
## Crediting and Awarding of Retirement Points

### 2–1. Criteria for crediting retirement points

The limitations on the number of points which may be credited to a soldier during a retirement year are—

*a.* Maximum—365 (366 during leap year) points.

*b.* Maximum for inactive duty training (IDT)—60 points for IDT and membership points. However, Annual or Terminal Statement of Retirement Points will report all points earned.

*c.* Partial year—If a soldier is separated or removed from an active status during a retirement year, the soldier may be credited with a proportionate maximum number of IDT points for that year as shown in appendix A. Appendix B shows the minimum number of points required for a partial year for qualifying service. Appendix C shows the number of membership points authorized for a partial year.

*d.* Membership—15 points for each year in an active status. If the soldier is on active duty for more than 350 days (351) in leap year), membership points will be reduced so that maximum 365 (366) points are not exceeded.

### 2–2. Criteria for earning retirement points

Retirement points may be earned by USAR soldiers for active duty (AD), or while in an active Reserve status, for active duty for training (ADT), initial active duty for training (IADT), involuntary active duty for training (involuntary ADT), annual training (AT), inactive duty training (IDT), Reserve membership, and for other activities specified in this regulation.

*a.* For purposes of this regulation, AD, ADT, IADT, involuntary ADT, and AT are treated as separate, mutually exclusive categories (in contrast to definitions found in AR 310–25). Their treatment of such conforms with their usage in AR 140–1 and AR 135–91.

*b.* Types of IDT are as follows (See AR 140–1):

(1) Regularly scheduled unit training includes unit training assemblies (UTA), and multiple unit training assemblies (MUTA).

(2) Regularly scheduled training (RST) other than UTA/MUTA.

(3) Make up assemblies for missed UTA/MUTA due to AT.

(4) Equivalent training (ET) in lieu of scheduled UTA/MUTA or RST.

(5) Additional training assemblies (ATA).

(6) Two-hour unit training assemblies.

(7) Training of individual soldiers in nonpay status.

### 2–3. Qualification and eligibility for earning retirement points

*a.* Authority and specific individual qualifications required for earning retirement points are in AR 140–1 and other regulations governing the type of Reserve duty training to be performed.

*b.* All USAR soldiers are classified into alphabetic training/pay categories (T/PC) for determination of individual requirements for paid IDT and AT (see AR 140–1, fig 3–1). These categories determine individual status in the Ready Reserve (Selected Reserve and Individual Ready Reserve and the Standby Reserve (Active and Inactive).

### 2–4. Criteria for awarding retirement points

*a.* Personnel on AD, ADT, IADT, involuntary ADT, or AT are awarded 1 point for each calendar day they serve in one of these categories and may not be awarded additional points for other activities while in such status.

*b.* Table 2–1 provides criteria for award of retirement points for IDT performed in accordance with AR 140–1 (unless another reference is cited). Most types of IDT are covered by one of the following rules on required duration of IDT and calendar day limitations on points.

(1) *Four-hour rule.* One point for each scheduled 4-hour period of IDT at UTA, RST, ET, ATA, or make up assembly. Maximum of 2 points in 1 calendar day.

(2) *Two-hour rule.* One point for each 2 hour or greater period. Two-hour aggregates of shorter periods may be used, except in the case of 2-hour unit training assemblies. Maximum of 1 point in 1 calendar day.

(3) *Two/eight-hour rule.* One point for each 2 hour or greater period. Two-hour aggregates of shorter periods may be used except in the case of 2-hour unit training assemblies. Award of a second point in the same day requires additional hours to bring the day's total to a minimum of 8. Maximum of 2 points in 1 calendar day.

*c.* Points may not be awarded under more than one of the rules in *b* above during any single calendar day.

*d.* No individual may be awarded a total of more than 2 points for IDT in 1 calendar day, with the following exceptions:

(1) TPU soldier who recruits a new member as specified under rule 17 in Table 2-1.

(2) Correspondence courses completed as specified under rule 4 in table 2-1.

## Chapter 3
## Records

### 3–1. General

The various forms used to maintain and record the award and entitlement of retirement points are described below. In

addition, DD Form 214 (Certificate of Release or Discharge from Active Duty) is used to determine retirement points (see para 3–7).

**3–2. DA Form 1379 (U.S. Army Reserve Components Unit Record of Reserve Training) (RCS AG 534)**

*a. Purpose—use.* This is a SIDPERS–USAR output roster listing soldiers assigned or attached to Reserve units (to include subunits established for payroll reporting), Individual Mobilization Augmentee (IMA) detachments, and reinforcement training units or USAR school student detachments. It contains personnel data on each soldier and is used—

(1) To record IDT drill attendance/status for assigned and attached personnel.

(2) As a source document to verify accuracy of unit payrolls under Joint Uniform Military Pay System (JUMPS-RC) by authorized inspecting and verifying personnel.

*(a)* As a source document for reporting specific data items which are input to the personnel information systems.

*(b)* Not used.

(3) As a permanent record of retirement points earned.

(4) As a basic report for reflecting unit performance and constructive attendance.

(5) As historical record of unit training.

(6) For annual training attendance.

(7) ***(Rescinded.)***

(8) By reinforcement training units (RTU), IMA detachments, and USAR school student detachments to record authorized training of attached nonunit soldiers.

(9) To determine eligibility for benefits if injury or death is incurred while in training.

*b. Preparation.*

(1) DA Form 1379 will be prepared monthly by ARPERCEN from updated data and forwarded to units in quintuplicate. A DA Form 1379 Control Ledger will be sent to each SUBMACOM. The DA Form 1379 report contains the following:

*(a) Heading.* Contains unit identification information and column headings for personal data sections.

*(b) Assigned strength section.* Lists all personnel in the unit official assigned strength and basic personal data items, and also lists personnel on JUMPS–RC and SIDPERS data base.

*(c)* ***(Rescinded.)***

(2) After updating at the unit level, DA Form 1379 will contain the following additional information:

*(a)* Any corrections to the heading, and, assigned strength, and recap sections.

*(b)* Annotation of losses from the actual assigned strength of the unit.

*(c)* An additionally assigned section, listing any assigned personnel that should be added to the official unit strength.

*(d)* An attached section, listing all personnel attached for administration.

*(e)* An anticipated gains section, listing personnel for whom assignment or attachment authority has been requested.

*(f)* Training, attendance, and unit events information.

(3) Instructions for completion and correction of DA Form 1379 are contained in appendix D.

*c. Disposition.* Distribute as follows:

(1) *Troop Program Unit soldiers.*

*(a) Original retain in the unit.* (See app A, AR 340–2.) At the end of the calendar year transfer to an organization designated by the area commander. Hold for 1 year, then retire to Commander, ARPERCEN, ATTN: DARP–PAR, 9700 Page Boulevard, St. Louis, MO 63132–5200.

*(b) First copy.* Forward to the area commander by the quickest means possible but not later than 3 days following the last regularly scheduled training assembly or period of annual training, whichever comes later during the reporting month. If no assemblies are scheduled and AT is not completed during the month, submit DA Form 1379 not later than the 15th of the reporting month.

*(c) Second copy.* Forward to the designated JUMPS–RC Input Station in accordance with AR 37–104–10 by the quickest means possible but not later than 3 days following the last regularly scheduled training assembly or period of annual training, whichever comes later during the month. If no drills are scheduled and AT is not completed during the month, submit DA Form 1379 not later than the 15th of the reporting month.

*(d) Third copy.* Forward to appropriate Major United States Army Reserve Command (MUSARC).

*(e) Fourth copy.* Retain this copy for unit commander's use to record information pending receipt of the next month's form. (See AR 340–2, app A.)

*(f) Distribution under Positive Drill Reporting System.* As units convert to positive drill reporting under AR 37–104–10, input stations will no longer receive a copy of the DA Form 1379. There will no longer be a requirement to submit the DA Form 1379 within 3 days after the last UTA or MUTA of each month. On the month the unit converts to positive drill reporting, the form will become an end–of–month report. All duty taking place since the last DA Form 1379 to the end of the calendar month for which the form is prepared will be included on that month's DA Form 1379. The first copy will be sent to the area commander by the quickest means following the end of the reporting

period so that it arrives NLT the 10th of the following month. The second and fourth copies will be kept at the unit. The third copy will be sent to the MUSARC to arrive NLT the 10th of the following month. Units preparing payroll under the O/9 card method will continue to submit the DA Form 1379 per paragraph 3–2c(1) (a through e) above.

(2) *Nonunit soldiers (attached to RTUs, IMA detachments, or USAR school student detachments).*

*(a) Original and first and second copies.* Forward to Commander, ARPERCEN, ATTN: DARP–AIP–DR, 9700 Page Boulevard, St. Louis, MO 63132–5200, within 30 days after reporting month.

*(b) Third copy.* Forward to appropriate MUSARC.

*(c) Fourth copy.* Retain this copy for unit commander's use to record information pending receipt of the next month's forms. (See AR 340–2, app A.)

## 3–3. DA Form 1380 (Record of Individual Performance of Reserve Duty Training)

See Figure 3–1.

*a. Purpose.* This form is used to record inactive duty training by—

(1) Unit soldiers performing IDT assemblies when pay is authorized and soldier is not present to sign his or her DA Form 5350, a data recorder or drill reporting forms are not available, or proper counter signature authority does not exist.

(2) Unit soldiers attached to another USAR unit for 89 or fewer days. In such cases the unit of attachment will prepare DA Form 1380 and forward to unit of assignment for recording attendance on DA Form 1379.

(3) Nonunit soldiers under the jurisdiction of ARPERCEN who are attached for retirement points only to USAR Troop Program Units, ARNG units, or to another service or component for training. *Note:* Nonunit soldiers attached for retirement pointcredit to RTUs, USAR school student detachment, and IMA detachments arereported on DA Forms 1379 for those units.

(4) Nonunit soldiers performing other inactive duty training for retirement point credit as outlined in table 2–1.

(5) Instructors in USAR schools performing appropriate schedules training in accordance with approved individual instructor yearly training schedule when IDT pay is authorized. *Note:* DA Form 1380 is not required when individual performance of USAR school instruction is documented with a sign-in roster.

*b. Initiation and preparation.* The instructions on the back of the form designate the officials responsible for its preparation. The instructions also provide data on the form's completion. In addition, the following applies:

(1) A single form may be used to report a soldier attached to a unit who performs two or more training assemblies in the same month. A single form may be used to report two or more soldiers attached from the same unit of assignment. These single forms may be used as long as they are prepared and submitted within 3 days after performance of training.

(2) DA Form 1380 will be prepared for a unit soldier who performs equivalent training or additional training with his or her unit subsequent to the submission of DA Form 1379. One copy of the DA Form 1380 will be retained bythe unit to post the appropriate entry on the following month's DA Form 1379. A copy of the DA Form 1380 will be sent to the designated input station and a copy filed in the Personal Financial Record (PFR) in accordance with AR 37–104–10.

(3) The code" P" or" N" will be entered in item 10c before the retirement point credit. The code" P" indicates the soldier is entitled to inactive duty pay for the duties performed; the code" N" indicates the soldier is entitled to retirement point credit only.

(4) Enter in item 10d a brief description of the duties performed. Appendix E lists the main type of training duties *with training codes to be used.* (The term" Administrative Duties" will not be entered unless soldier is authorized on orders to perform such duties.)

(5) The authorization for the training reported on DA Form 1380 must be entered in item 10 to include approving headquarters and date of approval.

*c. Disposition.* Distribute completed form as follows:

(1) For unit soldiers, the organization preparing the form will forward the original and duplicate to the soldier's unit of assignment within 3 days after performance of the duty. Retain one copy for file. The unit of assignment will ensure that the duty performed is recorded on DA Form 1379 as shown in Figure D–5.

*(a)* One copy will be filed in the Personal Finance Record according to AR 37–104–10.

*(b)* One copy will be given to the soldier.

*(c)* A reproduced copy will be posted to the 30-day plan and filed according to AR 340–2.

(2) For nonunit soldiers, forward original and duplicate to Commander, ARPERCEN, ATTN: DARP–AIP–DR, 9700 Page Boulevard, St. Louis, MO 63132–5200 within 3 days after the last day of the month. Retain one copy for file.

## 3–4. DA Form 2328 (Record of Army Extension Courses Completed)

Machine prepared letters may be used in lieu of DA Form 2328 by commands having data processing capability. *Note:* Similar extension courses completed through another component (during retirement year) will also accrue points as indicated on completion certificates.

*a. Use.* This form is used to report the number of course credit hours creditable to unit and nonunit soldiers for satisfactory course completion during a retirement year.

*b. Initiation and preparation.* When a soldier has earned 1 or more retirement points, service schools will prepare one copy of the form or letter for letter or the soldier's retirement year ending date, upon entry on active duty, or upon termination or completion of course enrollment. These reports will show the total number of hours completed as of that date regardless of whether a full course or subcourse has been completed. Soldiers are responsible for advising service schools of current retirement year dates on enrollment application. The custodian of the soldier's file is responsible for informing schools when soldier enters on active duty and for requesting a terminal report.

*c. Disposition.* Service schools will forward the form within 15 days after the due date as follows:

(1) For unit soldiers, to their unit of assignment.

(2) For nonunit soldiers, send to CG, ARPERCEN, at the address noted in paragraph 3–3 *c*(1)( *b*) above.

(3) After posting of points, the form may be given to the soldier or destroyed.

### 3–5. DA Form 3593 (Army Reserve Retirement Credit Card)

*a. Purpose/use.* This form, which is prepared along with a Retirement to maintain a record of the soldier's accumulated retirement points. The Retirement Credit Card Roster provides unit commanders with a means of controlling the closing out and disposition of DA Form 3593 for the previous retirement year. The roster lists the unit soldiers for whom a new DA Form 3593 was produced. An" action" column on the roster contains a messageconcerning disposition of the closed out DA Form 3593. When the message is" 3593 Due," see g(1) below; when message is" Obligated EM/EW," see g(2) below; when message is" New Member," transfer data from the temporary DA Form 3593 prepared at the unit to the computer produced DA Form 3593. Keep the new form updated until receipt of the next DA Form 3593 and/or make proper disposition as in *g* below.

*b. Initiation and preparation.*

(1) The form along with a Retirement Credit Card Control Roster is prepared by ARPERCEN during the SIDPERS–USAR EOM processing cycle upon a soldier's initial entry into USAR unit and for those assigned unit soldiers whose retirement year ending month is 2 months subsequent to the processing month. Unit Commanders will prepare a temporary DA Form 3593 pending receipt of the computer produced form from ARPERCEN. The unit commander will return the completed prepunched DA Form 3593 to Cdr, ARPERCEN, ATTN: DARP–AIP–DT, for preparation of a Statement of Retirement Points when the soldier—

*(a)* Has a retirement year anniversary date.

*(b)* Enters on active duty, other than ADT.

*(c)* Enters active status of the Army National Guard or other service.

*(d)* Transfers to inactive status.

*(e)* Is discharged.

*(f)* Is deceased. *Note:* Non-CONUS units will submit DA Form 3593 to their local data processing unit for preparation of the Annual or Terminal Statement of Retirement Points.

(2) The prepunched data on DA Form 3593 by ARPERCEN includes the name, military personnel code (MPC) (O—commissioned officer, W—warrant officer, and E—enlisted personnel), social security number (SSN), month and day of beginning and ending retirement date, and unit identification code (UIC) (consisting of parent unit code; subunit code; and morning report indicator). All other data, including changes to prepunched data, will be entered in pencil by the soldier's unit commander. (See figs 3–2 and 3–3.) If the soldier has changed units during the retirement year period, the gaining unit will see that the UIC on front of the card is corrected.

*c. Computation.* The number of points to be awarded annually is totaled as of the month and day in which the retirement year ends. Record only those points creditable during the reporting periods in the appropriate month column on DA Form 3593.

*d. Maintenance.* DA Form 3593 will be maintained in accordance with this paragraph. A description of data and instructions for completion of retirement point total and calendar months columnar headings follows:

(1) *Retirement year begins.* Enter year, month, and day when current retirement year begins. Enter the last two digits of the year, a three-position alphabetical abbreviation for the month, and precede calendar dates of 1 through 9 by a zero (0) Example: 7 August 1974 will be shown as 74 Aug 07.

(2) *Retirement year ends.* Enter year, month, day of retirement year ending date in the same format as (1) above.

(3) *DA Forms 1379 and 1380.* Combine retirement points from these two forms and enter under both the retirement point total and calendar month columns.

*(a) Retirement point total column.* Enter cumulative total of all creditable retirement points for inactive duty training. Examples: unit training assemblies, appropriate training duty, equivalent training,recruiting, or other duties which entitle the soldier to retirement points.

*(b) Calendar months column.* Enter the number of creditable IDT retirement points for each calendar month.

(4) *Membership.* Complete when report is for entire retirement year, otherwise leave blank.

*(a) Retirement point total column.* Enter 15 retirement points.

*(b) Calendar month column.* Enter 15 retirement points under the month of the RYE date.

(5) *Extension courses.* Report only Army extension courses (AEC) credited by service schools on courses completed for the entire retirement year. In addition, when a soldier enrolls in an AEC, make a notation of the enrollment as indicated in (b) below.

*(a) Retirement point column.* Enter the number of retirement points for completion of AECs. One point is authorized for each 3 hours of courses completed.

*(b) Calendar month columns.* Enter under the RYE month the number of creditable points. Example: RYE date occurs in December; therefore, list total points under the corresponding month of December. Use the remaining blank line to enter the name of the service school in which enrolled, total hours completed, and date of enrollment or date of terminal statement, as appropriate.

(6) *Extended Active duty.*

*(a) Calendar month column.* Based on AD date only, enter under each applicable month the number of creditable retirement points for AD performed within the retirement year in which soldier was relieved for AD.

*(b) Retirement point total column.* No entry will be made in total point field for AD.

(7) *Active duty training.*

*(a) Calendar months column.* Enter under each applicable month the number of creditable retirement points for ADT and AT only.

*(b) Retirement point total column.* Enter the combined total of creditable retirement points for all tours AD, ADT, and AT.

(8) *Total retirement points.* Leave blank if for a partial retirement year. Otherwise, enter in retirement point total column the sum of all creditable retirement points for the RYE date entered. The retirement points total (vertical entries, top to bottom) must equal the calendar month column (horizontal, right to left).

(9) *Reason.* Under the retirement point total column (left block), enter the applicable codes to show the reason and qualification for submission or completion of DA Form 3593.

*(a)* Code 1, annual statement due, assigned to the USAR during the entire reporting period.

*(b)* Code 2, terminal statement due, by reason of discharge or transfer to the National Guard or other branch of service.

*(c)* Code 3, terminal statement due, soldier ordered to or entered on active duty.

*(d)* Code 4, soldier is deceased.

*(e)* Code 5, Annual statement due, currently assigned to USAR but was previously assigned to Army National Guard or Reserve Components of other than Army during the reporting period.

*(f)* Code C, corrected DA Form 1383 being issued.

(10) *Qualification.* Under the retirement point total column (right block), enter the applicable codes to show the reason and qualification for submission or completion of DA Form 3593.

*(a)* Code 1, qualification for retention only: total points earned (27–49 officers) (20–49 enlisted personnel).

*(b)* Code 2, qualified retention and retirement: total points earned is 50 or more for officers and enlisted soldiers.

*(c)* Code 3, not qualified for retention: officers and enlisted soldiers with 20 or more qualifying years of service, less than 50 points earned; officers and enlisted soldiers with less than 20 qualifying years of service, total points earned less than 27 for officers or 20 for enlisted soldiers.

(11) *Bottom margin.* Leave the blocks titled“ first” and“ second” blank.

(12) *Reverse side of form.*

*(a) Entries correct for all unit assignments or attachment during retirement year.* These items will be completed when a soldier is lost from his/her unit of assignment for any reason or DA Form 3593 is submittedfor preparation of the annual or terminal statement of retirement points. Inaddition, all periods of AD, ADT, and AT will be shown in this section.

*(b) Total certified correct.* The purpose of this item is to certify that all entries are complete, correct, and that the form reflects the total points the soldier earned during the period. DA Form 3593 must be signed by both the soldier and certifying officer.

*e. Consolidation.* The DA Form 3593 must reflect all retirement points earned by a soldier during the period for which a corresponding Statement of Retirement Points will be prepared. Accordingly, the partial retirement point records issued for the period reported must be incorporated in the pertinent DA Form 3593. This includes partial year retirement point records issued by ARPERCEN, ARNG or Reserve Components of any of the Armed Services.

*f. Submission.* Update and forward the DA Form 3593 to —

(1) Cdr, ARPERCEN, ATTN: DARP–AIP–DT, annually, not later than the last day of the month following the month when RYE occurs. DA Form 3593 for all soldiers whose RYE occurs during a specific month will be grouped together and forwarded at one time to CG, ARPERCEN. Exceptions to the suspense date may be made by the CG, ARPERCEN for valid reasons. Example, a soldier is enrolled in Army extension courses and additional time is required for the receipt of records from the school.

(2) Send the DA Form 3593

*(a)* With the soldier's MPRJ upon request for transfer to a USAR control group or discharge.

*(b)* With the soldier's MPRJ upon request for transfer to a USAR unit in another area command or the Army National Guard (officers only).

*(c)* With a copy of transfer orders issued by the area commander if soldier was transferred to the Army National Guard (nonobligated enlisted soldiers only).

*(d)* With a copy of orders placing a soldier on active duty (other than ADT) as an individual.

*(e)* With a copy of discharge orders issued by the commander of training installation if soldier was discharged while on initial active duty training.

*(f)* With a copy of report in the format required by AR 600–10 if soldier dies.

*(g)* Exceptions to *(a)* and *(b)* above may be made by the area commander when a request for discharge/transfer is submitted and DA Form 3593 must be retained to post the last unit training assembly which soldier will attend or if DA Form 3593 is incomplete and required information is being obtained for its completion. When this occurs, a letter addressed to the area commander, ATTN: (designated control branch) will be placed in the soldier's MPRJ stating the reason for the missing DA Form 3593. The MPRJ with a copy of transfer/discharge orders will be sent through the area command headquarters to the gaining command. Further, this paragraph will be cited as authority for the delay.

(3) The commander of the gaining USAR unit with the soldier's MPRJ when a soldier (officer or enlisted) is reassigned or attached for a period of 90 days or more to another USAR unit within the same area command.

*g. Disposition.* The unit commander will distribute the completed form as follows:

(1) For other than obligated enlisted soldiers, send DA Form 3593 to Cdr, ARPERCEN, ATTN: DARP–AIP–DT, for preparation of annual terminal Statement of Retired Points.

(2) When a soldier is assigned to another USAR unit in another area command, is transferred to a control group, is discharged, or is transferred to the ARNG, forward the completed form with the soldier's MPRJ to the losing area commander for disposition. (Also see *h*(1) below).

(3) When a soldier is assigned to another USAR unit within the same area command, forward the completed form with the soldier's MPRJ to the commander of the gaining USAR unit.

(4) When a soldier requests a correction to the Statement of Retired Points, attach supporting documentation, along with the incorrect statement, to an unpunched DA Form 3593 properly completed to reflect the correct retirement points credit and forward to the unit command for verification.

*h. Special disposition.* DA Form 3593 received or completed after the soldier and his or her MPRJ are lost from the unit will be disposed of as follows:

(1) Update and furnish to the area commander, ATTN: (designated control branch), when the soldier is lost for any reason other than transfer to another USAR Troop Program Unit. Letter of transmittal will cite the transfer/discharge orders (para, orders no., HQ, date of orders, and effective date). If possible, a copy of the pertinent orders will accompany correspondence. Area commanders will forward the completed forms for soldiers transferred to ARPERCEN to Cdr, ARPERCEN, ATTN: DARP–AIP.

(2) Update and furnish to soldier's unit of assignment when he/she has been transferred to a USAR unit under the jurisdiction of another area command. Forward DA form 3593 with MPRJ if available through the command to the new USAR unit of assignment.

### 3–6. Annual or terminal statements of retirement points

*a. Purpose.* These statements—

(1) Give a permanent record of the total retirement points a soldier earns during a retirement year.

(2) Tell the soldier whether he/she earned sufficient points to be credited with a qualifying period for retired pay or for retention in an active status.

(3) Give the soldier an opportunity to request correction of errors in the statement.

*b. Initiation and preparation.*

(1) The Statement of Retired Points will be prepared by ARPERCEN from the processing of data furnished on DA Form 3593.

(2) ARPERCEN will prepare the appropriate retirement point statement for soldiers under their command to include obligated enlisted soldiers who have earned at least 1 retirement point.

(3) The forms will be prepared to cover a full retirement year of active duty for training or active duty.

(4) The Statement of Retired Points will be prepared for all soldiers regardless of the number of points awarded.

(5) The form will be issued as prescribed in paragraph 3–5 *b*.

*c. Disposition.* Distribute completed forms as follows except that the forms will not be sent to soldiers awarded only membership points or whose service is terminated by death.

(1) Entry on active duty list:

*(a)* Copy—to soldier.

*(b)* MPRJ Copy— to custodian of that file.

1506, and submit it through the FO/DMPO to HRC–A for verification, except as provided in subparagraph *d* and *e*, below. The soldier will do as follows:

(1) Examine copies 1, 3, and 4, of DA Form 1506 to ensure that all copies are legible and that the complete mailing address of the FO/DAO has been annotated. Send copies 1 and 3 to the Commander, HRC-A, Career Branch, 200 Stovall Street, Alexandria, VA 22332–0400, for verification of service stated by the officer.

(2) Annotate copy 4 to show the date copies 1 and 3 were sent to HRC–A and file in a suspense file pending return of the verified copies.

(3) If the statement of service computation is correct, indicate verification by HRC–A on copies 1 and 3 and authenticate the copies in the space provided at the bottom of the DA Form 1506. If the service stated by the officer proves to be incorrect, the HRC–A will enter the correct computation of creditable service for pay purposes in the lower portion of copies 1 and 3 of DA Form 1506, and authenticate the copies in the space provided at the bottom of the form. For officers in the grade of O03 and below, HRC–A will insert a certificate stating whether or not the officer has had over 4 years of active service as an enlisted soldier or warrant officer. HRC–A will return copy 1 to the FO/DMPO at the address shown on the form. HRC–A will keep copy 3.

(4) On receipt of the verified copy, the FO/DMPO will—

*(a)* Annotate copy 4 "verified by HRC–A."

*(b)* If the data on the officer's MMPA is incorrect, the FAO/DMPO will process a TZ05 transaction to correct the TAFMSD, and/or pay date. Use copy 1 as the substantiating document.

(5) If the service stated by the officer was incorrect, provide the corrected statement of service as listed by HRC–A on copy 1 to the PSC for correction of personnel records. If the officer has been reassigned, copy 1 and 4 will be sent immediately to the gaining FO/DMPO.

*d.* Officers whose sole military status has been under a commission in the U.S. Army Reserve (USAR) and was completed subsequent to 1 July 1958, will submit their statement of service to the PSB/PSCMPD/HRO for verification. The PSB/PSCMPD/HRO will verify the creditable service for pay purposes and date stamp a copy of the initial appointment letter with the acceptance date. When the acceptance date cannot be determined, the personnel office will annotate the DA Form 1506 with action taken per subparagraph *c,* above. Copy 1 of DA Form 1506, verified by the PSB/PSC/MPD/HRO, will be returned to the FO/DAO for appropriate action, and all other copies may be destroyed.

*e.* Verification by the adjutant general of the State, territory, or district ARNG officers will satisfy the requirements of paragraph *a,* above, and paragraph 2–3.

### 2–3. Active enlisted and warrant officer service — pay grades O1E, O2E, or O3E

Commissioned officers in the pay grades O1, O2, or O3 are entitled to the special rate of pay if the officer has over 4 years of active enlisted and warrant officer service or a combined total of active enlisted and warrant officer service (DODFMR, Vol. 7A, para 10103).

### 2–4. Establishing creditable service-enlisted

*a.* The FO/DMPO serving soldiers on active duty and unit commanders of soldiers participating in Reserve training duty are responsible for determining the creditable years of service for enlisted soldiers. The FO/DMPO will make this determination using the soldier's enlisted records brief or any other official source document, to include DA Form 1506. When creditable service can be confirmed in this manner, a copy of the official documentation will be used to substantiate the pay transaction.

*b.* If the PSB/PSC/MPD/HRO cannot verify creditable service from the information available, it will—

(1) Initiate a request for an official verified statement of service from the U.S. Army Enlisted Records and Evaluation Center (USAEREC), by an electronically transmitted message to custsupt@erec.army.mil or by letter to the Commander, USAEREC, ATTN: AHRC–ERP, Indianapolis, IN 46249–5301.

(2) Ensure that a copy of the message or letter is filed in a suspense file by the in-processing clerk, and on receipt of the verified statement of service from USAEREC, ensures that the in-processing clerk withdraws the suspense copy from the suspense file, and destroy.

(3) Ensure that the statement of service is used to substantiate the input of any corrections to the soldier's MMPA.

*c.* Verification by the adjutant general of the State, territory, or district will satisfy the requirement in subparagraph *a,* above, for ARNG soldiers on active duty.

### 2–5. Administrative changes to pay date or total active Federal military service date

*a.* On receipt of the verified and/or corrected statement of service, the FO/DMPO will process the transactions necessary to correct the pay date or TAFMSD. The document received will be the substantiating document for the input. In addition, Finance will furnish to the PSB/PSCMPD/HRO a copy of the DA Form 1506 from HRC–A or the statement of service from USAEREC.

*b.* Accepted changes by DJMS–AC will be used to update the officer master file (OMF) and enlisted master file (EMF), which in turn will update the local eMILPO file.

*c.* Adjustments to pay will be made by DFAS–IN, based on the FO/DMPO date of correction. DFAS–IN may

request a copy of the documentation be forwarded in questionable or difficult cases. In this situation, adjustments will not be made until DFAS–IN receives the requested documents.

## Chapter 3
## Basic Pay

### 3–1. Authority

*a.* Soldiers are paid per DODFMR, Vol. 7A, chapter 1, and tables 1–1 through 1–15. Also see Army regulation (AR) 612–201.

*b.* The law prescribes the pay of soldiers. Soldiers are entitled to receive pay according to their pay grades and years of service if—

(1) On active duty in a pay status.

(2) Not prohibited by law from receiving such pay.

### 3–2. Establishing a pay account

Pay accounts will be established and maintained on DJMS–AC MMPAs through input coded by—

*a.* The FO/DMPO at the soldier's first duty station for officers and enlisted soldiers who do not report through a reception center.

*b.* The Reception Battalion Automated Support System (RECBASS) for soldiers processing through a reception station.

### 3–3. Advancements/promotions/reductions

*a.* Responsibilities for reporting grade change transactions are outlined in paragraph 1–4.

*b.* The PSB/PSC/MPD/HRO will use promotion orders to report grade changes for enlisted pay grades (sergeant (SGT) and staff sergeant (SSG)), warrant officer pay grade (W2), and commissioned officer pay grade (O2); and when promotion orders are received from the NGB, HRC–St. Louis, or State orders for enlisted soldiers who are on active duty.

*c.* Enlisted soldiers are now automatically advanced through the rank/grade of specialist (SPC) (E4). Early promotions with waivers require the bn S1 to generate a DA Form 4187, Personnel Action, as the source document for such advancements. Enlisted soldiers automatically will be advanced by the EMF from pay grade E1 to pay grade E2 on completion of 6 months active service. The Bn S1 will make pay grade changes for reductions using DA Form 2627 (Record of Proceedings Under Article 15, UCMJ), and courts-martial orders as the source document.

*d.* Accepted eMILPO grade changes generate an OMF or EMF and a DJMS–AC transaction as follows:

(1) The DFAS–IN through DJMS, systemically edits, posts, or rejects the system-generated transactions. Accepted message numbers and rejected transactions are transmitted systemically to the originating bn S1/PSC for corrective action.

(2) On receipt of rejected transactions, the bn S1/PSC researches and attempts to resolve all the discrepancies.

*e.* The MPO will make all necessary adjustments to the soldier's MMPA when notified that an adjustment is necessary, for a period that is outside immediate access storage (IAS) - current plus 11 prior processing months.

### 3–4. Saved pay

*a.* An enlisted soldier or warrant officer who accepts a permanent or temporary appointment as a commissioned or warrant officer in the Active Component (AC) or RC will be paid the greater of the pay and allowance entitled to as an enlisted soldier, warrant officer, or commissioned officer. (See DODFMR, Vol. 7A, chapter 1.)

*b.* When the FO/DMPO processes the transaction to convert an account to a commissioned or warrant officer status, DFAS–IN is notified systemically through the automated case control system (ACCS) that the case is being established. The FO/DMPO will also send an electronic mail (e-mail) message to DFAS–IN to notify DFAS–IN that the case has been established on the MMPA. The DFAS–IN will then compute the saved pay entitlement, and make the appropriate corrections to the MMPA.

### 3–5. Stop basic pay upon transition

*a.* The Separations clerk will process a separation transaction against the MMPA of all soldiers transitioning from active duty whether for normal expiration terms of service (ETS), retirement, or an early transition. DJMS–AC will suspend the pay of a soldier upon reaching the ETS reflected on the MMPA, but does not separate the account.

*b.* Special emphasis must be given to accounts of soldiers who transition prior to the ETS on the MMPA. The FO/

# Appendix B
# Validating Creditable Military Service

## B–1. Validating Creditable Military Service

When sufficient documentation is not readily available to substantiate the total creditable service time a soldier has accrued for pay purposes, a DA Form 1506 (Statement of Service for Computation of Length of Service for Pay Purposes) must be completed and submitted through command channels to the Human Resources Center, Alexandria, VA for verification.

## B–2. Instructions for Completing DA Form 1506, Statement of Service

Once the DA Form 1506 reaches the FO/DMPO, the FO/DMPO will enter the correct BASD and PEBD in Item 12, sign in Item 19a, and enter the date in Item 19b if the form is correct. If an error is found, the FO/DMPO will return the form to the servicing Personnel Office so the correct service annotation can be made in Item 12, and the form returned to the action FO/DMPO.

*a.* Item 1: Enter the name of the soldier who the computation is for.

*b.* Item 2: Enter the social security number (SSN) of the soldier who the computation is for.

*c.* Item 3: Enter complete mailing address of Unit Personnel Officer, if the member is on active duty, or of the Unit Commander if member is on active duty for training (ACDUTRA).

*d.* Item 4: Enter status and branch of the soldier who the computation is for.

(1) STATUS: Use IRR for Inactive Ready Reserve.

*(a)* RES for Reserve Duty.

*(b)* NG for National Guard Duty.

*(c)* AGR for Active Guard Reserve Duty.

*(d)* AD for Active Duty.

*(e)* INACTIVE if no service obligation.

(2) BRANCH: Use USA for U.S. Army.

*(a)* USN for U.S. Navy.

*(b)* USMC for U.S. Marine Corps.

*(c)* USAF for U.S. Air Force.

*(d)* USCG for U.S. Coast Guard.

*e.* Item 5: Enter a check mark in the corresponding box which represents Service member's grade category for each period of service.

*f.* Item 6: Enter the two digit year, two digit month, and two digit day which represents the service member's beginning date for each period of service.

*g.* Item 7: Enter the ending date for each period of service in the same format the beginning date was entered.

*h.* Item 8: Enter any Time Lost (if applicable).

*i.* Item 9: Enter the total number of years, months, and days for each period of service.

*j.* Item 10: No entry required.

*k.* Item 11a: Signature of the service member who the computation is for.

*l.* Item 11b: Enter the date the DA Form 1506 is signed by the soldier.

# THE ARMY LAWYER

Headquarters, Department of the Army

**Department of the Army Pamphlet 27-50-136**

**April 1984**

**Table of Contents**


| | |
|---|---|
| Taxation of Government Contractors | 1 |
| TJAG Letter - JAGC Reserve Support for Instruction in Legal Matters | 2 |
| Officer Eliminations - The Emphasis on Quality | 9 |
| *Mullen v. United States:* The Effect of Readjustment or Severance Pay on Eligibility for Subsequent Retirement Pay | 15 |
| Word Processing and a Systems Approach to Law Office Typing | 20 |
| Criminal Law Section | 25 |
| Legal Assistance Items | 41 |
| Reserve Affairs Items | 43 |
| Addendum | 44 |
| Enlisted Update | 44 |
| CLE News | 44 |
| Current Material of Interest | 49 |


## Taxation of Government Contractors

*Colonel Ronald P. Cundick*
*and Mr. Matt Reres, Jr.*
*Contract Law Division, OTJAG*

### Introduction

This is a two-part article which addresses tax issues confronting the Army. Part I deals with the Army and its contractors' amenability to federal and state taxation. Part II deals with state *ad valorem* taxes, with emphasis on ascertaining a contractor's interest in government-owned, contractor-operated (GOCO) and commercial activity operations. That part also treats other current tax issues of interest to the Army.

### I. Federal and State Taxation

Every tax dollar that the Army pays reduces the amount that it can spend for its needs. Tax dollars are also important to government contractors because fewer dollars spent by the government for taxes means more dollars available to be spent for goods and services. There have been recent developments in tax law which affect the Army, its activities, and its contractors. Attorneys can better advise their commanders if they know how the Army is affected by taxes, how taxes impact on their command's budget, and how their command might be able to save some tax dollars. Tax problems appear in many different forms with each tax problem

# Officer Eliminations—The Emphasis on Quality

*Major David W. Wagner*
*Instructor, Administrative and Civil Law Division, TJAGSA*

Over the past few years there have been dramatic changes in military personnel law in the Army. The thrust of these changes has been to emphasize quality in selection and retention of both enlisted[1] and officer personnel. Although most officers abide by the moral, professional, and ethical code of a commissioned officer of the United States Army, a small percentage fails to adhere to those standards.[2] The purpose of this article is to review the methods available to the commander to involuntarily separate the substandard officer. The command-initiated administrative separation action[3] will be emphasized and recent statutory and regulatory changes will be highlighted.

Army policy is that, "no person has an inherent right to continued service as an officer."[4] Faced with officer misconduct or poor performance, a commander is required to implement the Officer Qualitative Management Process by first documenting the officer's poor performance or misconduct to ensure that the Official Military Personnel File accurately portrays the officer's character of service. The commander must then decide if the officer should be allowed to continue to serve or be separated immediately. In taking action, the commander must ensure that all applicable statutory and regulatory requirements are identified and satisfied. As a result of the complex statutory system on which officer service is based, accurate and continuous advice from a judge advocate is essential for the commander to effectively discharge all responsibilities in this area. If the officer involved is not in the Regular Army component and the commander decides that administrative separation is appropriate,[5] the choice is between releasing the officer from active duty or initiating an elimination action.

## Refrad or Discharge?

An other than Regular Army officer may be involuntarily released from active duty (Refrad) by a Department of Army Active Duty Board for substandard performance, misconduct, or moral or professional dereliction.[6] The action may be initiated by Headquarters, Department of the Army or the officer's commander. The significance of releasing an officer from active duty is that the officer retains a reserve appointment after completion of the action. The advantage to the commander of using this action is that it can usually be accomplished quickly because the officer receives minimum due process protection.[7] Officers involuntarily released from active duty may be considered subsequent-

[1]*See generally* U.S. Dep't of Army, Reg. No. 635-200, Personnel Separations—Enlisted Personnel (1 Oct. 1982). This completely revised regulation substantially increases the power of the commander to separate enlisted service members.

[2]Message, HQDA WASH DC/DAPE-MPO-RT, 141758Z Jan 83 subject: Officer Qualitative Management Program [hereinafter cited as HQDA Message].

[3]*See generally* U.S. Dep't of Army, Reg. No. 635-100, Personnel Separations—Officer Personnel (C27, 1 Aug. 1982) [hereinafter cited as AR 635-100].

[4]*Id.* at para. 5-31.

[5]Although the Defense Officer Personnel Management Act (DOPMA) does not mandate an All-Regular Officer Corps, it is Congress' intent that all officers on active duty be integrated into the Regular Army component upon promotion to the grade of major. H.R. Rep. No. 1462, 96th Cong., 2d Sess. 24, 25 (1980). The Army has implemented an involuntary separation provision for the Reserve commissioned officer on active duty who declines integration into the Regular Army. AR 635-100, para. 3-111. Since this provision applies only to Reserve commissioned officers who entered active duty after 30 September 1981, there are still a number of Reserve officers in the grade of major and above on active duty. Of course, there are also many Reserve commissioned officers on active duty in the grade of captain and below.

[6]AR 635-100, para. 3-58.

[7]*Id.* at para. 3-59. Prior to forwarding a recommendation for relief to HQDA, the initiating commander must refer the action to the officer for comment. An officer facing involuntary release from active duty is not entitled to present his or her case in person to a board of officers. This officer receives only minimum due process protection because the action does not result in the loss of the officer's commission.

ly by the Commander, U.S. Army Reserve Personnel Center (ARPERCEN) for elimination action.[8] Because it is Army policy that the same standards of efficiency and conduct apply to officers of all components of the Army, the commander must face the key issue of whether to release the officer from active duty or terminate the officer's status through the chapter 5, AR 635-100 elimination process.[9]

### The Chapter 5 Elimination

Officers on active duty in all components may be eliminated involuntarily under the provisions of chapter 5, AR 635-100. This elimination action may be based on substandard performance of duty; misconduct, moral or professional dereliction; or in the interest of national security.[10] If the sole basis for separation is substandard performance of duty, the officer must receive an honorable discharge upon separation.[11] It is, however, no longer necessary to choose only one basis for separation. An amendment to the statutory provisions governing officer eliminations by the Defense Officer Personnel Management Act (DOPMA) allows the reasons for separation to be used simultaneously.[12] Misconduct, for instance, is broadly defined as conduct by the officer which tends to bring the Army or the individual into disrepute.[13] In view of this broad definition, it might be advisable to combine misconduct and substandard performance when the circumstances permit use of both reasons for separation.

The chapter 5 elimination procedure remains both complex and time consuming.[14] This elimination action may be initiated by the commander or HQDA.[15] Initiation of an action requires that the officer be advised of the specific reasons and the factual allegations on which the action is based.[16] A sample notification letter is included in the regulation.[17] The factual allegations must be supported by all available documentary evidence, such as official records, health records, and CID reports. With the exception of business entries and official records, all statements submitted must be sworn.[18] For example, unsworn counseling statements and memoranda for record may not be appended to the notification letter.[19] Upon notification, the officer receives seven days to consult with a judge advocate and provide written comment.[20]

The elimination action is processed through

[8] *See generally* U.S. Dep't of Army, Reg. No. 135-175, Army National Guard and Army Reserve—Separation of Officers (22 Feb. 1971). The procedures to separate the Reserve officer after involuntary release from active duty are as complex as those used to terminate an officer's status while on active duty.

[9] AR 635-100, para. 5-31.

[10] *Id.* at paras. 5-11, 5-12.

[11] *Id.* at para. 1-4*a*.

[12] 10 U.S.C. § 1181 (Supp. V 1981); AR 635-100, para. 5-14*f*(1).

[13] AR 635-100, para. 1-3*o*.

[14] A chart depicting the chapter 5 elimination process is at Appendix A.

[15] *Id.* at para. 5-14*a*. DOPMA contains a provision that requires all promotion selection boards to report to the service secretary the name of all officers before them for consideration whose records indicate they should be eliminated from the service. 10 U.S.C. § 617(b) (Supp. V. 1981). The Army has expanded this requirement and directed that all HQDA boards, such as school and command selection boards, identify officers who should be involuntarily separated. U.S. Dep't of Army, Reg. No. 624-100, Promotion of Officers on Active Duty, para. 2-7*c* (1 May 1982); HQDA Message, *supra* note 2. These initiatives have resulted in an increase in the number of officers facing elimination under AR 635-100, chapter 5. Likewise, over the last two years, more actions have been initiated by commanders. Statistics for chapter 5 eliminations are: calendar year 1981: 69; 1982: 108; 1983: 200. Interview, Major David Z. Freeman, Personnel Management Branch/Officers, U.S. Army Military Personnel Center, Alexandria, Virginia.

[16] AR 635-100, para. 5-14*b*(1).

[17] *Id.* at page 5-25, figure 5-1. Of course, this sample letter should be tailored to the facts of each individual case.

[18] AR 635-100, para. 5-14*e*.

[19] If the officer facing elimination acknowledges, in writing, receipt of a counseling statement, this unsworn counseling statement may be appended to the notification letter. Interview, Major David Z. Freeman, Personnel Management Branch/Officers, U.S. Army Military Personnel Center, Alexandria, Virginia.

[20] AR 635-100, para. 5-14*b*(2).

the chain of command to the commander exercising general court-martial jurisdiction.[21] Upon receipt of the action, the general court-martial convening authority (GCMCA) may disapprove the case or approve the action and offer the officer the following options:

(a) Resignation in lieu of elimination.[22] If the officer submits this resignation, he or she may receive a discharge under other than honorable conditions and will be barred from later reappointment.[23] The officer is also not entitled to separation pay if the resignation is submitted at this stage of the proceeding;[24] or,

(b) Apply for voluntary retirement in lieu of elimination. In order to qualify for voluntary retirement the officer must have twenty years of qualifying service. The regulation permits an officer facing elimination to submit a retirement request when he or she is within six months of eligibility for retirement.[25]

If the officer fails to elect one of the options offered by the GCMCA, the case is forwarded to HQDA to be processed through the three-tiered board system. The action is first sent to the DA Selection Board which may close the case or direct the officer to show cause why he or she should be retained.[26] After the officer is directed to show cause, the case is sent to the major commander for the appointment of a field board of inquiry.[27] Prior to convening a board of inquiry, the officer is again offered the opportunity to resign in lieu of elimination, request discharge, or submit a retirement request.[28] If the officer resigns or requests discharge in lieu of elimination at this stage of the proceeding, he or she is entitled to separation pay up to $15,000, depending on the total years of service.[29]

The officer facing elimination is entitled to extensive due process protection at the field board of inquiry.[30] A board recommendation of retention terminates the action. If the board recommends separation, the case is sent to the DA Board of Review, the third board in this system. The DA Board of Review may recommend retention or send the case to the Secretary

[21]*Id.* at para. 5-14*b*. Any commander in the officer's chain of command may determine that elimination is not appropriate and close the case. Action must be initiated and forwarded to the GCMCA for officers who are medically diagnosed as drug dependent or as having committed an act of personal misconduct involving drugs. Actions initiated by HQDA may not be closed by a commander.

[22]A resignation in lieu of elimination will be processed under U.S. Dep't of Army, Reg. No. 635-120, Personnel Separations—Officer Regulations and Discharges (C16, 1 Aug. 1982) [hereinafter cited as AR 635-120].

[23]*Id.* at para. 4-3*a*. However, the resignation in lieu of elimination need not be approved.

[24]*Id.* at para. 1-6*b*(3). *See generally* Dep't of Defense Dir. No. 1332.29, Eligibility of Certain Regular and Reserve Personnel for Separation Pay Upon Involuntary Discharge or Release from Active Duty (18 Sep. 1981).

[25]AR 635-100, para. 5-19*b*, *c*. To be eligible for voluntary retirement, the officer must meet the requirements of 10 U.S.C. § 3911 (Supp. V 1981). An officer facing involuntary elimination is not protected by the two-year sanctuary applicable to officers twice nonselected for promotion. 10 U.S.C. §§ 631, 632 (Supp. V 1981); AR 635-100, para. 3-111*d*.

[26]AR 635-100, para. 5-14*g*. The officer is not entitled to appear personally before the DA Selection Board.

[27]*Id.* at para. 5-18. A request for discharge will be processed under AR 635-120, chapter 10. A Regular component officer facing elimination under AR 635-100, chapter 5, will normally request discharge to insure his or her entitlement to separation pay under 10 U.S.C. § 1174 (Supp. V 1981).

[28]AR 635-100, para. 5-18*b*. However, the resignation or request for discharge need not be approved.

[29]AR 635-120, para. 1-6*b*(6). An officer who is discharged under other than honorable conditions is not qualified to receive separation pay. To be entitled to separation pay, the officer must have completed at least five continuous years of active service. 10 U.S.C. § 1174 (Supp. V 1981), *amended by* the Department of Defense Authorization Act (1984), Pub. L. No. 98-94, 97 Stat. 614 (1983).

[30]AR 635-100, para. 5-20. The officer is entitled to counsel for representation, 30 days preparation time, personal appearance, full access to all records relevant to his case, the opportunity to present evidence and cross-examine Government witnesses, and a copy of the verbatim record of proceedings of the board of inquiry. The board of inquiry will consist of not less than three officers in the grade of colonel or above and senior in grade and rank to the officer being considered for elimination. *Id.* at para. 5-35*a*. A minority, female, or special branch officer may request that an officer of the same category be appointed to the board. *Id.* at para. 5-35*e*.

of the Army for final action.[31] If the DA Board of Review recommends retention, the case is closed.

Recently, Army field commanders have expressed concern about the administrative burden involved and extensive time required in processing an officer elimination action.[32] Although this concern is clearly justified, these complex procedures are required by law[33] and Department of Defense guidance.[34] In the past, commanders have normally avoided using this system by initiating court-martial charges in appropriate cases.[35] The officer facing criminal action may be inclined to resign for the good of the service to avoid the stigma of a federal conviction and the potential of confinement.[36] Although commanders do not like the administrative elimination process, administrative elimination actions have increased because HQDA is routinely initiating actions on the basis of record reviews and recommendations of promotion and other selection boards that officers be considered for administrative elimination.

### Probationary Officers

The statutory and regulatory rules applicable to probationary officers provide additional reasons authorizing elimination and expedited procedures for processing the action.[37] Probationary officers are Regular Army commissioned officers with less than five years commissioned service[38] and Reserve Component officers with less than three years commissioned service.[39] Additional reasons authorizing separation include failing a service school course of instruction and discovery of a condition which indicates that the officer's retention is not in the best interests of the Army.[40] Elimination procedures are streamlined for the probationary officer by permitting separation without board consideration if the commander recommends the officer be separated with an honorable discharge.[41] If the commander does not recommend an honorable discharge, the action is submitted to the DA Selection Board.[42] Likewise, if during the processing of the action the officer's commissioned service exceeds the designated probationary period, the case will be submitted to the three boards in the chapter 5 elimination process.[43] A probationary officer facing elimina-

---

[31] *Id.* at para. 5-22. The officer is not entitled to appear personally before the DA Board of Review but may submit a written statement for consideration by the major commander and the board of review. *Id.* at para. 5-22*b*(2)(b).

[32] HQDA Message, *supra* note 2.

[33] 10 U.S.C. §§ 1181-1187 (Supp. V 1981). The Department of Defense recently forwarded to the Office of Management and Budget a legislative proposal which would give the service secretaries authority to eliminate the first board in the involuntary elimination action.

[34] Dep't of Defense Dir. No. 1332.30, Separation of Regular Commissioned Officers for Cause (15 Oct. 1981).

[35] Commanders have discretion to initiate disciplinary action under the Uniform Code of Military Justice *or* an elimination action under AR 635-100. An elimination action may be initiated on the basis of conduct which was the basis of judicial or nonjudicial punishment after charges are dismissed or appellate review is completed. AR 635-100, para. 5-14*f*.

[36] A resignation for the good of the service will be processed under AR 635-120, chapter 5. An officer who resigns for the good of the service normally receives a discharge under other than honorable conditions. AR 635-120, para. 5-7. Since a resignation for the good of the service is considered a voluntary separation action, the officer is not entitled to separation pay. AR 635-120, paras. 1-6*a*(3)(a), 5-5.

[37] 10 U.S.C. § 640 (Supp. V 1981) (Regular Army); AR 635-100, section IX (officers in all components).

[38] AR 635-100, para. 5-28*a*. Regular Army commissioned officers who were on active duty on 14 September 1981 have a three year probationary period.

[39] *Id.* at para. 5-28*b*.

[40] *Id.* at para. 5-29. A Reserve component officer who fails to meet branch school standards due to misconduct, moral or professional dereliction, or academic or leadership deficiencies may be released from active duty *or* discharged. *Id.* at chapter 3, section II. This is commonly referred to as the faculty board elimination and is one of the few actions where the officer exercising general court-martial jurisdiction has been delegated separation authority.

[41] *Id.* at para. 5-30*a*. The officer has the right to consult with counsel and submit a written statement prior to action by HQDA on the elimination recommendation.

[42] *Id.* at para. 5-30*b*(3). If the DA Selection Board determines that the officer should be separated under other than honorable conditions, the case is processed through a field board of inquiry and board of review. *See supra* text accompanying notes 19-30 for a discussion of this procedure.

[43] *Id.* at para. 5-30*a*.

United States Government Accountability Office

GAO

Report to Congressional Committees

March 2006

# MILITARY DISABILITY SYSTEM

# Improved Oversight Needed to Ensure Consistent and Timely Outcomes for Reserve and Active Duty Service Members

The Web version of this report was reposted on April 7, 2006, to reflect a change to the text on page 15, in line 13 of the last paragraph, the “2 years” is revised to read “1 year.”

It was also reposted on April 6, 2007, with additional language clarifying the nature and scope of the data reported in appendix V.

GAO

Accountability * Integrity * Reliability

GAO-06-362

## DOD Has Instituted Timeliness Goals for Processing Service Members' Cases, but Does Not Oversee Compliance with Them

DOD regulations set forth timeliness goals for the two major processes of the disability system. According to DOD, the first stage of the process—the MEB—should normally be completed in 30 days or less. The second stage of the process—the PEB—should normally take 40 days or less. Despite establishing these timeliness goals for the services, DOD is not ensuring compliance with them. DOD does not regularly collect available timeliness data from the services, a necessary first step for determining compliance.

The services generally are using their databases to track the timeliness of decisions, but military officials cited confusion regarding the start date for the process. Both the Army and Navy are tracking processing times for both the MEB and PEB using their databases. The Air Force lacks a centralized database to track its MEB cases and therefore can only track PEB timeliness. However, we found that the usefulness of these timeliness data may be undermined by confusion among military officials and data entry staff regarding the starting dates for the disability process. We compared original Army PEB case files to Army electronic data from both its MEB and PEB databases, and found that the date a physician dictates a narrative summary, the beginning of the disability process and a critical data point for timeliness calculations, was frequently entered incorrectly into the Army's databases. When we asked about these errors, Army officials said that increased training of data entry staff would help with these problems. Navy officials also said that there was some confusion about how to record starting dates for cases when additional medical information was needed to make a disability decision for a service member.

Data reported by the services on the timeliness of cases generally show that the services are not meeting DOD timeliness goals (see appendix II). Military officials said that these results stemmed in part from the unrealistic nature of the goals themselves. Navy officials told us that they do not consider the 30-day goal as a performance standard for MEB processing to be held accountable for. They said that the 30-day goal is also unrealistic, especially in certain cases when there were addendums to the narrative summary. Army officials also said that it was unrealistic for all MEB cases to be processed in 30 days because certain cases take longer. For example, cases when a line of duty determination is needed or when certain medical tests are required to diagnose some orthopedic or psychiatric conditions.

# Appendix II: Selected Data from Service Branches on Processing Time, Dispositions, and Medical Holdover

**Table 6: Army Processing Times for Disability Cases, Including both MEB and PEB Processing, Fiscal Year 2001 to 2005**

| | | Percentage of cases processed in: | | | | |
|---|---|---|---|---|---|---|
| | Total Number of Cases | ≤30 days | 31-60 days | 61-90 days | 91-120 days | >120 days |
| **FY2001** | | | | | | |
| Active duty | 6,627 | 1.6 | 13.6 | 41.3 | 20.1 | 23.4 |
| Reserve component | 591 | 4.1 | 14.5 | 24.2 | 15.9 | 41.3 |
| **FY2002** | | | | | | |
| Active duty | 6,510 | 1.7 | 10.9 | 36.6 | 22.6 | 28.2 |
| Reserve component | 812 | 3.6 | 10.5 | 24.9 | 20.2 | 40.9 |
| **FY2003** | | | | | | |
| Active duty | 6,659 | 7.4 | 31.9 | 28.9 | 14.7 | 17.1 |
| Reserve component | 1,546 | 6.5 | 25.5 | 23.9 | 17.7 | 26.3 |
| **FY2004** | | | | | | |
| Active duty | 7,694 | 5.5 | 35.9 | 27.9 | 13.9 | 16.8 |
| Reserve component | 4,187 | 2.0 | 18.7 | 22.3 | 19.6 | 37.2 |
| **FY2005** | | | | | | |
| Active duty | 9,322 | 16.0 | 37.1 | 21.3 | 12.3 | 13.2 |
| Reserve component | 4,426 | 5.5 | 21.8 | 20.3 | 16.3 | 36.0 |

Source: Department of the Army.

Note: Percentages may not total 100 due to rounding.