IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PAUL E. DOLAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | No. 07-166C |
| | ) | (C.O.C.Miller) |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant, | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO THE MOTION FOR RECONSIDERATION**

Plaintiff addresses the merits of defendant's response first, then the procedural objections at the end of this reply. Def. Resp. 4-8 (Wagner v. United States, 365 F.3d 1358 (Fed.Cir. 2004)).

Defendant concedes that under Wagner harmless error review might be inapplicable to the Secretary's final disposition. It then admits a fatal flaw when arguing that this is "premature" until it is known whether Dolan "was unfit *at the time* of his discharge." Id 6 [italics added]. This case is not about freezing the status of Dolan's physical fitness and military records as of March 14, 2001. Rather, Dolan was improperly not "retained past his separation date for medical reasons." A.Reg. 600-8-24 ¶ 1-22*b*. Consequently it will remain unknown as to how long he would have been retained. More importantly, it will remain unknown as to the impact or magnitude that his ongoing "medical care" would have after discharge on the many other unresolved medical conditions, therapy, and treatment. Id ¶ 1-22*d.*(1) ("retention advantages"). This is because when a soldier has not yet obtained "optimal hospital improvements" from ongoing treatment, the Army cannot terminate pending disability proceedings. The irreparable nature of the failure to process Dolan through the MEB/PEB while on active duty, thus equates to a "board defect" under Wagner making harmless error review inapplicable.

With respect to defendant's "premature" argument, their responsive brief keeps reaffirming that the disability evaluation is on remand will be whether Dolan was unfit

> *at the time* of his elimination. . . . [h]armless error could be readily applied to a situation in which the discharged individual was determined to have been physically fit *at the time* of his discharge.

Id 5 [italics added]. Defendant then excludes as it must, anything post-discharge as beyond Dolan's condition as of March 14, 2001. Defendant argues VA disability ratings are not binding on the BCMR— even if issued the day after Army discharge, because they do not equate to a finding that he was unfit "at the time of separation." Id 6, n. 3.

This factual flaw has nothing to do with the presumption of regularity applied to disability evaluations. But by statute and regulation, the jurisdiction of the MEB/PEB system that assesses soldiers' medical disqualifications and fitness limitations, terminates upon discharge. Pl.Appx 106A, A.Reg. 40-400 ¶ 7-24*a* (MEB considers military history, estimated termination of service, past and present history of illness), Id ¶ *7-24d* (MEB then considers "present condition and current functional status"); Pl.Appx 47A , A.Reg. 635-40 ¶ 3-4 (eligibility for disability evaluation only after "line of duty" decision that injury or aggravation was while performing active duty); 10 U.S.C. § 1201 (determinations must be that a member is unfit because of physical disability incurred "while entitled to basic pay").

The underlying purpose of the dual processing rule is to suspend the elimination action to wait until the disability process is completed and the soldier has attained "optimal hospital improvement" or maximum benefits. Pl.Appx 48, A. Reg. 635-40 ¶ 3-7 (retaining soldiers until maximum hospital benefits); 52 ¶ 4-16 (soldier hospitalized while undergoing disability processing or awaiting final disposition must be evaluated if the condition may change the finding; further adjudicative and review action may be suspended pending resolution; only when soldier has obtained optimal hospital improvements commander will prepare addendum); Id 50, ¶ 4-11 (MEB must address responses to

therapy). The defendant is in effect asking the Court to terminate MEB/PEB jurisdiction on March 14, 2001, while the MEB had requested medical retention.

It is clear that the failure to retain Dolan past his discharge ended the various ongoing medical evaluations, therapies, and treatments. The outcome of continuing that care on those conditions is impossible to now determine– e.g., whether continued care would improve or have negligible effect, or loss of care would aggravate conditions. These involved unresolved medical conditions with both shoulders, knees, disk disease, depression and chronic stress syndrome. Moreover, remand raises a quandary because if Dolan was retained beyond March 2001— presumptively for at least 120 days— all the post-discharge evidence (including VA application for ongoing symptoms), would have been considered in due course overlapping the time to final Army disability decision.

By March 14, 2001, the MEB had only made a preliminary recommendation that, based upon Dolan's left shoulder condition, he was unfit for retention "at this point in time." Pl.Ex. C 20. It did not say his conditions were stable or permanent. The MEB did find it significant to diagnose the other medical conditions of an arthritic right shoulder and knee pain, but not whether they met retention standards at that time. Based upon the Army's orthopedic surgeon (also a MEB member) Dolan was still undergoing physical therapy for both shoulders, with remedial knee surgery pending. The Physical Profile was never completed by the commander as to whether this affected "current duty performance." Pl.Ex. C 22; Pl.Appx 74 (A.Reg. 635-40 ¶ C-6b, MEB should include statements from soldier's commander describing current duty perfomance). The post-discharge MEB Addendum diagnosed degenerative disc disease with recommendations to attempt pain reduction. But the Physical Profile was not updated, no comment form the commander, and no comment on Dolan's need for a back brace to offset chronic back pain. Finally, the post-discharge mental health diagnosis is due to "ongoing traumatic events." It stated that Dolan required continued medication and close treatment and monitoring.

The MEB tentatively addressed fitness issues "at this point in time" while seeking a medical hold for further evaluation. The MEB knew that Dolan's ongoing therapy for both shoulders was related to the knee problems, with final results affecting disability processing. But with therapy terminated, the BCMR cannot speculate whether continuing therapy would had improved the conditions to permit knee replacement. On these and the degenerative disc disease, the BCMR can no longer obtain a commander's performance statement on any conditions, nor recreate a Physical Profile. Finally, there is no way for the BCMR to determine how the depression and stress syndrome would be affected if Dolan had been fairly dual-processed to adequately address these— instead he received rude if not abusive treatment, then a stigmatizing discharge. Perhaps fair treatment would have lessened his depression. Perhaps with this diagnosis available before discharge, the Secretary would have mitigated the outcome to something less severe. Perhaps the possibility of a interruption in medical treatment for shoulders, knees and mental health conditions, would have changed the Secretary's outcome. As in Wagner, there are ample reasons why the Secretary back in 2001 would taken a different route based upon waiting for optimal hospital benefits.

Finally, the BCMR cannot fairly and equitably substitute for the formal adversarial MEB/PEB process that Dolan was entitled to in 2001. A.Reg. 600-8-24 ¶ 1-23*b* (when officer has medical impairment not meeting retention standards, "the officer will be processed through the MEB/PEB system [emphasis added]"). This is a medical hold case, not conversion of his original discharge. In fact, assuming arguendo this case is remanded, and regardless of outcome, Dolan is still entitled to back pay for any period his case his processed through the MEB/PEB or BCMR. This raises the anomalous situation where defendant contends that fitness is judged at the time of original discharge, but back pay extends to the remand period.

The BCMR cannot truncate the MEB/PEB process that every soldier is offered upon medical hold. The BCMR procedure allows for a one-time paper appeal, and perhaps a response to an adverse

advisory opinion. The MEB/PEB is a plenary hearing, and Dolan– as any soldier on active duty with basic pay— is entitled to reimbursement for travel expenses, an Army legal counsel (PEBLO), to call his own military or civilian expert witnesses, to appeal, etc. Absent this, Dolan cannot have fair an impartial disability hearing. 10 U.S.C. § 1214. But for the reasons argued by defendant, the MEB/PEB will ignore anything beyond March 14, 2001.

Defendant's argues the procedural issue that Dolan has not met the standard for reconsideration. This is faulty for two reasons. First, the court's remand order is barren of any reasons or findings to accurately apply the standard of review, let alone if it overlooked key facts or the legal issue of futility. But the need for reconsideration was nonetheless affirmed in defendant's own response. Defendant acknowledges that Wagner might be a bar to harmless error review so as to preclude the Secretary from awarding disability benefits. Having admitted that, the remand order's request is manifest error by asking the BCMR to reconsider Dolan's claim for disability benefits. According to defendant, the narrow issue is solely Dolan's fitness for duty. Again, the need for reconsideration is affirmed by defendant because the MEB/PEB by regulation will limit the fitness question up to March 14, 2001. By doing so, defendant begs the Wagner question how to apply harmless error review if Dolan had been properly retained. Defendant and the Court offer no answer. Speculation in hindsight is impossible on the optimal impact of treatment on the other diagnosed medical impairments, because care was discontinued.

Defendant also offers an unsupportable argument that the Court's must remand to the BCMR simply because the Board has agreed to reconsider it. That is not enough when Dolan had final agency action denying relief, and remand for harmless error inapplicable. There is no "new evidence" or "changed circumstances" to disturb the agency finality, nor even permit reconsideration of the 2004 BCMR decision. Interstate Commerce Com'n v. Brotherhood Locoomtive Engineers, 482 U.S. 270,

278-79 (1987); see 32 C.F.R. § 581.3g(4)(BCMR procedures allowing reconsideration). Defendant has made no stipulation as to any material error of law or fact the Board believes would change the outcome. Neither the Court or any plaintiff has an obligation under such a cryptic, vacuous offer.

Finally, defendant questions why Dolan filed his *pro se* BCMR application in 2003 if he now argues the BCMR remand is inappropriate because it cannot grant relief. Wagner was decided in 2004 and later in Wisotsky v. United States, 69 Fed.Cl. 299 (2006).

In the alternative. Defendant also misstates the law that the courts cannot determine if service-members are physically unfit. Dolan may directly seek judicial review of the MEB and failure to as the "first competent board" to pass on his disability when the Army refused his request to continue the proceeding. Wielkoszewski v. Harvey 398 F.Supp.2d 102, 107 (D.D.C.2005) (refusal to convene MEB equivalent to denial of PEB). Courts may also consider whether soldiers are unfit despite a BCMR finding of fitness. Fisher v. United States 403 F.3d 1167 (Fed.Cir. 2005). However, based upon Dolan's arguments above, this issue is moot. Moreover to demonstrate futility in reexamining fitness in 2001, Dolan need only show there is "opposing evidence so substantial in character" — a contemporaneous 100% disability from both the VA and SSA for service-connected disabilities with same medical condition, and prior similar ABCMR decisions. Ward v. United States 178 Ct.Cl. 210, (1967)("the fact there is considerable evidence the member was qualified for duty, is insufficient when there is opposing and [contemporaneous VA] evidence so substantial in character as to detract from its weight and render it less than substantial," citing Powers v. United States 176 Ct.Cl. 388, *7 (1966)).

WHEREFORE, Dolan respectfully requests that the Court reconsider its remand order of September 4, 2007.

September 27, 2007

Respectfully submitted,

a/s John A. Wickham
Counsel for Plaintiff-Dolan
32975 Saint Moritz Drive
Evergreen CO 80439
303 670-3825