**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

SFMR-RBR

December 17, 2007

MEMORANDUM FOR US ARMY REVIEW BOARDS AGENCY SUPPORT DIVISION, ST. LOUIS (SFMR-RBR-SL), 9700 PAGE AVENUE, ST. LOUIS, MO 63132-5200

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Dolan, Paul E., SSN 040521419, AR20070012332

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Encl

Catherine C. Mitrano
Director, Army Board for Correction
of Military Records

CF:
(✓) OMPF
( )

**DEPARTMENT OF THE ARMY**
**BOARD FOR CORRECTION OF MILITARY RECORDS**
**1901 SOUTH BELL STREET, 2ND FLOOR**
**ARLINGTON, VA 22202-4508**

## RECORD OF PROCEEDINGS

IN THE CASE OF: DOLAN, PAUL E.

BOARD DATE: 11 December 2007
DOCKET NUMBER: AR20070012332

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Ms. Catherine C. Mitrano | Director |
| Mrs. Nancy L. Amos | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. William D. Powers | Chairperson |
| Mr. Michael J. Flynn | Member |
| Ms. Sherry J. Stone | Member |

The Board considered the following evidence:

Exhibit A - Application for correction of military records.

Exhibit B - Military Personnel Records (including advisory opinion, if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests, through a court remand, reconsideration of his request to be reinstated on active duty with any entitlements due to him.

2. The U. S. Court of Federal Claims remanded the applicant's case to the Army Board for Correction of Military Records (ABCMR) to allow the Board to address his claims for disability benefits in lieu of termination or for any other relief.

COUNSEL'S REQUEST, STATEMENT AND EVIDENCE:

1. Counsel requests, in an amended complaint filed with the United States Court of Federal Claims on 29 May 2007, that the applicant's involuntary separation from active duty be set aside and he be retroactively restored to active duty with back pay and allowances until qualifying for a 20-year retirement, and that he be awarded back retired pay. He also requests that all adverse documents relating to his involuntary separation and all related documents be expunged from his Official Military Personnel File.

2. Counsel states that the applicant had surgery in 1994 for a perirectal abscess, later determined to have been a secondary condition symptomatic of degenerative disc disease at the L4-5 region. His condition was aggravated by the wearing of a rucksack and lifting greater than 25 pounds. However, it was not until 13 March 2001 that he was issued a permanent P-3 physical profile restricting these activities. Army Regulation 635-40 states that a permanent P-3 physical profile warrants referral to a medical evaluation board (MEB) for a military fitness determination. Also, beginning in the mid-1990s, the applicant was diagnosed with gastroesophageal reflux disease.

3. Counsel states that, in August 1998, the applicant was ordered to report to a new assignment in Hawaii. He requested 30 days leave and was informed the leave was granted. Unknown to the applicant, his leave request was later "whited-out" by the unit clerk to show he had only requested 5 days. A dispute arose as to whether the applicant was notified that his leave was cut short and to report early to his new duty station. In February 1999, the applicant's commander made a preliminary, administrative inquiry into whether the applicant committed the offenses of absence without leave (AWOL) and disobeying an order. After the informal investigation, the commander recommended imposing non-judicial punishment under Article 15, Uniform Code of Military Justice (UCMJ).

4. Counsel states that, in March 1999, the general court-martial convening authority, Major General (MG) H____, agreed with the administrative disposition

of the offenses and did not initiate court-martial charges. At the Article 15 proceedings, MG H___ found the applicant had committed the offenses. The applicant was issued a letter of reprimand and forfeitures of pay for two months (suspended for six months) were imposed. The applicant appealed the punishment, but his appeal was denied.

5. Counsel states that in the Fall of 1999 the applicant was treated for chronic and severe gastroesophageal reflux disease. To avoid the potential for stomach cancer by stabilizing symptoms, stomach surgery was recommended. On 22 September 1999, MG H___ initiated an elimination proceeding before a Board of Inquiry (BOI). The action was based upon the Article 15 punishment and a third alleged offense. The BOI was delayed pending the applicant's multiple medical treatments: (1) surgery to repair a labral tear in his left shoulder; (2) treatment for bilateral patellofemoral compression syndrome (a stress injury to both knees, making walking difficult); (3) acromioclavicular arthritis causing mild pain in the right shoulder; and (4) stomach surgery for reflux disease. Later, in March 2001, he was diagnosed with the aforementioned degenerative disc disease L4-5. Shortly after his 14 March 2001 discharge, the Department of Veterans Affairs (DVA) awarded him a 70 percent disability rating for those injuries, increased to 100 percent in May 2004.

6. Counsel states that Army Regulation 635-40, paragraph 4-4, states officers who are believed to be medically unfit will be processed simultaneously for elimination and physical disability evaluation. Commanders will ensure that the actions are processed together, identified, and cross-referenced. Once complete, both the elimination and the disability actions will be forwarded directly to the Secretary of the Army, who will decide the proper disposition of the case.

7. Counsel states that the BOI, in August 2000, concluded that the applicant had committed the Article 15 offenses, but found him not guilty of the third alleged offense. The recorder had also presented several adverse "referred Officer Evaluation Reports" filed by the command shortly before the BOI. Those Officer Evaluation Reports (OERs) were improperly relied upon by the BOI as official duty reports because they were never referred to the applicant for his comment and rebuttal. The BOI recommended (the applicant receive) a General Discharge.

8. Counsel states that the applicant's defense counsel submitted a request for the Army to retain the applicant until he reached 20 years of service to retire, alleging that the applicant had over 17 years of active duty. Regulation permits an officer at any time prior to final elimination action to request retirement in lieu of elimination. If approved, a post-retirement board decides whether to reduce the retired grade based upon the BOI-approved findings of misconduct.

Unknown to defense counsel and the applicant was that the statutory Temporary Early Retirement Authority (TERA) allowed officers with over 15 years of service but less than 20 to retire early. The TERA also allowed Soldiers found unfit with less than a 30 percent disability rating to retire instead of being forced to take severance pay. Also unknown was that the applicant could have applied for continuation on active duty (COAD) until he reached his 20th year.

9. Counsel states that, on 18 January 2001, a Board of Review affirmed the BOI's findings and also recommended a General Discharge. There was no mention in the approval of the request for retirement in lieu of elimination, nor of the disability evaluation process, nor of the TERA and COAD programs.

10. Counsel states that, in February 2001, the BOI's and Board of Review's recommendations were approved by the Acting Secretary of the Army. There was no mention in the approval of the request for retirement in lieu of elimination, nor of the disability evaluation process, nor of the TERA and COAD programs. Moreover, the applicant's actual active duty time was closer to 19 years.

11. Counsel states that, at the same time elimination processing began, the applicant underwent a mandatory separation medical examination. The examination uncovered many problems, including the need for two remedial surgeries on his shoulders. The surgeries occurred in late 2000, but full recovery relied on physical therapy for 6 months, through May 2001. This postponed remedial surgery on another diagnosed chronic condition – knee replacement. By early March 2001, the surgeon found the surgeries were unsuccessful, leaving the applicant with disabilities and duty restrictions.

12. Counsel states that, because the Army was ignoring the applicant's disability proceedings, on 8 March 2001 the Chief of Patient Administration, Tripler Army Medical Center convened an MEB as directed by the treating orthopedic surgeon. The uncompleted MEB documented the applicant's shoulder and knee disabilities with a preliminary, unapproved conclusion that the applicant failed to meet retention standards and was unfit for retention. The listed impairments were (1) left shoulder stiffness, post-operative repair of labral tear; (2) bilateral patellofemoral compression syndrome; and (3) mild right acromioclavicular arthritis. The Chief of Patient Administration submitted a request to extend the applicant's proposed 14 March 2001 discharge date. The request was mandatory under regulatory provisions. This request was never forwarded for final action. An official in the Office of The Surgeon General recommended denial of the request due to a misinterpretation of the regulation.

13. Counsel states that the applicant's cut-short MEB was never finalized – it lacked any evaluation of the applicant's multiple other medical disabilities. The

DVA subsequently rated the applicant 100 percent totally disabled retroactive (highlighted in italics in the original) to his Army discharge date. This was for all the service-connected medical problems left unresolved and pending by the MEB when the Army pulled its plug.

14. Counsel states that the Army in March 2001 was required to retain the applicant because: (1) he had entered the disability evaluation process, and (2) he was not under investigation. The Army could not bypass its own "dual processing" rules to unilaterally discontinue a disability evaluation it had already decided was required.

15. Counsel states that, without Secretarial "determination of appropriate disposition" on the applicant's pending disability proceeding, his prior discharge orders effective 14 March 2001 were void as a matter of law. He was never legally separated from active duty.

16. In a Plaintiff's Motion for Reconsideration, dated 13 September 2007, counsel noted that the Court's remand order asked the ABCMR to address a claim never sought by the applicant – disability benefits in lieu of termination. He noted that effective the day after his Army discharge, the DVA found the applicant 100 percent disabled for service-connected injuries. In 2003, the DVA's ratings were increased, to total 120 percent. He noted that, since discharge, the applicant has been permanently and totally disabled and continuously unemployable. He noted that the applicant never asked the ABCMR or the Court for disability benefits, nor to complete a post hoc disability evaluation. He asked to be retained on active duty because medical hold regulations were ignored.

CONSIDERATION OF EVIDENCE:

1. The applicant was born on 12 December 1954. After having had prior enlisted service, he was commissioned as a U. S. Army Reserve (USAR) second lieutenant on 19 May 1981. He accepted an appointment in the Army National Guard on 18 July 1981. He transferred back to the USAR on 4 January 1983. On 28 February 1988, he was ordered to active duty in the Active Guard Reserve (AGR) program. On 15 August 1996, he was promoted to Major, O-4, Military Police branch.

2. Orders dated 27 August 1998 reassigned the applicant to Headquarters, 9th Regional Support Command (RSC), Honolulu, HI with a report date of 5 October 1998.

3. Records show the applicant was absent without authorization from the 9th RSC from 6 to 31 October 1998.

4. On 1 December 1998, the applicant was sent (to his 9th RSC address) a referred change of rater OER for the period 1 December 1996 through 22 June 1997 (completed by the rating officials in November 1998). The OER was referred, in part, because Part IVa3 indicated he failed the Army Physical Fitness Test; Part Vb indicated he often failed performance requirements, with derogatory comments; Part Vd indicated he had no potential for promotion, with derogatory comments; and Part VII indicated his senior rater rated his potential as below center of mass, with derogatory comments. By endorsement dated 25 February 1999, the senior rater indicated the applicant failed to complete his acknowledgment of the referred OER.

5. Also on 1 December 1998, the applicant was sent (to his 9th RSC address) a referred change of rater OER for the period 23 June through 30 September 1997 (completed by the rating officials in November 1998). The OER was referred, in part, because Part IVb contained derogatory comments on his professional ethics; Part Vd indicated he should be promoted with his contemporaries but contained derogatory comments; and Part VII indicated his senior rater rated his potential as below center of mass, with derogatory comments. By endorsement dated 25 February 1999, the senior rater indicated the applicant failed to complete his acknowledgment of the referred OER.

6. The 30 September 1997 OER is the last OER on file in the applicant's records.

7. On 17 March 1999, the applicant accepted non-judicial punishment under Article 15, UCMJ for, on or about 6 October 1998, absenting himself without authority from his unit until on or about 1 November 1998; for, on or about 28 October 1998, willfully disobeying a lawful command from his superior commissioned officer to report to the 9th RSC immediately; and for, on or about 23 November 1998, wrongfully and unlawfully making a false statement. MG H___ found the applicant guilty of these offenses and imposed a punishment of a forfeiture of $2,283.00 pay per month for two months, suspended for six months; and a written reprimand.

8. The applicant submitted a lengthy appeal of the Article 15; however, Lieutenant General S___, Commanding General, U. S. Army Pacific Command, denied his appeal.

9. The applicant's notification of eligibility for retired pay at age 60 (his 20-year letter) is dated 1 July 1999.

10. By memorandum dated 20 September 1999, the applicant was notified of initiation of elimination proceedings under the provisions of Army Regulation 600-8-24, chapter 4, by reason of unacceptable conduct, conduct unbecoming an officer.

11. A memorandum for record, dated 28 February 2000, from the Staff General Surgeon at Tripler Army Medical Center noted that the applicant was undergoing medical evaluation for severe gastroesophageal reflux disease. During an extensive work-up he was found to suffer from an extremely complicated set of physiologic abnormalities. He was given an appropriate course of medical therapy and was found to be not responsive to treatment. Complex surgery was prescribed.

12. The Record of Proceedings in the ABCMR's original consideration of the applicant's case, in ABCMR Docket Number AR2003084896, dated 24 February 2004, indicated that the applicant's chain of command recommended approval of his resignation (sic) in lieu of elimination with the issuance of a general discharge under honorable conditions. In fact, there was no resignation in lieu of elimination and the applicant's chain of command recommendation related to the elimination action.

13. Only the first two pages (consisting of introductory data) of the transcripts from the BOI, which met on 20 April 2000, are available.

14. The applicant apparently underwent left shoulder surgery in the Fall of 2000 and was to undergo physical therapy for about six months.

15. On 18 January 2001, the Department of the Army Board of Review for Eliminations met and recommended that the applicant be eliminated from the Army based on misconduct, moral or professional dereliction, with a general discharge under honorable conditions.

16. At the time, there was no appointed Assistant Secretary of the Army (Manpower and Reserve Affairs), the official who could have acted upon the applicant's elimination case (the applicant having over 18 years of active Federal service at time of separation but was not eligible for a regular retirement). Therefore, on 7 February 2001, the applicant's case was forwarded to the Acting Secretary of the Army. On 8 February 2001, the Acting Secretary of the Army approved the applicant's elimination from the Army with a characterization of service of under honorable conditions (i.e., a general discharge).

17. In a message from the Commander, U. S. Army Personnel Command, date time group 130932Z February 2001, the applicant's command was notified that

his elimination from the Army had been approved. The message stated the applicant would be discharged as soon as possible but no later than 21 calendar days after he was officially notified and in no event would the discharge be delayed past 30 days from the date of the message.

18. Orders dated 22 February 2001 directed the applicant be discharged from the Army effective 14 March 2001.

19. On 8 March 2001, the applicant underwent an MEB medical examination. He was found unfit for retention due to limited range of motion in his left shoulder.

20. In a letter, dated 12 March 2001, from a civilian doctor, the Department of Psychiatry, Tripler Army Medical Center was informed that the applicant had been in psychiatric treatment with the civilian doctor since June 2000, presenting with complaints of serious depression. His depression and anxiety stress reactions had been quite overwhelming to him and somewhat disruptive of his occupational and personal life.

21. On 13 March 2001, the applicant signed an affidavit attesting to the understanding of rights and advantages of remaining on an active duty status beyond his scheduled release date in order to complete physical disability evaluation. Also on this date, the Chief, Patient Administration Division, Tripler Army Medical Center requested the applicant be given a 90-day extension beyond his separation date of 14 March 2001 because of a pending MEB.

22. On 14 March 2001, the applicant was discharged, with a characterization of service of general under honorable conditions, under the provisions of Army Regulation 600-8-24, paragraph 4-2b for unacceptable conduct. His DD Form 214 (Certificate of Release or Discharge from Active Duty) for the period ending 14 March 2001 shows he had completed 18 years and 20 days of creditable active duty.

23. On 15 March 2001, the Office of The Surgeon General recommended disapproval of the request to retain the applicant (for MEB processing). The reason cited was "AR 600-8-4 (sic), para 1-23.a. specifically excludes officers who have been processed for dismissal from physical disability processing." It cannot be determined if this recommendation reached or was acted upon by the office at the U. S. Army Human Resources Command – St. Louis to which it was addressed.

24. On 26 March 2001, an MEB Addendum was prepared, which listed a diagnosis of degenerative disc disease at L4-5.

25. The applicant apparently attempted to volunteer for active duty around March 2002. He was presented a Certificate of Appreciation, dated 11 March 2002, for doing so.

26. On 16 October 2002, the Army Discharge Review Board denied the applicant's request for an upgraded discharge.

27. In a Rating Decision dated 7 April 2003, the DVA awarded the applicant service connection for hearing loss, left ear (zero percent); patellofemoral syndrome, left knee (10 percent); degenerative joint disease, right shoulder (10 percent); tinnitus (10 percent); chronic depression (30 percent, increased from 10 percent); degenerative joint disease, left shoulder (20 percent, increased from 10 percent); and post operative perirectal abscess (10 percent, increased from zero percent).

28. On 24 February 2004, the ABCMR, in ABCMR Docket Number AR2003084896, denied the applicant's request for reinstatement to active duty with any entitlements due to him.

29. In a Rating Decision dated 15 September 2004, the DVA increased the applicant's rating for chronic depression and stress to 50 percent.

30. On 11 May 2005, the DVA indicated that the applicant was rated as 100 percent permanently and totally disabled due to service-connected disabilities.

31. On 22 January 2007, the applicant applied for a USAR appointment as a Major, Military Police branch.

32. Army Regulation 600-8-24 (Officer Transfers and Discharges), chapter 4, states, in pertinent part, that the following reasons (or ones similar) require an officer's record to be reviewed for consideration of terminating his or her appointment: (1) punishment under Article 15, UCMJ; (2) conviction by court-martial; (3) denial of security clearance; (4) a relief for cause OER; and (5) adverse information filed in the Official Military Personnel File in accordance with Army Regulation 600-37.

33. Army Regulation 600-8-24, paragraph 1-23, governs referral of officers for physical disability evaluation. In pertinent part, it states that if a commissioned or warrant officer is being processed for release from active duty, separation, or retirement, or has been referred for elimination action, when it is determined that the officer having a medical impairment does not meet medical retention

standards, the officer will be processed as set forth in subparagraphs a through d. Subparagraph 1-23a states that an officer under investigation for an offense chargeable under the UCMJ that could result in dismissal or punitive discharge may not be referred for or continue disability processing.

34. Army Regulation 600-8-24, paragraph 4-24, states an officer identified for elimination may, at any time during or prior to the final action in the elimination case, elect one of the following options (as appropriate): (1) submit a resignation in lieu of elimination; (2) request discharge in lieu of elimination; or (3) apply for retirement in lieu of elimination if otherwise eligible. When an option is elected, elimination proceedings will be suspended pending final action on the option elected.

35. Army Regulation 600-8-24, paragraph 6-20, states a request for voluntary retirement will be forwarded to the appropriate approval authority not earlier than 12 months before the retirement date or no later than 4 months before the requested retirement date.

36. Army Regulation 600-8-24, in pertinent part, states when an officer's tour of active duty is terminated due to discharge, retirement, or release from active duty, the period of service will be characterized as "Honorable," General," "Under Other Than Honorable," or "Dishonorable," depending on the circumstances.

37. Army Regulation 635-40 governs the evaluation of physical fitness of Soldiers who may be unfit to perform their military duties because of physical disability. In pertinent part, it states that the mere presence of an impairment does not, of itself, justify a finding of unfitness because of physical disability. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier reasonably may be expected to perform because of his or her office, grade, rank, or rating.

38. Army Regulation 635-40 states that providing definitive medical care to active duty Soldiers requiring prolonged hospitalization who are unlikely to return to active duty is not within the Army mission. The time at which a Soldier should be processed for disability retirement or separation must be decided on an individual basis. A Soldier may not be retained or separated solely to increase retirement or separation benefits. Soldiers who are medically unfit and not likely to return to duty should be processed for disability retirement or separation when it is decided that they have attained optimum hospital improvement.

39. Army Regulation 635-40, paragraph 4-1, states a Soldier charged with an offense under the UCMJ or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge may not be

referred for or continue disability processing unless (1) the investigation ends without charges; (2) the officer exercising proper court-martial jurisdiction dismisses the charges; or (3) the officer exercising proper court-martial jurisdiction refers the charges for trial to a court-martial that cannot adjudge such a sentence. Paragraph 4-2 states a Soldier may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge.

40. Army Regulation 635-40, paragraph 4-4, states officers who are believed to be medically unfit will be processed simultaneously for elimination and physical disability evaluation. Commanders will ensure that the actions are processed together, identified, and cross-referenced. Once complete, both the elimination and disability actions will be forwarded directly to the Secretary of the Army, who will decide the proper disposition of the case.

41. Army Regulation 635-40, paragraph 4-15c, states if a Soldier is referred by an MEB to a PEB, the MEB proceedings and allied documents, including a DA Form 3349 (Physical Profile), will be forwarded to the PEB. There is no other reference to a physical profile in relation to an MEB in the regulation.

42. Army Regulation 635-40, chapter 6 states that to be considered for continuance on active duty (COAD), a Soldier must be: (a) found unfit by a PEB because of a disability that was in the line of duty; (b) capable of maintaining one's self in a normal military environment without adversely affecting one's health and the health of others and without undue loss of time from duty for medical treatment; (c) physically capable of performing useful duty in a military occupational specialty for which he or she is currently qualified or potentially trainable; and (d) eligible due to (1) having 15 years but less than 20 years of total service, or (2) being qualified in a critical skill or shortage MOS, or (3) having a disability that was the result of combat.

43. Army Regulation 40-501 (Standards of Medical Fitness), paragraph 3-10, states trained and experienced personnel will not be categorically disqualified if they are capable of effective performance of duty with a hearing aid. Most Soldiers heaving a hearing defect can be returned to duty with appropriate assignment limitations. Tinnitus is not listed as a cause for referral to an MEB.

44. Title 10, U. S. Code, section 12646(e)(1), states a reserve commissioned officer on active duty (other than for training) who is within two years of qualifying for retirement under section 3911, section 6323, or section 8911 of this title, may, at the discretion of the Secretary concerned, be retained on that duty for a period of not more than two years. The law further states an officer may be discharged or transferred from an active status for physical disability, for cause, or because

they have reached the age at which transfer from an active status or discharge is required by law.

45. Title 10, U.S. Code, section 12686, states a member of a reserve component, who is on active duty (other than for training) and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary of the Army.

46. Title 38, U. S. Code, sections 1110 and 1131, permits the DVA to award compensation for a medical condition which was incurred in or aggravated by active military service.

47. Title 10, U. S. Code, section 1315, provided the TERA for the active force for the period 23 October 1992 through 31 December 2001. The Secretary of the Army could authorize a member with at least 15 but less than 20 years of creditable service a length of service retirement. Individuals who were pending involuntary separation, pending trial by court-martial, or under investigation for UCMJ offenses which the immediate commander believed could result in trial by court-martial or involuntary separation were ineligible to apply for early retirement. The Army did not utilize this provision of the law during fiscal year 2001 except for members who were recommended for discharge due to physical disability.

DISCUSSION AND CONCLUSIONS:

1. Counsel acknowledged that the applicant was not issued a permanent P-3 physical profile until 13 March 2001, one day before his discharge. Counsel contended that Army Regulation 635-40 states a permanent P-3 physical profile warrants referral to an MEB; however, nowhere in the regulation does it state this.

2. On 17 March 1999, the applicant accepted non-judicial punishment under Article 15, UCMJ for absenting himself without authority from his unit, for willfully disobeying a lawful command from his superior commissioned officer to report to the 9th RSC immediately, and for wrongfully and unlawfully making a false statement. It is acknowledged that there is no evidence to show that referral of court-martial charges was ever considered.

3. Counsel contended that the applicant was treated for chronic and severe gastroesophageal reflux disease in the Fall of 1999 and, to avoid the potential for stomach cancer by stabilizing symptoms, stomach surgery was recommended.

He also contended that the applicant's BOI was delayed pending the applicant's multiple medical treatments: (1) surgery to repair a labral tear in his left shoulder; (2) treatment for bilateral patellofemoral compression syndrome; (3) acromioclavicular arthritis causing mild pain in the right shoulder; and (4) stomach surgery for reflux disease.

4. It is also noted that the applicant had been in psychiatric treatment by a civilian doctor since June 2000, presenting with complaints of serious depression. The civilian doctor noted that the applicant's depression and anxiety stress reactions had been quite overwhelming to him and somewhat disruptive of his occupational and personal life. It appears the applicant had never sought psychiatric treatment from military facilities, and it appears that the Army was not aware of this treatment until 12 March 2001, two days prior to his discharge.

5. It is acknowledged that the DVA later awarded the applicant service-connected disability ratings for a number of medical conditions. His original Rating Decision is not available; however, in a Rating Decision dated 7 April 2003, the DVA awarded the applicant service connection for hearing loss, left ear (zero percent); patellofemoral syndrome, left knee (10 percent); degenerative joint disease, right shoulder (10 percent); tinnitus (10 percent); chronic depression (30 percent, increased from 10 percent); degenerative joint disease, left shoulder (20 percent, increased from 10 percent); and post operative perirectal abscess (10 percent, increased from zero percent). The DVA does not appear to have awarded him a disability rating for gastroesophageal reflux disease.

6. Nevertheless, it appears the applicant felt himself to be physically fit enough to volunteer for active duty around March 2002, only one year after he was discharged, an indicator that he believed that any medical conditions he had at the time of his separation did not render him medically unfit.

7. It is acknowledged that, on 11 May 2005, the DVA indicated that the applicant was rated as 100 percent permanently and totally disabled due to service-connected disabilities. Nevertheless, it is also noted that it appears he again felt himself to be sufficiently physically fit to have applied for a USAR appointment as a Major, Military Police branch, on 22 January 2007.

8. Counsel accurately notes that Army Regulation 635-40, paragraph 4-4, states that officers who are believed to be medically unfit will be processed simultaneously for elimination and physical disability evaluation. Commanders will ensure that the actions are processed together, identified, and cross-referenced. Once complete, both the elimination and disability actions will be

forwarded directly to the Secretary of the Army, who will decide the proper disposition of the case.

9. However, the earliest evidence that shows the applicant was pending an MEB is dated 8 March 2001, when he took an MEB medical examination, AFTER the Acting Secretary of the Army had already decided the proper disposition of the applicant's elimination case. There is no evidence of record and the applicant did not provide any to show that an MEB was initiated earlier than 8 March 2001. In fact, there is evidence to show that it appears the applicant attempted to hide some of his disabilities (i.e., his depression). Therefore, there is no conclusive evidence to show that the Army failed to follow regulatory guidelines to simultaneously process the applicant for elimination and physical disability evaluation. The applicant's elimination case had already been processed and approved before the available evidence shows an MEB was ever initiated.

10. Counsel contended that the recorder presented to the BOI several adverse referred OERs filed by the applicant's command shortly before the BOI and that those OERs were improperly relied upon by the BOI as official duty reports because they were never referred to the applicant for his comment and rebuttal.

11. The evidence of record shows that the applicant's OERs for the periods ending 22 June 1997 and 30 September 1997 were adverse and prepared by the rating officials more than a year after the ending dates of those OERs. However, the evidence of record also shows that the two OERs had been forwarded to the applicant at his new unit for referral, but he failed to complete his acknowledgement of the referred OERs. In addition, the applicant was a senior commissioned officer who should have known that he was due a change of rater OER in June 1997 and another change of rater OER in September 1997. He provides no evidence to show and does not even contend that he made any efforts to obtain those OERs in a reasonable period of time after the ending dates of those OERs, when he could have had ample time to provide rebuttal comments.

12. Counsel contended that the applicant's defense counsel submitted a request for the Army to retain the applicant until he reached 20 years of service to retire. He correctly noted that the governing regulation permits an officer at any time prior to final elimination action to request retirement in lieu of elimination. However, the regulation states the officer may apply for retirement in lieu of elimination if otherwise eligible. The governing regulation also states that a request for voluntary retirement may be forwarded to the appropriate approval authority not earlier than 12 months before the retirement date. The available evidence of record shows that the applicant had almost 24 months left to retirement at his discharge date in March 2001. Therefore, he was not otherwise

eligible to apply for retirement in lieu of elimination. Even if the applicant's "actual active duty time was closer to 19 years" as contended by counsel, "closer to" is still more than 12 months away from retirement eligibility.

13. Counsel contended that TERA allowed officers with over 15 years of service but less than 20 to retire early. The Army did not utilize this provision of the law during fiscal year 2001, except for members who were recommended for discharge (not retirement) due to physical disability. However, since the applicant was pending involuntary separation, he would not have been eligible to apply for early retirement under the TERA in any case.

14. Counsel contended that the applicant could have applied for COAD until he reached his 20th year. However, one of the criteria for being eligible to apply for COAD is to be found unfit by a PEB because of a disability. Again, the earliest date that indicated an MEB was being initiated was 8 March 2001, after the Acting Secretary of the Army approved the applicant's elimination. Since the applicant had never been found unfit by a PEB, he was not eligible for COAD.

15. In addition and more importantly in this case, the other criteria for being eligible to apply for COAD are to be capable of maintaining one's self in a normal military environment without adversely affecting one's health and the health of others and without undue loss of time from duty for medical treatment.

16. In a Plaintiff's Motion for Reconsideration, dated 13 September 2007, counsel noted that since "discharge the applicant has been permanently and totally disabled, and continuously unemployable."

17. Counsel contended the applicant was so physically unfit that he should have been medically processed for separation. In addition, his civilian psychiatric doctor stated the applicant's depression and anxiety stress reactions had been quite overwhelming to him and somewhat disruptive of his occupational and personal life. If the applicant's physical and mental conditions were so severe, it does not appear that he could have met the eligibility criteria of being capable of maintaining himself in a normal military environment without adversely affecting his health and the health of others and without undue loss of time from duty for medical treatment.

18. It is acknowledged that the Office of The Surgeon General denied the request from the Chief, Patient Administration Division, Tripler Army Medical Center for the applicant to be given a 90-day extension because of a pending MEB due to a misinterpretation of the regulation.

19. Both Army Regulation 600-8-24 and Army Regulation 635-40 state that a Soldier charged with an offense under the UCMJ or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge may not be referred for or continue disability processing unless (1) the investigation ends without charge; (2) the officer exercising proper court-martial jurisdiction dismisses the charges; (3) the officer exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence. Paragraph 4-2 states a Soldier may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge.

20. The applicant was not processed for dismissal, and once he was administered the Article 15 the investigation was ended.

21. The applicant and counsel make two contradictory arguments – one, that he was so physically unfit (since "discharge the applicant has been permanently and totally disabled, and continuously unemployable") that he should have been processed through the physical disability processing system; and two, that he was sufficiently physically fit that he should have been retained on active duty for about two more years.

22. Counsel for the applicant specifically noted, in Plaintiff's Motion for Reconsideration, dated 13 September 2007, that the Court's remand order asked the ABCMR to address a claim never sought by the applicant – disability benefits in lieu of termination. However, after all of the above is said, it is acknowledged that the applicant had numerous medical problems prior to the Acting Secretary of the Army approving his elimination from the Army in February 2001. The applicant's doctors could have, and perhaps should have, initiated an MEB as early as January 2001 when it appeared physical therapy to improve his shoulder was not working.

23. Except for the fact that counsel for the applicant specifically noted that the applicant did not desire such a correction, if he changes his mind it would be equitable to correct his records to show that he was retained beyond 14 March 2001 to complete an MEB/PEB. The corrections would be:

a. to show that, on 27 March 2001 (the day after the 26 March 2001 MEB Addendum was prepared) an MEB referred the applicant to a PEB for diagnoses of hearing loss, left ear; patellofemoral syndrome, left knee; degenerative joint disease, right shoulder; tinnitus; chronic depression; degenerative joint disease, left shoulder; and post operative perirectal abscess. This is based upon the available 7 April 2003 DVA Rating Decision. It would be reasonable to presume

that the applicant concurred with the findings and recommendation of the MEB as the diagnoses are based upon the 7 April 2003 DVA Rating Decision;

b. to show that, on 3 April 2001 (within a reasonable period of time after a 27 March 2001 MEB), an informal PEB found the applicant to be physically unfit due to patellofemoral syndrome, left knee (10 percent); degenerative joint disease, right shoulder (10 percent); chronic depression (10 percent); degenerative joint disease, left shoulder (10 percent); and post operative perirectal abscess (zero percent); and that the diagnoses of hearing loss, left ear and tinnitus were found to be medically acceptable and not rated. It would be equitable to show that the PEB recommended the applicant be permanently retired with a 40 percent disability rating. This is also based upon the available 7 April 2003 DVA Rating Decision (where it appears the original DVA Rating Decision awarded a lower disability rating for some of the conditions). It would be reasonable to presume that the applicant concurred with the findings of the informal PEB, did not request a formal hearing, and did not appeal the findings, as the diagnoses and ratings are based upon the 7 April 2003 DVA Rating Decision and regulatory guidance;

c. to show that, on 4 April 2001, the Acting Secretary of the Army approved the applicant's retirement for disability in lieu of elimination from the Army;

d. to show that the applicant was released from active duty on 18 April 2001 (10 working days, a reasonable period of time, after the Acting Secretary of the Army's action) and placed on the retired list in the rank and grade of Major, O-4 the following day; and

e. based upon the applicant's record of service, it appears it would still be appropriate to show that his service remained characterized as general under honorable conditions.

24. In suggesting the above records correction, the information contained in the 7 April 2003 DVA Rating Decision is being relied upon, as an exception to normal ABCMR policy, only because the applicant's service medical records are not available and because of the particular circumstances of this case.

25. There was nothing improper about the processing of the applicant's elimination proceedings. Therefore, there is an insufficient basis that would warrant expunging any documents relating to the involuntary separation from his records.

BOARD VOTE:

________ ________ ________ GRANT FULL RELIEF

________ ________ ________ GRANT PARTIAL RELIEF

________ ________ ________ GRANT FORMAL HEARING

__mfh__ __WAP__ __DJP__ DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

[signature]
CHAIRPERSON