IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PAUL E. DOLAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | No. 07-166C |
| | ) | (C.O.C.Miller) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant, | ) | |

## AMENDED COMPLAINT

This is a claim to set aside an agency decision by the Army Board for Correction of Military Records (BCMR) of December 13, 2007 (docket # AR2007-12332). The BCMR denied plaintiff-Dolan's request to void his March 14, 2001, General Discharge (Under Honorable Conditions) from active duty, and retroactively restore him to active duty in the United States Army with back pay.

## JURISDICTION

Jurisdiction is conferred under 28 U.S.C. § 1491(a). Money is mandated under the Military Pay Act, 37 U.S.C. § 204(a).

## PARTIES

Plaintiff, Paul Dolan, is a former officer in the United States Army's Active Guard and Reserve program (AGR), at rank of Major, currently in the Retired Reserve.

Defendant, the United States.

## FACTS

1. After remand by this Court to the BCMR, the Board on December 13, 2007, denied Dolan's claim to set aside his involuntary discharge of 14 March 2001. The Board determined that when the Army discharged him it did not fail to "follow regulatory guidelines to simultaneously

process [him] for elimination and physical disability evaluation." BCMR at 14 ¶ 9. The Board's rationale was that this procedure was inapplicable because the two actions were not processed concurrently. Specifically, Dolan's MEB on 8 March 2001 found that his disabilities did not meet medical retention standards. But this occurred "AFTER the Secretary of the Army had already decided [on 8 February 2001]," to eliminate Dolan. Id. In other words, according to the BCMR, the procedure *would* have applied to Dolan, and render his separation illegal, if he had entered into the disability system, before the Secretary's finding. Id 14 ¶ 9 ("the applicant's elimination case had already been processed and approved before...an MEB was ever initiated."). According to the BCMR, once the Secretary had decided to eliminate Dolan in February 2001, this terminated the Army's obligation, and Dolan's eligibility, for any disability evaluation.

2. The BCMR alternatively applied its equitable mandate to find an "injustice." 10 U.S.C. § 1552(a)(correct any military record when necessary to correct an error or remove an injustice). The BCMR made its own medical orthopedic judgment by determining the fault was not the Army's or Dolan's but

> applicant's doctors [who] could have, perhaps should have, initiated an MEB as early as January 2001, when it appeared physical therapy to improve his shoulder was not working.

Id 16 ¶ 22.

3. The BCMR then proceeded to retroactively act, as if the Secretary in 2001 might have if he had reviewed both elimination and disability actions simultaneously. The BCMR affirmed the General Discharge (service characterization) and retired Dolan medically with a 40% disability rating. However, the BCMR added that Dolan's complaint did not desire such a correction but only to void his discharge and restore to active duty. But "if he changes his mind" the BCMR would grant the alterantive releif. Id 16 ¶ 23.

4. The Board then denied the application, after reaffirming that "there was nothing improper about processing applicant's elimination proceedings." Id 17-18 ¶ 25.

5. The BCMR unreasonably misinterpreted the governing regulations in denying Dolan's claim to set aside his separation. The interpretation also leads to absurd results, including this case. The BCMR also made other blatant factual and regulatory mistakes that are material to Dolan's claim.

6. The mistaken interpretation of the BCMR is premised on a flawed reading of a phrase under ¶ 1-23, *Referral for Physical Disability Evaluation,* A.Reg. 600-8-24. It states therein the operative standard as "when an officer is being processed" for elimination. The Board presumes that when the Secretary makes a final decision to eliminate, as here in February 2001, that this ends "processing " and also applicability ¶ 1-23. Any disability processing that later arises before actual separation is irrelevant. This would conceivably include if the elimination approval occurs during hospitalization while a medical condition remains unstable so that duty fitness is uncertain.[1] So according to the BCMR, the elimination decision cuts off not only eligibility for disability evaluation but the opportunity to request extension under ¶ 1-22a (officer may be retained past separation date when further hospitalization or disability processing is required).

7. A.Reg. 600-8-24, at ¶ 1-23, is the primary governing regulation. It specifies that the only officers *ineligible* for referral into the disability process are those under investigation for an offense that could result in a punitive discharge. Id ¶ 1-23a; A.Reg.635-40 ¶ 4-1a. There is no provision rendering officers ineligible for disability evaluation if referred for or being processed for

---

[1] A.Reg. 635-40 at 77, Glossary, (*Optimum hospital improvement* defined as "the point during hospitalization when a patient's fitness for further military service can be decided").

elimination. The BCMR determined that Dolan was eligible for disability processing after 1999 when "the Article 15 investigation was ended." Id 16 ¶ 21.

8. The provisions under ¶ 1-23*a* provide in pertinent part, that if an officer is being processed for separation and has a medical impairment not meeting retention standards, the officer will be processed under subparagraph (*b*). Therein, when an officer "is being processed for one of the actions listed [elimination]...the officer will be processed [under this regulation] and through the MEB/PEB system. [emphasis added]." If the disability evaluation results in a finding of unfitness, "both actions [elimination and unfitness] will be forwarded by the [Commanding General, Personnel Command] to the Secretary of the Army for appropriate disposition."

9. A related provision applies to officers whose elimination action "could result in separation under other than honorable conditions." A.Reg. 635-40 ¶ 4-4 (officers in this category will not be referred for disability evaluation "instead of" elimination action but "will be processed simultaneously...Commanders will ensure the actions processed together are properly identified and cross referenced..." CG PERSCOM will refer file to the Secretary "for necessary review....to decide proper disposition of the case" [emphasis added]). This provision is in the context of a warning to commanders—do not refer officers into the disability system to spare them from an elimination proceeding. In the event disability processing occurs at the same time, process them both.

10. A.Reg. 40-501 ¶ 3-3b also interprets the above ¶ 4-4 as including referral into the disability system after elimination is approved but the soldier is pending actual separation:

> Soldiers pending separation in accordance with....AR 600-8-24, authorizing separation under other than honorable conditions who do not meet medical retention standards will be referred to an MEB....In the case of officers physical disability processing and separation processing will be conducted in accordance with AR 600-8-24 and AR 635-40.

A.Reg. 40-501 ¶ 3-3b [emphasis added].

10. Paragraph 3-3b is also consistent with A.Reg. 635-40 ¶ 3-7 (*Retaining soldiers on active duty after scheduled nondisability discharge date*):

> A soldier whose normal scheduled date of nondisability separation occurs during the course of hospitalization or disability evaluation, may, with his or her consent, be retained in the service until....attained maximum hospital benefits and completion of disability evaluation if otherwise eligible for referral into the disability system [emphasis added].[2]

11. The elimination hearing procedures for the Board of Inquiry also make accommodation for disability evaluations before, during, and after they are completed. A.Reg. 600-8-24 ¶ 4-3*a*, *d* (officers recommended for elimination and not meeting medical retention standards will also be processed through MEB/PEB; if physical or mental condition develops after an officer has been recommended for elimination or after the BOI proceedings are completed, the commander will immediately notify PERSCOM).

Regulatory definition of "processing for" elimination

12. The regulatory definition of when an officer "is being processed" for elimination extends beyond the Secretarial decision to eliminate through actual separation. The definition expressly includes all actions taken to separate the officer through the last day of active duty. A.Reg. 635-40 at 78, *Glossary* ("A soldier is 'processing for separation from active service' when...being processed for administrative separation to include separation at [Expiration Time of Service]."). This is restated in specific detail in A.Reg. 600-8-24, "Steps for Processing an Elimination", ¶ 4-19, Table 4-1 (*Processing Elimination*). Processing Step 20 is after the elimination decision is approved by the Secretary. Id at 44 ("On receipt of separation instructions

---

[2] 635-40 at 77, *Glossary*, (Maximum hospital benefits, defined at "the point during hospitalization when a patient's progress appears to be stabilized.")

[Personnel Plans & Actions officials] take action to separate the officer. Final release orders and forms [DD 214] cite regulatory authority and [Separation Program Designator code].....").[3]

8 Mar 2001: Dolan entered the disability system and was still being processed for elimination

13. On March 8, 2001, Major Dolan was referred into the disability system with an MEB. Under the presumption of administrative regularity, the attending orthopedic surgeon determined this was the point when Dolan's rehabilitative progress from shoulder surgery had stabilized.[4] The shoulder repair surgery and rehabilitation were required as "remedial surgery." A.Reg. 40-400, *Remedial physical defects developed in the military service*, ¶ 2-9 (when exam shows soldier developed remedial defect, patient "will be offered opportunity for surgical repair or other medical treatment"); see 10 U.S.C. § 1074 (service-members are entitled to medical care).

14. The MEB concluded that "the service member fails to meet retention standards in accordance with AR 40-501. . . Major Dolan is unfit for retention). Pl. Ex. C 17-20 .

15. On March 13, 2001, a permanent P-3 physical profile was issued and approved, with the profiling officer noting "pending MEB." Pl. Ex. C 22. This profile also required disability evaluation by an MEB. The BCMR is mistaken that the P3 profile did not require disability processing, by stating "nowhere in the regulation does it state this." BCMR at 12 ¶ 1. But see

---

[3] Under military law, a service-member is not actually discharged for purposes of UCMJ jurisdiction until (1) delivery of a valid discharge certificate, (2) an accounting of final pay, and (3) completed clearing process under service procedures. United States v. King, 27 M.J. 327 (C.M.A. 1989). The discharge certificate must be delivered to the person concerned. Rule for Court Martial 202(a). United States v. Melanson, 53 M.J. 1 (2000).

[4] A.Reg. 40-501 ¶ 3-3a-d (Soldiers pending separation with conditions listed in this chapter who do not meet the required medical standards will be evaluated by an MEB; physicians who identify soldiers with medical conditions listed in this chapter should initiate an MEB).

A.Reg. 40-501 ¶ 7-4a(1)(if permanent, and profiling officer detemines soldier does not meet retention standards, "soldier must be referred to an MEB"), A.Reg.600-6 *Physical Performance Evaluation System* ¶ 2-2, ¶ 2-3 (when soldier with P3 or P4 does not meet medical retention standards "direct into the Physical Disability Evaluation System").

16. On 13 March 2001 the Chief of Patient Administration Division, Tripler Army Medical Center, requested that Major Dolan's 14 March separation be extended to complete disability evaluation. Major Dolan completed the required "retention affidavit" consenting to retention. BCMR at 8 ¶ 21. This procedure is provided for in ¶ 1-22, *Medical Examination/Retention,* A.Reg. 600-8-24 (officers may be retained past separation date when disability processing required).

17. Dolan's case, and the Army hospital's request for extension, met all the regulatory requirements under ¶1-22 and ¶ 1-23. There was no valid or legal reason to deny retention on active duty. ¶ 1-22*f* (even in requests where officer cannot be located or consent is undetermined, "the officer will be retained until a retention decision is reached"). The BCMR concedes that the 15 March 2001 denial of his extension by the Surgeon General was unlawful by misinterpreting ¶ 1-23 to believe Dolan was under investigation. BCMR at 15 ¶ 18.

18. On 14 March 2001, Major Dolan was still being processed for elimination. The Army issued a DD Form 214. However, he not legally discharged for several reasons: the DD 214 was not delivered to him because of participation at the MEB. Pl.Ex. D 27 (DD Form 214, Item 21 "Soldier unavailable to sign"). Secondly, Dolan did not completed his mandatory separation physical exam until 16 March 2001. Pl.Ex. C at A25 (exam dated 16 March 2001); <u>See</u> Pl.Ex. D 28 (IG Complaint of 29 March 2001, not received clearance papers and instructions from unit); A.Reg. 600-8-24 at 44 (elimination processing step #17d-e, is to establish suspense to have officer

undergo separation physical exam); A.Reg. 40-501 ¶ 8-23b (soldiers separating from the Army will receive a separation medical examination if the soldier requests it).[5]

19. On 26 March 2001 the MEB issued an Addendum, LTC Schaefer, MD, Orthopedics. He added "degenerative disk disease." Pl.Ex. C 21. Also still pending was a longstanding mental health complaint— a 12 March 2001 letter from a civilian psychiatrist noting Dolan's treatment since June 2000 for depression and anxiety stress reactions. Id A22.

20. The BCMR questioned that Major Dolan at the time of was suffering from depression and anxiety stress reactions. The BCMR mistakenly speculated Dolan was trying to hide this— "[he] never sought psychiatric treatment from military facilities....the Army was not aware of this treatment until 12 March 2001." Op. 13 ¶ 4. The BCMR never read the record. Pl.Ex. A at 9 (Army Health Record, 27 June 2000; Tripler Army Medical Center "clinic notes" handwritten and signed by attending Army physician, "Refer to outpatient psychiatry").

21. On 14 March 2001 Major Dolan was still being processed together for disability evaluation and elimination. Under ¶ 1-23*b,* Dolan was "being processed" for elimination, and therefore "will be processed ....through the MEB/PEB system." However, the hospital's extension request under ¶ 1-22 was improperly refused, so the result of the disability evaluation remained pending. It follows he was unlawfully discharged without the results of the PEB. This precluded the Secretary from making the required "determination of appropriate disposition" on the elimination and disability actions. Without Secretarial determination on the pending disability

---

[5] Moreover, Dolan's legal relationship with the Army was not irrevocably severed. The elimination order could be revoked or he recalled at any time. His release from active duty made him only ineligible for immediate active duty retirement. But he was transferred to the Retired Reserve and eligible for reserve retired pay at age 60. Pl.Ex. B at 12.

proceeding, Dolan's discharge orders were void as a matter of law. Major Dolan's was never legally separated from active duty.

22. Because elimination processing was continuing when the MEB was initiated on March 8, 2001, the two actions are considered simultaneous within ¶ 4-4, A.Reg. 635-40. The Army at that point was obligated to ensure both actions were "properly identified and cross-referenced." Id ¶ 4-4b. The function was assumed by the hospital commander as part of the extension request. Assuming the extension under ¶ 1-22 was not improperly denied, and disability evaluation completed, the commander was also obligated for to refer the entire file to the Secretary for necessary review, and proper disposition.

23. The Boards' interpertation is wrong on multiple counts. First, it changes the language of ¶ 1-23*b* and ¶ 4-4 from "being processed" for involuntary separation, to "until the Secretary approves the separation action." This must nullify ¶ 3-3 of A.Reg. 40-501 ("Soldiers pending separation ....will be referred to an MEB"). It necessarily truncates the well established meaning of processing soldiers for separation to some arbitrary date on the Secretary's calendar– not the actual separation date.

24. This is problematic for other reasons. The BCMR's reading leads to absurd results. Any reading of ¶ 1-23 must fulfil the purpose of medical treatment and the disability system to protect "the rights and interests" of the soldier. A.Reg. 635-40 ¶ 1-1c ("ensure rights and interests of the Government and the soldier are protected."). The BCMR imposes a new ineligibility rule limiting entry into the disability system. Maximum benefits of medical treatment is to attain the necessary stability of patient progress to determine fitness. This process does always adhere to a perfect timetable of Secretarial approval dates. That is why extension requests under ¶ 1-22 accommodate situations where "continued hospitalization and/or disability processing is required."

See A.Reg. 635-40 ¶ 3-7 (retaining soldiers after scheduled nondisability discharge date). The BCMR would nullify ¶ 1-22 and ¶ 3-7 for every separation listed in ¶ 1-23. This is because extension for maximum hospital benefits and disability evaluation would be unnecessary. It would nullify the rule that P3 or P4 profiles require an MEB. Finally, the BCMR reading would subject ¶ 1-23 to abuse or neglect by encouraging units processing eliminations to not "identify and cross reference" an officer's entry into disability system.

25. Another word for absurd results is the "injustice" that the BCMR itself creates. It rewrote the regulatory language to conveniently backdate "processing for elimination" to mean *before* Dolan's entry in the disability system. As such, the Board implies the ¶ 1-22 extension request by the Army hospital was futile. To support this contrived result, the Board blames Dolan's orthopedic surgeon for professional negligence— by a tardy determination that Dolan's treatment for remedial surgery had attained optimum hospital improvement and need an MEB. The BCMR's lay-person staff obtained no medical advisory opinions to make such expert judgments.

26. The BCMR finds Major Dolan in 2001would have been found physically unfit by the PEB at 40% rating, he would not object, not request a formal PEB, nor appeal. Id 17 ¶ 23b.

27. The BCMR then undertakes a harmless error analysis under ¶ 1-23*b*. The Board retroactively determined the "appropriate disposition" if the Secretary in 2001 had reviewed both elimination and disability actions. The BCMR sustained the same General Discharge (service characterization) and medically retired Dolan at 40%. Id ¶ 23c.

28. The BCMR is precluded from conducting any after-the-fact final action under ¶ 1-23 on what the Secretary might have done six years ago. Wagner v. United States, 365 F.3d 1358, 1364-65 (Fed.Cir. 2004)(court finding inapplicable the subsequent harmless review by the ABCMR

that agreed with Secretary's *post hoc* approval of officer's discharge when Secretary's failed to consider 18 years of service).

29. The harmless error test in inapplicable to the Secretarial "appropriate disposition" under ¶ 1-23*b*. There are no standards or tests, so the Secretary has unlimited discretion to take whatever decision he elects. The BCMR's "fresh review" in 2007 of an appropriate disposition is an impermissible "reviewing body determining what effect the error had on the judgment of the original proceeding." Wagner at 1364.

30. Plaintiff Dolan now seeks judicial review of the Army BCMR decision.

## CAUSE OF ACTION

The decision of the Army Board for Correction of Military Records denying relief to plaintiff was arbitrary and capricious, an abuse of discretion, and contrary to law and Army regulation.

## PRAYER FOR RELIEF

That this Honorable Court declare the decision of the Army Board for Correction of Military Records denying relief to plaintiff to void his General Discharge in 2001, was arbitrary and capricious, an abuse of discretion, and contrary to law and Army regulation.

That this Honorable Court declare the plaintiff was never legally separated from active duty, and remains constructively on active duty with entitlement to back pay and allowances, and all other accrued rights.

That Defendant be ordered to set aside plaintiff's involuntary separation from active duty by reason of elimination under A.Reg. 600-8-24, Chapter 4.

That Defendant be ordered to expunge from plaintiff's official military personnel files all adverse documents relating to the involuntary separation and related documents thereto.

That this Honorable Court award any and all additional relief as deemed appropriate, including attorney fees.

Respectfully submitted,

a/s John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825