# APPENDIX

# INDEX TO DEFENDANT'S APPENDIX


| | PAGE |
|---|---|
| Excerpts from Army Regulation 600-8-24, Officer Transfers and Discharges (July 21, 1995) | App. 1 |
| Excerpts from Army Regulation 635-40, Physical Evaluation for Retention, Retirement, or Separation (Aug. 15, 1990) | App. 9 |
| Excerpts from Army Regulation 135-175, Separation of Officers (Feb. 28, 1987) | App. 22 |
| Excerpts from Army Regulation 40-501, Standards of Medical Fitness (June 27, 2006) | App. 24 |
| Excerpts from Army Regulation 40-501, Standards of Medical Fitness (Feb. 27, 1998) | App. 27 |
| Excerpts from Army Regulation 600-60, Physical Performance Evaluation System (Feb. 28, 2008) | App. 30 |
| Excerpts from Army Regulation 600-60, Physical Performance Evaluation System (Oct. 31, 1985) | App. 33 |

Army Regulation 600–8–24

Personnel–General

# Officer Transfers and Discharges

Headquarters
Department of the Army
Washington, DC
21 July 1995

Unclassified

### 1–22. Medical examination/retention

*a.* The officer's immediate commander will ensure that medical examination procedures are followed as stated in AR 40–501.

*b.* An officer may only be retained past his or her separation date for medical reasons when continued hospitalization and/or physical disability processing is required. An officer being retired (voluntary or involuntary) due to maximum age (paras 6–26 and 6–27) or length of service (para 6–28) will not be retained on AD unless the medical condition requires referral to a Physical Evaluation Board (PEB) (para 6–7). An officer who is medically fit for retention will not be retained beyond the established separation date. An officer will not be retained without his or her written consent (see *f* below).

*c.* The commander of the medical treatment facility (MTF) will forward requests for retention endorsed by the officer's unit commander, through the Office of the Surgeon General, HQDA (DASG–PSA), FALLS CHURCH VA 22041–3258; to CDR PERSCOM (TAPC–PDT–RS), 200 STOVALL STREET, ALEX VA 22332–0478; or for AGR personnel to CDR ARPERCEN (ARPC–AR), 9700 PAGE BLVD, ST LOUIS MO 63132–5200; or HQDA (DAAR–SO), CHIEF ARMY RESERVE, 2400 ARMY PENTAGON, WASH DC 20310–2400, as appropriate, for approval. The requests will include the following information:

(1) Officer's name, rank, and social security number (SSN).
(2) Reason for release (for example, nonselection for promotion).
(3) Scheduled release date.
(4) Medical reasons for retention.
(5) Medical facility point of contact.
(6) A copy of the retention affidavit (fig 1–1).

*d.* The officer will be advised of the following retention advantages:

(1) Medical care and/or hospitalization provided.
(2) Normal benefits such as pay and allowances, to include continued post exchange and commissary privileges.
(3) Dependent medical care when an officer is ordered to AD for more than 30 days.
(4) The additional active service is creditable for longevity and retirement. For Reserve officers ordered to AD for 30 days or less, any retention under *b* above past the termination date of the orders is not creditable as AD for retirement under section 1331, title 10, United States Code (10 USC 1331). (See *g* below.)
(5) State income tax benefits where allowed by law.

*e.* Advise the officer that if he or she is eligible for disability separation, the advantages are as follows:

(1) If permanently retired, election of the most favorable retired pay allowed. If temporarily retired, the same selection of pay is authorized, but the minimum will not be less than 50 percent of the basic pay.
(2) If retired, the officer, along with his or her dependents, will be eligible for certain medical care when facilities and staffing permit at uniformed services facilities and certain medical care in civilian facilities (see AR 40–3).
(3) The percentage of retired pay that is based on the disability will be exempt from taxation.
(4) If discharged for disability, the officer may be entitled to separation pay.

*f.* The retained officer will sign the retention affidavit (fig 1–1). The next of kin or legal representative will sign for the retained officer when the retained officer is mentally incompetent or unable to sign. If the officer is unable to sign and the next of kin or legal representative cannot be located or will not indicate whether the officer will be retained, the officer will be retained until a retention decision is reached. The hospital commander will forward the details of the case as required by *c* above. File a copy in the officer's DA Form 201 (Military Personnel Records Jacket, U.S. Army).

*g.* See AR 135–381 concerning procedures for RC officers on active duty for training (ADT), temporary tours of active duty (TTAD), or active duty for special work (ADSW) tours of 30 calendar days or less and are hospitalized.

### 1–23. Referral for physical disability evaluation

If a commissioned or warrant officer is being processed for REFRAD, separation, or retirement or has been referred for elimination action, when it is determined that the officer has a medical impairment that does not meet medical retention standards, the officer will be processed as set forth in paragraphs *a* through *d* below.

*a.* A commissioned or warrant officer under investigation for an offense chargeable under the Uniform Code of Military Justice (UCMJ) that could result in dismissal or punitive discharge may not be referred for or continue disability processing unless—

(1) The investigation ends without charges.
(2) The commander exercising proper court-martial jurisdiction dismisses the charges.
(3) The commander exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

*b.* When a commissioned or warrant officer, as applicable, is being processed for one of the actions listed in (1) through (6) below, the officer will be processed in accordance with the provisions of this regulation and through the MEB/PEB system. If the result of the physical disability evaluation is a finding of physical fitness, the Army Physical Disability Agency will approve the findings for the Secretary of the Army and forward the proceedings to CDR, PERSCOM (TAPC–PDT–PM), to be processed with the other action. If a physical disability evaluation results in a finding of physical unfitness, both actions will be forwarded by CG, PERSCOM (TAPC–PDT–PM), to the Secretary of the Army for determination of appropriate disposition.

(1) Referral to the DAADB except when the DAADB is convened as a result of an imposed reduction in force.
(2) Involuntary REFRAD due to civil conviction or moral turpitude.
(3) Involuntary REFRAD due to the revocation of voluntary indefinite (VI) status.
(4) Resignation for the good of the service.
(5) Referral for elimination under chapter 4.
(6) Request for separation, resignation, or retirement in lieu of elimination.

*c.* When an officer is processed for separation or retirement for reasons other than those indicated above, physical disability takes precedence if the officer is retained with his or her consent. The procedures in paragraph 1–22 will be followed.

*d.* Officers previously determined physically unfit and continued on active duty under AR 635–40 must be referred for disability evaluations at final retirement or separation.

### 1–24. Indebtedness

An officer will not be retained on AD to satisfy an indebtedness to the Government or for collection of forfeitures adjudged by court-martial. The officer's final separation order will indicate the total amount of unpaid indebtedness and forfeitures due the Government on the REFRAD date (see DODPM).

### 1–25. Return from overseas

An officer stationed outside continental United States (OCONUS), who has a pending separation action will not be returned from the OCONUS command without PERSCOM approval or in the case of officers in special branches, without notifying special branch personnel managers also.

### 1–26. Assignment of personnel to a U.S. Army transition point/transition activity (TP/TA)

*a.* An officer stationed in continental United States (CONUS) who must be reassigned to a U.S. Army TP/TA will be processed according to AR 635–10.

*b.* The OCONUS commander will issue orders returning the officer to a CONUS (or other area of residence) U.S. Army TP/TA according to AR 635–10, unless otherwise directed by CG, PERSCOM. Consistent with availability of transportation, an officer will be returned only early enough to permit transfer processing for separation and normal travel time.



App. 2

period of service from which I will be separated, under any laws administered by the Department of Veterans Affairs, except War Risk, U.S. Government (converted), National Service Life Insurance, or Servicemen's Group Life Insurance policies I may hold.

6. Present duty station *(address) (assignment and/or attachment, if any).*

7. I *(do/do not)* desire separation overseas. *(If currently serving in an overseas area.)*

8. My mailing address after separation will be *(address).*

9. I understand that if I participated in certain advanced programs, I may be required to reimburse the U.S. Government as stated in written agreement made by me with the U.S. Government under law and regulations.

*(Signature block)*

Figure 3-4. Sample format for the good of the service resignation

## Chapter 4 Eliminations

### Section I Scope

#### 4–1. Overview

*a.* An officer is permitted to serve in the Army because of the special trust and confidence the President and the nation have placed in the officer's patriotism, valor, fidelity, and competence. An officer is expected to display responsibility commensurate to this special trust and confidence and to act with the highest integrity at all times. However, an officer who will not or can not maintain those standards will be separated.

*b.* Every officer deserves a fair chance to demonstrate his or her capabilities. When an officer shows ineffective tendencies (especially if the officer is inexperienced) when practicable, he or she will be given another chance under another commander. The officer's ineffectiveness will be systematically recorded in documents that specify each period covered, duties observed, and defects noted. Recommendations for elimination action will not be based on generalities and vague impressions. It is necessary to document, in writing, the precise reasons an officer is considered ineffective.

*c.* An officer who has his or her security clearance withdrawn or withheld due to unfavorable information regarding loyalty, subversion, or security may be processed for involuntary separation according to AR 604–10. The exception is a nonprobationary RA commissioned officer, who by law may be involuntarily separated under this regulation. However, the administrative procedures prescribed in AR 604–10 will be followed for a nonprobationary RA commissioned officer until the case is referred to PERSCOM (TAPC–PDT–PM).

*d.* This chapter prescribes the tasks, rules, and steps for eliminating officers in the Active Army for substandard performance of duty, misconduct, moral or professional dereliction, and in the interests of national security.

#### 4–2. Reasons for elimination

While not all inclusive, when one of the following or similar conditions exist, elimination action may be or will be initiated as indicated below for—

*a.* Substandard performance of duty.

(1) A downward trend in overall performance resulting in an unacceptable record of efficiency, or a consistent record of mediocre service.

(2) Failure to keep pace or to progress with contemporaries, as demonstrated by a low record of efficiency when compared with other officers of the same grade and competitive category. An officer who is identified by an ADL promotion board (convened in accordance with 10 USC 611a) as "not fully qualified" for promotion will be recommended for elimination under this paragraph as provided for by the Secretary of the Army in memorandum of instructions to the promotion board.

(3) Failure to exercise necessary leadership or command expected of an officer of his or her grade.

(4) Failure of an officer to absorb technical proficiency required for his or her grade and competitive category.

(5) Failure to properly perform assignments commensurate with an officer's grade and experience.

(6) Apathy, defective attitudes, or other characteristic disorders to include inability or unwillingness to expend effort.

(7) Failure to respond to alcohol or drug problem rehabilitation efforts in a reasonable length of time. (See AR 600– 85 for further explanation.) Elimination action will be initiated.

(8) Failure to conform to prescribed standards of dress, personal appearance, or military deportment.

(9) Failure to achieve satisfactory progress after enrollment in the Army weight control program or failure to maintain the weight/body fat standards established under the provisions of AR 600–9 after removal from an established weight control program. Elimination action will be initiated. This provision does not include those judge advocates and AMEDD officers who have incurred a statutory ADSO for participating in Army sponsored education and training programs such as the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship Program, or the Uniform Services University of the Health Sciences (10 USC, chapters 104, 105).

(10) When no medical problems exist, and an officer has two consecutive failures of the Army Physical Fitness Test (APFT), elimination action will be initiated. This provision does not include those judge advocates and AMEDD officers who have incurred a statutory ADSO for participating in Army sponsored education and training programs such as the Funded Legal Education Program (10 USC 2004), Armed Forces Health Professions Scholarship, or the Uniform Services University of the Health Sciences (10 USC, chapters 104, 105).

(11) Failure of a course at a service school for academic reasons by a probationary or nonprobationary RA officer. For failure by an RC officer, see paragraph 2–37.

(12) Failure of a probationary officer to resign under paragraph 3–9 when his or her commander determines the best interest of the Government and the individual can be served by the officer's discharge.

(13) The discovery of other conditions concerning a probationary

officer that, had they been known at the time of appointment, would have precluded appointment.

(14) The discovery of any other condition concerning a probationary officer that indicates the officer's retention in the Army would not be in the best interest of the United States.

(15) Probationary RA commissioned and warrant officers entering AD who are confirmed Human Immunodeficiency Virus (HIV) positive within 180 calendar days of their original appointment or probationary USAR, ARNG commission and warrant officers who report for initial entry training in an AD (other than ADT) status and are confirmed HIV positive within 180 calendar days of reporting to AD will be processed for elimination.

*b.* Misconduct, moral or professional dereliction, or in the interests of national security.

(1) Discreditable or intentional failure to meet personal financial obligations.

(2) Mismanagement of personal affairs that are unfavorably affecting an officer's performance of duty.

(3) Mismanagement of personal affairs to the discredit of the Army.

(4) Intentional omission or misstatement of fact in official statements or records for the purpose of misrepresentation.

(5) Acts of personal misconduct (including but not limited to acts committed while in a drunken or drug intoxicated state).

(6) Homosexual conduct (see para 4–22).

(7) Intentional neglect of or failure to perform duties.

(8) Conduct unbecoming an officer.

(9) Conduct or actions that result in the loss of a professional status, such as withdrawal, suspension or abandonment of professional license, endorsement, or certification that is directly or indirectly connected with or is necessary for the performance of one's military duties. (For AMEDD officers, this includes the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges.)

(10) Acts or behavior not clearly consistent with the interests of national security. (See AR 604–10 for criteria.)

(11) Unless precluded by paragraph 4–18*d*(4), elimination action will be initiated against an officer who is medically diagnosed as drug dependent or identified as having committed an act of personal misconduct involving drugs.

(12) Conduct or actions by a warrant officer resulting in a loss of special qualifications (such as withdrawal/revocation of CID accreditation, revocation of marine qualification license, removal from the PRP, withdrawal of clinical privileges or loss of flying status) that directly or indirectly precludes a warrant officer from performing in his or her MOS and is necessary for the performance of those duties. Eliminations based on these reasons may not be utilized if reclassification action is feasible and in the best interest of the Service or if the loss of special qualifications was due to medical reasons beyond the control of the warrant officer.

(13) Failure to respond in a reasonable length of time to rehabilitation efforts regarding repeated acts of child/spouse maltreatment or abuse and/or other acts of family violence.

(14) Failure of a course at a service school by an RA officer because of misconduct, moral or professional dereliction. For failure by a Reserve Component officer, see paragraph 2–37.

*c. Derogatory information.* The following reasons (or ones similar) require an officer's record to be reviewed for consideration of terminating his or her appointment.Standing alone, one of these conditions may not support elimination, however, this derogatory information combined with other known deficiencies form a pattern that, when reviewed in conjunction with the officer's overall record, requires elimination.

(1) Punishment under UCMJ, article 15.

(2) Conviction by court-martial.

(3) Denial of security clearance. (See AR 604–10 for further explanation).

(4) A relief for cause officer evaluation report (OER) (DA Form 67–8, (US Army Officer Evaluation Report)) under AR 623–105, paragraph 5–18.

(5) Adverse information filed in the OMPF in accordance with AR 600–37.

(6) Failure of a course at a service school.

## 4–3. Medical condition

*a.* An officer referred or recommended for elimination under this chapter who does not meet medical retention standards will be processed through both the provisions of this regulation and through the MEB/PEB process as described in paragraph 1–22.

*b.* When it is determined the officer's mental condition contributed to his or her military inefficiency or unsuitability, the medical evaluation will include a psychiatric study of the officer. This study will indicate whether the officer was able to distinguish right from wrong and whether the officer currently has the mental capacity to understand board and judicial proceedings and participate in his or her defense. When applicable, the report will also indicate whether the incapacitating mental illness could have been the cause of the conduct under investigation.

*c.* At the time an officer is to appear before the Board of Inquiry, if he or she does not possess sufficient mental capacity to understand the nature of the proceedings or does not behave or cooperate intelligently in his or her defense, the proceedings will be delayed until the officer recovers, or the officer will be processed through medical channels, whichever applies.

*d.* If a physical or mental condition develops after an officer has been recommended for involuntary separation or after the Board of Inquiry proceedings are completed, the officer's commander will immediately notify PERSCOM (TAPC–PDT–PM).

## 4–4. Limitations

*a.* An officer will not be considered for involuntary separation because of conduct that has been the subject of judicial proceedings that resulted in an acquittal.

*b.* Except as provided in *d* below, no officer will be considered for elimination for reasons stated in paragraph 4–2 because of conduct that has been the subject of administrative elimination proceedings that resulted in final determination that the officer should be retained in the Service. For purposes of this paragraph, an officer will be considered to have been the subject of elimination proceedings only if allegations against the officer were acted on by a Board of Inquiry convened under this chapter.

*c.* The limitations set forth in *b* above are not applicable when—

(1) Substantial new evidence is discovered that was not known at the time of the original proceedings despite the exercise of due diligence and that would probably produce a result significantly less favorable for the officer at a new hearing.

(2) Subsequent conduct by the officer warrants considering him or her for discharge. Such conduct need not independently justify the member's elimination but must be sufficiently serious to raise a substantial question as to the officer's potential for further useful military service. However, this exception does not permit further consideration of conduct of which the officer has been absolved in a prior final factual determination based on the merits by a judicial body.

(3) An express exemption has been granted by PERSCOM, in writing, upon a determination that administrative separation should be effected becuase of the unusual circumstances of the case.

*d.* Under the circumstances in (1) through (4) below, an officer who has been considered for elimination and retained on AD may again be required to show cause for retention:

(1) An officer may be again considered for elimination because of lack of proficiency or recurrent misconduct subsequent to the earlier consideration.

(2) An officer may be again considered for elimination because of misconduct that occurred prior to that alleged in the earlier proceedings but that was not sooner discovered despite the exercise of due diligence.

(3) An officer who has been considered for elimination for substandard performance of duty and retained may again be considered for elimination for substandard performance of duty at any time 1 year after the prior case has been closed.



App. 4

(4) An officer may be considered for elimination for misconduct, moral or professional dereliction, or in the interest of national security at any time subsequent to the closing of the prior case that resulted in the officer's retention on AD. However, an officer may not again be required to show cause for retention on AD solely because of conduct that was the subject of the previous proceedings, unless the findings and recommendations of the Board of Inquiry or the Board of Review that considered the case are determined to have been obtained by fraud or collusion. The grounds for elimination in the earlier case may be joined with new grounds in the later case, provided the earlier elimination proceedings does not include a factual determination specifically absolving the member of the allegations then under consideration. If the grounds for elimination in the earlier proceedings are joined, the additional grounds considered in the subsequent proceedings need not independently justify the member's discharge but must be sufficiently serious to raise a substantial question as to the member's potential for further useful military service.

*e.* Punishment resulting from trial by court-martial or under the provisions of UCMJ, article 15, for misconduct and subsequent use of this fact in support of elimination under this regulation do not constitute double jeopardy.

### 4–5. Separation date

An officer approved for involuntary separation by the ASA(M&RA) or whose request for resignation or discharge in lieu of elimination is approved will be separated accordingly.

*a.* For misconduct, moral or professional dereliction, or in the interest of national security.

(1) In CONUS, an officer will be separated no earlier than 5 calendar days and not later than 14 calendar days after the officer receives written notification.

(2) Outside CONUS, an officer will be returned to the CONUS separation TP/TA no later than 21 calendar days after the officer receives written notification. Separation will occur no later than 5 calendar days after arriving at the CONUS TP/TA.

*b. Solely for substandard performance of duty.* Not later than the 30th calendar day after receipt of notification by the officer concerned, the officer will not be released prior to the 30th calendar day without his or her consent.

## Section II
## Boards

### 4–6. Board of Inquiry

*a.* The Board of Inquiry's purpose is to give the officer a fair and impartial hearing determining if the officer will be retained in the Army.The Government is responsible to establish, by preponderance of the evidence, that the officer has failed to maintain the standards desired for his or her grade and branch or that the officer's conduct has been prejudicial to national security. In the absence of such a showing by the Government, the board will retain the officer. However, the respondent is responsible for producing evidence to disprove the Government's position.

*b.* Boards of Inquiry are appointed by the appropriate GOSCA.Concurrence must be obtained from the appropriate commander when an officer assigned to a different command is used on a Board of Inquiry. The local installation convening the Board of Inquiry will fund the travel of board members from other installations.

*c.* The GOSCA will advise members of a Board of Inquiry that duty on the board takes priority over all other duties unless properly excused by the appointing authority.

*d.* The Board of Inquiry will be completed no later than 90 calendar days from the date the GOSCA is notified by PERSCOM to conduct the Board of Inquiry or on a GOSCA initiated elimination, from the date the GOSCA directs that a Board of Inquiry be conducted. Whenever completion of the Board of Inquiry is delayed beyond the established time, the GOSCA will notify CDR, PERSCOM (TAPC–PDT–PM), by electrical message of the reason for the delay and the projected date for the Board of Inquiry to be completed.

*e.* The CG, U.S. Army Military District of Washington, will have jurisdiction as GOSCA for all personnel assigned or attached to the U.S.Army, Military District of Washington.. This authority may be delegated by the CG, U.S. Army, Military District of Washington, in appropriate cases to officers who could otherwise act as GOSCAs.

*f.* The GOSCA will issue the orders appointing the Boards of Inquiry.

*g.* Except as modified by this regulation, the board will conform to the provisions of AR 15–6 applicable to formal proceedings with respondents.

### 4–7. Board membership

*a.* Boards will consist of at least three voting members and a recorder, legal advisor, and respondent's counsel without vote. Voting members serving on a board will be RA officers on AD (unless the respondent is a RC officer) in the rank of colonel or above and be senior in grade and rank to the respondent. When the respondent is an RC officer, one or more of the voting members will be an RC officer, preferably the same component.

*b.* When an RC officer on AD is not reasonably available, the GOSCA will, through the MACOM, advise PERSCOM (TAPC–PDT–PM) and request that a retired RC (10 USC 1187) officer in the rank of colonel or above be ordered to AD to serve on the Board of Inquiry. When the GOSCA knows that an eligible and qualified retired RC officer is located in the area of responsibility, that officer's name, rank, date of rank, and address will be furnished the MACOM and to PERSCOM (TAPC–PDT–PM). The GOSCA will also include the respondent's rank and date of rank and the approximate convene date of the Board of Inquiry.

*c.* The MACOM, if possible, or the CG, PERSCOM, will make the final selection of the officer and if necessary coordinate with CG, ARPERCEN, to issue the AD orders. The CG, PERSCOM, or the MACOM will notify the GOSCA (by electronic message) of the selected officer, including the officer's AD entry date.

*d.* When the respondent is a minority, female, or special branch (10 USC 3064), the board will (upon the officer's written request) include a minority, female, or special branch as voting member (if reasonably available, as this provision is not an entitlement). If an officer is in more than one category and he or she requests officers from all or two categories, the board membership may be met by one or more officers (if reasonably available, as this provision is not an entitlement). The request for these members, if desired, will be submitted 7 days from the date that the respondent receives the notification or else the right to request is waived.

*e.* When the reasons for elimination include substandard performance of duty (para 4–2, except 4–2a(9) and (10)), the board membership will include an officer of the same branch as the respondent (if reasonably available, as this is not an entitlement). Normally, this is the only time a Chaplain, AMEDD, or JAGC officer serves as a board member unless he or she is the only available RC colonel in the area and the respondent is an RC officer.

*f.* No officer will be a voting member of a Board of Inquiry who—

(1) Is serving (or has previously served) as a witness for the respondent.

(2) Served as a member of the selection board in the particular case or served as a member on any previous Board of Inquiry, Review, or other board of officers with respect to the respondent.

(3) Was a member (or was the reviewing authority) of a previous court-martial in which the respondent was the accused.

(4) Previously recommended (or participated in recommending) the respondent for elimination from active duty.

(5) Rendered a derogatory evaluation report on the respondent.

(6) Otherwise considered the respondent's case.

*g.* In addition to the reasons stated in *f* above, voting members and the legal advisor may be challenged for cause for any reason that indicates they can not participate in the case in a fair and

*e.* When the Board of Review recommends elimination, it may also recommend clemency, stating the reasons. However, only the Secretary of the Army may grant clemency.

*f.* The Board of Review will, if requested, furnish the respondent a copy of the board proceedings.

## Section III
## Task: Process Elimination of a Nonprobationary Officer

### 4–18. Rules for processing an elimination of a nonprobationary officer

*a.* Elimination action may be initiated by—

(1) Commanding General, PERSCOM.

(2) A GOSCA, for an officer assigned or attached to his or her command (see Glossary) (unless specifically withheld by HQDA.)

(3) The Deputy Chief of Staff for Personnel (DCSPER), when recommendations are made by HQDA promotion, school, or command selection boards that an officer should be required to show cause for retention on active duty. The DCSPER or his or her designated representative in the grade of major general or above will review such names and decide if initiation of elimination is appropriate. If initiation of elimination is appropriate, the action will be processed according to the rules and steps of the applicable sections of this chapter.

(4) The Secretary of the Army, the Chief of Staff, and such officials in their offices as are designated by them. The action will be processed according to the rules and steps of the applicable sections of this chapter.

*b.* Unless precluded by *d*(4) below, elimination action will be initiated against an officer who is identified by one or more of the reasons outlined in paragraph 4–2.

*c.* Any subordinate commander may recommend to the GOSCA the initiation of elimination proceedings for an officer in his or her command.

*d.* The commander has the discretion to initiate disciplinary action under the UCMJ or to recommend or initiate elimination proceedings under the provisions of this regulation.

(1) The fact that elimination proceedings were initiated when disciplinary action could have been taken will not affect the validity of the elimination proceedings.

(2) Elimination action will not be used in lieu of disciplinary action solely to spare an officer who may have committed serious misconduct from the harsher penalties that may be imposed under the UCMJ.

(3) Conduct that was the subject of judicial or nonjudicial punishment may be the basis for elimination proceedings under this regulation. (See para 4–4*b*.)

(4) Elimination proceedings, however, will not be initiated with respect to conduct that is the subject of UCMJ charges unless the charges are dismissed or appellate review has been completed.

*e.* Regardless of who initiates the elimination action, the initiating official will furnish the appropriate MACOM a copy of the notification memorandum. The GOSCA will ascertain the identity and location of Government witnesses and make reasonable efforts to ensure their availability to appear before a Board of Inquiry.

*f.* On receipt of elimination actions from the MACOM commander, CG, PERSCOM may take the following actions prior to the Board of Review:

(1) Close the case (prior coordination with the initiating official required for an elimination initiated under *a*(3) and (4)above and, through channels, notify the officer.

(2) Forward the case to a Board of Review.

*g.* When the Board of Review recommends elimination, the board will forward the case directly to the Secretary of the Army for the final decision.

*h.* When the Board of Review recommends retention (with or without reassignment), PERSCOM (TAPC–PDT–PM) will close the case and, through channels, notify the officer.

*i.* When the Secretary of the Army approves elimination, PERSCOM(TAPC–PDT–PM) will forward separation instructions to the appropriate PSC/MPD.

### 4–19. Steps for processing an elimination of a nonprobationary officer

The required steps for processing an elimination of a nonprobationary officer are as shown in table 4–1.

Table 4–1
Processing elimination of a nonprobationary officer

| Step | Work center | Required action |
|---|---|---|
| 1 | PPAA<br>BN S–1<br>C&S | The initiating official (para 4–18*a*(1) or (2) or (3) or (4) above) notifies the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on AD (fig 4–1). Initiates a DA Form 268. (See AR 600–8–2.) |
| 2 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the reasons supporting the elimination action and the factual allegations supporting the reasons. Only applicable reasons as outlined in paragraph 4–2 (or para 4–22 for homosexual conduct) that can be supported by specific factual allegations and evidence may be the basis for elimination. Evidence to support the elimination must be able to stand on its own merits. Prior coordination with the servicing judge advocate or legal advisor is required for actions initiated by the GOSCA. Advises the officer that he or she may—<br>*a.* Tender resignation in lieu of elimination (para 4–24).<br>*b.* Request discharge in lieu of elimination (an RA commissioned officer only) (para 4–24).<br>*c.* Apply for retirement in lieu of elimination if otherwise eligible for voluntary retirement as stated in chapter 6, paragraph 6–17*d.* Voluntary retirement application will be amended to specifically state that the application is submitted in lieu of elimination.<br>*d.* Appear before a Board of Inquiry to show cause for retention. |
| 3 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she has 30 calendar days to acknowledge receipt in writing, to prepare a written statement or rebuttal or elect one of the options as stated in *a, b, c,* and *d* above. |
| 4 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer of the least favorable discharge that he or she may receive. (An officer separated solely for substandard performance (para 4–2 *a*) will receive an Honorable Discharge. If separated for reason(s) under paragraph 4–2*b* or 4–22*b* (homosexual conduct) an officer may receive an Under Other Than Honorable Discharge. |
| 5 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that he or she may consult with the local finance and accounting officer concerning possible entitlement to separation pay. |
| 6 | PPAA<br>BN S–1<br>C&S | The initiating official advises the officer that if he or she requests resignation or discharge in lieu of elimination action, he or she will be separated as stated below.<br>*a.* Not later than 30 calendar days after receipt of notification that request for resignation or discharge was approved (only when separated solely for substandard performance). Release will not be prior to the 30th day without the officer's consent.<br>*b.* Not later than 14 calendar days and no earlier than 5 calendar days after receipt of notification that the request for resignation or discharge was approved when stationed in CONUS. |

Table 4–1
Processing elimination of a nonprobationary officer—Continued

| Step | Work center | Required action |
|---|---|---|
| | | *c.* For an officer assigned OCONUS, he or she will be returned to the CONUS separation TP/TA no later than 21 calendar days after receipt of written notification that the request for resignation or discharge was approved, and separated no later than 5 calendar days after arrival at the CONUS TP/TA. |
| 7 | C&S | The initiating official personally signs the memorandum. |
| 8 | PPAA<br>BN S–1<br>C&S | The GOSCA furnishes a copy of the notification memorandum directly to CDR, PERSCOM (TAPC– PDT–PM) and the appropriate MACOM, if applicable. |
| 9 | SLDR | Officer responds with acknowledgement of receipt (fig 2–4). Submits a written statement or rebuttal or elects one of the options in step 2 above within 30 calendar days.<br>*a.* The statement or rebuttal may be prepared with the assistance of an officer of the JAGC or civilian counsel obtained by the officer at no expense to the Government.<br>*b.* The statement or rebuttal should contain any pertinent facts bearing on the question of the officer's elimination. Documents submitted must be legible and reproducible. They may be sworn or unsworn.<br>*c.* The officer submits the appropriate application for separation if in lieu of elimination option is selected.<br>*d.* The officer undergoes a separation physical examination within 5 duty days from the date the option is chosen. |
| 10 | C&S | The initiating official (CG, PERSCOM or GOSCA, as appropriate), on receipt of the officer's statement or rebuttal and/or option selection, will act as follows—<br>*a.* Closes the case (see para 4–22 and 4–23 for homosexual conduct). (Prior to closing cases initiated under para 4–18*a*(3) or (4), CG, PERSCOM, will coordinate with the initiating official.) (The GOSCA may only close a case that he or she initiated.)<br>*b.* Expeditiously forwards the appropriate application and all elimination papers directly to CDR, PERSCOM (TAPC–PDT–PM), if the officer elects one of the options in step 2*a* through *c* of this table. (When the GOSCA is not the GCMCA, furnishes a copy to the GCMCA.) The forwarding endorsement includes the direct point of contact for the elimination action (to include name and telephone number). Informs the MACOM of the action.<br>*c.* If the officer declines to elect an option, refer the case to a Board of Inquiry. The GOSCA is authorized to appoint a field Board of Inquiry without referral to PERSCOM. The GOSCA notifies CDR, PERSCOM (TAPC–PDT–PM), by electronic message that a Board of Inquiry is being appointed and requests that two copies of the officer's OMPF and ORB be provided.<br>*d.* Determines whether medical board or physical evaluation board proceedings are pending or appropriate (para 4–3*a*) if the case is not closed. |
| 11 | C&S | The GOSCA, prior to forwarding the case to the Board of Inquiry, ensures that—<br>*a.* With the exception of business entries and official records and reports, health records, and CID investigation reports, all statements submitted, including reports of the investigation, are under oath or affirmation. This does not apply when a witness is dead, mentally incompetent, or missing, or when the exigencies of the service preclude obtaining the officer's statement in affidavit form.<br>*b.* Documents are legible and reproducible.<br>*c.* The statement submitted by the officer is made a part of the record. |
| 12 | C&S | The GOSCA forwards the case to the Board of Inquiry. The Board of Inquiry will be completed no later than 90 calendar days from the date that the GOSCA directs that a Board of Inquiry be conducted. |
| 13 | C&S | The GOSCA forwards the Board of Inquiry proceedings to the appropriate MACOM no later than 30 calendar days after the board's adjournment. This time limit must be met. |
| 14 | C&S | The MACOM forwards the board's proceedings to CDR, PERSCOM (TAPC–PDT–PM), no later than 60 calendar days after the board's adjournment. This time limit must be met. |
| 15 | C&S | The GOSCA, when a Board of Inquiry recommends retention, closes the case, notifies the officer in writing, and notifies CDR, PERSCOM (TAPC–PDT–PM), that the officer has been retained by the Board of Inquiry and of the date of the officer's notification. Forwards the board's proceedings (original copy only, either verbatim or summarized transcript) with a copy of the officer's notification memorandum through the appropriate MACOM to CDR, PERSCOM (TAPC–PDT–PM). |
| 16 | C&S | The GOSCA, when a Board of Inquiry recommends elimination, closes the case if retention is appropriate (only for eliminations initiated by a GOSCA for an officer assigned or attached to his or her command (unless specifically withheld by HQDA)) and complies with step 15 above. |
| 17 | C&S | The GOSCA, when the Board of Inquiry recommends elimination or it was initiated under paragraph 4–18*a*(1), (3), or (4), completes the following administrative actions:<br>*a.* Furnishes the officer a copy of the Board of Inquiry report and obtains a receipt of acknowledgement.<br>*b.* Gives the officer the options listed in step 2*a* through *c* of this table.<br>*c.* Advises the officer that—<br>(1) He or she may submit an appellate brief and statement within 7 calendar days after receipt of the Board of Inquiry report or proceedings.<br>(2) The entire case will be considered by a Board of Review and the officer will be entitled to a copy of the Board of Review report if the officer so desires.<br>(3) If the Board of Review determines that the officer should not be retained, the case will be referred to the Secretary of the Army for final action. If the Board of Review determines the officer should be retained, the case will be closed. In either event, the officer will be notified at the earliest and practicable time by CG, PERSCOM.<br>*d.* Have the officer undergo a separation physical examination (para 1–22). |



App. 7

Table 4–1
Processing elimination of a nonprobationary officer—Continued

| Step | Work center | Required action |
|---|---|---|
| | | *e.* Establish internal suspense controls to ensure expeditious processing of the separation physical examination. |
| 18 | C&S | The GOSCA, when a Board of Inquiry recommends elimination (after completing the administrative action required in step 17 above), forwards by personal endorsement the original report of the Board of Inquiry proceedings to the MACOM commander including— *a.* Recommendation of approval or disapproval of the Board of Inquiry's recommendation (state reason(s) when disapproval is recommended). The GOSCA may recommend retention when elimination is recommended by the board. *b.* A statement that the officer was furnished a copy of the Board of Inquiry report and whether the officer desires a copy of the Board of Review report. *c.* A recommendation of the type of discharge to be issued. (Only applicable where the officer was required to show cause for retention for reasons indicated in paragraph 4–2*b* and provided the officer is not eligible for retirement under chap 6.) The recommendation of the type of discharge may be more favorable but may not be less favorable than that recommended by the board. *d.* The officer's appellate brief (if submitted). The GOSCA must include a statement in the forwarding memorandum that the brief was reviewed and may submit any other appropriate comments concerning the brief. Derogatory information that has not been previously provided to the respondent will not be added to the forwarding memorandum. |
| 19 | C&S | The MACOM commander, when a Board of Inquiry recommends elimination does as follows: *a.* Closes the case if retention is appropriate (only for eliminations initiated by a GOSCA for an officer assigned or attached to his or her command (unless specifically withheld by HQDA)). *b.* If elimination is appropriate or if elimination was initiated under paragraph 4–18*a*(1), (3), or (4)— (1) Forwards the Board of Inquiry proceedings to CDR, PERSCOM (TAPC–PDT–PM), recommending approval or disapproval of the Board of Inquiry's recommendations (state the reasons when disapproval is recommended). The MACOM may recommend retention when elimination is recommended by the Board of Inquiry. (2) Recommends the type of discharge to be issued. (Only applicable where the officer was required to show cause for retention for the reasons stated in para 4–2*b* and provided the officer is not eligible for retirement under chap 6.) The type of discharge recommended may be more favorable but may not be less favorable, than that recommended by the board. (3) Submits statement in the forwarding memorandum that the appellate brief (if submitted) was reviewed and may include any comments concerning the brief. Derogatory information that has not been previously provided to the respondent will not be added to the forwarding memorandum. (4) Personally signs the forwarding endorsement. |
| 20 | PPAA (TP/TA) | On receipt of separation instructions, takes action to separate the officer. Final release orders and forms cite regulatory authority and SPD as shown in AR 635–5–1. |

Section IV
Task: Process Elimination of a Probationary Officer

## 4–20. Rules for processing an elimination of a probationary officer

*a.* The rules for a nonprobationary officer (para 4–18) also apply to a probationary officer.

*b.* A probationary officer is—

(1) An RA commissioned officer with fewer than 5 years of ACS (10 USC 630).

(2) An RC officer who has fewer than 3 years commissioned service.

(3) A warrant officer who has fewer than 3 years service since original appointment in his or her present component.

*c.* If at any time during the processing of the recommendation, the officer no longer meets the probationary criteria stated above, the case will be processed under paragraph 4–18.

*d.* An officer identified for elimination may—

(1) Tender a resignation in lieu of elimination.

(2) Request discharge in lieu of elimination (RA officer only).

(3) Apply for retirement in lieu of elimination if otherwise eligible. (Format for voluntary retirement will be amended to specifically state that the application is submitted in lieu of elimination.)

*e.* Processing an officer's recommendation for elimination under this paragraph does not require referral to a Board of Inquiry or a Board of Review unless the officer declines to elect one of the options listed above and an Other Than Honorable Discharge is recommended.

*f.* If the officer declines to elect one of the options listed in *d* above and if an Honorable or General Discharge (Under Honorable Conditions) is recommended, CG, PERSCOM, will forward the case to the Secretary of the Army for final decision.

*g.* If the officer declines to elect one of the options listed in *d* above and if an Other Than Honorable Discharge is recommended, the case will be processed as if the officer was a nonprobationary officer.

*h.* When appropriate, CG, PERSCOM, will forward the case to the ASA (M&RA).

*i.* The ASA (M&RA) may direct—

(1) Retention.

(2) Discharge.

(3) Referral to a Board of Inquiry.

*j.* Action by the ASA (M&RA), acting for the Secretary of the Army, is final.

*k.* When the ASA (M&RA) directs the officer's retention, PERSCOM (TAPC–PDT–PM) will close the case and notify the officer through the GOSCA and furnish a copy to the appropriate MACOM.

*l.* When the ASA (M&RA) approves the elimination, PERSCOM (TAPC–PDT–PM) will forward separation instructions to the appropriate PSC/MPD.

*m.* When the ASA (M&RA) refers the case to a Board of Inquiry, procedures in table 4–1, steps 10 through 19 will be followed.

## 4–21. Steps for processing an elimination of a probationary officer

The required steps for processing the elimination of a probationary officer are as shown in table 4–2.

Table 4–2
Processing elimination of a probationary officer

| Step | Work center | Required action |
|---|---|---|
| 1 | PPAA BN S–1 C&S | The initiating official (para 4–18*a*(1) or (2) or (3) or (4) above) notifies the officer in writing that elimination action has been initiated and that he or she is required to show cause for retention on AD (fig 4–1). Initiates a DA Form 268. (See AR 600–8–2.) |



App. 8

Army Regulation 635–40

Personnel Separations

# Physical Evaluation for Retention, Retirement, or Separation

Headquarters
Department of the Army
Washington, DC
15 August 1990

UNCLASSIFIED

recorded by an addendum to the original MEBD or by a new MEBD and furnished to the PEB.

### Section II
### Initiation of Medical Evaluation

#### 4–6. Referral by HQDA
The Commander, PERSCOM, upon recommendation of TSG, may refer a soldier to the responsible MTF for medical evaluation when a question arises as to the soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability.

#### 4–7. Referral by commanders of MTFs
Commanders of MTFs who are treating soldiers in an assigned, attached, or outpatient status may initiate action to evaluate the soldier's physical ability to perform the duties of his or her office, grade, rank, or rating.

#### 4–8. Referral by commanders
When a commander believes that a soldier of his or her command is unable to perform the duties of his or her office, grade, rank, or rating because of physical disability, the commander will refer the soldier to the responsible MTF for evaluation. The request for evaluation will be in writing and will state the commander's reasons for believing that the soldier is unable to perform his or her duties. DD Form 689 (Individual Sick Slip) may be used for such referral (AR 600–6). Commanders of Reserve units not on active duty will be guided by AR 40–501 and chapter 8 of this regulation.

### Section III
### Medical Processing Related to Disability Evaluation

#### 4–9. Medical examination
The MTF commander having primary medical care responsibility will conduct an examination of a soldier referred for evaluation. The commander will advise the soldier's commanding officer of the results of the evaluation and the proposed disposition. If it appears the soldier is not medically qualified to perform duty, the MTF commander will refer the soldier to a MEBD.

#### 4–10. The MEBD
MEBD's are convened to document a soldier's medical status and duty limitations insofar as duty is affected by the soldier's status. A decision is made as to the soldier's medical qualification for retention based on the criteria in AR 40–501, chapter 3. If the MEBD determines the soldier does not meet retention standards, the board will recommend referral of the soldier to a PEB. For MEBD's rules for documentation, recommendations, and disposition of the evaluated soldier, see AR 40–3, chapters 7 and 8.

#### 4–11. Narrative summary (NARSUM)
The NARSUM to the MEBD is the heart of the disability evaluation system.Incomplete, inaccurate, misleading, or delayed NARSUMs may result in injustice to the soldier or to the Army.

*a.* Physicians who prepare cases for the MEBD and PEB should use the VA Physician's Guide for Disability Evaluation Examinations (published by the VA)to describe physical defects. This helps to ensure consistency in reporting similar conditions and assists the boards of the disability system in their review and evaluation process. (See AR 40–3, chapter 8.)

*b.* In describing a soldier's conditions, a medical diagnosis alone is not sufficient to establish that the individual is unfit for further military service. The history of the soldier's illness, objective findings on examination, results of X-ray and laboratory tests, reports of consultations, response to therapy, and subjective conclusions with rationale must be addressed.

*c.* A correlation must be established between the soldier's medical defects and physical capabilities. (This is important when a chronic condition is the basis for referral to a PEB and no change in severity of the condition has occurred or when referral of the case to a PEB appears controversial.)

*d.* The date of onset of a medical impairment may be questionable because of relatively short military service and the nature of the impairment, for example, a mental disease. If so, the NARSUM should address the results of inquiry into the pre-service background (family, relatives, medical, and community) of the soldier in sufficient detail to overcome substantive question concerning the date of onset.

*e.* When a soldier is diagnosed with a mental disorder, the NARSUM must include a statement indicating whether the soldier is mentally competent for pay purposes and capable of understanding the nature of, and cooperating in, PEB proceedings.

*f.* NARSUMs will not reflect a conclusion of unfitness. Therefore, diagnoses must not be qualified by such terms as "unfitting", "disqualifying", "ratable", "not ratable".

*g.* When disclosure of medical information would adversely affect the soldier's physical or mental health, the NARSUM should include a statement to that fact.

*h.* The NARSUM should include the date of the physical examination conducted for purposes of physical disability evaluation.

*i.* MEBD proceedings from other than Army MTF's must be forwarded through the designated Army facility (AR 40–3, chap 7).

#### 4–12. Counseling soldiers who have been evaluated by a MEBD
*a.* The PEBLO will advise the soldier of the results of the MEBD. The soldier will be given the opportunity to read and sign the MEBD proceedings. If the soldier does not agree with any item in the medical board report or NARSUM, he or she will be advised of appeal procedures.

*b.* The decisions below are exclusively within the province of adjudicative bodies. Neither the PEBLO nor the attending medical personnel will tell the soldier that—

(1) The soldier is medically or physically unfit for further military service.

(2) The soldier will be discharged or retired from the Army because of physical disability.

(3) A given percentage rating appears proper.

(4) A LD decision is final (unless final approval has been obtained according to AR 600–8–1).

#### 4–13. Referral to a PEB
*a.* The MEBD will recommend referral to a PEB those soldiers who do not meet medical retention standards. Those who apply for COAD under the provisions of chapter 6 will be included. Do not refer soldiers to a PEB who request discharge under the provisions of chapter 5. A soldier being processed for nondisability separation will not be referred to a PEB unless the soldier has medical impairments that raise substantial doubt as to his or her ability to continue to perform the duties of his or her office, grade, rank, or rating.Soldiers previously found unfit and retained in limited assignment duty status under chapter 6, or a previous authority, will be referred to a PEB.

*b.* A soldier may provide additional information to the MTF commander to forward to the PEB. The information may be from the unit commander, supervisor, or other persons who have knowledge regarding the effect the condition has on the soldier's ability to perform the duties of the office, grade, rank, or rating.

*c.* Personnel processing actions for soldiers referred to a PEB will be according to appendix E.

#### 4–14. Psychiatric and spinal cord injury patients requiring continuing hospitalization
*a.* AR 40–3 provides for transfer of psychiatric and spinal cord injury patients to a VA medical facility.

(1) Psychiatric patients requiring continuing hospitalization may be transferred after completion of MEBD action. To ensure timely processing, the MEBD proceedings must be referred to the PEB immediately after transfer of the patient.