requirement to initially request a copy of the DA Form 2 and DA Form 2–1.

*o.* If available, a statement explaining the reason for reduction to the lower grade when the soldier is serving in a grade below the highest grade held. When the information is available, include a statement explaining the circumstance precluding advancement to private or private first class under the provisions of AR 600–200 (NGR 600–200 or AR 140–158 for soldiers in the Reserve Components) if—

(1) The current grade is private (pay grade E–1), and the soldier has completed more than 6 month's service.

(2) The current grade is private (pay grade E–2), and the soldier has completed more than 12 months service.

*p.* Copy of request for VA hospital bed designation, if applicable.

*q.* Copy of orders moving patient to a VA hospital for continued hospitalization, if applicable.

*r.* Copy of letter(s) to proper state authorities, as applicable.

*s.* Copy of the request for Statement of Service when soldier is a member of the Reserve Components (fig 4–1).

*t.* Copy of latest DA Form 3686–1 (Army Leave and Earnings Statement).

### 4–16. Rehospitalization of disabled soldier

A soldier who is rehospitalized while undergoing disability evaluation or awaiting final disposition must be evaluated to decide if his or her condition may change the findings or recommendations of the PEB. If the soldier's condition may change the findings and recommendations, the MTF commander will notify the PEB president. Further adjudicative and review action may be suspended pending resolution. When the soldier has received optimum hospital improvement for disposition purposes, the hospital commander will prepare an addendum to the original medical board. The addendum will be forwarded to the PEB with any other pertinent records unless some other disposition is indicated. The PEB must be notified if other disposition terminates disability processing.

## Section IV
## Physical Disability Evaluation

### 4–17. PEBs

*a. Purpose.* PEBs are established to evaluate all cases of physical disability equitably for the soldier and the Army. The PEB is not a statutory board. Its findings and recommendations may be revised. It is a fact-finding board for the following:

(1) Investigating the nature, cause, degree of severity, and probable permanency of the disability of soldiers whose cases are referred to the board.

(2) Evaluating the physical condition of the soldier against the physical requirements of the soldier's particular office, grade, rank, or rating.

(3) Providing a full and fair hearing for the soldier as required by section 1214, title 10 United States Code (10 USC 1214).

(4) Making findings and recommendations required by law to establish the eligibility of a soldier to be separated or retired because of physical disability (10 USC 61).

*b. Composition.* PEBs will consist of at least three members(president, personnel management officer, and a medical member). PEB members will be experienced officers who are thoroughly familiar with board procedures.The CG, USAPDA will appoint PEB members from assigned personnel for full-time duty. Part-time members may be appointed by the CG, USAPDA with the consent of the commander having jurisdiction over the individual to be appointed-.Part-time members supplement or temporarily replace full-time members, as needed, for the prompt processing of disability cases. The president and personnel management officer will be field grade officers (other than Medical Corps) on active duty in the U.S. Army (other than active duty for training).The medical member will be either an officer of the U.S. Army Medical Corps or a Department of the Army civilian (DAC) physician with previous U.S. Army Medical Corps experience. The medical member must not have served in any capacity with the MEBD that referred the soldier to the PEB. If possible, the voting members should be senior to the person being evaluated. To ensure fair and independent decision making, the PEB president will not rate the other members of the board for purposes of evaluating job proficiency.

*c. President of PEB.* The appointing authority will name a senior commissioned officer as president of each PEB. The senior non-medical member will act as president when the president is absent. The president has full responsibility for the board. He will ensure that law, regulations, and DA adjudicative principles are followed.

*d. Reserve Component member.* When a soldier of the Reserve Components (RC) is being evaluated, one of the PEB members must be a Reserve officer who is otherwise qualified for duty as a member of the PEB.

*e. Disqualification.* PEB voting members must disqualify themselves if they have had a personal or professional relationship with the soldier being evaluated.

*f. Disability evaluation of PEB members.* When members of the PEB are referred into the physical disability system, they will be evaluated by other than the PEB to which assigned. After PEB evaluation such cases will be forwarded to USAPDA for review.

*g. Female or minority representation.*

(1) When requested, the PEB will substitute a female or minority soldier of the same minority group for one of the regular members of the board, if the requested representation is reasonably available. Request for female or minority representation should be made in writing at the time of request for a formal hearing. The substitute must meet the qualifications for regular voting members. The PEB president will determine if the requested representation is reasonably available. The proceedings will include a statement of the request and whether the representation was or was not provided, that is, "Minority (or female) representation was requested and provided" or "Minority representation (or female) was requested and not reasonably available and, therefore, was not provided."

(2) When an enlisted soldier is being evaluated, the PEB will upon written request of the soldier, include enlisted representation if reasonably available. Request for enlisted representation should be in writing at the time of request for a formal hearing. The enlisted representation must be in the ranks of sergeants first class to sergeants major and senior to the soldier being evaluated. The PEB president will determine if enlisted representation is reasonably available. The proceedings will include a statement of the request and whether the representation was or was not provided as described in paragraphg(1) above. When enlisted representation is provided, the PEB will increase to five members, all of whom will have a vote. The fifth member may be enlisted or officer.

*h. Counsel.* An Army attorney will be appointed as counsel to represent soldiers at formal PEB hearings. The attorney will not be a voting member of the PEB or an advisor to the PEB, but will represent the soldier as required when the soldier requests a formal hearing. The attorney will counsel the soldier until formal disability proceedings are completed. The appointed counsel may also advise PEBLOs of MTFs that refer cases to the PEB.

*i. Recorder.* The appointing authority will assign a permanent recorder for the PEB. The recorder will be a commissioned officer, warrant officer, or civilian employee of equivalent grade of any branch or career field except those listed below.

(1) Medical Corps.
(2) Dental Corps.
(3) Army Nurse Corps.
(4) Army Medical Specialist Corps.
(5) The Judge Advocate General's Corps.

*j. Reporter.* The appointing authority will assign permanent qualified reporters to the PEB.

*k. Support.* A PEB is a tenant of the installation where located. The CG, USAPDA enters into agreements providing for administrative and logistical support with installation and MTF commanders.

### 4–18. Initial processing

*a.* Upon receipt of a case by the PEB, the case file will be reviewed to ensure it is complete. If documents are missing, action

will be taken to complete the file. When the case file is complete, it may be referred to the board for evaluation.

*b.* The PEB may return a case to the MTF commander for additional information. However, efforts should be made to resolve all issues without returning the case. When circumstances permit resolution of the problem by discussion, a memorandum of the discussion must be included in the case file as an exhibit. When return of the case to the MTF is necessary, the reason for its return will be clearly stated in the letter of transmittal. Examples of reasons for which a case may be returned are as follows:

(1) Further physical examination, clarification, or preparation of additional records is required.

(2) Additional description and information by the medical board of the soldier's defects and their effect on the soldier's functional ability to perform duty are necessary for proper PEB evaluation of the case.

(3) Further observation, evaluation, and reconsideration by a medical board is required.

(4) Additional information from the command concerning the soldier's ability to perform the duties of his or her office, grade, rank, or rating must be provided for proper PEB evaluation of the case.

(5) The soldier has been AWOL for 10 days or more.

### 4–19. PEB decisions—common criteria

*a. Determinations.* The voting members of a PEB make findings and recommendations in each case on the basis of the instructions set forth in paragraphs *b* thru *q* below. The board decides all questions by majority vote. All findings must be based on a preponderance of the evidence. Recommendations must be supported by the findings. In summary, the board determines the following:

(1) Whether the soldier is physically fit or unfit to perform the duties of the soldier's office, grade, rank, or rating.

(2) Whether the disability is of a permanent nature.

(3) Whether the disability meets the criteria established by law for compensation. This determination considers the following questions:

*(a)* Was the disability incurred or aggravated while the soldier was entitled to basic pay (when the soldier is on active duty for more than 30 days)?

*(b)* Was the disability the result of misconduct or willful neglect or incurred during a period of unauthorized absence?

*(c)* Was the disability incurred in LD during a time of war or national emergency or incurred in LD after 14 September 1978?

*(d)* In the case of a soldier ordered to active duty for 30 days or less or ordered to duty under section 270(b), title 10, United States Code (10 USC 270(b)), was the disability the proximate result of performing active duty or inactive duty training? If the disability results from a disease, was it incurred prior to or after 15 November 1986 (chap 8).

(3) Whether the disability meets the criteria for exemption of disability retired or severance pay from gross federal income.

(4) Whether the disability meets the criteria for Civil Service preference eligible status and exemption from the Dual Compensation Act.

*b. Limitations of PEB approval authority.* The PEB may approve for the SA all but the following cases:

(1) General and medical corps officers found unfit.

(2) Informal proceedings when the soldier nonconcurs, waives a formal hearing, and submits within the required time frame a statement explaining his or her reasons for disagreement. The PEB will forward the proceedings to USAPDA for review when its consideration of the rebuttal does not result in a change of the PEB findings and recommendations.

(3) Formal proceedings when the soldier nonconcurs with any finding or recommendation, submits within the required time frame a statement explaining his reasons for disagreement, and the PEB does not modify its decision as requested by the soldier.

(4) All cases in which a minority report is submitted.

(5) Cases of members assigned to a PEB.

(6) Any case previously forwarded to USAPDA for review and approval, which was returned to the PEB for reconsideration or rehearing.

*c. Additional documents.* Any member of the PEB, the soldier, or counsel acting in the soldier's behalf may request additional documents. The PEB president will determine if the requested information is required for proper adjudication of the case. If it is determined that the additional information is required, the PEB president will suspend consideration of the case until an effort has been made to obtain the requested information. If requested documents cannot be obtained, a memorandum for record will be included in the case file reflecting all efforts made to obtain the information.The case will then be adjudicated on the basis of the available evidence.

*d. Decision on fitness.*

(1) The first and most important determination made by the PEB is whether the soldier is physically fit or unfit to perform the duties of the soldier's office, grade, rank, or rating. All other actions are directly or indirectly tied to this one finding.

(2) The determination of physical fitness will be made by relating the nature and degree of physical disability of the soldier to the requirements and duties that the soldier may reasonably be expected to perform in his or her primary MOS.

(3) Changes in medications or other therapy for chronic conditions do not alone establish deterioration of a chronic condition. Unless recent, significant deterioration has occurred or unexpected adverse results are evident from the new treatment, such changes are not a basis for finding a soldier unfit.

*e. Conditions which existed prior to entry in service.*

(1) *Unchanged physical defects.* A soldier will not be found unfit because of physical defects that—

*(a)* Were known to exist at the time of acceptance for military service,

*(b)* Have remained essentially unchanged since acceptance,

*(c)* Have not interfered with performance of effective military service.

(2) *Application of accepted medical principles.* After a soldier is accepted for active duty, discovery of an impairment causing physical disability is not conclusive evidence that the condition was incurred after acceptance. Consideration must also be given to accepted medical principles in deciding whether a medical impairment was the result of, or aggravated by, military service while the soldier was entitled to basic pay; or in the case of a Reservist on active duty for 30 days or less, whether the disability was the proximate result of performing active duty or inactive duty training. Accepted medical principles may not be excluded in making these decisions even when there is no other evidence indicating the impairment was present before the soldier's entry on active duty. The soldier's length of service must be considered when determining service aggravation. When a decision or recommendation of a PEB is based primarily on accepted medical principles, the principle must be cited as part of the rationale.

(3) *Service aggravation.*

*(a)* The PEB may decide that a soldier's physical defect existed prior to service, or inactive duty for training, or resulted from a nonservice connected condition (not in LD). If so, the board must further consider whether military service aggravated the unfitting defect.

*(b)* If the soldier's military service makes the condition worse or hastens the natural progression of the condition beyond the normal or anticipated rate had he or she not been exposed to such service, a finding of aggravation must be considered. AR 600–8–1, chapter 41, contains guidance on service aggravation. When the PEB decides that a condition has been aggravated by service, the PEB will consider the degree of disability that is in excess of the degree existing at the time of entrance into service. (app B).

(4) *Conditions not aggravated by service.* Soldiers who are unfit by reason of physical disability neither incurred nor aggravated during any period of service while entitled to basic pay, or as the proximate result of performing active duty or inactive duty training,

but which effects duty performance, will be separated for physical disability without entitlement to benefits.

(a) Enlisted soldiers who are eligible for discharge under chapter 5, may be processed under the provisions of that chapter upon their application.

(b) Soldiers who meet the criteria and apply for COAD as set forth in chapter 6 will be processed under the provisions of that chapter.

(c) RC soldiers may request transfer to the Retired Reserve if eligible.

*f. Entitlements to benefits.* The following rules apply when deciding whether a soldier is entitled to Army disability retired or severance pay.

(1) Sections 1201 through 1203, title 10, United States Code (10 USC 1201 thru 1203) establish the criteria for compensation for soldiers of the Regular Army or soldiers of the RC ordered to active duty for more than 30 days(other than for training under 10 USC 270(b)). These criteria include the following:

(a) Disability was incurred while the soldier was entitled to basic pay.

(b) The disability is not the result of the soldier's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and either the soldier has at least eight years of active federal service for retirement; the disability is the proximate result of performing active duty; the disability was incurred in the line of duty in time of war or national emergency; or the disability was incurred in line of duty after September 14, 1978.

(2) Sections 1204 through 1206, title 10, United States Code (10 USC 1204 thru 1206) establish the criteria for entitlements for soldiers of the RC ordered to active duty for 30 days or less or under 10 USC 270(b) (chap 8).

(3) Decision of the Comptroller General of the United States, B-205953, dated 18 June 1982, has ruled that a member in excess leave status is not entitled to basic pay and, therefore, is not entitled to any disability benefits under the provisions of 10 USC 61.

(4) When a finding of unfitness depends on the combined effect of two or more disabilities, each disability must meet the above eligibility requirements to qualify the soldier for disability retirement or severance pay.If one of the combined disabilities that, in combination, renders the soldier unfit does not meet the requirements for entitlement to benefits, the soldier is not eligible for disability benefits from the Army. For example, a soldier may be found unfit because of a disability determined to be EPTS. That soldier may also have a disability that alone is not unfitting but when considered with the EPTS disability would be unfitting. Such a soldier may not be found unfit because of the first disability (EPTS) and thereafter rated for the second disability (which is only unfitting in combination with the first disability).

(5) If the soldier is entitled to disability benefits, the PEB decides the rating for each compensable disability from the VASRD, as modified by appendix B.

(6) When a soldier is eligible for disability benefits, any other disability is compensable if—

(a) The criteria in (1) and (2) above are met.

(b) The disability, in itself, is unfitting or contributes to the unfitting condition.

*g. Application of LD policy.*

(1) Normally PEBs accept the validity of informal and formal LD investigations and reports. However, the PEB may question the validity of a favorable LD determination. If so, the PEB will conditionally adjudicate the case as if a favorable line of duty decision is correct. Unless the case is subject to review by USAPDA, the PEB will forward the case to PERSCOM(TAPC-PED-S), requesting a review of the LD determination. The following comment will be made in the remarks section of the DA Form 199. "This PEB questions the validity of the line of duty decision rendered in your case. Your case has been processed assuming the decision is valid. Should an unfavorable line of duty determination result, you will not be eligible for entitlement to benefits under the Army disability system." The soldier will be informed of the conditional processing and advised that final disposition by HQDA will be held in abeyance until the LD decision is resolved.

(2) It is not intended that PEBs act as hearing authorities for soldiers' appeal of LD determinations. AR 600-8-1 sets out LD appeal procedures. However, if during a formal hearing, the soldier or his or her counsel presents evidence of error in the LD finding, the PEB shall consider such evidence. If the PEB believes the evidence warrants reconsideration of the LD finding, a referral of the case to PERSCOM (TAPC-PED-S) for review of the LD determination by TAG is authorized. When forwarding a case for such review, the PEB will explain in the forwarding memorandum its rationale for determining that the new evidence raises a question as to the correctness of the LD determination. The soldier and his or her counsel will be advised of the referral and that the case has been conditionally adjudicated as if a favorable LD decision has been made. If the PEB determines that the evidence does not provide reason to question the LD determination, the PEB will inform the soldier and the counsel of this fact and that the case was adjudicated based upon the approved LD determination.

(3) The deputy commander, PEB president, or alternate PEB president have the authority to make a finding of "in line of duty—not due to own misconduct" in the following categories below when an LD determination has not been made at the time a case is referred to a PEB. This authority may only be used when the PEB is convinced no further investigation is required and the weight of the evidence in the case indicates that the injury was not due to misconduct or willful negligence, was not incurred during a period of unauthorized absence, and that the use of alcohol or drugs was not involved.

(a) Training accidents to include maneuvers and physical training.

(b) Unit organized sports and recreational activities.

(c) Individual jogging and sports activities.

(d) Household accidents.

(e) Slip-and-fall injuries.

(f) Injuries incurred in Vietnam, Cambodia, and in other geographical areas where U.S. Army soldiers are not longer present.

(4) If the case is lacking an LD determination and it does not fall into one of the above categories, the PEB will conditionally adjudicate the case as if a favorable decision has been made. The applicable advisory statement described in para 4-19*l*(2) will be included on the Form 199. The soldier will be informed of the conditional processing and advised that final disposition by HQDA will be held in abeyance until the LD decision is resolved.

*h. Deciding permanency of disability.*

(1) Based on accepted medical principles, a disability is"permanent", and a soldier who is otherwise qualified will be permanently retired, if—

(a) The defect has become stable so that, with reasonable expectation, the compensable percentage rating will remain unchanged during the following 5-year period.

(b) The compensable percentage rating is 80 percent or more and the disability will probably not improve so as to be ratable at less than 80 percent during the following 5 years.

(2) A soldier is placed on the TDRL if fully qualified for permanent retirement except that the disability "may be permanent." The soldier may not be placed on the TDRL for any other reason. Based on accepted medical principles, a disability will be considered as "may be permanent" if it has not stabilized, and one of the following occurs:

(a) The soldier may recover so as to be fit for duty.

(b) The defect is expected to change in severity within the next 5 years so as to change the compensable percentage rating.

*i. Percent of disability.* After establishing the fact that a soldier is unfit because of physical disability, and that the soldier is entitled to benefits, the PEB must decide the percentage rating for each unfitting compensable disability. Percentage ratings reflect the severity of the soldier's medical condition at time of rating. The VASRD, as modified by appendix B of this regulation, is used in deriving percentage ratings. The first 31 paragraphs of the VASRD, which provide general policies, do not apply and have been replaced by

section I and II of appendix B of this regulation.PEBLOs, raters, and reviewers must be familiar with the VASRD, including introductory paragraphs to sections and italicized footnotes. Appendix B sets forth Army policies (including modifications) on use of the VASRD when rules or ratings provided by the VA schedule are improper for Army use or do not provide a rating basis.

*j. Armed conflict—instrumentality of war.* Certain advantages accrue to soldiers who are retired for physical disability and later return to work for the Federal Government when it is determined that the disability for which retired was incurred under specific circumstances. These advantages concern preference eligible status within the Civil Service system (section 3501, title 5, United States Code (USC 3501)) and exemption of retired veterans to the provisions of the Dual Compensation Act (section 5532, title 5, United States Code (5 USC 5532)). As part of its findings, the PEB will make an entry in block 10A of DA Form 199 to reflect its determination as to whether the disability was incurred within the specified parameters discussed below.

(1) The disability resulted from injury or disease received in LD as a direct result of armed conflict and which itself renders the soldier unfit. A disability may be considered a direct result of armed conflict if—

*(a)* The disability was incurred while the soldier was engaged in armed conflict, or in an operation or incident involving armed conflict or the likelihood of armed conflict; while the soldier was interned as a prisoner of war or detained against his will in the custody of a hostile or belligerent force; or while the soldier was escaping or attempting to escape from such prisoner of war or detained status.

*(b)* A direct causal relationship exists between the armed conflict or the incident or operation, and the disability.

(2) The disability is unfitting, was caused by an instrumentality of war, and was incurred in LD during a period of war as defined by law. The periods of war as defined in 38 USC 101 and 301 are shown below: (The statute does not include the action in Grenada).

*(a) World War II.* The period beginning 7 December 1941 and ending 31 December 1946 and any period of continuous service performed after 31 December 1946 and before 26 July 1947 if such period began before 1 January 1947.

*(b) Korea.* The period beginning 27 June 1950 and ending 31 January 1955.

*(c) Vietnam.* The period beginning 5 August 1964 and ending 7 May 1975. (The "Dominican Intervention" occurred during this period.)

*k. Disability compensation excluded from gross income.*

(1) *The Tax Reform Act of 1976 (TRA 76).* Prior to the enactment of TRA 76 (section 104, title 26, United States Code (26 USC 104)), military disability retired pay or disability severance pay was excluded from gross income for Federal tax purposes. (Disability retired pay is that portion of retired pay based on a person's disability percentage rating. Disability severance pay is a lump sum payment based on years of service.) With the passage of TRA 76, one of two conditions listed below must be satisfied for military disability retired or severance pay to be exempt from Federal taxation.

*(a)* On 24 September 1975, the individual was a member (including RC membership) of the armed forces of any country, the National Oceanic and Atmospheric Administration (NOAA and formerly the Coast and Geodetic Survey), the U.S. Public Health Service (USPHS), or was under binding written agreement to become such a member. (Soldiers retired or separated by reason of disability on or before the cited date are not affected by TRA 76.)

*(b)* The disability pay is awarded by reason of a combat-related injury. Within the meaning of 26 USC 104, combat-related injuries cover those disabilities attributable to the special dangers associated with armed conflict or the preparation or training for armed conflict.

*1.* A soldier may be performing extrahazardous service even if not directly engaged in combat. Extrahazardous service includes but is not limited to the following activities: Aerial flight duty, parachute duty, demolition duty, experimental stress duty, and diving duty.

*2.* Conditions simulating war include, but are not limited to, the following activities: performance of tactical exercises such as the squad or platoon in the assault; airborne operations; leadership reaction courses;grenade and live fire weapons practice; bayonet training; hand-to-hand combat training; repelling; and negotiation of combat confidence and obstacle courses.

*3.* Unlike the provisions for exemption from the Dual Compensation Act(5 USC 5532) and the provisions for Civil Service retention preference (5 USC 3501), the injury resulting from an instrumentality of war need not have occurred during a period of war as defined by law.

(2) *Entries on DA Form 199.* The entries made on DA Form 199, blocks 10B and 10C, concern disability compensation excludable from gross income.

*(a)* If the PEB can establish the fact (from available records) that the soldier was or was not a member or obligated to become a member of one of the designated organizations on 24 September 1975, the board will make the proper entry in block 10B. If such a decision cannot be made, the PEB will enter a statement after the last entry in block 8 to reflect that fact and leave block 10B blank.

*(b)* In block 10C, the board will record its determination of whether the injury was combat-related as defined by 26 USC 104.

(3) *VA compensation.* VA compensation is exempt from income tax. An individual may waive disability retired pay to receive VA compensation, or receive a combination of the two, or receive military retired pay and exclude from his or her gross income an amount equal to the VA entitlement. The Army does not make the determination as to the probable VA disability compensation. The individual must apply to the VA and receive a disability rating.

*l. Recording of rationale and advisory statements.*

(1) *Rationale.* The PEB will include the rationale for the findings and recommendations on the DA Form 199 along with a statement of the reasons for finding a soldier fit or unfit, and if unfit, the basis for the rating. The rationale will support specifically, the finding that the soldier was, or was not, capable of performing the duties of his or her office, grade, rank or rating. A significant variance may occur between the disability described in block 8 of DA Form 199 and diagnoses or degree of impairment reflected in the MEBD proceedings. If so, explain the variance completely in block 16.

(2) *Advisory statements.* The DA Form 199 will inform the soldier of legal or administrative requirements that impact on the soldier's disability benefits in the situations described below.

*(a)* When the recommendation of the PEB is placement or retention on the TDRL: "Failure to report for a scheduled periodic examination or to inform PERSCOM of a change in address will result in the suspension of retired pay.Address changes must be reported to: Commander, PERSCOM, ATTN: TAPC–PDB, 2461 Eisenhower Avenue, Alexandria, VA 22331–0477."

*(b)* When a case has been adjudicated pending completion of a LD:"Your case has been conditionally adjudicated pending the receipt of a favorable LD determination. Should an unfavorable LD determination result, you will not be eligible for benefits under the Army disability system."

*(c)* When a soldier has a rating of less than 30 percent and has at least 20 qualifying years for retirement for non-regular service: "You have the option of accepting discharge with disability severance pay and forfeiting retirement for non-regular service; or you may request transfer to the Retired Reserve and receive retired pay at age 60. According to sections 1209 and 1213, title 10 United States Codes (10 USC 1209 and 1213), you will forfeit all rights to retired pay if you accept severance pay instead of transfer to the Retired Reserve."

*m. Minority reports.* If a voting member of the PEB disagrees with the findings and recommendation of the other members, that member may prepare a minority report explaining wherein and why he or she differs with the other members. The minority report will be included in the record of the proceedings and referenced in the remarks section of DA Form 199. A copy will be provided to the soldier and his or her counsel.

*n. Continuances.* A PEB may continue a hearing upon its own motion, at the request of the recorder, or at the request of the soldier

or the soldier's counsel, if the board determines a continuance is needed for a full and fair hearing. Examples of proper reasons for continuance are the need for further medical evaluation and the need to obtain additional records, reports, or statements as evidenced in the case. When a continuance is granted, only one DA Form 199 will be used. Data such as the date, fact, and time of recess and reconvening, and changes in membership will be recorded. If a change of membership is involved, the record will show the reason for the change and that the new member became familiar with the case before proceeding with the hearing.

*o. Recording, assembly, and transmittal of reports of proceedings.*

(1) The findings and recommendations of the PEB are recorded on DA Form 199. This form is distributed on a limited issue basis from the US Army Publications Distribution Center to the PEB's. Instructions for completion of the form are at appendix D. The recorder will initial erasures and corrections involving any substantive matters in the proceedings.

(2) Records of PEB proceedings will be assembled as indicated in table 4–1.

*p. Reconvened and improperly constituted boards.*

(1) *Reconvened board.* Before final action on a case, the proceedings of a properly constituted PEB may be returned to the same board for further consideration of findings, correction of errors, or other reasons. When proceedings are returned, the reconvened board will include as many members of the original PEB as possible. However, proceedings may be conducted properly even though no members of the original board are available. The board must be otherwise properly constituted. The new members must have acquainted themselves with the records of the case before reconvening the board. When reconvening the board with the same members would be prejudicial to the soldier, a new board with all new members will be convened. The case may be transferred to another PEB for this purpose. Proceedings will be the same (formal or informal) as were used at the original hearing and any transcript of the prior hearing will be included with the original and USAPDA copy of the case. If a formal hearing is held, the soldier (his or her next-of-kin or legal guardian if he or she represents the soldier's interests) will be notified of the new hearing date.Should the PEB reconsider the case and change its findings or recommendations, a new DA Form 199 will be prepared and referred to the soldier for his or her election. Despite the procedures employed, the soldier (next-of-kin or legal guardian) will be notified of the results if a change is made in the disposition or benefits from those originally recommended. The soldier will be afforded the opportunity to consult with counsel and to rebut any change. When new findings are made by the PEB, they become the only findings on which later action will be taken. If the reconsideration results in no change, a new DA Form 199 will not be prepared but the fact that the case was reconsidered will be reflected in block 16.

(2) *Improperly constituted boards.* Proceedings of an improperly constituted PEB are null and void. Whenever a hearing is discovered to have been conducted by an improperly constituted PEB, the record of proceedings less the DA Form 199 will be forwarded for the new hearing by a properly constituted board.

*q. Action when soldier is AWOL or dies during disability processing.*

(1) If a PEB receives information that a soldier whose case is in the disability system is AWOL, case processing will be suspended. If the soldier returns to military control within 10 days, processing may be resumed.Processing will include consideration of any new or increased disability incurred during the period of AWOL. Should the soldier not return to military control within 10 days, the case file will be returned to the MTF. If information that a soldier is AWOL is received after the case file has been forwarded for disposition, the PEB will promptly notify the USAPDA.

(2) If information is received that a soldier being processed for physical disability has died, disability processing will be discontinued and the case file will be returned to the MTF.

*r. Disposition.* PEB's will recommend disposition of the case according to the rules stated in table 4–2.

### 4–20. Informal board

*a. Procedure.* Each case is first considered by an informal PEB. Informal procedures reduce the overall time required to process a case through the disability evaluation system. An informal board must ensure that each case considered is complete and correct. The rapid processing intended by the use of informal boards must not override the fundamental requirement for detailed and uniform evaluation of each case. All evidence in the case file must be closely examined and additional evidence obtained if required. The PEB will consider each case using the policies of chapter 3 and the criteria provided in paragraph 4–19.

*b. DA Form 199.* The findings and recommendations of the informal PEB are recorded on DA Form 199 according to the procedures described in appendix D. If the soldier is on active duty, the original form, signed by the president of the PEB, the soldier's copy, and the MTF's copy will be promptly forwarded to the MTF commander concerned using the fastest means of transmission available. If the DA Form 199 is not received by the PEBLO, the PEB will prepare new copies and forward them promptly.

*c. Soldier's election.*

(1) DA Form 199, block 13, lists the election options available to the soldier for informal determinations. These include the following:

*(a)* Concurrence with the findings and recommendations and waiver of a formal hearing.

*(b)* Nonconcurrence with the findings and recommendations; submission of a rebuttal explaining the soldier's reasons for nonconcurrence; and waiver of a formal hearing.

*(c)* Demand for a formal hearing with or without personal appearance.

*(d)* Choice of counsel if a hearing is demanded.

(2) Soldiers indicate their elections by checkmark in block 13 and sign and date the original and MTF copies of DA Form 199.

(3) The election must be received at the PEB within 10 days from the soldier's receipt of the informal findings. See paragraph 4–20*f* below for procedures when elections and rebuttals are received after the required time.

*d. PEBLO.* In all informal cases, the PEBLO of the MTF having control of the soldier will be the counselor for the soldier. As such, the PEBLO is primarily concerned with the soldier's interests. The PEBLO should consult with, and obtain advice as needed from the local legal office, the legal counsel at the nearest PEB, or the Agency Judge Advocate. Upon receipt of the informal proceedings, the PEBLO will accomplish the following actions:

(1) Counsel the soldier according to appendix C. The soldier will be made fully aware of the election options available to him or her, the processing procedures, and the benefits to which he will be entitled if separated or retired for physical disability. As needed, the PEBLO should consult with the local finance officer and the installation Retirement Services Officer (RSO) when counselling on benefits. DA Form 5892–R (PEBLO Estimated Disability Compensation Worksheet) will be provided to the soldier as an estimate only of disability compensation. DA Form 5892–R will be locally reproduced on 8½ and 11 inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

(2) After the soldier completes block 13, the PEBLO will complete block 14 of the original and MTF copies of DA Form 199. If the soldier fails or declines to make an election, the PEBLO will prepare a brief statement describing the circumstances, indicating the date the soldier was first informed of, and counselled on, the informal board's action. The PEBLO will then forward the DA Form 199 and the statement to the PEB.

(3) In deleterious-type cases or others involving mental incompetence, the PEBLO will contact the next-of-kin or legal guardian (if one has been appointed) and request that person to act in behalf of the soldier. If one cannot be located, the PEBLO will prepare a statement reflecting all actions taken to identify and contact a responsible person to act on behalf of the soldier and forward the

statement for inclusion with the case. (See para 4–15*a* for guidance on establishing the next of kin.)

(4) If soldier elects formal hearing, forward soldier's medical records to the PEB if they were not submitted with MEBD proceedings for the informal PEB.

(5) Complete DA Form 5893–R (PEBLO Counseling Checklist/Statement).This form will be used to document counseling. At the time of the soldier's final election to PEB determinations, the PEBLO and soldier will sign the form.A copy will be forwarded to the PEB for inclusion in the record of proceedings.DA Form 5893–R will be locally reproduced on 8½ and 11 inch paper. A copy of the form for reproduction purpose is located at the back of this regulation.

*e. Disposition by PEB.* Upon receipt of the soldier's completed DA Form 199 from the PEBLO, the PEB will take the following actions as applicable.

(1) If the soldier accepts the findings and recommendations of the informal PEB, the recorder will assemble the records as required by table 4–1.The proceedings will be approved for the SA and forwarded to PERSCOM for final disposition.

(2) If the soldier nonconcurs with the findings without submitting a rebuttal, the PEB will approve the proceedings for the SA and forward the case to PERSCOM for final disposition.

(3) If the soldier fails or declines to make an election within the prescribed time and the PEB has not received from the PEBLO the statement described in 4–20*d*(2) above, the PEB will contact the PEBLO to confirm the status of the soldier's election. When the PEBLO confirms the soldier has been informed of the findings and recommendations but has not made an election, the PEB will proceed as if the soldier has accepted the findings and recommendations. The proceedings will be forwarded to PERSCOM for final disposition. The forwarding memorandum will document the circumstances resulting in the waiver of election (fig 4–2). The PEB will forward a copy of the memorandum to the soldier through the PEBLO.

(4) In deleterious-type cases or those involving mental incompetence in which the next-of-kin or guardian fails to make an election on behalf of the soldier, the PEB will appoint legal counsel to act on behalf of the soldier.The counsel will prepare a memorandum documenting the results of his or her action (fig 4–3).

(5) If the soldier nonconcurs and submits a statement or rebuttal to the recommended findings without asking for a formal hearing, the PEB president will respond in writing to the soldier, normally within 3 days. When the soldier's rebuttal does not result in a change to the PEB's findings, the response will acknowledge receipt of the rebuttal and explain the PEB's decision to adhere to the earlier findings. The soldier will be advised that the rebuttal will be included in the case file and considered in the review action by USAPDA. A copy of the PEB president's letter will be included in the case file.

(6) If the soldier nonconcurs with the findings and recommendations with a statement of rebuttal and demands a formal hearing, the PEB may reconsider their findings and recommendations in the light of the soldier's statement of rebuttal. Should the PEB agree with the soldier and modify their findings and recommendations, the PEB will initiate a new DA Form 199 informing the soldier through the MTF commander of the results. If the soldier accepts them, the case will be processed as in paragraph 4–20*e*(1), above.Otherwise, the case will be scheduled for a formal hearing. The PEB will inform the appointed legal counsel of the pending action. If the soldier (in demanding a formal hearing) has elected to be represented by individual counsel, the appointed PEB counsel in coordination with the PEB president will make arrangements for the hearing with the individual counsel. If the soldier is at some location other than that of the PEB, the commanding officer will promptly issue necessary TDY orders for travel of the soldier using locally available funds.

(7) Whenever more than one hearing (including a reconsideration) is held on a case, a copy of the DA Form 199 for each hearing will be attached to the final DA Form 199 to reflect and explain the multiple considerations. For example, a copy of an informal board's DA Form 199 attached to the copy of the formal board's DA Form 199 will record the soldier's demand for a formal hearing without further comment or explanation.

*f. Rebuttals.* Rebuttals received after the allotted time or after initial election of concurrence.

(1) In those instances when a rebuttal from a soldier is received after the allotted time for submission of a rebuttal, or after a soldier has initially agreed with the findings and recommendations of the PEB and the case has been approved for the SA and forwarded to PERSCOM for final disposition, the PEB will respond to the soldier as set forth below.

*(a)* If the rebuttal does not result in a change to the findings and recommendations, the PEB will advise the soldier in writing that no change is warranted and the rebuttal, together with the reply, has been forwarded to PERSCOM for inclusion in the case proceedings. The soldier retains the right to one formal hearing prior to final disposition by PERSCOM if the soldier is otherwise entitled and requests the hearing.

*(b)* When the rebuttal results in a change to the PEB's findings or recommendations, the PEB will recall the case and effect the necessary changes by preparing a new DA Form 199. The new findings will be furnished to the soldier. Normal processing procedures apply.

(2) Notwithstanding the above, when additional medical evidence or an addendum to the MEBD is received after the PEB has forwarded the case and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued. Normal procedures apply following the preparation of a new DA Form 199.

### 4–21. Formal board

*a. Formal hearing.* A soldier is entitled to a formal hearing if requested after informal consideration by a PEB. The soldier may waive this right by concurring in the findings and recommendations of the informal board.If the soldier is incompetent, the right to waive a formal hearing may be exercised by next-of-kin or legal counsel. After demanding a formal hearing, a soldier may later withdraw the demand and accept the informal board's decision, in which case, the counsel will inform the PEB. The case will be forwarded to PERSCOM. The soldier must be counseled on the right to demand a formal board.If the soldier demands a formal hearing, he or she is entitled to counsel as provided in paragraph 3–10*d* and *h* below. A formal board will be convened when—

(1) A soldier (next-of-kin or legal guardian) demands it after electing not to accept the findings and recommendations of an informal board.

(2) The case file has been forwarded to PERSCOM for issuance of retirement or separation instructions and the soldier demands a formal hearing before PERSCOM action is final.

(3) After an informal board, the president of the PEB decides that a formal hearing is in the best interest of the soldier or the Army.

*b. Formal board membership.* A formal hearing will normally be conducted before a board composed of the same members who considered the soldier's case informally. The purpose of a formal hearing is to afford the soldier the opportunity to present views, testimony, and new evidence. The board members must consider these matters with open minds despite their earlier decisions. For this reason the challenge of a voting member, solely because the member took part in the informal board, ordinarily should be denied. If the soldier is able to establish that a member of the formal board is not impartial, that board member will be replaced. If a replacement for the successfully challenged member is not available, the CG, USAPDA will appoint another member to the PEB panel for the formal hearing. If an original voting member of the informal board is not available for the formal hearing, that member may be replaced with another who is qualified to sit. The new member must become thoroughly acquainted with all pertinent records before the formal hearing is convened.

*c. Hearing room.* Locally available space will dictate the arrangement of the hearing room. The minimum requirement gives room for three board members, the recorder, the soldier whose case is to

be heard, counsel for the soldier, and the reporter. Proper decorum consistent with the purpose of the hearing is important; however, every effort should be made to maintain a relaxed and courteous environment. Avoid any implication of adversary proceedings in the case.

*d. Scheduling hearing.* The president of the PEB will establish the date, time, and place of the hearing subject to the following:

(1) The soldier (next-of-kin or legal guardian) will be allowed a minimum of 3 working days to prepare for the hearing.

(2) The soldier may waive the 3-day period or any portion of it.

(3) If more time is required to prepare the case, the soldier will forward a written request for an extension to the president of the PEB. The president, in turn, will endorse the request to the soldier indicating approval or disapproval and forward a copy of the response to the soldier's counsel. In deciding whether to approve the request, the president must consider whether the soldier would be unable to receive a full and fair consideration of his case if a delay were not granted. The date and time of any rescheduled hearing will be specified in the endorsement. If, in the judgment of the PEB president, the soldier or counsel are attempting to delay the hearing without valid reasons, the formal hearing will be held with or without the presence of the soldier and selected counsel.

(4) Ample travel time will be allowed if the soldier will be represented by his or her next-of-kin or legal guardian in those cases where the member is mentally incompetent or the physician determines that divulging information to the soldier would be harmful to his or her well being. Funded travel is authorized under the provisions of C6000 of the Joint Federal Travel Regulation. The MTF will issue invitational travel orders authorizing travel for one person.

(5) The PEB will—

*(a)* Notify the soldier (next-of-kin or legal guardian) of the scheduled hearing. Figures 4–4 and 4–5 show notification to the soldier based on soldier's selection of counsel. Figure 4–6 shows notification to the next-of-kin. DA Form 5890–R (Acknowledgment of Notification of Formal Physical Evaluation Board Hearing) will be enclosed with the letter of notification to the soldier or next-of-kin. DA Form 5890–R will be locally reproduced on 8½- and 11-inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

*(b)* Notify the board members, witnesses, counsel, reporter, and interpreter (if needed) of the date, time, and place of the hearing.

*(c)* Arrange for the attendance of all available military witnesses or, under appropriate circumstances, obtain depositions and other evidence.

*(d)* Ensure that the soldier's records are furnished to medical witnesses for review before hearing.

*(e)* Present all available evidence and witnesses to the board.

*e. Soldier's rights.*

(1) Certain rights accrue to a soldier whose case is under evaluation by a PEB. A counsel must be aware of these rights. When communicating with the soldier (next-of-kin or legal guardian), counsel must ensure the soldier knows and understands the rights that apply to the circumstances of the soldier's case. Although certain rights apply in all cases, some are particularly applicable during formal hearings, especially when the soldier is present at the hearing. These rights are described below:

*(a)* The Privacy Act of 1974 applies to information of a personal nature requested of the soldier during a formal hearing.

*(b)* The soldier may testify as a witness under oath in his or her own behalf, in which case the soldier may be cross-examined as any other witness.

*(c)* The soldier or the soldier's counsel may introduce witnesses, depositions, documents, or other evidence in his or her own behalf, and cross-examine witnesses who have been examined by the PEB including witnesses who have specific knowledge of the soldier's case and whose conversations have been summarized for the record.

*(d)* The soldier or soldier's counsel may make unsworn statements, orally, or in writing, or both, without being subject to cross-examination.

*(e)* The soldier may remain silent. The choice not to make a statement or answer questions is not to be considered adverse to the soldier's interests.

(2) Appointed counsel will use DA Form 5891–R (Acknowledgment of Counseling on Legal/Procedural Rights) to counsel the soldier on his or her procedural rights and to provide a record of such counseling. DA Form 5891–R informs the soldier of the rights described above, and requests acknowledgment by soldier's signature. A copy will be included in the record of formal proceedings and provided to the soldier. DA Form 5891–R will be locally reproduced on 8½- and 11-inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

*f. Failure to appear.* If a soldier who has elected to appear at a formal hearing fails to do so, the president of the PEB will take the following actions:

(1) Suspend the hearing and determine the reason for the soldier's absence. Subject to the provisions of (2) below, if no reasonable excuse is apparent for the soldier's absence, the hearing may proceed. The president will include in the record a statement of circumstances. Should the soldier later appear before the hearing has been concluded, the president may recess the hearing. He may permit the counsel to brief the soldier on proceedings up to that point. The hearing will then proceed.

(2) A formal hearing may not proceed if the soldier's individually selected counsel (if the soldier has one and who has been determined to be available to represent the soldier) is absent, unless the appointed counsel is present in open session.

*g. Waiver of appearance.* A soldier may waive, in writing, his or her appearance at a formal hearing. In such a case, the appointed counsel(or individually selected counsel if the soldier has one) must be present. The counsel will represent the soldier during all open sessions of the hearing, and perform the duties required of counsel during post-hearing actions.

*h. Counsel.* For formal hearings at which the soldier will be present, each soldier will be represented by counsel unless representation is specifically declined in writing.

(1) *Representation.* The appointed PEB counsel, other military counsel if reasonably available and released by the counsel's command for this purpose, or civilian counsel of the soldier's choice will represent the soldier. A soldier may arrange for civilian counsel of the soldier's own choice at no expense to the Government. The soldier may present his or her case without counsel, in which case the soldier must conform to all procedural rules. The soldier must sign a statement specifically excusing appointed PEB counsel. The statement will be made a part of the record. The PEB president will require appointed counsel to remain in the hearing room even if counsel is released by the soldier in writing, except when counsel of choice is present.Appointed counsel will act as co-counsel when the soldier chooses another counsel unless excused by the soldier.

(2) *Duties.* The counsel safeguards the legal rights of the soldier. He or she remains in attendance at all open sessions of the board unless excused, in writing, by the soldier. Counsel's duties are to—

*(a)* Confer with the soldier and advise the soldier of his or her rights.

*(b)* Prepare the soldier's case for presentation to the board.

*(c)* Request the PEB arrange for the attendance of available witnesses or obtain their depositions or other specifically desired evidence in support of the soldier's position.

*(d)* Examine and cross-examine witnesses and otherwise assist the soldier in presenting his or her case.

*(e)* Submit oral or written arguments.

*(f)* Counsel the soldier on the board's findings.

*(g)* Upon request, assist in the preparation of the rebuttal.

(3) Mentally incompetent and deleterious-type cases. The appointed legal counsel will serve as counsel when the next-of-kin (or legal guardian)acts for the soldier in a case of this type unless replaced by special counsel.Funded travel is authorized as described in paragraph *d*(4) above. In the absence of the next-of-kin, the PEB counsel must be present, even though special counsel is representing the soldier, unless excused by the next-of-kin or special counsel in writing.

*i. Records review by soldier.* All records assembled for use during the hearing, including those furnished by HQDA and by other official sources, will be made available to the soldier and his or her counsel for review. The assembled records will include memoranda of conversations with individuals who have specific knowledge of the soldier's case, including, but not limited to, the soldier's chain of command or treating physician. In cases involving mental incompetence or deleterious-type cases, only the counsel and, if present, the next-of-kin or legal guardian may examine the records. The soldier (next-of-kin or legal guardian) and counsel may make notes from the records to prepare the soldier's case properly. However, the PEB president may withhold from civilian counsel, next-of-kin, or legal guardian, any security information.

*j. Challenges.*

(1) The recorder will announce the names and grades of the members of the board present. Any member of the board or counsel who is aware of any facts that the member believes to be grounds for challenge against himself or any other member, including the president of the board, will state such facts. If it appears a member is subject to challenge for cause, and the fact is not disputed, the member will be excused and replaced. The recorder is not subject to challenge.

(2) The statutory right to a full and fair hearing includes the right to challenge for cause. Grounds for challenge may be made by a statement of any fact indicating any member should not sit as a member of the board in the interest of having the hearing and later proceedings free from substantial doubt as to legality, fairness, and impartiality. Not more than one member will be challenged at one time. Later challenges may be made against other members of the board after a ruling is made on a previous challenge.

(3) A challenge may be withdrawn at any time. If a challenge is not withdrawn, the board will give the soldier the opportunity to introduce evidence, examine the challenged member under oath, and make an argument as to why the challenge should be granted. The PEB will decide if the challenge should be granted by majority vote of the remaining members following discussion in closed deliberation. If the challenged member is the president of the board, the next senior nonmedical board member will preside in the case. A tie vote will sustain the challenge. Upon reopening the board, the president of the board will announce whether the challenge has been sustained. This announcement will be reflected in the record. If the challenge is sustained, the proceedings will be suspended until a replacement for the challenged member is provided.

*k. Verifying soldier's rights.* When the hearing begins, the PEB president will assure himself or herself that the soldier has been informed of his or her rights. If it appears the soldier has not been so informed, the PEB president will recess the hearing and allow the counsel time to advise the soldier.

*l. Proof of facts.*

(1) *General.* Facts and circumstances relevant to the matter under investigation are most often proved or disproved, either directly or through inferences, by real (tangible) evidence, documentary evidence, testimony or statements of witnesses, and matters of which official notice may be taken without proof.

(2) *Real evidence.* A tangible object (for example, brace, crutch) which is material and relevant to the subject of the inquiry is real evidence. Whenever an item of real evidence would aid in establishing the existence or nonexistence of a fact, that item, or a photograph, description, or other suitable reproduction of it, should be included in the report of proceedings, together with any statement of witnesses necessary to identify the item and verify the accuracy of the reproduction. Board members should not overlook their own observations respecting real evidence. If a board member observes an item and gains impressions not adequately portrayed by a photograph, chart, or other representation, he or she should ensure that an appropriate description of the item is made and included in the report.

(3) *Documentary evidence.* Documentary evidence consists of records, reports, letters, and other written, printed, or graphic materials which indicate the existence or nonexistence of a fact. Boards should be alert to discover all such evidence relevant to the matter under inquiry and to include the originals or copies in the record.

(4) *Testimony or statements of witnesses.* Oral or written accounts of matters within the personal knowledge of individuals usually constitute an indispensable part of the evidence considered by a board.Because, unlike real or documentary evidence, such evidence is not fixed as to form or substance, obtaining a witness' testimony or statement requires careful advance analysis of relevant matters of which the witness is expected to have knowledge and preparation of questions to elicit that knowledge without distorting its substance. A preliminary interview of the witness to clarify what information can be elicited is often appropriate, especially by the soldier's counsel and the recorder. Voting members, however, may not conduct separate interviews of witnesses.

(5) *Official notice.* Some facts are of such common knowledge that there is no need to obtain specific evidence to prove them (for example, general facts and laws of nature; general facts of history; location of major elements of the Army; organization of the Department of Defense and its components).

*m. Rules of evidence.*

(1) *General.* Proceedings of the PEB are administrative and not judicial in nature; therefore, a board is not bound by the rules of evidence prescribed for trials by court-martial or for court proceedings generally. Accordingly, except as limited in (3) below, anything which in the opinions of reasonable persons is relevant and material to an issue, may be accepted as evidence. All evidence will be given such weight as is warranted under the circumstances.

(2) *Best evidence.* A board is not precluded from considering any evidence merely because there may be better evidence available to prove the same fact. Generally, however, an effort should be made to obtain the best evidence reasonably available, considering factors such as time, importance, and expense as well as the availability and reliability of substitute evidence.Although hearsay evidence may always be accepted, the personal statement or recent deposition of a witness is usually better evidence than an earlier written statement by that witness or having someone else state what the witness said.

(3) *Limitations.* Administrative proceedings governed by this regulation generally are not subject to exclusionary rules precluding the use of relevant evidence. However, the following does apply with regard to evidence which may be accepted and considered in a board.

*(a) Privileged communications.* The rules concerning privileged communications between client-attorney, and penitent-clergyman, apply to PEBs.

*(b) "Off the record" statements.* Findings and recommendations of the board must be supported by evidence contained in the record. Accordingly, witnesses should not be allowed to make statements "off the record" to board members in formal proceedings.

*(c) Statements regarding disease or injury.* Section 1219, title 10, United States Code (10 USC 1219) provides that a soldier may not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury that the soldier has suffered. Before any signed, written statement against the soldiers interest may be considered, it must be determined that such a statement was made voluntarily. Any statement signed after the soldier has been advised of the right not to make a statement is presumed to be voluntary and is valid for consideration. (This restriction does not include oral testimony.)

*(d) Self-incrimination.* Military witnesses will not be compelled to incriminate themselves, or to answer any question to which the answer might tend to incriminate them, or to make a statement or produce evidence if the statement or evidence is not material to the issue and might tend to degrade them (article 31, Uniform Code of Military Justice (UCMJ, Art 31)). Any witness not subject to the UCMJ, will not be required to make a statement or produce evidence which would deprive them of their rights under the Fifth Amendment of the United States Constitution.

*n. Administering oaths.* Voting members of a PEB, the recorder, counsel, and others who regularly take part in PEB evaluations and have no vested interest in the outcome of cases considered need not