be sworn before performing their duties. Officers are required in their oath of office to "carefully and diligently discharge the duties of the office to which appointed." Civilian employees are sworn to perform their duties faithfully. A high standard of performance is to be expected, therefore, of individuals assigned to these duties.

(1) A soldier appearing in his or her own behalf is not sworn unless the soldier elects to testify under oath. If the soldier chooses to be sworn, the oath or affirmation prescribed in (2) below will be used.

(2) Witnesses will sometimes have a vested interest in a case, often adverse to the soldier's or the Army's interest. Because this partiality is not evident initially, any person who is to testify will first be sworn. In deleterious-type cases or those involving mental incompetence, the next-of-kin or guardian will be sworn. If the witness desires to affirm rather than swear, the words "so help you God" will be omitted. The recorder will administer the following oath:

"Do you swear (or affirm) that the evidence you shall give in the case now in hearing shall be truth, the whole truth, and nothing but the truth? (So help you God)?"

*o. Attendance of witnesses.* The board will summon available witnesses needed for the hearing. Either the soldier or the PEB may request attendance of a witness. Whether a witness is available depends on the conditions described below.

(1) Members and employees of the armed services located at the same installation as the PEB are usually available. If available, the commander or supervisor will ensure that they appear.

(2) Members and employees of the armed services located at other installations may be available. The PEB president will decide whether the presence of such witnesses is required for a full and fair hearing. If the PEB president decides the testimony of such a witness is needed and that alternative forms of evidence cannot be substituted for the personal presence of the witness, the commander or supervisor must ensure the witness is present.

(3) The soldier is responsible for arranging for the attendance of witnesses who are not members or employees of the armed forces. Such witnesses attend hearings at no expense to the Government. Additionally, the soldier is entitled to present the testimony of any other soldier or employee of the Army, or other armed services, whom the soldier obtains at no expense to the Government, and whom is given leave to attend.

(4) Witnesses summoned by the PEB who are members or employees of the armed services are entitled to travel expenses and per diem allowances authorized by Joint Federal Travel Regulations. The commander of the command to which the witness belongs is responsible for these costs. If command funds are not available, and the PEB president still considers personal testimony by the witness essential, funds available to the PEB may be used to pay the costs.

(5) The PEB president may decide that the witness need not appear in person to testify. If so, he or she may authorize the soldier's military counsel to take the deposition at the witness' location. The counsel may take the deposition either personally or by arranging with the soldier's representative to do so. If the counsel is to take the deposition in person and TDY is involved, the counsel will provide the PEB president a summary of the information he or she expects to discover and how it relates to the case. if the PEB president approves the TDY, the PEB will pay costs from travel funds available to the PEB. The deponent may be at a distance so that the military counsel is unable to take the deposition in person. If so, the soldier's counsel may request assistance from the staff Judge Advocate nearest the deponent's location. Should expenditure of per diem or travel funds be involved, the counsel will make his or her request through the PEB president who is considering the case. A summary of the information to be discovered will be included. If no expenditure of public funds is involved, the receiving PEB president will approve the request and refer it for action to the appropriate Staff Judge Advocate. If the requested action involves payment of TDY costs, expenses will be paid from funds available to the PEB president requesting the deposition. A counsel may believe that a deposition is required and it cannot be obtained as described above. If so, the counsel may make a request to the officer exercising GCMCA over the installation at which the PEB is located. If the GCMCA approves taking the deposition, he or she will refer the request to the GCMCA in the area in which the deponent is located for action. The deponent will return the deposition through the referring GCMCA. Depositions may be taken on oral or written questions. Depositions will be prepared as provided in rule 703, Military Rules of Evidence, Manual for Courts-Martial, United States,1984.

*p. Procedural objections.* The soldier (the soldier's next-of-kin, legal guardian, or counsel) may object to any actions taken or proposed to be taken by the board or to the admission of evidence. When an objection is made, it will be recorded as part of the record. The president of the board will rule on objections. If any board member dissents from the president's ruling, however, the board will be closed for deliberation and the objection will be ruled upon by majority vote. Upon reopening of the board, the ruling of the board will be announced in open session and recorded as part of the record.

*q. Closed deliberations.* Upon completing an open hearing, the board is closed for deliberation. The voting members decide the findings and recommendations according to policies stated in chapter 3 and criteria in this chapter.

*r. Findings and recommendations.*

(1) The board, upon completion of deliberations, will reopen and inform the soldier of the findings and recommendations. (In cases of mental incompetence or in deleterious-type cases, the board will inform the soldier's counsel, next-of-kin, or legal guardian.) If the soldier (soldier's next-of-kin or legal guardian) is not present at the hearing, notice of the findings and recommendations will be provided to them in writing. (Figs 4–7 and 4–8 respectively show a sample notification to the soldier and the next-of-kin.)

(2) The PEB may change, modify, or correct its findings and recommendations at any time before the record of proceedings is delivered to the CG, USAPDA or Commander, PERSCOM. When such changes are made in previously announced findings or recommendations, the PEB will inform the soldier(soldier's next-of-kin, counsel, or legal guardian) in writing, of the proposed change. The PEB will afford the soldier the opportunity to accept or rebut the proposed change.

(3) When the soldier personally appears before the board, the DA Form 199 will be prepared immediately following the conclusion of the hearing and a copy provided to the soldier. The soldier will be afforded the opportunity to make an election at this time but may choose to take the full time-period permitted for reaching a decision. When the soldier does not appear at the hearing, the DA Form 199 and election form will be transmitted to the commander of the applicable MTF within 24 hours of the adjournment of the hearing. The actual date of delivery to the soldier will be documented in the case file.

*s. Soldier's response.* DA Form 199–1 (Election to Formal Physical Evaluation Board Proceedings) will be provided to the soldier as the election statement to formal proceedings. This form is distributed from the Army Publication Center solely to PEBs.

(1) The DA Form 199–1 and the letter of rebuttal must be received at the PEB within 10 days from the soldier's receipt of the formal findings unless the President of the PEB approves a request for an extension of time. A request for an extension must be received within 10 days of the soldier's receipt of the DA Form 199. If the request for extension is denied, the original time frame remains applicable. A copy of the PEB's decision on the request for extension will be sent to the soldier's counsel.

(2) If the soldier's statement of election or a request for an extension of time is not received within the required time, the PEB will deem that the soldier has waived the right to an election. The proceedings will be forwarded to PERSCOM for final disposition. The forwarding memorandum will document the circumstances resulting in the waiver of election (fig 4–2). The PEB will forward a copy of the memorandum to the soldier through the PEBLO.

(3) A soldier who fails to make an election or to submit a statement of rebuttal to formal proceedings within the allotted time if he or she is in disagreement with the findings and recommendations, will forfeit the opportunity for USAPDA review of his or her case (para 4–21*t* below).

*t. Rebuttals.* Letters of rebuttal to the findings and recommendation of formal proceedings (to include the recommended disability percentage) must be prepared and processed according to the following guidance.

(1) A rebuttal may only be based upon one or more of the issues listed below and must provide rationale in support of the issue.

*(a)* The decision of the PEB was based upon fraud, collusion, or mistake of law.

*(b)* The soldier did not receive a full and fair hearing.

*(c)* Substantial new evidence exists and is submitted which, by due diligence, could not have been presented before disposition of the case by the PEB.

(2) If a letter of rebuttal is received within the required time frame, the PEB will respond to the soldier, or his representative, normally within 3 days confirming that the rebuttal has been received and considered. If consideration of the rebuttal does not affect the outcome of any portion of the PEB decision, the response will include the reasons why the rebuttal does not support a change to the findings and recommendations. The soldier will be informed that the rebuttal will be forwarded with the case file to USAPDA for review (based on the soldier's election of nonconcurrence with submission of a rebuttal). The response by the PEB president will be included in the case file and a copy will be furnished to the soldier's legal counsel or other representative.

(3) If a soldier submits a letter of rebuttal after having initially made an election of concurrence and the rebuttal is submitted within the required time frame, the procedures of paragraph 4–21*t*(2) above apply. If the case has been forwarded to PERSCOM for final disposition based upon the soldier's initial concurrence, the PEB will recall the case. If the letter of rebuttal is received after the required time frame, the procedures of paragraph 4–2*t*(4) below apply.

(4) If a letter of rebuttal is received by the PEB after the soldier's case has been forwarded to PERSCOM for final disposition (based upon the soldier's failure to make an election within the required time frame or nonconcurrence without submission of a rebuttal), the PEB will consider the rebuttal as set forth below.

*(a)* If consideration of the rebuttal does not result in a change to the findings and recommendations, the PEB will advise the soldier, in writing, that no change is warranted and the rebuttal, together with the reply, has been forwarded to PERSCOM for inclusion in the case proceedings. A copy of the reply will be forwarded to the soldier's legal counsel or other representative.Review of proceedings by USAPDA is not required.

*(b)* When the consideration of the rebuttal results in a change to the PEB's findings and recommendations, the PEB will recall the case and effect the necessary changes by preparing a new DA Form 199. The new DA Form 199 will be furnished to the soldier according to normal processing procedures.

(5) Notwithstanding the above, when additional medical evidence or an addendum to the MEBD is received after the PEB has forwarded the case to USAPDA or PERSCOM and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued. Normal procedures apply following the preparation of a new DA Form 199.

*u. Mental incompetency.* Formal proceedings of cases involving mental incompetency or nonappearance because of the MTF commander's decision that it would be detrimental for the soldier's well being to appear, will be processed as follows:

(1) The DA Form 199 and DA Form 199–1 with all exhibits will be forwarded by certified mail, return receipt requested, to the soldier's guardian or next-of-kin (fig 4–8). A copy of the forwarding letter will be provided to the soldier's legal counsel or representative.

(2) The transmittal letter will advise the individual of the following:

*(a)* The individual has the right to make an election (DA Form 199–1)and to submit a letter of rebuttal to any finding or recommendation.

*(b)* The election (DA Form 199–1) and rebuttal must be received at the PEB within 10 days of receipt of the DA Form 199 unless, within the 10-day period, the president of the PEB has approved a request for extension.

*(c)* A rebuttal submitted within the allotted time must be considered and the individual notified of the PEB's determination.

*(d)* Upon failure of the individual to submit an election within 10 days, the appointed military counsel will take proper action in behalf of the soldier.

(3) The PEB will not forward the case for disposition until the DA Form 199–1 has been received or counsel has acted in behalf of the soldier.Counsel's action will be documented by memorandum, a copy of which will be included in the case proceedings (fig 4–3).

## Section V
## Review and Confirmation of PEB Action

### 4–22. Review by USAPDA

*a. Required review.* USAPDA will review the following cases.

(1) General and Medical Corps officers found unfit.

(2) Informal proceedings when the soldier nonconcurs with the PEB findings and recommendations, waives a formal hearing, submits a statement of rebuttal within the required time frame, and consideration of the rebuttal by the PEB does not result in a change to its findings and recommendations.

(3) Formal proceedings when the soldier nonconcurs with the PEB findings and recommendations, submits a statement of rebuttal within the required time frame, and consideration of the rebuttal by the PEB does not result in a change to its findings and recommendation.

(4) Cases in which a voting member of the PEB submits a minority report.

(5) Any case previously forwarded to USAPDA for review and approval and which has been returned to the PEB for reconsideration or rehearing.

(6) Cases designated by the CG, USAPDA for review.

(7) Cases of soldiers assigned to USAPDA.

*b. Purpose of review.* The review will be confined to the case records and proceedings and related evidence. The review will ensure that the following criteria have been satisfied.

(1) The soldier received a full and fair hearing.

(2) The proceedings of the medical evaluation board and the PEB were conducted according to governing regulations.

(3) The findings and recommendations of the MEBD and PEB were just, equitable, consistent with the facts, and in keeping with the provisions of law and regulations.

(4) Due consideration was given the facts and requests contained in any rebuttal to the PEB findings and recommendations submitted by, or for, the soldier being evaluated.

(5) Records of the case are accurate and complete.

*c. Determinations.* Based upon review of the PEB proceedings, USAPDA may take the following actions:

(1) Concur with the findings and recommendations of the PEB or make minor changes or corrections that do not affect the recommended disposition of the soldier or lower the combined percentage rating.

(2) Return the case to the PEB for reconsideration, clarification, further investigation, a formal hearing, or other action when the case records show such action is in the best interests of the soldier or the Army. A detailed explanation for the reasons for return of the case will be provided to the PEB.

(3) Issue revised findings providing for a change in disposition of the soldier or change in the soldier's disability rating.

(4) Refer the case to the APDAB.

*d. Revised findings.* USAPDA, will take the following actions when modifying PEB findings and recommendations.

ability to engage in gainful or normal activity. The term includes disability due to mental disease.

**Physical evaluation board liaison officer (PEBLO)**
An experienced, mature officer, NCO, or civilian employee designated by the MTF commander to perform the primary duties of counseling soldiers who are undergoing physical disability evaluation. The PEBLO provides soldiers with authoritative and timely answers to their questions about the physical disability system and aids them in understanding their rights and entitlements. The PEBLO is not, and need not be, an attorney.

**Physically unfit**
Unfitness due to physical disability. The unfitness is of such a degree that a soldier is unable to perform the duties of his office, grade, rank, or rating in such a way as to reasonably fulfill the purpose of his employment on active duty. "Physically unfit" is synonymous with "unfit because of physical disability."

**Preponderance of evidence**
Factual information that tends to prove one side of a disputed fact by outweighing the evidence on the other side. Preponderance does not necessarily mean a greater number of witnesses or a greater mass of evidence; rather, the term means a superiority of evidence on one side or the other of a disputed fact. The term requires consideration of the quality rather than the quantity of the evidence.

**Presumption**
An interference of the truth of a proposition or fact. It is reached through a process of reasoning and based on the existence of other facts.Presumed matters need no proof to support them. They may be rebutted by evidence to the contrary, however.

**Processing for separation from active service**
A soldier is "processing for separation from active service" when he has requested retirement by reason of age or length of service or is being processed for administrative separation to include separation at ETS or ESA date (for officers only).

**Proximate result of performing duty**
A disability may reasonably be assumed to have been the result of, arising from, or connected with active duty, full-time training duty, other full-time duty, or inactive duty training. All facts, circumstances, and laws on a particular case must be considered.

**Reasonable doubt**
Reasonable doubt exists when evidence does not satisfactorily prove or disprove a claim. Reasonable doubt is substantial, not specious. It is within the range of probabilities as distinguished from pure speculation or remote possibility. It is not means of reconciling conflicts or contradictions in evidence.

**Reserve Components of the Army**
The Army National Guard of the United States and the US Army Reserve.

**Separation**
An all-inclusive term that is applied to personnel actions resulting from release from active duty, discharge, retirement, dismissal, resignation, dropped from the rolls, or death. In this regulation, separation means discharge because of physical disability with or without severance pay.

**Service aggravation**
*a.* Medical treatment facilities frequently list a medical condition as "service aggravated" based on the fact that the condition becomes symptomatic under certain conditions found in the military. Symptoms arising when limits imposed by a condition have been exceeded are poor criteria of service aggravation of the condition, itself.
*b.* When an EPTS condition becomes symptomatic under the stress of active duty it may be unfitting but it has not been aggravated by AD unless it has been permanently worsened over and above natural progression.

**Unfit because of physical disability**
Synonymous with physically unfit.

## Section III
## Special Abbreviations and Terms
There are no special terms.



App. 21

Army Regulation 135–175

Army National Guard and Army Reserve

# Separation of Officers

Headquarters
Department of the Army
Washington, DC
28 February 1987

UNCLASSIFIED

**Reserve of the Army**
Enlisted members of the ARNGUS and the USAR. (AR 135–178)

**Respondent**
An enlisted soldier who has been notified that action has been initiated to separate the soldier. (AR 135–178)

**Retired Pay**
Pay granted members and former members of the Reserve components under title 10, USC, section 1331, after completion of 20 or more years of qualifying service and on attaining age 60. This pay is based on the highest grade satisfactorily held at any time during an individual's entire period of service, other than in an inactive section of a Reserve component. (AR 135–180)

**ROTC cadet**
A student enrolled in the Senior Reserve Officers' Training Corps (SROTC) as a cadet under 10 USC 2104 or 10 USC 2107 (AR 135–178).

**ROTC program**
The Senior Reserve Officers' Training Corps of the Army. (AR 135–91, AR 135–178, and AR 135– 91)

**Satisfactory participation**
A level of performance where a soldier avoids incurring the condition of unsatisfactory participation as defined in AR 135–91 paras 3–1 and 3–2. (AR 135–7 or AR 135–91)

**Selected Reserve**
Can be defined as follows:

*a.* Part of the Ready Reserve of each Reserve component consisting of units and individuals who participate actively in paid training periods and serve on paid active duty for training each year. (AR 135–133)

*b.* USAR Selected Reserve units and individuals that comprise all TPUs, IMAs, and full-time AD support personnel. This term should not be confused with Selected Reserve Force(s) in JCS Pub 1. (The term Selected Reserve is included here to preclude a possible misinterpretation of the language used in 10 USC 268 which directly relates to this regulation.) (AR 140–1)

*c.* Officers, warrant officers, and enlisted soldiers who are:

(1) Members of the Army National Guard of the United States (ARNGUS).

(2) Assigned to troop program units of the USAR.

(3) Serving on active duty (10 USC 672d or full-time duty (32 USC 502f) in an Active Guard Reserve (AGR) status.

(4) Individual mobilization augmentees (IMA).

**Self-terminating orders**
Orders that direct ADT, ADSW, TTAD, or AT for a specific time. When the orders expire, a soldier is automatically released from such duty without further action. (AR 135–200 and 135–210)

**Separation**
An all inclusive term which is applied to personnel actions resulting from release from active duty, discharge, retirement, dropped from the rolls, release from military control or personnel without a military status, death, or discharge from the Army National Guard of the United States with concurrent transfer to the Individual Ready, Standby, or Retired Reserve. Reassignments between the various categories of the U.S. Army Reserve (Selected, Ready, Standby, or Retired) are not considered as separations. (AR 135–91 or AR 135–178)

**Separation authority**
An officer authorized to take final action on specified types of separations. (AR 135–178)

**Standby Reserve**
Units or members of the Reserve Components, other than those in the Ready Reserve or Retired Reserve, who are liable for active duty as provided in 10 USC 672 and 10 USC 674. (AR 135–133)

**Statutorily obligated member**
A soldier who is serving by reason of law. (AR 135–91 or 135–178)

Army Regulation 40–501

Medical Services

# Standards of Medical Fitness

Headquarters
Department of the Army
Washington, DC
27 June 2006

UNCLASSIFIED

Table 2-2
Military acceptable weight (in pounds) as related to age and height for females—Initial Army procurement[1, 2]—Continued

| Height (inches) | Minimum weight any age | Maximum weight by years of age 17–20 | 21–27 | 28–39 | 40 and over |
|---|---|---|---|---|---|
| 73 | 128 | 177 | 182 | 188 | 193 |
| 74 | 130 | 183 | 189 | 194 | 198 |
| 75 | 133 | 188 | 194 | 200 | 204 |
| 76 | 136 | 194 | 200 | 206 | 209 |
| 77 | 139 | 199 | 205 | 211 | 215 |
| 78 | 141 | 204 | 210 | 216 | 220 |
| 79 | 144 | 209 | 215 | 222 | 226 |
| 80 | 147 | 214 | 220 | 227 | 232 |

| | | Maximum body fat by years of age 17–20 | 21–27 | 28–39 | 40 and over |
|---|---|---|---|---|---|
| | | 32% | 32% | 34% | 36% |

Notes:
[1] If a female exceeds these weights, percent body fat will be measured by the method described in AR 600–9.
[2] If a female also exceeds this body fat, she will be rejected for service.

## Chapter 3
## Medical Fitness Standards for Retention and Separation, Including Retirement

### 3–1. General
This chapter gives the various medical conditions and physical defects which may render a Soldier unfit for further military service and which fall below the standards required for the individuals in paragraph 3–2 below.

### 3–2. Application
These standards apply to the following individuals (see chaps 4 and 5 for other standards that apply to specific specialties):

*a.* All commissioned and warrant officers of the Active Army, ARNG/ARNGUS, and USAR.

*b.* All enlisted Soldiers of the Active Army, ARNG/ARNGUS, and USAR.

*c.* Students already enrolled in the HPSP and USUHS programs.

*d.* Enlisted Soldiers of the ARNG/ARNGUS or USAR who apply for enlistment in the Active Army.

*e.* Commissioned and warrant officers of the ARNG/ARNGUS or USAR who apply for appointment in the Active Army.

*f.* Soldiers of the ARNG/ARNGUS or USAR who re-enter active duty under the "split-training option." (However, the weight standards of tables 2–1 and 2–2 apply to split option trainees.)

*g.* Retired Soldiers recalled to active duty.

### 3–3. Disposition
Soldiers with conditions listed in this chapter who do not meet the required medical standards will be evaluated by an MEB as defined in AR 40–400 and will be referred to a PEB as defined in AR 635–40 with the following caveats:

*a.* USAR or ARNG/ARNGUS Soldiers not on active duty, whose medical condition was not incurred or aggravated during an active duty period, will be processed in accordance with chapter 9 and chapter 10 of this regulation.

*b.* Soldiers pending separation in accordance with provisions of AR 635–200 or AR 600–8–24 authorizing separation under other than honorable conditions who do not meet medical retention standards will be referred to an MEB. In the case of enlisted Soldiers, the physical disability processing and the administrative separation processing will be conducted in accordance with the provisions of AR 635–200 and AR 635–40. In the case of commissioned or warrant officers, the physical disability processing and the administrative separation processing will be conducted in accordance with the provisions of AR 600–8–24 and AR 635–40.

*c.* A Soldier will not be referred to an MEB or a PEB because of impairments that were known to exist at the time of acceptance in the Army and that have remained essentially the same in degree of severity and have not interfered with successful performance of duty.

*d.* Physicians who identify Soldiers with medical conditions listed in this chapter should initiate an MEB at the time

(3) A profile containing one or more numerical designators of "3" signifies that the individual has one or more medical conditions or physical defects that may require significant limitations. The individual should receive assignments commensurate with his or her physical capability for military duty.

(4) A profile serial containing one or more numerical designators of "4" indicates that the individual has one or more medical conditions or physical defects of such severity that performance of military duty must be drastically limited.

*e.* Anatomical defects or pathological conditions will not of themselves form the sole basis for recommending assignment or duty limitations. While these conditions must be given consideration when accomplishing the profile, the prognosis and the possibility of further aggravation must also be considered. In this respect, profiling officers must consider the effect of their recommendations upon the Soldier's ability to perform duty. Profiles must be realistic. All profiles and assignment limitations must be legible, specific, and written in lay terms. If the commander has questions about a profile or is unable to use the Soldier within the profile, the procedures in paragraph 7–12 will apply.

(1) Determination of individual assignment or duties to be performed are command/administrative matters. Limitations such as "no field duty," or "no overseas duty," are not proper medical recommendations. (However, they are included as administrative guidelines in pregnancy profiles.) Profiling officers should provide enough information regarding the Soldier's physical limitations to enable the nonmedical commander and AHRC to make a determination on individual assignments or duties.

(2) It is the responsibility of the commander or personnel management officer to determine proper assignment and duty, based upon knowledge of the Soldier's profile, assignment limitations, and the duties of his or her grade and MOS.

(3) Table 7–1 contains the physical profile functional capacity guide.

(4) See TB MED 287 for profiling Soldiers with pseudofolliculitis.

### 7–4. Temporary vs. permanent profiles

*a. Permanent profiles.* A profile is considered permanent unless a modifier of "T" (temporary) is added as described in *b* below. A permanent profile may only be awarded or changed by the authority designated in paragraph 7–6.

(1) If the profile is permanent the profiling officer must assess if the Soldier meets retention standards by chapter 3. Those Soldiers on active duty who do not meet retention standards must be referred to an MEB as per chapter 3. (See paras 9–10 and 10–26 for disposition of USAR and ARNG Soldiers not on active duty who do not meet medical retention standards.)

(2) Those Soldiers (active duty and USAR/ARNG) who meet retention standards but have at least a 3 or 4 PULHES serial will be referred to a Medical MOS Retention Board (MMRB) in accordance with AR 600–60, unless waived by the MMRB convening authority.

(3) Permanent profiles may be amended at any time if clinically indicated and will automatically be reviewed at the time of a Soldier's periodic examination.

(4) The Soldier's commander may also request a review of a permanent profile in accordance with paragraph 7–12.

*b. Temporary profiles.* A temporary profile is given if the condition is considered temporary, the correction or treatment of the condition is medically advisable, and correction usually will result in a higher physical capacity. Soldiers on active duty and RC Soldiers not on active duty with a temporary profile will be medically evaluated at least once every 3 months at which time the profile may be extended by the profiling officer.

(1) The profiling officer must review previous profiles before making a decision to extend a temporary profile. Any extension of a temporary profile must be recorded on DA Form 3349, and if renewed, item 9 on the DA Form 3349 must contain the following statement: "This temporary profile is an extension of a temporary profile first issued on (date)."

(2) Temporary profiles should specify an expiration date. If no date is specified, the profile will automatically expire at the end of 30 days from issuance of the profile. In no case will Soldiers carry a temporary profile that has been extended for more than 12 months. If a profile is needed beyond the 12 months the temporary profile should be changed to a permanent profile.

### 7–5. Representative profile serial and codes

To facilitate the assignment of individuals after they have been given a physical profile serial and for statistical purposes, code designations have been adopted to represent certain combinations of physical limitations or assignment guidance. (See table 7–2.) The alphabetical coding system will be recorded on personnel qualifications records. This coding system will not be used on medical records to identify limitations. The numerical designations under each profile factor, PULHES, are given in table 7–1.

### 7–6. Profiling officer

*a.* Commanders of Army MTFs are authorized to designate one or more physicians, dentists, optometrists, podiatrists, audiologists, nurse practitioners, nurse midwives, licensed clinical psychologists, and physician assistants as