Army Regulation 40–501

Medical Services

# Standards of Medical Fitness

Headquarters
Department of the Army
Washington, DC
27 February 1998

Unclassified

*c.* Neurosyphilis. See paragraph 2–28*j*.

## Chapter 3
## Medical Fitness Standards for Retention and Separation Including Retirement

### 3–1. General
This chapter gives the various medical conditions and physical defects which may render a soldier unfit for further military service and which fall below the standards required for the individuals in paragraph 3–2 below.

### 3–2. Application
These standards apply to the following individuals (see chaps 4 and 5 for other standards that apply to specific specialties):

*a.* All commissioned and warrant officers of the Active Army, ARNG, and USAR.

*b.* All enlisted soldiers of the Regular Army, ARNG, and USAR.

*c.* Students already enrolled in the HPSP and USUHS programs.

*d.* Soldiers placed on the TDRL if the condition was present during active duty. (See AR 635–40.)

*e.* Enlisted soldiers of the ARNG or USAR who apply for enlistment in the regular Army.

*f.* Commissioned and warrant officers of the ARNG or USAR who apply for appointment in the Active Army.

*g.* Soldiers of the ARNG or USAR who reenter active duty under the "split–training option." (However, the weight standards of tables 2–1 and 2–2 apply to split option trainees.)

*h.* Retired soldiers recalled to active duty.

### 3–3. Disposition
Soldiers with conditions listed in this chapter who do not meet the required medical standards will be evaluated by a medical evaluation board (MEB) as defined in AR 40–3 and will be referred to a physical evaluation board (PEB) as defined in AR 635–40, with the following caveats:

*a.* USAR or ARNG soldiers not on active duty, whose medical condition was not incurred or aggravated during an active duty period, will be processed in accordance with chapter 9 of this regulation and will not be referred to a PEB.

*b.* Soldiers pending other than honorable administrative discharges (under AR 635–200 and AR 635–100) will be referred to an MEB. In the case of enlisted soldiers, the results of the MEB will be forwarded to the court martial convening authority who will determine if the soldier will be referred to a PEB, or will be discharged administratively. See AR 635–200, paragraph 1–35, for further guidance on administrative separations of enlisted soldiers. See AR 635–40, paragraph 4–4, for processing of commissioned or warrant officers.

*c.* A soldier will not be referred to an MEB or PEB because of impairments which were known to exist at the time of acceptance in the Army and which have remained essentially the same in degree of severity and have not interfered with successful performance of duty.

*d.* Soldiers who have previously been found unfit for duty by a PEB, but were continued on active duty under the provisions of AR 635–40, chapter 6, will be referred to a PEB prior to retirement or separation processing.

*e.* If the Secretary of Defense prescribes less stringent standards during full mobilization, individuals who meet the less stringent standards but do not meet the standards of this chapter, will not be referred for an MEB or PEB, until the termination of the mobilization or as directed by The Secretary of the Army.

### 3–4. General policy
Possession of one or more of the conditions listed in this chapter does not mean automatic retirement or separation from the Service. Physicians are responsible for referring soldiers with conditions listed below to an MEB. It is critical that MEBs are complete and reflect all medical problems and all physical limitations the soldier has. Determination of fitness or unfitness will be made by a PEB. The PEB, under the authority of the U.S. Army Physical Disability Agency, will consider the results of the MEB, as well as the requirements of the soldier's MOS in determining fitness. See AR 635–40, chapter 9, for processing of RC soldiers.

### 3–5. Abdominal and gastrointestinal defects and diseases
The causes for referral to an MEB are as follows:

*a.* Achalasia (cardiospasm) with dysphagia not controlled by dilatation or surgery, continuous discomfort, or inability to maintain weight.

*b.* Amoebic abscess residuals with persistent abnormal liver function tests and failure to maintain weight and vigor after appropriate treatment.

*c.* Biliary dyskinesia with frequent abdominal pain not relieved by simple medication, or with periodic jaundice.

*d.* Cirrhosis of the liver with recurrent jaundice, ascites, or demonstrable esophageal varices or history of bleeding therefrom.

*e.* Gastritis if severe, chronic hypertrophic gastritis with repeated symptomatology and hospitalization, confirmed by gastroscopic examination.

*f.* Hepatitis, chronic, when, after a reasonable time (1 or 2 years) following the acute stage, symptoms persist, and there is objective evidence of impairment of liver function.

*g.* Hernia, hiatus hernia with severe symptoms not relieved by dietary or medical therapy, or recurrent bleeding in spite of prescribed treatment or other hernias if symptomatic and if operative repair is contraindicated for medical reasons or when not amenable to surgical repair.

*h.* Ileitis, regional, except when responding well to treatment.

*i.* Pancreatitis, chronic, with frequent abdominal pain of a severe nature; steatorrhea or disturbance of glucose metabolism requiring hypoglycemic agents.

*j.* Peritoneal adhesions with recurring episodes of intestinal obstruction characterized by abdominal colicky pain, vomiting, and intractable constipation requiring frequent admissions to the hospital.

*k.* Proctitis, chronic, with moderate to severe symptoms of bleeding, painful defecation, tenesmus, and diarrhea, and repeated admissions to the hospital.

*l.* Ulcer, peptic, duodenal, or gastric with repeated hospitalization, or "sick in quarters" because of frequent recurrence of symptoms (pain, vomiting, or bleeding) in spite of good medical management and supported by endoscopic evidence of activity.

*m.* Ulcerative colitis, except when responding well to treatment.

*n.* Rectum, stricture of with severe symptoms of obstruction characterized by intractable constipation, pain on defecation, or difficult bowel movements, requiring the regular use of laxatives or enemas, or requiring repeated hospitalization.

### 3–6. Gastrointestinal and abdominal surgery
The causes for referral to an MEB are as follows:

*a.* Colectomy, partial, when more than mild symptoms of diarrhea remain or if complicated by colostomy.

*b.* Colostomy, when permanent.

*c.* Enterostomy, when permanent.

*d.* Gastrectomy, total.

*e.* Gastrectomy, subtotal, with or without vagotomy, or gastrojejunostomy, with or without vagotomy, when, in spite of good medical management, the individual develops "dumping syndrome" which persists for 6 months postoperatively; or develops frequent episodes of epigastric distress with characteristic circulatory symptoms or diarrhea persisting 6 months postoperatively; or continues to demonstrate appreciable weight loss 6 months postoperatively.

*f.* Gastrostomy, when permanent.

*g.* Ileostomy, when permanent.

*h.* Pancreatectomy.

index to overall functional capacity. Therefore, the functional capacity of a particular organ or system of the body, RATHER THAN THE DEFECT PER SE, will be evaluated in determining the numerical designation 1, 2, 3, or 4.

*c.* The factors to be considered are as follows:

(1) P—Physical capacity or stamina. This factor, general physical capacity, normally includes conditions of the heart; respiratory system; gastrointestinal system; genitourinary system; nervous system; allergic, endocrine, metabolic and nutritional diseases; diseases of the blood and blood forming tissues; dental conditions; diseases of the breast, and other organic defects and diseases which do not fall under other specific factors of the system.

(2) U—Upper extremities. This factor concerns the hands, arms, shoulder girdle, and spine (cervical, thoracic, and upper lumbar) in regard to strength, range of motion, and general efficiency.

(3) L—Lower extremities. This factor concerns the feet, legs, pelvic girdle, lower back musculature and lower spine (lower lumbar and sacral) in regard to strength, range of motion, and general efficiency.

(4) H—Hearing and ears. This factor concerns auditory acuity and disease and defects of the ear.

(5) E—Eyes. This factor concerns visual acuity and diseases and defects of the eye.

(6) S—Psychiatric. This factor concerns personality, emotional stability, and psychiatric diseases.

*d.* Four numerical designations are assigned for evaluating the individual's functional capacity in each of the six factors. Guidance for assigning numerical designators is contained in table 7–1. The numerical designator is not an automatic indicator of "deployability" or assignment restrictions. Likewise, the conditions listed in chapter 3, rather than the numerical designator of the profile, will be the determinant for MEB processing.

(1) An individual having a numerical designation of "1" under all factors is considered to possess a high level of medical fitness.

(2) A physical profile designator of "2" under any or all factors indicates that an individual possesses some medical condition or physical defect which may require some activity limitations.

(3) A profile containing one or more numerical designators of "3" signifies that the individual has one or more medical conditions or physical defects which may require significant limitations. The individual should receive assignments commensurate with his or her physical capability for military duty.

(4) A profile serial containing one or more numerical designators of "4" indicates that the individual has one or more medical conditions or physical defects of such severity that performance of military duty must be drastically limited. The numerical designator "4" does not necessarily mean that the soldier is unfit because of physical disability as defined in AR 635–40. When a numerical designator "4" is used, there are significant limitations which must be fully described if such an individual is returned to duty.

*e.* Anatomical defects or pathological conditions will not of themselves form the sole basis for recommending assignment or duty limitations. While these conditions must be given consideration when accomplishing the profile, the prognosis and the possibility of further aggravation must also be considered. In this respect, profiling officers must consider the effect of their recommendations upon the soldier's ability to perform duty. Profiles must be realistic. All profiles and assignment limitations must be legible, specific, and written in lay terms. If the commander has questions about a profile or is unable to utilize the soldier within the profile, the procedures in paragraph 7–12 will apply.

(1) Determination of individual assignment or duties to be performed are command/administrative matters. Limitations such as "no field duty," "no overseas duty," or "must have separate rations" are not proper medical recommendations.

(2) It is the responsibility of the commander or personnel management officer to determine proper assignment and duty, based upon knowledge of the soldier's profile, assignment limitations, and the duties of his or her grade and MOS.

(3) Table 7–1 contains the physical profile functional capacity guide.

(4) See TB MED 287 for profiling soldiers with pseudofolliculitis.

### 7–4. Temporary vs. permanent profiles

*a. Permanent profiles.* A profile is considered permanent unless a modifier of "T" (temporary) is added as described in *b* below. A permanent profile may only be awarded or changed by the authority designated in paragraph 7–6. Permanent profiles may be amended at any time if clinically indicated and will automatically be reviewed at the time of a soldier's periodic examination. The soldier's commander may also request a review of a permanent profile.

*b. Temporary profiles.* A temporary profile is given if the condition is considered temporary, the correction or treatment of the condition is medically advisable, and correction usually will result in a higher physical capacity. Soldiers on active duty and RC soldiers not on active duty with a temporary profile will be medically evaluated at least once every 3 months at which time the profile may be extended by the profiling officer. Temporary profiles should specify an expiration date. If no date is specified, the profile will automatically expire at the end of the third month. In no case will individuals in military status carry a temporary profile that has been extended for more than a total of 12 months without positive action being taken either to correct the defect or to effect other appropriate disposition. For RC members, a determination involving entitlement to pay and allowances while disabled is an adjunct consideration. As a general rule, the physician initiating the temporary profile will initiate appropriate arrangements for the necessary correction or treatment of the temporary condition. A temporary profile will be awarded by the authority in paragraph 7–6. Whenever a temporary medical condition is recorded on DA Form 3349 or SF 88 or is referred to in a routine personnel action, the modifier "T" will be entered immediately preceding the appropriate PULHES numerical designator.

### 7–5. Representative profile serial and codes

To facilitate the assignment of individuals after they have been given a physical profile serial and for statistical purposes, code designations have been adopted to represent certain combinations of numerical designators in the various factors and most significant assignment limitations. (See table 7–2.) The alphabetical coding system will be recorded on personnel qualifications records. This coding system will not be used on medical records to identify limitations. The numerical designations under each profile factor, PULHES, are given in table 7–1.

### 7–6. Profiling officer

Commanders of Army MTFs are authorized to designate one or more physicians, dentists, optometrists, podiatrists, audiologists, nurse practitioners, and physician assistants as profiling officers. The commander will assure that those designated are thoroughly familiar with the contents of this regulation. Profiling officer limitations are as follows:

*a.* Physicians: No limitations. Changing from or to a permanent numerical designator "3" or "4" requires a physical profile board (PPBD) (para 7–8).

*b.* Dentists, optometrists, podiatrists, physical therapists, and occupational therapists: No limitation within their specialty for awarding permanent numerical designators "1" and "2." A temporary numerical designator "3" may be awarded for a period not to exceed 30 days. Any extension of a temporary numerical designator "3" beyond 30 days must be confirmed by a physician. (The second member of the PPBD must always be a physician.) (See para 7–8.)

*c.* Audiologists: No limitation within their specialty for awarding permanent numerical designators "1," "2," "3," or "4," in cases of sensioneural hearing loss if retrocochlear lesion has been ruled out. Changing from or to a permanent numerical designator "3" or "4" requires a PPBD (para 7–8).

*d.* Physician assistants, nurse midwives, nurse practitioners, and licensed clinical psychologists are limited to awarding temporary

Army Regulation 600–60

Personnel—General

# Physical Performance Evaluation System

Headquarters
Department of the Army
Washington, DC
28 February 2008

UNCLASSIFIED

*b.* Once referred to the MMRB, direct observation, evaluation, application of physical standards, and the standards in paragraph 4-2, below, will determine MMRB recommendations.

*c.* The ability of the Soldier to perform in any military occupational specialty (MOS) other than the one being submitted for consideration will not be part of the MMRB evaluation other than in relationship to reclassification. Specifically, the MMRB will not make recommendations to have MOSs not under consideration withdrawn. Soldiers will be evaluated for the MOS in which they are scheduled to work. Should the MMRBCA decision retain a Soldier, they may only work in the PMOS or branch/specialty code approved by MMRBCA.

*d.* The MMRB recommendations to the MMRBCA and the MMRBCA decision are limited to one of the actions listed below. The MMRBCA may return the case to the MMRB for further evaluation or may shorten or extend the probationary period so long as it does not exceed the maximum specified at paragraph 4-18, below.

(1) Retain Soldier in PMOS or branch/specialty code. (See paras 4–2 and 4–17.)

(2) Recommend reclassification. (See paras 4–2 and 4–19.)

(3) Place in probationary status. (See para 4–18.)

(4) Refer for medical evaluation board/physical evaluation board (MEB/PEB) or medical disqualification, as appropriate. (See para 4-20.) NOTE: "Medical discharge" is not an authorized recommendation for the MMRB or action by the MMRBCA.

*e.* For description of the physical profile serial system, see AR 40-501, paragraph 7-3, and table 7-1.

**2–2. Required referral to an MMRB**

*a.* Unless specified as exempt under paragraph 2-3, below, Soldiers must be referred to an MMRB in the following situations:

(1) Soldiers who are already permanently non-deployable for non-medical reasons must still be referred to an MMRB when they are issued a permanent 3 or 4 physical profile. (An example of this situation is the Soldier who is permanently non-deployable due to a misdemeanor conviction for domestic violence and later is issued a permanent 3 or 4 profile.)

(2) Soldiers who are issued a P3 or P4 physical profile on DA Form 3349 and meet medical retention standards. This includes Soldiers who were referred to the MEB separately from MMRB evaluation, where the MEB returned the Soldier to duty with a P3 physical profile.

*(a)* When the P3 profile is for a medical impairment that does not fall below medical retention standards based on diagnosis alone (for example, arthritis, AR 40-501, para 3-3d), the medical treatment facility (MTF) should refer the Soldier to an MMRB to allow the Soldier to be considered for reclassification. Also, if the medical impairment falls under "General and miscellaneous conditions and defects" (AR 40-501, para 3-41e) and the condition is determined to "not interfere with satisfactory performance of duty," the Soldier should generally be referred to an MMRB and considered for reclassification.

*(b)* When the issued profile is a P4, the MMRB recorder or designee will confirm with the MTF whether the Soldier meets medical retention standards. Generally, a P4 indicates a medical impairment severe enough to warrant direct referral to MEB/PEB.

(3) Soldiers who have been retained by the MMRB or found fit by the PDES, and subsequently experience one of the following events.

*(a)* Soldier receives an additional permanent 3 or 4 profile in another profile factor.

*(b)* The condition for which the Soldier was previously retained deteriorates, or the profile is re-evaluated and additional limitation(s) is (are) added.

*(c)* Soldier performs duties for an appropriate period of time (up to 180 days), but the commander believes the Soldier's permanent profile or impairment precludes the Soldier from performing the duties of his or her PMOS, branch, or specialty code.

(4) The permanent 3 profile is related to a waiver of accession standards (see glossary). The waiver documentation for the profile must be reviewed. Before referral to the MMRB, the Soldier will be referred to the Medical Treatment Facility (MTF) that supports the Reception Center for confirmation that a permanent 3 profile is warranted (AR 612-201, para 2-18d). It is imperative to revalidate the profile status at the MTF. (Normally a permanent 3 profile is given upon initial disqualification under accession medical standards, but is upgraded when the waiver is approved.) If the Soldier is in initial entry training (IET) when the P3 is confirmed, the Soldier will be processed in accordance with paragraph 2-2b, below.

*b.* Soldiers in IET who receive a P3.

(1) Soldiers in IET may acquire permanent "3" profiles in two ways:

*(a)* Some receive profiles from the waiver authorities upon accession (see AR 40-501, para 1-6) if they have disqualifying conditions. That profile is validated and confirmed by the supporting MTF. (See AR 612-201, para 2-18d.)

*(b)* Some receive profiles for conditions acquired during training.

(2) During IET, Regular Army Soldiers will be reported to AHRC, Accession Management Branch (AHRC-EPT-A)

for a determination of whether a change in projected initial classification PMOS is warranted. USAR Soldiers will be reported to the USAR Initial Military Training (IMT) Coordinator, Army Reserve G-1, Initial Military Training Branch at the Army Reserve Command. Army National Guard (ARNG) Soldiers will be reported to the ARNG-State Enlisted Personnel Manager (IET) Coordinator. If a change is required, the Soldier's enlistment contract may need to be renegotiated in another qualifying MOS retaining the original enlistment terms or better in accordance with DA Pam 611-21.

(3) Generally, Soldiers who receive a permanent 3 profile, whether acquired during basic combat training (IET-BCT) or due to a waiver of accession standards, and who otherwise meet medical retention standards, will be deferred from MMRB evaluation until no later than six months into their first duty assignment following advanced individual training (AIT). This will provide the command adequate time to evaluate the Soldier's performance in an MOS.

(4) Soldiers with a permanent 3 profile in AIT or in the AIT phase of one-station unit training (OSUT) may be referred to MMRBs if the profile exceeds the physical requirement for the MOS in accordance with DA Pam 611-21.

(5) Soldiers who receive a permanent 3 profile, whether acquired in BCT or due to a waiver of accessions, and who do not meet medical retention standards, will be referred to a MEB.

*c.* Soldiers are generally required to personally appear before the MOS/Medical Retention Board, unless the MMRBCA approves the Soldier's request for waiver of appearance. If an Army Reserve Soldier is going to request a waiver of appearance, it must be submitted with the MMRB packet. Travel to the MMRB will be fully funded by a Soldier's component.

*d.* When a Soldier fails to appear when required, the President of the MMRB will determine whether to proceed with evaluation without the Soldier present. A Soldier who fails to appear before his/her scheduled board may be subject to disciplinary or other appropriate action.

**2–3. MMRB evaluation exempted**

Soldiers under the following circumstances will not be referred to the MMRB.

*a.* When the underlying medical condition does not meet the medical retention standards of AR 40–501. In accordance with AR 40–501, chapter 3, these Soldiers require, as applicable, either direct referral into the PDES or processing under RC regulations for medical disqualification (see glossary).

*b.* When determined fit by the PDES, except as provided in paragraph 2–2b, above.

*c.* When profiles are temporary. Commanders should ensure that Soldiers do not exceed the time limitations for temporary profiles established by AR 40–501, chapter 7.

*d.* When the permanent profile serial factor is a 1 or 2: Generally, Soldiers with a permanent 1 or 2 profile meet medical retention standards. If the assignment limitations are overly restrictive, the unit commander should refer the Soldier to the appropriate medical authority for reevaluation of the profile in accordance with AR 40-501, chapter 7, as well as confirmation that the Soldier meets medical retention standards. (In rare instances, a Soldier may fall below medical retention standards, but require only a permanent 2 profile.)

*e.* When a general officer is issued a permanent 3 or 4 physical profile: General officers will receive a retention standards physical. If they meet medical retention standards, their deployability will be a command determination without referral to an MMRB. If they do not meet medical retention standards, they will be referred to the physical disability evaluation system under the process (duty-related or non-duty-related) applicable to their duty status or the service-connection of their impairment. (See AR 635-40.)

*f.* Soldiers listed below unless they have sufficient time remaining to be eligible for reassignment and receive assignment instructions. The medical conditions of these Soldiers will be evaluated for any required referral into the PDES at the time of their separation or retirement physical. Therefore, the PPES should not be used as a means of gaining entry into the PDES in conjunction with separation or retirement for nondisability reasons.

(1) A Soldier whose request for length of service retirement has been approved.

(2) An active duty officer who is within 1 year of date of mandatory retirement for age or length of service.

(3) An RC Soldier who is within 1 year of date of mandatory removal from RC Active Status.

(4) A Soldier who is charged with an offense under the Uniform Code of Military Justice (UCMJ) or who is under investigation for an offense chargeable under the UCMJ that could result in dismissal or punitive discharge or administrative separation action unless the Soldier is cleared of the charges or the command determines not to proceed with a court-martial or administrative separation.

(5) Administrative separation proceedings have been initiated.

(6) An enlisted Soldier (except a Soldier serving on his or her initial enlistment) who is within 90 days of expiration of term of service; does not intend to reenlist or extend enlistment; signs a declination statement; and if Active Army, has no RC obligation. However, if the Soldier accepts affiliation or indicates a desire to continue service in another Army component after separation, refer the Soldier to the MMRB for processing prior to the Soldier's projected date of separation.

**2–4. Time standards for MMRB referral and MMRBCA action**

*a.* Soldiers will appear before an MMRB within the time standards stated below: The time standard will be

Army Regulation 600–60

Personnel—General

# Physical Performance Evaluation System

Headquarters
Department of the Army
Washington, DC
31 October 1985

UNCLASSIFIED

system. Changes of assignment to better align a general officer's profile and career background will be a GOMO responsibility.

*g.* Soldiers who have a condition listed in chapter 3, AR 40–501, will be referred for physical disability evaluation. Soldiers with permanent profiles resulting from combat wounds are not exempt from program evaluation. If a combat wounded soldier is physically incapable of performing PMOS or specialty code duties worldwide and under field conditions and reclassification or probationary status are not warranted, it is the responsibility of the MMRBCA to refer the soldier into the disability system. Combat wounded soldiers referred by an MMRB to the disability system (the inability to perform PMOS/specialty code duties based on wounds received in combat) will be afforded the opportunity to apply for Continuance on Active Duty (chapter 6, AR 635–40).

*h.* Soldiers with approved service retirements, DA or locally imposed bars to reenlistment, or pending administrative separation are not required to be evaluated by an MMRB. However, if the soldiers have sufficient time in service remaining to be eligible for reassignment, and the soldier receives assignment instructions, he or she will be referred to an MMRB. (see para 2–6.)

### 2–2. Physical profile serial

*a.* AR 611–201 establishes the physical profile serial (PULHES)used in determining the initial selection of basic combat trainees (including enlistees for MOS options) for advanced individual training. The profile established at the Military Entrance Processing Station (MEPS) is the basis for determining initial training assignments for all personnel new to the service.

*b.* The PULHES listed in AR 611–201 for each MOS will not be used as a basis for determining PMOS retention, disqualification, reclassification, or change in specialty code, solely because a soldier is issued a profile with a "3" or "4" in one or more of the PULHES factors. Permanent profiles identify in-service soldiers who have medical problems that may limit their ability to perform the full range of PMOS or specialty code duties in a worldwide field environment. The issuance of a profile indicates to the commander that a detailed review of the medical condition is appropriate.

### 2–3. Issuance of permanent profile

*a.* On issuance of a permanent physical profile (DA Form 3349(Physical Profile Record)), the soldier's servicing medical treatment facility (MTF) will send copies to the following:

(1) Original and one copy to the soldier's unit commander.

(2) One copy to the soldier's Military Personnel Office (MILPO):

(3) One copy to the soldier's health record.

(4) One copy to the clinic file.

*b.* The soldier's servicing MILPO will (as a minimum) complete the following actions on receipt of a permanent physical profile with a numerical factor of "3" or "4" in one or more of the PULHES factors:

(1) Annotate the soldier's Personnel Qualification Record and make appropriate Standard Installation/Division Personnel System (SIDPERS)entries.

(2) File a copy of the medical statement in the permanent portion of the soldier's Military Personnel Records Jacket, US Army (MPRJ).

(3) Forward one copy to the soldier's Career Branch in MILPERCEN for those soldiers who have CMIF established at MILPERCEN or ARPERCEN for USAR soldiers.

### 2–4. Determinations

*a.* All soldiers regardless of their permanent medical condition and assignment limitations who can physically perform the full range of duties required in their PMOS or specialty code, worldwide and under field conditions, will be considered deployable.

*b.* Soldiers will be determined to be nondeployable effective the date—

(1) The MTF refers the soldier to a Medical Evaluation Board(MEBD).

(2) The MMRBCA refers the soldier to the Army's physical disability system.

(3) The MMRBCA recommends that the soldier be reclassified or change specialty code.

(4) The MMRBCA places the soldier in a probationary status.

*c.* Soldiers in a nondeployable status are questionably fit for retention on active duty and must be considered to have temporarily or permanently lost qualification in their PMOS or specialty code.

### 2–5. Reenlistment/Career status

*a. Reenlistment (enlisted).* Soldiers pending MMRB action may not reenlist. The soldier, if otherwise eligible, may be voluntarily extended prior to Expiration Term of Service(ETS) until a final determination is made by the MMRB. If retained in PMOS, reclassified in another MOS, or found fit by USAPDA, reenlistment will not be denied solely because of MMRB processing.

*b. Career status (officers).* Officers pending MMRB action may apply and be considered for Conditional Voluntary Indefinite(CVI), Voluntary Indefinite (VI) or Regular Army status. However, final approval will not be made and the Regular Army oath of office will not be executed until MMRB action has been finalized.

### 2–6. Assignments

*a.* Soldiers in a deployable status are eligible for worldwide assignment, if otherwise qualified. Prior to proceeding on assignment instructions, all soldiers possessing a "3" or "4" permanent physical profile will be evaluated by an MMRB. Soldiers on assignment instructions will be promptly processed by the MMRB. Requests for deferment or deletion will be forwarded to MILPERCEN or ARPERCEN (DARP–ZAO)per DA Pam 600–8–10 when the MMRB recommends probationary status, reclassification, or referral to the Army's physical disability system. Soldiers will not proceed on assignment instructions until a final determination is made by MILPERCEN or ARPERCEN.

*b.* Soldiers required to appear before an MMRB must be boarded and MMRB action finalized prior to attendance at training courses.If retention or reclassification is approved, the soldier will be authorized to attend the appropriate course and will be required to participate in training up to the limits of the profile.

## Chapter 3
## Convening Authority, Membership, Procedures, and Recommendations

### 3–1. Convening authority

*a.* Officers exercising general court-martial convening authority are authorized to convene an MMRB and take final action on MMRB recommendations.This authority may be delegated as follows:

(1) To another general officer on his or her staff.

(2) To the first general officer in the soldier's chain of command.

*b.* All delegations will be in writing, and will be valid until revoked in writing. Every action taken according to such delegation will state that the action is taken "pursuant to delegation of authority by dated ."

*c.* The authority granted under *a* above may be withheld by a higher MMRBCA in a particular case or class of cases. Such authority will be in writing and will be valid until revoked in writing.

*d.* The authority to take administrative action in connection with the processing of cases under this regulation may be delegated to a commissioned or warrant officer on the MMRBCA staff. No written delegation is necessary. (Final decision authority may not be delegated except as authorized in *a* above.) This authority includes but is not limited to—

(1) Appointment of board members determined by the MMRBCA.

(2) Referring individual soldiers to an MMRB.

(3) Administratively processing board recommendations (see para 3–5 for required review).