# In the United States Court of Federal Claims

No. 07-166C
(Filed January 26, 2010)

* * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **PAUL E. DOLAN,** | * Military pay; review of military |
| | * correction board action; |
| Plaintiff, | * disability pay; simultaneous |
| | * processing requirement; Army |
| v. | * Reg. 600-8-24 ¶¶ 1-22, 1-23; |
| | * Army Reg. 635-40 ¶ 4-4; |
| | * whether Army required to retain |
| **THE UNITED STATES,** | * servicemember for disability |
| | * processing after Secretary of the |
| Defendant. | * Army approved his general |
| | * discharge; harmless error. |

* * * * * * * * * * * * * * * * * * * * * *

John A. Wickham, Evergreen, CO, for plaintiff.

A. Bondurant Eley, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Major Jerrett Dunlap, United States Army Litigation, Division Military Personnel Branch, Arlington, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This review of a rejection of a former servicemember's request to the Army Board for Correction of Military Records (the "ABCMR" or the "corrections board") for correction of his records and an award of disability, back pay, and back retired pay is before the court after argument on cross-motions for judgment on the administrative record. The issue presented is whether a separation must be set aside because a disability evaluation was commenced after a servicemember was eliminated, but before he was discharged.

## FACTS

The following facts were extracted from an incompetently sequenced Administrative Record (the "AR"). Any oversights belie the court's efforts to compile an accurate and complete chronology.

1. <u>Background</u>

Paul E. Dolan ("plaintiff") enlisted in the United States Army on April 28, 1975.  On May 19, 1981, plaintiff was commissioned in the United States Army Reserve (the "USAR") as a second lieutenant.  On July 10, 1981, plaintiff joined the Army National Guard of Oklahoma.  Plaintiff transferred back to the USAR on January 5, 1983.  On February 28, 1988, plaintiff was ordered to active duty.  On August 15, 1996, while serving in the USAR, plaintiff was promoted to the rank of Major, O-4, Military Police branch.  On August 27, 1998, plaintiff was reassigned to Headquarters, 9th Regional Support Command, in Honolulu, Hawaii, to report on October 5, 1998.

Before reporting to Hawaii, plaintiff requested a one-month pay advance and a six-day period of permissive leave.  His stated reasons for his pay advance request were to maintain two households, to care for his terminally ill father, to pay off debts from a civil suit to which plaintiff was a party, and to recover from a debt collection levied against him.  Army records reflect that permissive leave from September 30, 1998, until October 5, 1998, was granted to plaintiff.

Plaintiff did not report for duty on October 5, 1998.  Rather, as evidenced in transcripts from the Board of Inquiry (the "BOI"), plaintiff informed superiors that he believed that he had thirty days of leave.  Sergeant First Class ("SFC") Claude H. Napier, who handled plaintiff's leave form, testified at the BOI that plaintiff had requested thirty days of leave, but that any leave beyond plaintiff's October 5, 1998 report date could not be authorized.  SFC Napier explained that he "whited out" part of plaintiff's leave form to "clean [it] up" and informed plaintiff that he was required to secure permission from plaintiff's new unit to pursue leave beyond October 5, 1998.  AR at 532.  Plaintiff testified that he "understood he had 30 days total leave."  <u>Id.</u> at 540.  Although acknowledging that he had received telephone calls from superiors about being absent without leave ("AWOL"), plaintiff testified that there was "no way [he] could make the flight [to Hawaii.]"  <u>Id.</u> at 540.

In February 1999 plaintiff's commander undertook a preliminary administrative inquiry regarding whether plaintiff (1) had disobeyed an order by refusing to return when ordered; (2) was AWOL; and (3) had made a false swearing by signing a sworn document that he did not know he was reporting late.  An informal investigation concluded with the commander's recommending non-judicial punishment, in lieu of court-martial proceedings, under Article 15 of the Uniform Code of Military Justice.  On March 23, 1999, Major General Hill (the "Major General"), the general court-martial convening authority, reprimanded plaintiff pursuant to Article 15.  The Major General found that plaintiff had committed Article 15 offenses—namely, "being absent without authority for about twenty-

one days, disobeying an order from your superior commissioned officer, and false swearing." Id. at 31.  After plaintiff received a letter of reprimand and forfeited two months' pay, he appealed the punishment to the Major General.  By letter dated April 23, 1999, the Major General denied plaintiff's appeal.

2.  Plaintiff's elimination

On September 20, 1999, the Major General initiated elimination proceedings before a BOI in an attempt to discharge plaintiff from the Army.  The BOI proceedings stemmed from three charges: two Article 15 charges—disobeying an order and being AWOL—and filing a false statement under oath.  Plaintiff's written rebuttal, dated October 22, 1999, espoused a line of reasoning to allow plaintiff to retire in lieu of elimination:

> An elimination action against MAJ Dolan, at this point in his military career, constitutes an enormous fine and is inappropriate for the offenses. MAJ Dolan has 17 years active federal service.  He will be eligible to retire in three years with an active duty retirement, receiving one-half of his base pay for life.  MAJ Dolan's elimination amounts to a fine in the hundreds of thousands of dollars.  This is an excessive penalty.  These offenses do not justify MAJ Dolan forfeiting all that he has worked for during his military career.

Id. at 566.  Plaintiff's case was scheduled to be heard before the BOI on January 25, 2000. However, the Major General granted plaintiff's request to delay proceedings until March 9, 2000, to allow plaintiff's counsel more time to prepare and to attend an unrelated court-martial hearing.  The March 9 hearing was delayed again after plaintiff underwent what his surgeon termed "quite complex" stomach surgery on March 3, 2000.  Id. at 555.  The BOI heard plaintiff's case on April 20, 2000.

On April 20, 2000, the BOI recommended that plaintiff be discharged with a General Discharge Under Honorable Conditions.  Plaintiff appealed, and on January 18, 2001, the Department of the Army Board of Review for Eliminations (the "BRE") affirmed the BOI's recommendation.  Subsequently, on February 7, 2001, the elimination action was forwarded to the Acting Secretary of the Army for approval. 1/

───────────────────

1/  At that time there was no Assistant Secretary of the Army (Manpower and Reserve Affairs), the official who can act on behalf of the Secretary in elimination cases involving officers who have at least eighteen years of active federal service at the time of separation, but are not eligible for regular retirement.  Therefore, on February 7, 2001, the Deputy Assistant Secretary (Army Review Boards) forwarded plaintiff's elimination referral to the Acting Secretary of the Army.

On February 8, 2001, the Acting Secretary of the Army accepted the recommendations to eliminate plaintiff from the United States Army with a General Discharge Under Honorable Conditions.   On February 22, 2001, U.S. Army Personnel Command ("PERSCOM") directed that plaintiff be discharged on March 14, 2001.  Plaintiff requested to extend his retention in the Army in order to conduct a physical disability evaluation.  On March 8, 2001, after the Acting Secretary of the Army had accepted the elimination recommendation, but before plaintiff's discharge date, a Medical Evaluation Board (the "MEB") 2/ convened to discuss plaintiff's disability status.  On March 13, 2001, one day before plaintiff's ordered discharge date, an Army medical officer requested that plaintiff's discharge date be extended by ninety days to allow processing through the Army's physical disability evaluation system.   On March 15, 2001, the Office of the Surgeon General recommended disapproval of the medical officer's request for an extension, citing Army Reg. 600-8-24, Officer Transfers and Discharges, ¶ 1-23a (July 21, 1995), which "specifically excludes officers who have been processed for dismissal from physical disability processing."  AR at 181.   Before the conclusion of disability evaluations, plaintiff was Generally Discharged Under Honorable Conditions on March 14, 2001, with eighteen years and twenty days of active federal service.

---

2/  The United States Court of Appeals for the Federal Circuit in Barnick v. United States, No. 2008-5074, 2010 WL 46784, at *1 (Fed. Cir. Jan. 8, 2010), summarized the military's disability retirement process.  The court explained:

> A claim for disability is first considered by [the MEB], which reviews the individual's medical records to determine the nature of the disability.  Then, if the disability is found to be permanent, the issue of disability retirement is referred to a Physical Evaluation Board (the "PEB"), which provides a formal fitness and disability determination.  If the PEB finds the service member unfit for duty and permanently disabled, it assigns a disability rating.   If the disability rating is 30% or more, the PEB can recommend disability retirement. If the rating is less than 30%, the PEB can recommend discharge with the service member's having the option to receive a lump-sum disability severance payment.

Id.  See generally Army Reg. 635-40, Physical Evaluation for Retention, Retirement, or Separation, ¶ 4-10 (Aug. 15, 1990) (explaining the MEB process); ¶¶ 4-13, 4-17a, b (explaining MEB referral to PEB);¶¶ 4-19, 4-21 (explaining PEB fitness determinations and disability ratings).

### 3. Plaintiff's disabilities

In January 2003 plaintiff filed a claim for service-connected compensation with the Department of Veterans Affairs (the "VA"). An April 7, 2003 letter from the Department of Veterans Affairs Medical and Regional Office Center shows that plaintiff received $1,008.00 in disability payments per month. As of the April 7, 2003 letter, plaintiff was determined to be 10% disabled for patellofemoral syndrome in his left knee, 10% disabled for degenerative joint disease in his right shoulder, and 10% disabled for tinnitus. Plaintiff's disability ratings were raised from 10% to 30% for chronic depression, 10% to 20% for degenerative joint disease in his left shoulder, and 0% to 10% for post-operative perirectal abscess. Each of these disabilities was determined to be effective March 15, 2001. A September 15, 2004 letter from the VA reflects increased monthly payments to $2,239.00, effective December 1, 2003, and a raised rating for his chronic depression and stress to 50%. On May 11, 2005, the VA notified plaintiff that he was "100% permanently and totally disabled due to service-connected disabilities, effective August 26, 2004." Id. at 214.

Plaintiff's disability status results from multiple medical problems that plaintiff confronted before, during, and after his elimination proceedings. Plaintiff experienced a number of medical procedures and problems between March 1999 and March 2001: plaintiff had shoulder surgery; plaintiff required treatment for bilateral patellofemoral compression syndrome, a stress-induced knee condition; plaintiff was diagnosed with acromio-clavicular arthritis in his right shoulder; plaintiff underwent stomach surgery to treat reflux disease; plaintiff was treated for depression and anxiety; and, in March 2001, plaintiff was diagnosed with a degenerative disc disease. Plaintiff also underwent two remedial surgeries on his shoulders in late 2000; both were deemed unsuccessful, thus leaving plaintiff disabled with duty-related restrictions.

### 4. Plaintiff's applications for correction of his records

On May 7, 2002, plaintiff requested that the corrections board set aside his discharge and reinstate him on active duty because he had accumulated over eighteen years of active federal service and a request for a medical hold preceded his discharge. Plaintiff also pursued relief from the Army Discharge Review Board (the "ADRB") on July 11, 2002. The ABCMR returned plaintiff's application without action because only one application for relief can be submitted to a military review board at a time. On October 18, 2002, plaintiff's request was denied by the ADRB, which found that plaintiff was "properly and equitably discharged." Id. at 91. On December 2, 2002, plaintiff renewed his application to the ABCMR.

On February 24, 2004, the ABCMR considered plaintiff's case.  Plaintiff argued that he should not have been separated because he had served over eighteen years and a medical evaluation was pending at the time of his discharge.  The ABCMR determined that "Army regulation clearly provides that an officer referred for elimination action for offenses, which could result in punitive discharge, may not be referred for processing by a medical or physical evaluation board." Id. at 58.  Because each of plaintiff's offenses could be punished with "punitive discharges," the ABCMR concluded that "[plaintiff's] contention that he should have been retained for disability processing is contrary to Army regulation . . . ." Id.  The ABCMR's denial of plaintiff's application was issued on March 3, 2004.  Plaintiff again appealed to the ABCMR on July 19, 2004.  Treating this as a request for reconsideration, the ABCMR affirmed its denial of plaintiff's application on April 25, 2005.

On March 13, 2007, as amended on May 29, 2007, plaintiff filed his complaint in the United States Court of Federal Claims.  On June 13, 2007, defendant moved to dismiss plaintiff's claim or, alternatively, for a stay of proceedings and remand to the ABCMR, to which plaintiff responded with a motion for summary judgment on August 14, 2007.  On August 29, 2007, defendant moved to stay briefing pending a remand to the ABCMR "to allow for a determination of whether Mr. Dolan did, in fact, qualify for an award of physical disability benefits in lieu of termination . . . ."  Def.'s Br. filed Aug. 29, 2007, at 2.  On September 4, 2007, the court remanded the matter to the ABCMR with instructions to address plaintiff's claims for disability benefits in lieu of discharge.  The ABCMR Decision Memorandum dated December 11, 2007, shows that the ABCMR was discomfited by the remand to the extent that it noted:

> 16.  In a Plaintiff's Motion for Reconsideration, dated 13 September 2007, counsel noted that the Court's remand order asked the ABCMR to address a claim never sought by the applicant – disability benefits in lieu of termination.  He noted that effective the day after his Army discharge, the DVA found the applicant 100 percent disabled for service-connected injuries.  In 2003, the DVA's ratings were increased, to total 120 percent.  He noted that, since discharge, the applicant has been permanently and totally disabled and continuously unemployable.  He noted that the applicant never asked the ABCMR or the Court for disability benefits, nor to complete a post hoc disability evaluation.  He asked to be retained on active duty because medical hold regulations were ignored.

AR at 5.  In fact, the remand was ordered at defendant's behest to consider the claim for disability benefits.

This reconsideration was productive insofar as the ABCMR revised its earlier findings to correct plaintiff's records to reflect his retention beyond the date of discharge to complete disability processing.  The corrections board explained, as follows:

22.  Counsel for the applicant specifically noted, in Plaintiff's Motion for Reconsideration, dated 13 September 2007, that the Court's remand order asked the ABCMR to address a claim never sought by the applicant – disability benefits in lieu of termination.  However, after all of the above is said, it is acknowledged that the applicant had numerous medical problems prior to the Acting Secretary of the Army approving his elimination from the Army in February 2001.  The applicant's doctors could have, and perhaps should have, initiated an MEB as early as January 2001 when it appeared physical therapy to improve his shoulder was not working.

23.  Except for the fact that counsel for the applicant specifically noted that the applicant did not desire such a correction, if he changes his mind it would be equitable to correct his records to show that he was retained beyond 14 March 2001 to complete an MEB/PEB.  The corrections would be:

a.  to show that, on 27 March 2001 (the day after the 26 March 2001 MEB Addendum was prepared) an MEB referred the applicant to a PEB for diagnoses of hearing loss, left ear; patellofemoral syndrome, left knee; degenerative joint disease, right shoulder; tinnitus; chronic depression; degenerative joint disease, left shoulder; and post operative perirectal abscess. This is based upon the available 7 April 2003 DVA Rating Decision.  It would be reasonable to presume that the applicant concurred with the findings and recommendations of the MEB as the diagnoses are based upon the 7 April 2003 DVA Rating Decision;

b.  to show that, on 3 April 2001 (within a reasonable period of time after a 27 March 2001 MEB), an informal PEB found the applicant to be physically unfit due to patellofemoral syndrome, left knee (10 percent); degenerative joint disease, right shoulder (10 percent); chronic depression (10 percent); degenerative joint disease, left shoulder (10 percent); and post operative perirectal abscess (zero percent); and that the diagnoses of hearing loss, left ear and tinnitus were found to be medically acceptable and not rated. It would be equitable to show that the PEB recommended the applicant be permanently retired with a 40 percent disability rating.  This is also based upon the available 7 April 2003 DVA Rating Decision (where it appears the original DVA Rating Decision awarded a lower disability rating for some of the

conditions).  It would be reasonable to presume that the applicant concurred with the findings of the informal PEB, did not request a formal hearing, and did not appeal the findings, as the diagnoses and ratings are based upon the 7 April 2003 DVA Rating Decision and regulatory guidance;

c.  to show that, on 4 April 2001, the Acting Secretary of the Army approved the applicant's retirement for disability in lieu of elimination from the Army;

d.  to show that the applicant was released from active duty on 18 April 2001 (10 working days, a reasonable period of time, after the Acting Secretary of the Army's action) and placed on the retired list in the rank and grade of Major, O-4 the following day; and

e.  based upon the applicant's record of service, it appears it would still be appropriate to show that his service remained characterized as general under honorable conditions.

Id. at 17-18.  The ABCMR did acknowledge that the Office of the Surgeon General's denial of plaintiff's request to extend his discharge date by ninety days was "due to a misinterpretation of the regulation."  Id. at 15.  However, the ABCMR found no error in the Army's processing of plaintiff's elimination.  The ABCMR specifically explained:

8.  Counsel accurately notes that Army Regulation 635-40, paragraph 4-4, states that officers who are believed to be medically unfit will be processed simultaneously for elimination and physical disability evaluation. Commanders will ensure that the actions are processed together, identified, and cross-referenced.  Once complete, both the elimination and disability actions will be forwarded directly to the Secretary of the Army, who will decide the proper disposition of the case.

9.  However, the earliest evidence that shows the applicant was pending an MEB is dated 8 March 2001, when he took an MEB medical examination, AFTER the Acting Secretary of the Army had already decided the proper disposition of the applicant's elimination case. There is no evidence of record and the applicant did not provide any to show that an MEB was initiated earlier than 8 March 2001. In fact, there is evidence to show that it appears the applicant attempted to hide some of his disabilities (i.e., his depression). Therefore, there is no conclusive evidence to show that the Army failed to follow regulatory guidelines to simultaneously process the applicant for

elimination and physical disability evaluation. The applicant's elimination case had already been processed and approved before the available evidence shows and MEB was ever initiated.

Id. at 13-14. Because the ABCMR found no error in the processing of plaintiff's elimination proceedings, it found no justification to expunge from his record documents relating to plaintiff's involuntary separation.

Plaintiff gave notice that he did not accept the ABCMR's findings, and he filed a second amended complaint on March 14, 2008. Defendant moved for judgment on the administrative record on April 18, 2008. After a series of extensions granted to plaintiff based on medical problems of his counsel, plaintiff's counsel responded with a cross-motion on November 25, 2008. Another series of medical emergencies commencing on January 7, 2009, prompted plaintiff's counsel to request several postponements to file his reply brief. Briefing finally was complete on July 7, 2009. Argument was heard on July 21, 2009. On August 7, 2009, the parties filed a Joint Motion To Suspend Proceedings pending settlement, which the court granted. On December 9, 2009, the court vacated its stay order upon notice from the parties that they failed to reach a settlement agreement.

## DISCUSSION

### I. Jurisdiction

Plaintiff's second amended complaint and the subsequent cross-motions for judgment on the administrative record are grounded on 37 U.S.C. § 204 (2006) (the "Military Pay Act"). It is well established that the Military Pay Act is a money-mandating statute and that claims for back pay based on the Military Pay Act are within the jurisdiction of the Court of Federal Claims. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006).

### II. Standard of review

#### 1. Judgment on the administrative record

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1, which provides a procedure for parties to seek an expedited trial on a "paper record, allowing fact-finding by the trial court." Bannum v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The parties are limited to the agency record and individual statements of fact submitted under RCFC 52.1. The court must make its findings of fact from this record as if it were conducting a trial. Bannum, 404 F.3d at 1357.

2.  Decisions of boards for correction of military records

Plaintiff challenges the decisions rendered by a board for correction of military records. The court reviews such decisions under a deferential standard so to "not disturb the decision of the [corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, No. 2008-5074, 2010 WL 46784, at *3 (Fed. Cir. Jan. 8, 2010) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). "This [standard of review] necessarily limits the Court of Federal Claims' review to the administrative record," except in extremely limited circumstances when the court may consider "'extra-record' evidence." Metz, 466 F.3d at 998. Plaintiff's burden is to show by "cogent and clearly convincing evidence" that the decision of the corrections board fails this standard. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (internal quotation marks omitted). Plaintiff must also overcome the presumption of regularity that attaches to the actions of the correction board. See Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the United States).

III.  Whether plaintiff's elimination was processed unlawfully given his pending
      disability evaluation

The issue for resolution is whether the decision of the corrections board not to allow plaintiff the benefit of simultaneous processing was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick, 2010 WL 46784, at *3.

Plaintiff contends that the ABCMR's decision was arbitrary and capricious because it incorrectly relied on Army Reg. 635-40, Physical Evaluation for Retention, Retirement, or Separation, ¶ 4-4 (Aug. 15, 1990), when it determined that the Army was not required to process plaintiff's disability action simultaneously with his elimination action. According to plaintiff, pursuant to Army Reg. 600-8-24 ¶¶ 1-22, 1-23, the Army should have extended his duty so that the Acting Secretary could consider both the elimination and disability actions while plaintiff was being processed for elimination, or, alternatively, the Army should have initiated disability proceedings in a more timely fashion in advance of the Secretary's ruling on his elimination. Plaintiff further contends that the ABCMR improperly applied a harmless error test and then impermissibly speculated on the Secretary's appropriate disposition of the elimination and disability actions. Because his service with the Army was not extended, plaintiff asserts that he was deprived of health care and disability benefits. Plaintiff asks the court to find that he remains on constructive active service, and he requests that the Army be ordered to "set aside [plaintiff's] involuntary separation from active duty by reason of elimination under [Army Reg.] 600-8-24, Chapter 4," and to "expunge from [his] official military personnel files all adverse documents related to his involuntary

10

separation." Second Am. Compl. filed Mar. 14, 2008, ¶¶ 11-12. Each allegation of error is discussed in turn.

1. <u>Regulatory framework</u>

The Army regulations in effect at the date of plaintiff's discharge, not those currently in effect, are dispositive in this case. <u>Chambers</u>, 417 F.3d at 1227. Two regulations govern the Army's procedure for eliminating an officer who has been found medically unfit to serve. The first, Army Reg. 635-40, Physical Evaluation for Retention, Retirement, or Separation, governs "the evaluation of physical fitness of Soldiers who may be unfit to perform their military duties because of physical disability." AR at 10. The second, Army Reg. 600-8-24, Officer Transfers and Discharges, governs elimination actions.

Army Reg. 635-40 ¶ 4-4 provides, in pertinent part:

> *a.* A commissioned or warrant officer will not be referred for disability processing instead of elimination action (administrative separation) that could result in separation under other than honorable conditions. Officers in this category who are believed to be unfit because of physical disability will be processed simultaneously for administrative separation and physical disability evaluation.
>
> . . . .
>
> *c.* The Commander, PERSCOM, will refer the entire file, including both courses of action, to the Office of the Secretary of the Army, ATTN: SAMR-RB, Washington, DC 20310-3073 for necessary review. The [Secretary of the Army] will decide the proper disposition of the case.

Army Reg. 635-40 ¶ 4-4. Army Regulation 600-8-24 governs eliminations from the Army. Paragraph 1-23, provides, in relevant part:

> If a commissioned or warrant officer is being processed for REFRAD, separation, or retirement or has been referred for elimination action, when it is determined that the officer has a medical impairment that does not meet medical retention standards, the officer will be processed as set forth in paragraphs *a* through *d* below.
>
> . . . .

11

*b.* When a commissioned or warrant officer, as applicable, is being processed for one of the actions listed in (1) through (6) below, the officer will be processed in accordance with the provisions of this regulation and through the MEB/PEB system. . . . If a physical disability evaluation results in a finding of physical unfitness, both actions will be forwarded . . . to the Secretary of the Army for determination of appropriate disposition.

. . . .

(5) Referral for elimination under chapter 4.

Army Reg. 600-8-24 ¶ 1-23. Army Reg. 600-8-24 ¶ 1-22a, provides, in relevant part: "The officer's immediate commander will ensure that medical examination procedures are followed as stated in AR 40-501." Army Reg. 40-501, Standards of Medical Fitness, ¶ 3-3b (Feb. 27, 1998), states: "Soldiers pending other than honorable administrative discharges (under [Army Reg.] 635-200 and [Army Reg.] 635-100) will be referred to an MEB. . . . See [Army Reg.] 635-40, paragraph 4-4, for processing of commissioned or warrant officers." Table 4-1 to Army Reg. 600-8-24, titled "Processing elimination of a nonprobationary officer," further instructs:

(3) If the Board of Review determines that the officer should not be retained, the case will be referred to the Secretary of the Army for final action. If the Board of Review determines the officer should be retained, the case will be closed. In either event, the officer will be notified at the earliest and practicable time by CG, PERSCOM.

Army Reg. 600-8-24 ¶ 4-19, tbl. 4-1, step 17.

2. <u>Simultaneous processing requirement</u>

The ABCMR found that plaintiff was not entitled to simultaneous processing under Army Reg. 635-40 ¶ 4-4 because the Acting Secretary had taken final action in accepting the recommendations of the BOI and the BRE before plaintiff had been designated for a medical disability evaluation. The Acting Secretary approved plaintiff's elimination action on February 8, 2001. AR at 158. The earliest MEB record reported an examination conducted on March 8, 2001, and reflected that "[plaintiff] has pending [a] general discharge under honorable conditions." Id. at 170.

Plaintiff first argues that Army Reg. 635-40 ¶ 4-4 does not apply to his case; rather, he should be evaluated under Army Reg. 600-8-24 ¶ 1-23b. Plaintiff submits that, unlike

Army Reg. 635-40 ¶ 4-4, the text of Army Reg. 600-8-24 ¶ 1-23 3/ "does not state that elimination and disability actions must be 'processed simultaneously,'" Pl.'s Br. filed Nov. 25, 2008, at 7 (quoting Army Reg. 635-40 ¶ 4-4a).  Plaintiff elaborates further that Army Reg. 600-8-24 ¶ 1-23's use of the more open-ended phrase "being processed" connotes that the regulation does not require that disability processing begin before an elimination is approved, nor that an elimination and disability action be initiated jointly.

Plaintiff maintains that Army Reg. 600-8-24 ¶ 1-23b(5) placed him in the status of "being processed" for his elimination—which only became final upon actual discharge—so that the Acting Secretary's approval of his elimination did not foreclose either the dual processing requirement or the completion of his MEB/PEB processing.  See Transcript of Proceedings, Dolan v. United States, No. 07-166C, at 21 (Fed. Cl. July 21, 2009) ("Tr.") ("That's my preeminent argument, that . . . you're not completely processed out until you're issued your T-214 and you put on your civilian clothes.  And that allows situations that are not dual processed to be extended for disability processing, and then go to the Secretary to determine if he could reconsider the elimination in conjunction with [the] MEB, or not.").  Plaintiff observes that the regulations require additional steps after the Secretary makes a final determination and before final discharge.  For example, Army Reg. 600-8-24 ¶ 4-19, tbl. 4-1, step 20, provides:  "On receipt of separation instructions, takes action to separate the officer.  Final release orders and forms cite regulatory authority and SPD as shown in AR 635-5-1."  Plaintiff also argues that, in addition to the requirements of step 20, the "medical extension provisions of [Army Reg. 600-8-24 ¶ 1-22] still apply to permit hospitalization/disability processing" after the Secretary has made a final elimination determination.  Pl.'s Br. filed Nov. 25, 2008, at 13 (citing Army Reg. 600-8-24 ¶ 4-19, tbl. 4-1, step 17d ("Have the officer undergo a separation physical examination (para 1-22).")).

Plaintiff extrapolates from these requirements that, "[u]nder [Army Reg. 600-8-24] ¶ 1-23, extension with a disability finding of unfitness could result in [the Secretary's] setting aside the *elimination discharge* for misconduct without pay—then converting it into a *medical retirement* for physical disability with accompanying retired pay and medical benefits."  Pl.'s Br. filed Nov. 25, 2008, at 13.  Interpreting the Secretary's elimination determination as unalterable once made, in plaintiff's view, would render the post-elimination medical examination requirement a nullity.

_____

3/ While the ABCMR's decision discusses Army Reg. 600-8-24 ¶¶ 1-23 and 1-23a, see AR at 9-10, 16, the corrections board did not evaluate plaintiff's allegations of error specifically under ¶ 1-23b.

Defendant supports the rationale for the ABCMR's decision—that the dual processing requirement did not apply because the Secretary already had taken final action on plaintiff's elimination action before the MEB decided that plaintiff was medically unfit. Defendant reads the rules and steps for processing an elimination action to fix the Secretary's approval of the elimination action as the final action to be taken in processing an elimination. See Army Reg. 600-8-24 ¶¶ 1-23, 1-23b, 4-18g, 4-18i, 4-19, tbl. 4-1 at step 17. Defendant characterizes the actions required by the regulations following the Secretary's elimination decision as "administrative steps to be taken to implement the discharge." Def.'s Br. filed Apr. 18, 2008, at 11.

Defendant sees no obligation on the part of the Secretary to reconsider plaintiff's final elimination. According to defendant, no provision in the elimination regulations allows an officer to seek reconsideration of the Secretary's final decision. Furthermore, no requirement in the elimination regulations commands the Secretary to reconsider a final elimination when a determination of medical unfitness follows at a later date.

Plaintiff has not established that the Army violated the dual processing requirement of Army Reg. 600-8-24 ¶ 1-23b. 4/ The regulations are clear that the dual processing requirement applies during a "referral for elimination." See Army Reg. 600-8-24 ¶ 1-23 ("If a commissioned . . . officer . . . has been referred for elimination action, when it is determined that the officer has a medical impairment that does not meet medical retention standards . . . ."); id. at ¶ 1-23b ("When a commissioned . . . officer is being processed for one of the actions listed in (1) through (6) below, the officer will be processed in accordance with the provisions of this regulation and through the MEB/PEB system . . . (5) Referral for elimination . . . ."). Plaintiff's argument that "the phrase 'referred for elimination' means

_____

4/  Plaintiff correctly observes that the text of Army Reg. 600-8-24 ¶ 1-23b does not contain the "processed simultaneously" language found in Army Reg. 635-40 ¶ 4-4. However, the two provisions are not rendered in conflict. To the contrary, the two regulations are complementary: Army Reg. 635-40 governs disability evaluations, and Army Reg. 600-8-24 governs eliminations, yet both provide for dual processing—see Army Reg. 600-8-24 ¶ 1-23b (requiring that an "officer will be processed in accordance with the provisions of this regulation and through the MEB/PEB system" (emphasis added)); Army Reg. 635-40 ¶ 4-4 ("Officers in this category who are believed to be unfit because of physical disability will be processed simultaneously for administrative separation and physical disability evaluation." (emphasis added))—and both regulations require that the elimination and disability actions be referred to the Secretary for a final determination. Neither provision suggests that after an individual is eliminated the disability process can be initiated. The textual analysis compels the same result under both regulations.

simply that the officer is being administratively separated only after appearing before a BOI," Pl.'s Br. filed Nov. 25, 2008, at 13, is not supported by the text of the regulations.  The elimination referral period necessarily ends once the Secretary has made a final decision, and the officer therefore is eliminated.  See Army Reg. 600-8-24 ¶ 4-18g ("When the Board of Review recommends elimination, the board will forward the case directly to the Secretary of the Army for the final decision."); id. at ¶ 4-19, tbl. 4-1, step 17(3) ("If the Board of Review determines that the officer should not be retained, the case will be referred to the Secretary of the Army for final action."); id. at ¶ 4-18i ("When the Secretary of the Army approves elimination, PERSCOM(TAPC-PDT-PM) will forward separation instructions to the appropriate PSC/MPD.").

The administrative record supports the ABCMR's decision.  On February 8, 2001, the Acting Secretary approved plaintiff's elimination with a service characterization of general (under honorable conditions) discharge.  Following Army Reg. 600-8-24 ¶ 4-19, tbl. 4-1, step 20, PERSCOM was directed on February 13, 2001, to discharge plaintiff, thereby effectively separating plaintiff from the Army.  PERSCOM issued an order directing plaintiff's discharge effective March 14, 2001.  After examining plaintiff on March 8, 2001, Army doctors determined plaintiff medically unfit as of March 14, 2001, the date on which plaintiff was discharged from the Army. Simultaneous processing was impossible because separation had been completed before medical processing had commenced.  Accordingly, the ABCMR's decision was not arbitrary, capricious, or contrary to law, and it was supported by substantial evidence.

Plaintiff also cites the ABCMR's application of Army Reg. 635-40 ¶ 4-4 to his case as legal error because, once the BOI proceedings were complete in July 2000, he was no longer a candidate for involuntary elimination with a characterization of "under other than honorable conditions." 5/ Pl.'s Br. filed Nov. 25, 2008, at 8 (citing Army Reg. 600-8-24 ¶¶ 4-17d, 4-19).  Defendant rejoins that, while the applicable regulations stipulate that the BRE cannot recommend to the Secretary a discharge characterization less favorable than that recommended by the BOI, the regulations do not limit the Secretary's discretion to approve a less favorable discharge characterization.  See Def.'s Br. filed Dec. 22, 2008, at 9 (citing Army Reg. 600-8-24 ¶ 4-17d).  Plaintiff offers the February 7, 2001 memorandum from the

---

5/  The court notes that plaintiff's contention that ¶ 4-4's simultaneous processing requirement is inapplicable is inconsistent with his earlier arguments to the court that the Army violated ¶ 4-4.  See Pl.'s Proposed Findings of Uncontroverted Fact filed Aug. 14, 2007, ¶ 21; First Am. Compl. filed May 29, 2007, ¶11; Second Am. Compl. ¶¶ 22-23.  The record indicates that plaintiff also made this argument before the ABCMR.  See AR at 13 ("Counsel accurately notes that Army Regulation 635-40, paragraph 4-4 . . . .").

Office of the Assistant Secretary to the Acting Secretary requesting a determination on the referral of the recommendations for plaintiff's elimination, which instructs the Acting Secretary that he "may direct elimination with an honorable discharge; elimination with a general (under honorable conditions) discharge; or retention on active duty," AR at 497, as evidence that the regulations do limit the Secretary's discretion.

Defendant's characterization of the Secretary's discretionary authority is correct. Nothing in the regulations cited by the parties contemplates that the Secretary's discretion to approve or disapprove a recommendation contained in an elimination referral is conditional. 6/ The memorandum from the Office of the Assistant Secretary does not cite any regulation that the Secretary's discretion is subject to revision or that its finality is affected by a subsequent consideration of a servicemember's medical condition. Defendant is correct that plaintiff was still referred for an elimination that could have resulted in an other than honorable discharge characterization right up until the point that the Acting Secretary eliminated plaintiff on February 8, 2001. Accordingly, the ABCMR did not act contrary to law when it determined that Army Reg. 635-40 ¶ 4-4's requirement for simultaneous processing does not apply when an elimination already took place.

3. Injustice and harmless error

Section 1552 of Title 10 delegates power to correct military records to military secretaries, acting through boards of civilians for the executive part of the respective military department. See Porter v. United States, 163 F.3d 1304, 1311 (Fed. Cir. 1998). In pertinent part, 10 U.S.C. § 1552 (2006), provides:

> (a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. . . . [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

---

6/ Army Reg. 600-8-24 provides that "[a]n officer discharged solely for substandard performance of duty will receive an honorable discharge." Id. at ¶ 4-17d (emphasis added). Officers in this category are eliminated under Army Reg. 600-8-24 ¶ 4-2a, Substandard performance of duty. However, in this case plaintiff was eliminated under Army Reg. 600-8-24 ¶ 4-2b, Misconduct, moral or professional dereliction, or in the interests of national security, not ¶ 4-2a. See AR at 8, 148, 163.

The scope of changes that can be made to a military record is not restricted. See Porter, 163 F.3d at 1311. If an error or injustice is found, and it is determined to be more substantial than harmless error, the Secretary of the cognizant branch can change the military record to correct the error or injustice. Once an injustice is found, "corrections boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979) (en banc) (internal quotation marks omitted), superseded in part by statute, 10 U.S.C. § 628 (2006), as recognized in Porter, 163 F.3d at 1323-24. The correction is intended to put the servicemember in the same position had the injustice or error not occurred. Correspondingly, no changes will be made when the error or injustice is deemed harmless, because harmless errors are not sufficiently significant to change the outcome of a case. See Wagner v. United States, 364 F.3d 1358, 1361 (Fed. Cir. 2004).

Plaintiff contends that the Secretary of the Army was required to reconsider his elimination once plaintiff was determined to be medically unfit. According to plaintiff, a legal error or injustice, as defined in 10 U.S.C. § 1552(a), occurred when plaintiff was approved for elimination by the Acting Secretary before he was "timely" referred to an MEB. Plaintiff argues that the ABCMR, in fact, found an injustice when it offered to correct plaintiff's record to show that the Acting Secretary approved plaintiff's retirement for disability on April 4, 2001. Plaintiff reasons that this error or injustice was prejudicial because he likely would have been in a different position—processed for disability retirement—had the Army timely referred him to an MEB prior to his elimination. Plaintiff postulates that, once the ABCMR found that legal error occurred, the ABCMR engaged in an arbitrary and capricious harmless error analysis when it speculated on the Secretary's disposition of plaintiff's elimination and hypothetical disability actions, an analysis rendered impermissible under Wagner. Plaintiff contends that ultimately the only appropriate relief the ABCMR could grant was to declare that plaintiff was never legally separated from the Army on March 14, 2001, and to declare that plaintiff remained on active duty under the constructive active duty doctrine.

While government agencies must follow their own regulations, Wagner reaffirmed the concept that strict compliance with procedural requirements is not necessary when divergence from procedure is deemed harmless. 365 F.3d at 1361. However, harmless error analysis is inappropriate "[w]here the effect of an error on the outcome of a proceeding is unquantifiable," because the court will not "speculate as to what the outcome might have been had the error not occurred." Id. at 1365. Harmless error remains the "appropriate test" where "reviewable standards or factors constrain the exercise of [the Secretary's] discretion." Id. Plaintiff points to language that the ABCMR acknowledged error when its decision opined what other options were available to doctors, such as commencing an MEB earlier. In plaintiff's view this finding by the ABCMR constituted prejudicial error.

Defendant demurs that the ABCMR actually found that no legal error was committed. Plaintiff's reliance upon Wagner is misplaced because the ABCMR never engaged in a harmless error analysis. 7/ Defendant agrees with the ABCMR that plaintiff's ninety-day retention request was denied due to a misinterpretation of Army Reg. 600-8-24 ¶ 1-23a. However, at oral argument defense counsel clarified that, to the extent that plaintiff was denied additional retention, "that would be an . . . equitable mistake, not a violation of the law of regulations that [the] MEB was not initiated prior to the time it was." Tr. at 7.

Defendant also argues that, "to the extent that the Board was referring to a misinterpretation of regulations," id. at 36, any such mistake or misinterpretation is irrelevant because "it wasn't a misinterpretation of the regulations that we have specifically been focusing on, which is 1-23[b] or the disability [4]-4," id. at 36-37. 8/ Even if plaintiff's discharge date had been deferred by ninety days, defendant insists that this result would have no effect on plaintiff's elimination. See id. at 40.

The court agrees with defendant's analysis. The ABCMR did not engage in a harmless error analysis because the ABCMR did not find any errors to analyze. The ABCMR and defendant admit that the Army misinterpreted Army Reg. 600-8-24 when it denied his discharge extension request. Yet, this misstep ultimately is not relevant because plaintiff already had been eliminated. Assuming that plaintiff had received his extension under Army Reg. 600-8-24 ¶ 1-22 and it was determined that he was unfit for continued service and qualified for disability retirement, the fact that he previously had been eliminated would not be affected. Nothing in Army Reg. 600-8-24 requires the Secretary to reconsider his elimination decision. There would be no finality to the Secretary's decisions if he were required to reconsider every elimination if a subsequent MEB were to find that an officer otherwise would qualify for disability. The regulations certainly are strict to the extent that they require dual processing if the MEB is performed prior to the Secretary's making a final elimination determination, but not if the MEB is performed after an elimination determination is reached. However, this exclusion of plaintiff's case from further disability retirement processing does not render the Army's adherence to the regulations an injustice.

---

7/ Alternatively, defendant suggests that, even had the MEB found error, the MEB offered appropriate relief to remedy the error when it offered to correct plaintiff's record.

8/ At oral argument defense counsel observed that the ABCMR's decision, while ultimately correct, was not "a model of clarity." Tr. at 4. The court concurs with defense counsel's assessment. It is less of a strain for the court to reconcile passages of the correction board's decision than it has been to track the logic of plaintiff's arguments. The court has attempted to address each of the latter as they have evolved through the protracted briefing.

The ABCMR came close to finding an error when it suggested that "[t]he applicant's doctors could have, and perhaps should have, initiated an MEB as early as January 2001 when it appeared physical therapy to improve his shoulder was not working." AR at 17. This suggestion is not tantamount to a finding of error or injustice. Nowhere in its decision does the ABCMR implicate any violation of an applicable regulation. For this reason plaintiff's reliance on <u>Wagner</u> is mistaken. <u>Wagner</u> is not relevant.

The Secretary's decision was not arbitrary or capricious or contrary to law in declining to use his power under § 1552 to correct plaintiff's military record or to expunge any documents relating to plaintiff's involuntary separation from his records. His decision is supported by substantial evidence in the administrative record.

### 4. The constructive service doctrine

Even if the court held that the ABCMR failed to recognize legal error relative to plaintiff's processing for disability, plaintiff would not be entitled to the relief that he sought before the ABCMR or in the Court of Federal Claims: correction of his record to reflect that he remains constructively on active duty until the Secretary reviews a determination whether plaintiff was disabled incident to determining his status at discharge. "Under the constructive service doctrine, 'military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation." <u>Barnick</u>, 2010 WL 46784, at *5 (<u>quoting</u> <u>Christian v. United States</u>, 337 F.3d 1338, 1347 (Fed. Cir. 2003)). The purpose of the constructive service doctrine is to "return successful plaintiffs to the position that they would have occupied but for their illegal release from duty." <u>Id.</u> (internal quotation marks omitted). This doctrine applies in instances where a servicemember would have remained on active duty "absent the improper action or discharge," and "would have been able to continue on active duty" at that time. <u>Id.</u> at *6. The doctrine is inapplicable, however, where a former servicemember claims "that he should have been retained on active duty merely for disability evaluation." <u>Id.</u> Plaintiff admitted that he was unfit for service at the time of his discharge. Indeed, this is the central premise supporting plaintiff's claim for dual processing of both his claim for disability and his elimination referral. 9/ <u>Barnick</u> therefore forecloses the application of the constructive service doctrine to this case.

---

9/ The corrections board correctly noted that plaintiff makes "two contradictory arguments–one, that he was so physically unfit (since 'discharge the applicant has been permanently and totally disabled, and continuously unemployable') that he should have been processed through the physical disability processing system; and two, that he was sufficiently fit that he should have been retained on active duty for about two more years." AR at 17.

The ABCMR assumed that an error could have occurred with respect to the timing of plaintiff's MEB, 10/ and it offered to correct plaintiff's record to reflect that he retired on disability in lieu of his elimination—a proposed remedy that plaintiff rejected. Plaintiff's alternative argument is that he was deprived of a timely disability evaluation, an error which prevented his case from going before the Secretary for a *de novo* determination of disability or elimination. See Pl.'s Br. filed Nov. 25, 2008, at 23 ("[T]he BCMR placed Dolan into the same position had the error not occurred with his doctors timely initiating disability processing so the dual processing could occur. This would led [sic] to full development of facts and accurate disability findings to avoid the Secretary making the erroneous elimination decision depriving Dolan of health care and disability benefits."). Plaintiff contends that he was deprived of a timely MEB referral despite the fact that his superior officers were aware of numerous medical problems discovered during his separation physical examinations, which began in June 2000.

This argument is without merit. In addition to making an argument that is predicated on the notion that the ABCMR found error in plaintiff's MEB processing—which it did not—plaintiff does not identify authority that fixes a constellation of symptoms to mandatorily trigger an MEB referral. Moreover, plaintiff's counsel appeared to abandon this position at oral argument, during which counsel postulated:

_____

10/ The corrections board did not specifically state that it found the Army at fault for not starting plaintiff's MEB earlier. See AR at 16 ("However, after all of the above is said, it is acknowledged that the applicant had numerous medical problems prior to the Acting Secretary of the Army approving his elimination from the Army in February 2001. The applicant's doctors could have, and perhaps should have, initiated an MEB as early as January 2001 when it appeared physical therapy to improve his shoulder was not working."). The corrections board found that this evidence was equivocal, noting that "there is evidence to show that it appears [plaintiff] attempted to hide some of his disabilities (i.e., his depression)." Id. at 14. However, the AR also contains a handwritten note from plaintiff's doctor at Tripler Army Medical Center, dated June 27, 2000, stating "Refer to outpatient psychiatry." Id. at 154.

As discussed in connection with harmless error, *supra*, the court does not read the statement of the ABCMR as acknowledging an error. The corrections board was giving the record the benefit of speculation based on hindsight. The board was definitive in its finding of no error.

> I would argue that the Correction Board invented the fiction that the MEB should have been initiated before the elimination was approved. The record does not support that. I don't know where they got the fact that it should have been initiated in January. The record said that, as a matter of fact, after Mr. Dolan's surgery, his shoulder had improved. And then he was under therapy. And then this therapy started to reveal signs of disability in February or March. So I don't know where they get this idea that it should have been submitted before.

Tr. at 17-18. At some point the court must take counsel at his word. Briefs can be read differently, but oral argument must serve some purpose. The purpose of oral argument is to clarify arguments made in briefs, not to add further confusion. Although plaintiff resurrected the argument as an alternative position, see id. at 19, he still could not show that the failure to initiate disability proceedings at an earlier date was error.

### 5. The ABCMR's speculation on the Secretary's discretion

Plaintiff also relies on Wagner for the proposition that the ABCMR engaged in arbitrary and capricious speculation about the Secretary's "appropriate disposition of the elimination and disability actions" when it offered to amend plaintiff's record to show that the Acting Secretary approved plaintiff's retirement for disability in lieu of elimination. Pl.'s Br. filed Nov. 25, 2008, at 27. As discussed above, the corrections board's offer was not based on a finding of legal error, but rather on notions of equity. Wagner is inapplicable to this case because the ABCMR did not engage in a harmless error analysis. Moreover, the law is well settled that correction boards are "competent to make . . . a retroactive disability determination." Barnick, 2010 WL 46784, at *6 (citing Sawyer v. United States, 930 F.2d 1577, 1581 (Fed. Cir. 1991)).

CONCLUSION

Accordingly, based on the foregoing, defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion for judgment on the administrative record is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge

21